SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
PEOPLE OF THE STATE OF NEW YORK

                         Respondent,

                -V-


EDWARD GREEN
                Petitioner

**AFFIDAVIT IN SUPPORT FOR AN ORDER TO SHOW CAUSE FOR SUMMARY JUDGMENT PURSUANT TO SECTION 5530 OF THE CIVIL PRATICE LAW AND RULES**

Indictment No. 5643/07

Honorable Luis A. Gonzalez, J, P.

TO THE STATE SUPREME COURT
OF THE COUNTY OF NEW YORK

**PLEASE TAKE NOTICE that** upon the annexed affidavit of the above named petitioner, this petitioner makes this affidavit in support of Notice of Motion to Appeal to the Appellate Division for a Certificate to Appeal pursuant to sections 460.20 of the Civil Practice Law and Rules of the State of New York, certifying that this case involves a question of Law and facts that should be reviewed by the Appellate Division, and granting leave to appeal to the Appellate Division-First Department.

Let the New York County District Attorney's Office show cause before this Court at the Chambers of the Honorable Judge Luis A. Gonzalez, P., J. of the New York State Supreme Court, Appellate Division – First Department of the County of New York, located at 27 Madison Avenue, at 25th Street, New York 10010, Appellate Court House in the City of New York, NY on the 25 day of November 2011, why an Order should not be made and entered based upon the following grounds:

1. Granting this Petitioner request for a Certificate to Appeal pursuant to section 460.20 of the Civil Practice Law and Rules of the State of New York.

2. Vacating the Stipulation based upon the fact that: The Trial Court orally altered the stipulation to include the Chain of Custody of the Evidence.

1

3. Vacating the Judgment of Conviction entered against this Petitioner on the 15th day of September 2008.

This affidavit is submitted in support of the application of the plaintiff, Edward Green, demanding that the Office of District Attorney of the State of New York show cause: why an order should not be entered vacating the stipulation and why the plaintiffs should not be granted such other and further relief that this Court deems just and proper.

The plaintiff's pro-se petition and memorandum of law, with exhibits A - F was file with the clerk of the State Supreme Court and served upon the Respondents on or about September 22 2011.

This affirmation is executed upon the information and belief, the sources of which are the files and records maintained by Mr. Edward Green ("Mr. Green"), Pro se, Plaintiff, pertaining to petitioner's petition for a Writ of Error Coram Nobis, pursuant to section 5530(a) of the Civil Practice Law and Rules which challenges the failure of the District Attorney's Office to submit a timely reply to petitioner's petition for a Writ of Error Coram Nobis. (CPLR - C5530:1).

Petitioner's petition was filed and served upon the District Attorney's Office on September 22, 2011 as well as all persons of interest and made returnable pursuant to CPLR §2214 (b) and § 2103 (b)(2).

To date, there has been no response from the respondents nor has any stipulation been entered into to enlarge the time period to file a response to Petitioner's Writ of Error Coram Nobis. The Petitioner has not as of yet received answering papers from the District Attorney's Office as well as all persons of interest pursuant to CPLR §2214.8, 9(B).

This petitioner would be prejudiced if this Court grant's the respondents an adjournment. Any continued delay would deny this petitioner the opportunity to have his

judgment reviewed in lieu of the willful attempts by the respondent's to delay responding to the rules of the Court's, CPLR §2214.8, 9(B), for as long as possible.  Absent any reasonable excuse or a timely explanation of reasons for their failure to reply to Petitioner's Writ of Error Coram Nobis, renders all of the People's oppositions to the issues before this Court moot.

No hearing is required on this petition "unless" the papers submitted raise a factual dispute on a material point which must be resolved before the Court can decide the legal issue (People v. Gruden, 42 N.Y.2d 214, 215.

In the case at bar, the respondents made no substantive written response to plaintiff's Petition for a Writ of Error Coram Nobis.    Since more than 45 days have elapsed since the commencement of these proceedings, it would be incumbent upon the respondents to respond to this petition at this point.

Accordingly, if an opposing party does not file ( i ) an answer to a parties charges (ii) a petition attaching the validity of the charges (iii) a petition for an extension of time, the plaintiff has a right to request a default judgment (see, CPLR §3215, McKinney's (1992), also if a party does not reply to one or more factual allegations the court must conclude that they had admitted that the Petitioner's allegations are true (State Rules regarding a party's failure to deny allegations CPLR §3018(a), McKinney's (1991).  As noted, a default judgment assumes that the petitioner's allegations are considered true, because the opposing party did not respond to them.

