conduct certainly warrants vacatur of the agreement, just as it would warrant setting aside a judgment.  see, e.g., Swarzina v. knight & Timoney, Inc., 265 App. Div. 33(1st Dept. 1942); Curran v. Hargreaves, 253 App. Div. 121 (4th Dept. 1937); Mevius v. Tiffin Products, Inc., 198 App. Div. 812(2d Dept. 1921).

### The Court has the Power to Vacate an Unjust Stipulation

In the normal course of events, an agreement signals a final resolution of the parties controversy and should not be converted into a starting point for renewed litigation, Mangini v. McClurg, 24 N.Y.2d 556, 563 (1969).  Where it appears, however, that an agreement is a product of "fraud, collusion, mistake or accident," it may be vacated. Hallock v. State of New York, 64 N.Y.2d 224, 230 (1984).  Such relief usually may be sought, at the option of the parties, by motion interposed in the underlying action or by a plenary action grounded upon the stipulation," Teitalbaum Holdings, Ltd., v. Gold, 48 N.Y.2d 51, 55 (1979).

Of course, if the submissions in support of and in opposition to vacatur of an agreement are inconclusive or conflicting, and thus warrant further development, an evidentiary hearing should be ordered.  See, Mauro v. Mauro, 148 A.D.2d 684 (2d Dept. 1989); Berger v. Berger, 81 A.D.2d 650 (2d Dept. 1981).

### The Agreement Was A Product Of Unilateral Mistake

Quite apart from the question of whether the Respondent pursued a scheme to deceive the petitioner, it is undisputed on this record that the petitioner never entered into an agreement.

It should be noted that equity may be invoked to prevent the enforcement of an unjust agreement induced by a unilateral mistake of fact. Rosenblum v. Manufacturer Trust Co., 270 N.Y.79, 85 (1936).  Such an application is addressed to the conscience of the Court, Feldman v.

Metropolitan Life Insurance Co., 259 app. Div. 123 (1st Dept. 1940), and should be granted upon a showing that [t]he parties may be restored to the status quo ante without prejudice * * * Seidman v. New York Life Insurance Co., 162 Misc. 560, 562 (Supreme Ct., New York Co., 1937). These principles apply with equal force to a stipulation entered into in open court. See, e.g., Carrion v. Metropolitan Transportation Authority, 92 A.D.2d 907 (2d Dept. 1983).

The rescission of the stipulation upon the grounds of unilateral mistake should be granted here. There can be no doubt that the People grave misapprehension of the true severity of their claim at the pre-trial proceeding, it was not an insignificant or incidental factor in the decision to the stipulation of this case, but goes to the foundation of the agreement. DaSilva v. Musso, 57 N.Y.2d 543, 552 (1981). Moreover, since the petitioner moved expeditiously upon the discovery of the error, petitioner can be restored to the position he occupied before the stipulation. The parties should not be deprived of their opportunity to present their claims fully and fairly to the Court, but merely divested of an advantage which in good conscience and the law [they] are not entitled to retain. Seidman v. New York Life Insurance Co., Supra, 162 Misc., at 562.

It need only be added that Mr. Keith's mistake was not a miscalculation as to the future course of consequences that this petitioner's claims concerning the Chain of Custody of the Evidence, but a substantial mistake concerning the nature of the true terms of the oral stipulation as it existed at the time that the stipulation was entered into. Therefore, when the agreement is made on the assumption of the existence of a state of facts it may be rescinded if that state of facts does not presently exist. Mack v. Albee Press, Inc., 263 App. Div. 275, 277 (1st Dept. 1942); see also, Pokora v. Albergo, 130 A.D.2d 473 (2d Dept. 1987).