By failing to contest the allegations made by the Petitioner in his petition, the sworn allegations of facts essential to support petitioner's petition seeking summary judgment pursuant to a Writ of Error Coram Nobis were conceded by the People when they failed to submit opposition papers contesting these allegations, (Post v. Lyford, (1954) 285 A.D.2d 101; People v. Gruden, 42 N.Y.2d 214; People v. Gonzales, 116 A.D.2d 735).  If responsive pleading fails to

3

deny material allegations of complaint, said to refute is equivalent to an admission (Realty co. v. Ford, (1983) 121 Misc.2d 834).   Any material allegations of petition not controverted by objections or answers are deemed admitted (In Walker's Will (1961) 32 Misc.2d 794).

Sense, the defendant's failure to respond as directed by the rules of the Court's pursuant to CPLR §2214(b), that permits the moving party to insist on answering affidavits at least seven days before the return date, as long as the petition has been returnable at least seventeen days .

It has been held at the Appellate level that a failure to respond even when there has been a short notice can produce a grant of the petition, see, Capaccia v. Brognano, 132 A.D.2d 833, which involved the provisions of CPLR §2214(b).

Under the circumstances, when a respondent fails to implement service as directed by the rules of the Courts, the Court is required by statute to grant plaintiff's petition pursuant to CPLR §2214 (b).

Section CPL §210.45(4)(c) outlines the procedures to be followed in presenting and deposing of petitions.  Section CPL §210.45 (4)(c) outlines the procedures that should have been followed in deposing of petitioner's petition.

The Court must grant the petition without conducting a hearing if:

(a)      The moving papers alleged a ground constituting a legal basis for the petition.

(b)      Such ground if based upon the existence or occurrence of facts, is supported by sworn allegations of all facts essential to support the petition.

(c).      The sworn allegation of facts essential to support the petition is either conceded by the defendants to be true or is conclusively substantiated by unquestionable documentary proof (emphasis supplied).   Under the express terms of CPL §210.45(4)(c), as well as under case law, such failure to respond is indisputably where the defendant's offered no valid excuse for not responding.

Finally, as required under CPL §210.45(4)(c) above, the sworn allegations of facts were

4

conceded by the People to be true when they failed to respond to Petitioner's petition seeking summary judgment pursuant to a Writ of Error Coram Nobis.    Where the defendants failed to dispute petitioner's allegations of fact, they are deemed to be admitted, by failing to respond to the Petitioner's petition seeking summary judgment pursuant to a Writ of Error Coram Nobis.

In short, as required, petitioner has met his burden of establishing that petitioner's moving papers met each of these three conjunctive conditions, and the defendants having failed to respond to petitioner's claim at the proper time before the proper forum, the defendant's cannot now ask for an opportunity to show why their delay in not responding to Motion for Summary Judgment was reasonable.  Allowing the defendant's a hearing at this point, would be rewarding the defendant's for their inactions and would be a "procedural Luxury of the purest sort", People v. Gruden, Supra.

Sense, the defendant's did not raise timely objections to petitioner's petition and sworn allegations requirement, e.g., the defendants have waived their right to rely upon that error as a ground for reversing any Order of the Courts to Amend, that now before this Court.

For lack of prosecution, absent any reasonable excuse constitutes sufficient reason to grant petitioner's petition and the relief therein requested.

## INEFFECTIVE ASSISTANCE OF APPELLATE AND TRIAL COUNSEL

It is elementary that the right to effective assistance of representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and facts relevant to the defense and who is familiar with and able to employ at trial both the basic principles of criminal law and procedures.  The Supreme Court of the United States have long recognized that the right to counsel would be meaningless if it did not require effective assistance and substantial aid, Powell v. Alabama, 287 U.S. 45.

5

Professionalism demands that both Appellate and Trial counsel must thoroughly review the facts and laws of the case relevant to their clients' defense and exhibit their practice expertly because proper representation involves more than courtroom conduct.  It is axiomatic that both Appellate and Trial counsel must investigate all apparently substantial defenses available to a defendant and must assert them in a proper and timely manner.  This was not the case in this instance matter, no matter what the apparent degree of a defendant's depravity or the likelihood of his guilt, the right to the constitutional shelter of Effective Assistance of Counsel and a fair trial are to forever remain in violate.  Wilson v. Phend, 417 F.2d 1197; Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981); Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.