It should be noted that any out-of-court oral alteration or the orally restructuring of the

17

original oral stipulation was never provided to this petitioner or presented in open Court or at the last Court pre-trial proceeding before The Court, in which the trial record reflected the stipulation, nor does the record demonstrate when the stipulation was made, nor would this petitioner ever enter into any stipulation that would concern the Chain of Custody of the Evidence. Based upon the fact that the stipulation was orally altered or restructured from the original oral stipulation without the full consent or authorization by this party, thereby violating the strict terms of the stipulation, and because of such overreaching conduct by Court, the Court thereby voided any and all parts, terms of the stipulation by it's overreaching conduct. This petitioner would be at a distinct disadvantage if the stipulation was to be enforced and that it would be inequitable to do so. The stipulation must in the interest of justice be vacated based upon these and the foregoing arguments below.

The Court should be guided by the "familiar and eminently sensible proposition of the law that when parties set down their agreement in a clear, complete written document, their writing should...be enforced according to its terms. (Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co. 1 N.Y.3d 470, 475[2004], quoting, W.W.W. Aisa v. Giancontieri, 77 N.Y.2d 157, 162[1990]; TAG 380, LLC v. ComMet 380 Inc., 10 N.Y.3d 507, 512-513[2008]).

First, the stipulation was never reduced to written document by Mr. Keith or the People, and did not constitute a sufficient writing to bring the agreement within the scope of Civil Practice Law and Rules ("CPLR") §2104. The oral stipulation, although acknowledging the existence of an agreement, did not incorporate all the material terms of the agreement (see Matter of Galasso, 35 N.Y.2d 319, 321 (1971) (refusing to enforce a agreement that although proposed at a court conference, did not reflect a complete agreement as to all material terms).

The plain language of the statute directs that the agreement, itself must be in writing,

18

signed by all parties to be bound (CPLR 2104), because the purported stipulation of this action did not include a signed writing incorporating all material terms of the purported agreement between this petitioner and the People, thus the purported stipulation failed to demonstrate that the parties entered into a binding agreement (see CPLR 2104; Bonnette v. Long Island Coll. Hosp., 3 N.Y.3d 281).

Accordingly, there can be no discontinuance until there has been a complete compliance with all the terms of the stipulation. To be binding a stipulation "must either be reduced to a properly subscribed writing or entered orally on the record in open court.

It should be noted that [w]hen there is no dispute between the parties as to the terms of a oral agreement, that's made during a pending litigation, the courts will refuse to permit the use of the statute (CPLR 2104) against a party who has been misled or deceived by the agreement to his detriment or who has relied upon that agreement, Conlon v. Concord Pools, LTD., 170 A.D.2d @754, which is not the case in the case at bar. Nevertheless, as the Court of Appeals stated in Mutual Life Ins. Co. v. O'Donnell, 146 NY 275, that an oral stipulation "will not permit a party to be misled, deceived, or defrauded by means thereof, and in some instances where it has been acted upon by the party making it they will not be permitted to retract and take advantage of the acts or omissions of his adversary thereby induced." Nevertheless, a stipulation is a contract, and like any contract it can be invalidated on such grounds as fraud, collusion, mistake, accident or overreaching conduct. Hallock v. State of New York, supra, 64 N.Y.2d 224, 230; see also, Sontag v. Sontag, 1985, 114 A.D.2d 892.

Because of the default filing and the failure of the People to file a reply to this petitioners Post Conviction CPL 330 motion for Summary Judgment for the failure to file a timely reply to petitioners petition of Objections concerning the Chain of Custody, as well as

their non-appearance by the Police Chemist at any stage of the proceedings, their absence could not have cause or created the impression that Mr. Keith had the authority and/or was authorized to enter into a binding stipulation between this petitioner and the People, by Mr. Keith.

Equally rooted in the law is the principle that without a grant of authority from the client, an attorney cannot compromise or settle a claim.(see, Kellogg v. Gilbert, 10 Johns 220; Jackson v. Bartlett, 8 Johns 361), and agreements negotiated by attorneys without authority from their clients have not been binding (see, Countryman v. Breen, 241 App. Div. 392 [271 N.Y.S. 744, aff'd, 268 NY 643]; Spisto v. Thompson, 39 A.D.2d 598; Leslie v. Van Vranken, 24 A.D.2d 658; Mazzella v. American Home Constr. Co. 12 A.D.2d 910.