This petitioner was lead to believe that his Appellate Counsel was going to make an application to the New York State Court of Appeals after receiving the Appellate Division-First Department's decision affirming his conviction on March 24, 2011.  It should be noted that Appellant Appellate Counsel had never made an application to the New York State Court of Appeals on behalf of her client.  Because of Appellate counsel's failure to promptly mail a copy of the Appellate Division determination affirming Mr. Edward Green's ("Mr. Green") conviction to her client and because of the late date by which Mr. Green received the Court's decision affirming his conviction, it was beyond the thirty days allowed to make an a application to or request an extension of time to file an appeal to the New York State Court of Appeals, thereby causing Mr. Green to become time bared.

Because of Appellate Counsel's failure to file notice of appeal to the New York State Court of Appeals in a timely fashion, before the proper forum.  Ms. Rea, filed her notice on April 25, 2011 some 32 days after the time to file had expired, her late notice should be viewed with skepticism as a pretentious attempt to weave a completely fabricated waiver to give it the

6

appearance of credibility, it is the worst form of an abuse of discretion by an Attorney. Because of counsel's failure file a timely notice of Appeal or request an extension of time to file her notice to appeal on behalf of Mr. Green, Mr. Green received Ineffective Assistance of Counsel at a critical stage of a criminal proceedings. [see, exhibit "A"]

Both Appellate and Trial counsel demonstrated Ineffective Assistance where they should have known that the proffered expert evidence was incompetent, People v. Rodriguez, 94 AD2d 805, 806 (2d Dept. 1983) without the testimony of all those whom had performed the test.

Appellate Counsel should have known that defense counsel's failure to impeach the questionable evidence constituted ineffectiveness, even thro counsel afforded his client an otherwise vigorous defense. People v. Zay's, 61 AD2d @598, and not withstanding. Counsel's competence in other phases of the proceedings, People v. Long, 81 AD2d 521, 522(1st Dept. 1986).

Both Appellate and Trial counsel should have known but failed to understand that the validity of an arrest depends upon the existence of probable cause at the time of the arrest and cannot be based on evidence obtained as the results of an ensuring search, (People v. McCarthy, 14 NY2d 206; People v. Lorid 19 NY2d 368), as was done here.

It is well settled, of course, that issues of credibility are primarily for the trial court and its determination is entitled to great weight (People v. Atlers, 183 App. Div. 595, 600). However, reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interest of justice necessitate their nullification.

This Court should take note that the Trial Court's vouching for the Chain of Custody of the Evidence without unquestionable documental proof of the Chain of Custody should be viewed with skepticism based upon the fact findings of the trial court which were manifestly

erroneous and so plainly unjustified by the evidence that the interest of justice necessitate its nullification. In the instant case, by permitting the ADA to submit the stipulation and the Court's acknowledgement vouching for the Chain of Custody to be included in the record, the Trial Court was not correcting or reforming an old record in order to indicate the true facts appearing before it at the time of its original determination, but it was, in fact, making an entirely new record.

The ADA requested that the court take judicial notice of certain...records, which would establish that the stipulation surrounding the Chain of Custody was actually commenced earlier and timely, all of which, was never made part of either record. The propounded stipulation surrounding the Chain of Custody was never filed with the clerk of the court or the court for that matter, in any event, the stipulation never came to the attention of this Petitioner until the Petitioner filed his CPL §330.30 Post conviction Motion, in which portions of Petitioner's Post Conviction Motion was addressed at petitioner's sentencing [see, Ex "B", Pgs. 2-6], as well as the People's reply to petitioner's Pro se Supplemental Appellate Brief.

The Trial Court was without authorities to go beyond the submitted record save in limited instances, none of which pertains here. To allow this type of amendment at this stage of the proceeding would be setting a precedent which would lead to great embarrassment in the legal practice of law and injustice to parties. (Hamlin v. Sears, 82 NY 327, 333, See, Sacks v. Stewart, 75 AD2d 536, 537), any additions to the record should be denied.

Appellate Counsel should have perceived the arguable existence of conflicting loyalties on the part of defense counsel in which the Trial Court should have conducted a hearing. Though the trial judge erred in failing to do so, that error mandates reversal only if petitioner has demonstrated that a "conflict of interest" or at least the significant possibility, thereof, did exist.