Under New York State law a finding of apparent authority is dependent upon "words or conduct" of the principal [The People] and communicated to a third party [Green], that would have given rise to the appearance and belief that Keith possessed the authority to enter into a transaction [stipulation], Id. 64 N.Y.2d @ 231. This standard as stated and supported in Hallock v. State of New York, supra, was never satisfied because Mr. Keith had never argued the Chain of Custody of the Evidence throughout the course of this litigation, and had never engaged in any prior negotiations concerning the Chain of Custody of the Evidence, and had never appeared at any court proceedings, i.e., in State Supreme Court to argue the Chain of Custody of the Evidence which in and of itself amounted to a non-representation of a given party, which demonstrated that Mr. Keith did not have nor had he ever had the authority to enter into a binding stipulation on behalf of this petitioner concerning the Chain of Custody of the Evidence, see, Uniform Civil Rules for the Supreme Court and the County §202.26(e).

Secondly, a mutual mistake sufficient to warrant vacating a stipulation requires proof that the mistake existed at the time of the stipulation and that it was so substantial that the

20

stipulation did not represent a true meeting of the minds (Mahon v. New York City Health & Hosps. Corp., 303 A.D.2d 725; Gillray I., 287 A.D.2d 865 [mutual mistake not established where in hindsight the terms of the agreement are difficult to effectuate]).

The assertion made by this petitioner of mutual mistake is not belied by the record of the Court and the papers before the Court on this application (see, Lowinger v. Lowinger, 303 A.D.2d 723). The record does not belie plaintiff's claim that Mr. Keith failed to understand the true nature of the stipulation, or that Mr. Keith knew that he was committing fraud upon and thereby deceiving the Court and this petitioner, by knowingly allowing the Trial Court to orally change, altering or restructure the terms of the stipulation, thereby invalidating the stipulation, because the oral stipulation that the People is now asserting is based upon a totally different set of facts.

This petitioner respectfully request that the stipulation be vacated on the grounds of fraud or mutual mistake because the parties negotiated the agreement on an incorrect promise, that is, that all claims concerning the Chain of Custody of the Evidence was never made part of the original oral stipulation. Where the record is completely silent as to the Chain of Custody of the Evidence during the course of the Court Conferences' as well as at all Court pre-trial proceedings, which only demonstrated that Mr. Keith lacked all authority to enter into a binding stipulation on behalf of this petitioner and the People. Thus there was no true meeting of the minds, which makes it totally impossible to effectuate a binding agreement between this petitioner and the People.

It should be noted that a Courts may not rewrite an agreement between the parties (Matter of Evans v. Board of Assessment Review of Town of Catskill, 284 A.D.2d 753, 755) as well as "a court should not under the guise of interpretation, make a new contract for the parties"

21

(Sklerov v. Sklerov, 231 A.D.2d 622).

Accordingly, consent and authorization can not in and of itself be abridge from a silent record. Consent and authorization can not in and of itself be made binding on a party where the record is silent concerning that party and all terms associated with and supporting the terms of the stipulation of a silent and non-appearing party is barren and unsupported by the record.

The law is well established and supported by both State and Federal Law and its supporting case law that a record that is silent will not overcome the presumption against a waiver by a party of constitutionally guaranteed protections, (People v. Rodriquez, 50 N.Y.2d 553, 557); (People v. Thompson, 140 AD2d 652, 653(1988), the record must show an intentional relinquishment or abandonment of a known right or privilege, "Johnson v. Zerbst, 304 U.S. 458, 464(1938).

Where there is a silent record concerning all terms of a given stipulation in which the parties are to be bound, a party cannot give rise to a waiver of a known right by waiving that right based upon a silent record. A silent record is the same as no record at all, which makes it impossible to waive a given right based upon something that doesn't exist. Therefore, presuming a waiver from a silent record is impermissible (see, People v. Harris, 61 N.Y.2d 9, 17).