The conflict must, however, be one which bears a substantial relation to the conduct of the defense, as was demonstrated here. It should be noted that at this petitioner's sentencing hearing on October 8, 2008, petitioner's counsel understood that his errors had created a conflict of interest that resulted in counsel's joining in and adopting petitioner's motion to vacate judgment based upon petitioner's Ineffective Assistance claims. [see, sentencing minutes hereto attached as exhibit "B", Pgs. 2-6].

## REPLY IN SUPPORT OF WRIT OF ERROR CORAM NOBIS

When the People filed their Appellate brief in opposition, they addressed the Chain of Custody of the Evidence, I did not know just what this meant when defense counsel stated that he had stipulated that a substance tested positive for cocaine, because I was not present, nor did I participate in or agree to any agreement, nor did I have any idea that a hearing or conference concerning this matter, was going on, the incorporating and then orally restructuring the agreement to include the Chain of Custody of the Evidence. At no time did this petitioner ever consent to any agreement between myself and the People, nor was I never consulted about any alteration to orally restructuring the stipulation by the Trial Court.   Because the Court was not aware of the specific actions by Mr. Keith and the People. I feel that the Court have error in its decision making process, thereby making itself an unsworn witness by vouching for the Chain of

Custody of the Evidence[1], in absence of any express consent or authorization on the part of this petitioner. The Court overlooked certain facts that were not included or intentionally left out of the original agreement.

---

[1] The Court should be aware that since the People had never raised any issues concerning the Chain of Custody of the Evidence within or surrounding the oral stipulation, before, the Honorable Edward J. McLaughlin, of the New York State Supreme Court, County of New York, any Appellate complaints that may be raised in this regard are unpreserved for Appellate review.

After being intentionally misadvised by the Trial Court, this petitioner was lead to believe that he had no viable legal grounds for making objections or claims in opposition concerning the Evidence, and that all actions that resulted in the State Supreme Court [Post Conviction CPL 330 Motion], the State Supreme Court stated that the filing of the CPL 330 motion was time bared, which was not true.    In the case that's now before this court, the terms of the stipulation that is the bases of this application was orally altered or restructured by the overreaching conduct of the Trial Court to include the Chain of Custody of the Evidence within the oral stipulation.  At no point in any proceedings were there any discussions bearing on any matters pertaining to the Chain of Custody of the Evidence, based upon the fact that the People was in default and the motion seeking Summary Judgment pursuant to CPL 330 of Petitioner's Post Conviction Petition of Objections.   At no time doing the course of this or any other proceeding was the motion for Summary Judgment ever withdrawn.

It is well settled that a stipulation of agreement made in open court and on the record in accordance with CPLR §2104 is to be strictly enforced. The only way a party may be relieved from the consequences of such a stipulation is to establish cause and provide proof sufficient to invalidate a contract, such as fraud, collusion, mistake or accident.

Furthermore, this is true even when the attorney for a party exceeds his authority to settle an action.  This was the issue before the Court of Appeals in Hallock v. State of New York, 64 N.Y.2d 224 (1984).  The Court ultimately held that an attorney can bind his client to a agreement in excess of his authority.  In reaching this conclusion, a stipulations that was made in open court was discussed, as follows:

> "Stipulations of agreements are favored by the courts and not lightly cast aside (see, Matter of Galasso, 35 N.Y.2d 319, 321; 361 N.Y.S.2d 871; N.E.2d 618).  This is all the more so in the case of "open court" stipulations (Matter of Dolgin Eldert Corp., 31 N.Y.2d 1, 10; 334

10

N.Y.S.2d 833) within CPLR §2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and the integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation (Matter of Frutiger, 29 N.Y.2d 143, 149-150;  324 N.Y.S.2d 36).

64 N.Y.2d at 229, 230; 485 N.Y.S.2d at 512 (emphasis added).  See also, HCE Associates, v. 3000 Watermill Lane Realty Corp., 131 A.D.2d 543; 516 N.Y.S.2d 269 (2d Dept. 1987).

## FRAUD

It is well settled that the essential elements of a fraud claim are misrepresentation of a material fact, falsity, scienter, deception, and injury, see, Barclay Arms Inc., v. Barclay Arms Associates, 74 N.Y.2d 644, 646-647; 542 N.Y.S.2d 512, 514 (1989); see also, 2 NY PJI 2d 83, 84 (Supp.).