It is evident from the record that the fair notice provision provided by Mr. Keith and the People was woefully inadequate, and the totality of omissions and commissions is such that the conclusions is inescapable based upon the absence of fair notice, the lack of a true meeting of the minds and where the People's lacked the authority to enter into a binding agreement between this petitioner and The Chain of Custody of the Evidence. The Court conclusions must result in the stipulation being dismissed and the case being re-entered back on the Court

The Court should take note that as long as the appearance of impropriety is there, and it

22

is, as have been demonstrated in the case at bar, the Court should be very uncomfortable with any recommendations made by the People. Such recommendations should have been viewed by the Court with total skepticism.

Therefore, because of the Court's failure to entertain this application on the merits, this petitioner no doubt suffer a miscarriage of justice of a given right that this petitioner is constitutionally entitled too.

No previous application has ever been made for the relief requested by these papers.

**WHEREFORE,** I respectfully request that the attached memorandum of law and the relief requested therein be granted and upon a determination after a hearing, the respondent's should be precluded from filing a petition in opposition, or an answering affidavit/cross petition and that the petitioner's petition be granted in its entirely and for such other and further relief as the Court may deem just and proper.

**WHEREFORE,** this petitioner respectfully request that this Honorable Court issue an order vacating and setting aside the order of stipulation with prejudice, and restore this action back to the trial calendar of the State Supreme Court for the earliest possible date and for such other and further relief as this Court may deems just and proper.

## CONCLUSIONS

**THE ORDER APPEAL FROM SHOULD BE REVERSED, THE STIPULATION OF AGREEMENT VACATED, AND THE ACTION RESTORED BACK TO THE COURT'S CALENDAR.**

Dated, November 7, 2011

Respectfully Submitted

*Edward Green*

Edward Green, Pro-se,
Eastern Correctional Facility Annex
P.O. Box 338
Napanoch, NY 12458-0338

Sworn to before me this
7 day of **November** 2011

cc:   **The Supreme Court of the State of New York**
Appellate Division-First Department
27 Madison Avenue
New York, New York 10010

**Office of the District Attorney**
Appeals Unit
One Hogan Place
New York, New York 10013

**Mr. Arnold P. Keith**
350 Broadway, Suite 1201
New York, New York 10013

**STEVEN BANKS - NATALIE REA of Counsel**
Attorney for Defendant-Appellant
THE LEGAL AID SOCIETY
Criminal Appeals Bureau
199 Water Street – 5th Floor
New York, New York 10038

Edward Green Pro se,

*Edward Green*

Sworn to before me this
7 day of **November** 2011



*State of New York*
*Court of Appeals*

*Andrew W. Klein*
*Clerk of the Court*

*Clerk's Office*
*Albany, New York 12207-1095*

October 13, 2011

Edward Green
#08-A-5510
Eastern Correctional Facility
P.O. Box 338
Napanoch, NY 12458-0338

     Re:   <u>People v Green (Edward)</u>

Dear Mr. Green:

     I acknowledge receipt of your letter dated October 10, 2011.

     On April 25, 2011, your Appellate Division attorney filed an application for leave to appeal on your behalf. There is no record of a request for an extension of time to file an application for leave to appeal to this Court in the above-referenced matter.

     Very truly yours,

     Andrew W. Klein

cdb

1    SUPREME COURT: NEW YORK COUNTY
     TRIAL TERM : PART 93
2    -------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK
3                                          IND.#:
                                           05643/2007
4

5                    -against-            CHARGE:
                                          CSCS1
6

7    EDWARD GREEN
                                          SENTENCE
8            Defendant.
     -------------------------------------X

9    NYSID # 13866172

10                                  100 Centre Street
                                    New York, New York 10013
11