Furthermore, it is also well settled that the burden of proof to show fraud is on the proponent of that claim, and the standard is by clear and convincing evidence.  See, Geroge Backer Management Corp., v. Acme Quilting Co., 46 N.Y.2d 211, 219-220; 413 N.Y.S.2d 135, 139 (1978); 473 N.Y.S.2d 31, 33(3rd Dept. 1984); 2 NY PJI 2d 888; 2 NY PJI 2D 285, 286(Supp.)

**The Stipulation should be
Vacated as Induced by Fraud
Or as a Product of a Mistake**

It is true, of course, that "[s]tipulations are favored by the courts and not lightly cast aside, "Hallock v. State of New York, 64 N.Y. 2d 224, 229(1984)", but it is also recognized that an Appellate Court has discretionary power to relieve parties from the consequences of a stipulation entered into during litigation * * * for good cause shown, such as Fraud, collusion, mistake or other factors as would undo a contract." Where, as here, specific facts can be alleged demonstrating the presence of fraud or mistake, that discretionary power should be exercised in

11

favor of the aggrieved party, Matinzi v. Joy, 96 A.D.2d 780 (1st Dept. 1983), aff'd, 60 N.Y.2d 935 (1983).

The elements of actionable fraud are familiar. [I]t is well settled, said the Second Department in Pappas v. Harrow Stores, Inc., 140 A.D.2d 501(1988), that in order to succeed on a cause of action grounded in fraud, a plaintiff must demonstrate that the defendant made a false representation which was either known to be untrue or made with reckless disregard of its truth and which was made with the intent to deceive and to induce the petitioner to part with or refrain from obtaining something of value, thereby causing injure [citations]. Each element can be established by this petitioner in the present case.

As discussed in greater detail below, the Respondent, Mr. Keith swore to matters which they knew to be false, with the sole intent of deceiving the petitioner and attempting in inducing the petitioner to settle his case based upon the threat of severe penalizes being imposed upon this petitioner and his family. Mr. Keith also instructed that the Trial Court would do this, as was demonstrated at the sentencing hearing, where the Trial Court imposed the most severe sentence possible based upon the fact that no viable evidence was never proven at Trial.

There can be no question here that Mr. Keith and the People knowingly made false representations. It is apparent, based upon the statements contained in the trial record that the Trial Court believed that this petitioner would attempt to set aside this conviction on appeal on the basis of fraud, had he been aware of the stipulation, which is one of the grounds noted in the Hallock decision, supra. A detailed explanation as to the different types of fraud sufficient to render a contract void or voidable us contained in the decision of Mix v. Neff, 90 A.D.2d 180, 473 N.Y.S.2d 31 (3rd Dept. 1984). The court discussed the two types of fraud, namely, fraud in the factum and fraud in the inducement. The Court in Mix, described the former as follows:

12

> "Fraud in the factum generally connotes an attack upon the very existence of a contract from its beginning, in effect alleging that there was no legal contract and that the instrument never had had a valid inception. The attack is upon certain facts which occurred at the time of the alleged execution of the agreement, upon which facts the validity of the agreement depends."

473 N.Y.S.2d at 33.  The Court described the latter type of fraud as:

> "To be distinguished is the claim where an opponent of a contract asserts the defense of fraud in the inducement, which, if proven, renders the contract voidable (see, Adams v. Gillig, 199 N.Y. 314, 317, 92 N.E. 670). This form of fraud is usually based on facts occurring prior or subsequent to the execution of a contract which tend to demonstrate that an agreement, valid on its face and properly executed, is to be limited or avoided (see, Mangini v. McClurg, 24 N.Y.2d 556, 563, 301 N.Y.S.2d 508, 249 NE 2d 386).  When an opponent of a contract alleges fraud in the inducement, whether as an affirmative defense or by way of a counterclaim seeking rescission, he must sustain the burden of persuasion (Steinberg v. New York Life Ins. Co., 238 app. Div. 206, 210; 264 N.Y.S. 399 revd. Other grounds, 263 N.Y 45, 188 NE 152; see also, D'Angelo v. Bob Hastings Automobile, Inc., 89 A.D.2d 785, 455 N.Y.S.2d 763, 442 N.E.2d 60). That burden of proving fraud in the inducement, or a cause of action seeking rescission on that ground, requires that the proof be by most satisfactory evidence, (Adams v. Gillig at 323, Supra.), which may be interpret to be by clear and convincing evidence rather than only a fair preponderance of the credible evidence."