12                                  October 8, 2008

13   B E F O R E:     HONORABLE EDWARD J. MCLAUGHLIN,
                      Justice of the Supreme Court
14

15   A P P E A R A N C E S:

16

17   FOR THE PEOPLE:

18          ROBERT MORGENTHAU, ESQ.
            New York County District Attorney
            One Hogan Place
19          New York, New York  10013
            BY:  JASON BERLAND, ESQ.
20          Assistant District Attorney

21

     FOR THE DEFENDANT:
22

23          HORNSTEIN, PALUMBO & KEITH, ESQS.
            Attorneys for the Defendant
            BY:  ARNOLD KEITH, ESQ.
24

25


                      Theresa Magniccari
                      Senior Court Reporter

1              THE CLERK:   Calendar Number 2,

2       Indictment 5643 of 2007, as to Edward

3       Green.

4              Appearances

5              MR. BERLAND:   Jason Berland for the

6       People.

7              Good afternoon.

8              MR. GREEN:   For Mr. Green, Arnold

9       Keith, Hornstein, Palumbo & Keith.

10             Good afternoon.

11             THE COURT:   Hello.

12             The defendant has filed apparently a

13      pro se motion asking that the verdict be

14      undone.

15             Have you seen that?

16             MR. KEITH:   I just saw it, your

17      Honor.

18             MR. BERLAND:   I have seen it, your

19      Honor.

20             THE COURT:   It's a long description

21      about laboratories in the past and there's a

22      complaint about the lawyer with respect to

23      certain things that happened during the

24      course of the trial.

25             Is there anything you want to say,

1          Mr. Berland?

2               MR. BERLAND:  I am prepared, if your

3     Honor wishes, to address the motion now or if

4     you want something in writing since I just

5     did receive it on Monday, I could do that

6     as well.  However your Honor wishes to

7     proceed.

8               THE COURT:  I don't think there

9     is a necessity of having anything in

10    writing.

11              I wanted to know if you wanted to

12    make any oral comment.  If you don't, that's

13    fine.

14              MR. BERLAND:  Briefly.

15              As far as the ineffective assistance

16    of counsel claim, I don't believe this is the

17    proper vehicle, the 330.30 motion.

18              I think it would be a post judgment

19    440 motion which would be more appropriate

20    considering ineffective assistance of

21    counsel.

22              Also, as your Honor is aware, often

23    there are facts outside of the record.

24              Although I just took a quick glance

25    at this, I did just receive it, I don't

1    believe it's a proper vehicle.

2              With that being said, my quick glance

3    of the motion, it indicated that the

4    defendant's complaints were with Mr. Keith's

5    trail strategy, and that's exactly what it

6    was, a strategy.  I don't believe it's

7    ineffective assistance of counsel.

8              So that's really all I would like to

9    say as far as that claim.

10             The defendant did make mention that

11   certain of the laboratory reports that were

12   entered into evidence in the Grand Jury were

13   defective because they weren't containing a

14   transmittal memorandum.

15             In fact, on December 12th of 2007,

16   the VDF was turned over with the control lab

17   reports which were introduced into evidence

18   in the Grand Jury and they have that

19   transmittal memorandum stamped on them.

20             I think that is a moot issue.

21             I have nothing further.

22             THE COURT:  Let me hear from Mr.

23   Keith, if you want to say anything.

24             MR. KEITH:  Well, your Honor,

25   certainly during the course of the trial

1    there were statements and decisions that I

2    made which the court ruled unfavorable to Mr.

3    Green, and an argument can certainly be made

4    that there was ineffective assistance of

5    counsel.

6         THE COURT:  But he doesn't make it

7    because -- he doesn't complain about those

8    things.

9         What he says is that somebody put all

10   their eggs so-to-speak in the basket of the

11   court, so the court would order a trial order

12   of dismissal at the close of the People's

13   case, for the reasons that you stated a

14   couple of times on the side.

15        That after that you had no other

16   strategy, which I find difficult to accept.

17        But the things about which you made

18   reference are not listed in his motion.