413 NYS2d at 33.  (emphasis added).  See also, George Backer Management Corp., v. Acme Quilting Co., 46 N.Y.2d 211, 413 N.Y.S.2d 135(1978); 2 NY PJI 2D 888; 2 NY PJI2D 239, 240 (Supp.).

The instant stipulation of agreement, made in the course of a Court Conference, with the parties present, after several conferences, must be given a presumption of regularity in its execution.  See, Fleming v. Ponzizni, 24 N.Y.2d 105, 111, 299 N.Y.S.2d 134, 140(1969).  As litigating, (Carnee v. Habrouck, 267 N.Y. 57 (1935)), but this is a case where Mr. Keith did more than just keep information to himself, he repeatedly made boldfaced misrepresentations.  The United States Supreme Court has had occasion to explain the distinction:

> At common law, misrepresentation made for the purposes of inducing reliance upon a false statement is fraudulent. But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is induce a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.

Chiarella v. United States, 445 U.S. 222, 227-228 (1980).

On the question of reliance, it is not open to Mr. Keith to argue that the petitioner should not have reposed any confidence in the truthfulness of his representations to the Court and to this petitioner. The petitioner acted reasonably in ascribing value to statements made under oath, particularly since those statements reflected matters exclusively within Mr. Keith's knowledge. Difilippo v. Hidden Ponds Associates, 146 A.D.2d 737 (2nd Dept. 1989). Litigation is a means of resolving the parties differing but honestly held contentions. Falsehoods and perjury are not a permissible part of the process. Mr. Keith and the People, knowing far more than did the petitioner, apparently had something else in mind. The cautious choice of language, to be sure, is further evidence of Mr. Keith's and the Prosecutor's wrongdoing.

In any event, even if Mr. Keith had no intentions of deceiving his client in this matter, it nevertheless remains a fact that Mr. Keith settled the action on a misapprehension. A mistake of that significance, without more, is a sufficient basis to revoke a agreement in the interest of justice.

### The Unchallenged Evidence of People's Material Misrepresentations

There is no apparent way to reconcile the activities performed by the People and Mr. Keith months following the agreement with their sworn statement that The Chain of Custody of the Evidence was to included within the stipulation. Significantly, Respondent made no attempt to do what presumable cannot credibly be done -- that is, harmonize their post-agreement conduct

14

with their pre-agreement conduct and assertions. The People proffered no affidavits of their own in opposition to this petitioner's charge of misrepresentation, no explanation was ever offered for not including The Chain of Custody of the Evidence in the original stipulation. Not even did counsel seek to convince the Court that the material on which the reply petition rest was true to what the Prosecutor claimed.

Furthermore, it makes no difference whether the People's misrepresentations were conceived and communicated as part of a deliberate effort for failing to put in writing an unfair stipulation with the Mr. Keith, or whether, as it seems far less likely that they were only the effusive outpourings of a Respondent who, in unbridled zeal for their own cause, managed to delude themselves as well as deceive the petitioner and the Court. In either event, the agreement cannot stand:

> In a law action for deceit it is incumbent on one seeking damages for fraud to prove, among other things, that false statements were made with knowledge of their falsity, or with the reckless disregard of their truth or falsity. But an action may be maintained in equity to rescind a transaction which has been consummated through misrepresentation of a material fact not amounting to fraud. Unlike an action at law for damages, intentional misstatements need not be proved.

Matter of Clerk, 233 App. Div. 489 (4th Dept. 1931) (citation omitted), see also, D'Angelo v. Bob Hastings Oldsmobile, Inc., 89 A.D.2d 785 (4th Dept. 1982) ("even an innocent misrepresentation is sufficient ground for rescission).

In sum, then, it was an abuse of discretion to deny the petitioner's motion with the observation, "[w]hat seems to have happened here is simply that favorable evidence came into [its] possession when it was too late. More than merely favorable evidence, the evidence exposed Mr. Keith and the People's campaign to grossly distort the true nature of their intentions, so as to extract unconscionably excessive punishment from the Court to this petitioner. Such