19        MR. KEITH:  Yes, your Honor.  I

20   haven't had an opportunity to carefully

21   analyze his motion.  I know that the bulk of

22   it refers to laboratory analysis and, you

23   know, during the trial we had stipulated as

24   to the substances being controlled

25   substances.

1          But I certainly agree that Mr. Green

2     was denied a fair trial, and I certainly will

3     file a notice of appeal on his behalf when he

4     is sentenced.

5          THE COURT:  All right.

6          You wanted to say something else?

7          MR. KEITH:  Yes.

8          I would join in his motion to vacate

9     the jury's decision and state that because of

10    the rulings that were made during the trial

11    and because of various statements I may have

12    made, various arguments I may have made, and

13    the overall content of the trial, I think a

14    motion to set aside the verdict would be

15    appropriate and I am asking your Honor to do

16    so.

17         THE COURT:  It's denied.

18         So that's appealable as well.

19         Is there a predicate felony statement

20    you need to file?

21         Please discuss that with Mr. Green.

22    When you are ready, ask the Clerk to ask the

23    questions and then we'll move forward.

24         (Brief pause in proceedings.)

25         THE COURT:  Go ahead.

1              THE CLERK:   Edward Green, a statement

2     has been made by the District Attorney's

3     office alleging that you have previously been

4     convicted of a felony.

5              The statement sets forth the date and

6     place of each felony conviction.

7              Have you been given a copy of that

8     statement?

9              THE DEFENDANT:   Yes.

10             THE CLERK:   The statement reads as

11    follows:

12             On October 8th, 1996, in the Supreme

13    Court of New York County, in the State of New

14    York, the defendant was convicted of the

15    felony of attempted criminal sale of a

16    controlled substance in the third degree,

17    Penal Law Section 220.39.   The ten year

18    period referred to in Penal Law Section

19    70.06, subsection 1(b), is extended by the

20    defendant's incarceration in federal custody

21    from October 8th, 1996 to February 13th,

22    2001.

23             Mr. Green, if you wish to dispute any

24    charges made in that statement, you must

25    specify a particular charge.

Proceedings

1          If you do not, those charges will be

2     deemed admitted by you.

3          Do you wish to dispute any charge

4     made in that statement?

5          THE DEFENDANT:  Yes.

6          THE CLERK:  Do you wish to challenge

7     the constitutionality of that conviction?

8          MR. KEITH:  He is not challenging.

9          THE COURT:  So the defendant is a

10    second felony offender.

11          Mr. Berland, do you know why he was

12    in federal as opposed to state custody?

13          Is that something that is not to be

14    disclosed?

15          MR. BERLAND:  Your Honor, all I know

16    is that the July '96 conviction was for a

17    federal crime.  He was already in federal

18    custody at the time that he was convicted of

19    the state crime, the attempted sale.

20          THE COURT:  All right.

21          MR. BERLAND:  I don't know if that

22    answers directly your question.  That is the

23    information I have.

24          THE COURT:  So we're now going to go

25    to sentencing.

Theresa Magniccari
Senior Court Reporter

Proceedings

1      Mr. Green, you have a right to speak

2  on the issue of the appropriate sentence

3  within the range that the law allows.

4      You could speak, you could ask Mr.

5  Keith to speak in addition to or instead of

6  what you may wish to say.

7      I will hear what you want to do after

8  I hear the People.

9      MR. BERLAND: Your Honor, the People

10  recommend the sentence of eighteen years.

11      As I mentioned during the Sandoval

12  portion prior to the beginning of the trial,

13  the defendant has a criminal record dating

14  back to the 1960's and recently or most

15  recently than some of the older cases that I

16  mentioned during the Sandoval application,

17  and your Honor has the rap sheets of the

18  defendant, are the October 8th, 1996

19  attempted criminal sale of a controlled

20  substance in the third degree, where he sold

21  cocaine to an undercover officer and received

22  three to six years.

23      On July 1st of 1996 was the federal

24  conviction where he was found guilty of

25  possessing a shotgun during drug trafficking.