1    In that case he received five years.
2            And back in 1982, the violent B
3    felony of attempted kidnapping in the first
4    degree, where the defendant abducted a kid by
5    the name of Woodrow Sultan with intent to
6    compel that individual's mother's sister or
7    whichever, it's not clear, to pay a sum of
8    money for the victim's release.
9            Your Honor, it appears that the only
10   times that the defendant isn't committing
11   crimes are when he is incarcerated.
12           His record is extremely lengthy.
13           In this case he was convicted by a
14   jury after trial. It took them a few hours
15   to reach a verdict.
16           Based on the nature of this case,
17   based on his lengthy criminal history, I
18   think that a significant jail sentence is
19   appropriate, and the People are recommending
20   eighteen years.
21           THE COURT: Mr. Green, Mr. Keith.
22           MR. KEITH: Your Honor, first of all,
23   with regard to the probation report, there
24   are a couple of items that I would like to
25   correct.

1     In the description of the offense, it
2 indicates that on Mr. Green's person there
3 was a set of keys that could access both of
4 the rooms in question, and I think the
5 evidence made it unequivocally clear that he
6 only had a key for the fourth floor apartment
7 and not for the second floor apartment and I
8 would just like that portion of the probation
9 report to reflect that.
10    Additionally, the probation report
11 indicates that he is a multi-state offender,
12 and that is incorrect. He has one out of
13 state conviction and that was for a weapons
14 charge and that was a federal conviction.
15    In that case he was sentenced to
16 sixty months and that time period ran
17 concurrent with the New York State conviction
18 for the drug sale.
19    The assistant characterizes Mr. Green
20 as having a lengthy record. His record
21 covers a long period of time. The fact of
22 the matter remains there are only three
23 felony convictions.
24    The kidnapping, what it was was a
25 personal matter and that is from over thirty

Theresa Magniccari
Senior Court Reporter

1  years ago, and then the drug sale and the
2  federal gun charge, and the rest of his
3  record is relatively minor. It's not an
4  extensive criminal history, but it does cover
5  a long period of time.
6     Having said that, your Honor, Mr.
7  Green is 58 years old and the trial that we
8  experienced was a challenging endeavor, to
9  say the least. I had to, as they say, fall
10 on the sword. I made some statements and
11 made some decisions that led to some adverse
12 rulings by your Honor that substantially hurt
13 Mr. Green during the trial.
14    As I have said before, this trial was
15 based on the testimony of police officers
16 that your Honor correctly concluded acted
17 illegally on the day in question.
18    And the statements, sworn statements
19 that were made at the time of the issuance of
20 the first search warrant affidavit, at the
21 time of the Grand Jury presentation, at the
22 time of the hearing that your Honor conducted
23 and at the time of the second search warrant
24 affidavit and at trial, were inconsistent.
25    And it's clear beyond dispute that

1  Officer Romero, in particular, gave
2  perjurious testimony and inconsistent
3  statements directly to your Honor and to the
4  jury in this case.
5       Mr. Green certainly was denied a fair
6  trial and I pray that he will have success on
7  his appeal.
8       But having said that, your Honor,
9  with regard to sentencing and the punishment
10 that you must give Mr. Green, the minimum
11 sentence available to Mr. Green convicted of
12 the A-1 felony is twelve years.
13      Your Honor, he is 58 years old and
14 even if we assume the worse, that he was
15 either holding drugs for someone or involved
16 in the drug trade in some way, a twelve year
17 sentence for a 58 year old man I would think
18 is more than appropriate under the
19 circumstances of this case and with the legal
20 issues that have been raised by what has
21 happened from the beginning of this case to
22 the time of his conviction.
23      Your Honor has not had the
24 opportunity to learn much about Mr. Green
25 other than what's been alleged and the

1  information I contained in my moving papers
2  and the information that is in the probation
3  report. I have talked to this man on
4  numerous occasions and, your Honor, for what
5  it's worth, he impresses me as a man with
6  above average intelligence.
7        I have learned about his family. He
8  is married to a devoted wife. He has
9  children and grandchildren. He is a father
10  and grandfather. All indications are that at
11  the time of this incident he was, in fact,
12  working at that building. The keys certainly
13  suggest that he had access to just about
14  every apartment and the laundromat at that
15  location.
16        Your Honor, I'm asking you to be
17  merciful. I am concerned about the appellate
18  process and what will happen here. I am
19  hopeful that there will be success. But in
20  terms of punishment that your Honor is about
21  to impose, it seems to me that the minimum
22  sentence of the twelve year sentence is more
23  than appropriate under all of the facts and
24  circumstances of this case.
25        THE COURT: Anything Mr. Green wants

1   to say?

2           MR. KEITH:  Mr. Green does not wish

3   to speak.

4           One moment.

5           (Brief pause.)

6           MR. KEITH:  Your Honor, Mr. Green

7   asked me to ask your Honor if you would

8   consider setting a bail pending appeal.

9           THE COURT:  No.

10          You wanted to say something?

11          MR. BERLAND:  Briefly, something that

12  Mr. Keith mentioned that I take issue with.

13          He stated that it is clear beyond

14  dispute that Detective Romero perjured

15  himself during this trial, and the People

16  want to place on the record that we

17  wholeheartedly dispute this baseless

18  allegation.

19          THE COURT:  Okay.

20          All right.

21          I made certain findings during the

22  course of what is known as the Darden

23  Hearing.  They stand.

24          Now we have to impose the sentence,

25  and these are the reasons why the sentence is

```
 1            going to be imposed:
 2                 The legal issues that have been
 3            referred to did not exist on the date that
 4            the crime was committed.
 5                 I don't have any doubt whatsoever
 6            that you had possession of the drugs, as New
 7            York defines possession, given your access
 8            to them, given the amount of money that
 9            those drugs were worth and the location
10            and the circumstances under which you were
11            found.
12                 Certainly, you do get some benefit
13            for having survived to be 58 years old.  I am
14            not much past that and that's a life work in
15            itself, but what you have done with your life
16            is distressing.
17                 As far back as when you were 18 years
18            of age, apparently you comitted some kind of
19            a robbery.  You were given what is known as
20            youthful offender treatment, which means
21            non-jail, and then for some reason you fouled
22            up and got four years.  Then you did the
23            kidnapping for "personal reasons," whatever
24            that is.  Then you had one or two drug felony
25            convictions.
```

1    So it is with a significant amount of
2    salt that we take your denial that you were
3    not involved or had any involvement in this
4    situation.
5        With respect to the A-1 felony,
6    which only a few years ago would have
7    gotten you a life sentence, the sentence is
8    that you should serve fifteen years
9    determinate.
10       With respect to the B felony
11   conviction, twelve years determinate
12   concurrent with the fifteen that I imposed on
13   the A-1 felony.
14       With regard to the A-1 felony, there
15   is a mandated five year post release
16   supervision which I am imposing.
17       With respect to the B felony, a
18   concurrent three year post release
19   supervision.
20       On each of the two misdemeanor
21   charges, you are sentenced to one year
22   each.
23       Those by law merge with the
24   determinate sentences that have been
25   imposed.

1        You're mandated to receive a total of
2   $320 in crime victim, DNA and mandated
3   surcharges.
4        I am sure there is an appeal.
5        We'll all wait to read about it
6   together.
7        Advise him of his right to appeal.
8        MR. KEITH:  I certainly will,
9   your Honor, and I will file the notice of
10  appeal.
11       Thank you.
12       MR. BERLAND:  Thank you, your
13  Honor.
14                  * * * *
15       Certified to be a true and accurate
16  transcription of the minutes taken in the
17  above-captioned matter.

                         _____
                         THERESA MAGNICCARI
                         Senior Court Reporter

To be argued by<br>**EDWARD GREEN**

# NEW YORK SUPREME COURT

## APPELLATE DIVISION – FIRST DEPARTMENT

The People of the State of New York,
  Respondent

- Against –

**EDWARD GREEN,**
  Defendant – Appellant.

## PRO SE BRIEF FOR DEFENDANT-APPELLANT
## INDICTMENT NO. 5643/07

**EDWARD GREEN 08A5510**
**Clinton Correctional Facility, Annex**
**P. O. Box 2002**
**Dannemora, N.Y. 12929**

**March 2010**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES..................................................................................1

INTRODUCTION..................................................................................................1

QUESTIONS PRESENTED...................................................................................2

DISCUSSION..........................................................................................................2

**ARGUMENTS**

**POINT ONE:** MR. EDWARD GREEN WAS DEPRIVED OF MEANINGFUL REPRESENTATION BY HIS TRIIAL COUNSEL WHEN COUNSEL FAILED TO WITNESSES............................................................................................................8

**POINT TWO:** DEFENSE COUNSEL FAILURE TO PREPARE A PROPER DEFENSE CONSITUTED INEFFECTIVE ASSISTANCE OF COUNSEL..............16

CONCLUSION.......................................................................................................18

# TABLE OF AUTHORITIES

## Table of Cases                                                                 Pages

Andre's v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399 (1967)......................10

Apprendi v. New Jersey, 530 U.S. 466 (2000)..................................................2

Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981)............................................9

Bean v. Calderon, 163 F3d 1073, 1079...........................................................13

Cosey v. Wolff, 562 F.Supp. 140, aff'd 727 F.3d 656...........................................13

Crisp v. Duckworth, 743 F.2d 580, 587...........................................................17

Evitts v. Lucey, 469 U.S. 378, 394, 105 S.Ct. @835............................................12

Harris v. Reed, 894 F2d 871, 878-879............................................................16

Kimmelman, 477 U.S. @ 368, 368 S.Ct. 2574....................................................17

Laffin v. Ryan, 4 AD2d 21, 25-26..................................................................8

McQueen v. Swenson, 498 F.2d 207................................................................9

Osborn v. Shillinger, 861 F.2d @624..............................................................12

Ouaglio v. Tomasslli, 99 AD2d 487, 488...........................................................7

People v. Alexander, 136 AD2d 332................................................................7

People v. Atlas, 183 Appp. Div. 595, 600..........................................................8

People v. Dinkle, 302 A.D.2d 1014.................................................................12

People v. Droz, 39 N.Y.2d 457....................................................................9,10

People v. Dumars, 68 N.Y.2d 729, 506 N.Y.S.2d 319............................................8

People v. Dvorzank, 127 AD2d 785................................................................8

People v. Echavarria, 167 A.D.2d 138)(1st Dept. 1990)........................................11

People v. Hobot, 84 N.Y.2d 1021, 1022...........................................................12

People v. Martin, 32 N.Y.2d 123...................................................................3

People v. McCarthy, 14 N.Y.2d 206................................................................3

People v. Moore, 17 AD2d 57, 59..................................................................18

People v. Pearson, 75 N.Y.2d 1001 (1990).......................................................13

People v. Powell, 153 A.S.2d 54...................................................................12

People v. Reisman, 29 N.Y.2d 278, 285-287 (1971)............................................13

People v. Rodríguez, 94 AD.2d 805................................................................5

People v. Smith, 161 A.D.2d 1160; cf. People v. Roberts, 72 N.Y.2d 489, 498............12

People v. Sowizdral, Jr., 275 A.D.2d 473)(3ed Dept. 2000)................................11

People v. Termitto, 155 A.D.2d 965................................................................12

People v. Williams, 73 N.Y.2d 84.....................................................................3

Phoenix v. Matesanz, 233 F.3d 77, 82, n.2(1st Cir. 2000)...................................17

Powell v. Alabama, 287 U.S. 45.................................................................9, 10

Smith v. Stewart, 189 F.3d 1004, 1010............................................................17

Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991.......................................10

Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.....................9, 10, 17

Toomey v. Brnnell, 898 F.2d @744 (9th Cir.), cert denied, 111 S.Ct. 390..............10

U.S. v. Ladd, 885 F.2d 954..............................................................................6

United States v. Armstrong, 621 F2d. 951, 953.................................................13

United States v. Brannon, 616 F2d 413, 418.....................................................13

United States v. Cronic, 466 U.S.648, 104 S.Ct. 2039 (1984).........................10, 11

United States v. Goodwin, 531 F.2d 347...........................................................13

United States v. Gray, 878 F.2d 702, 712.........................................................16

United States v. Howard-Arias, supra, 697 F.2d @366.........................................4

United States v. Perkins, 937 F.2d 1397, 1400..................................................13

Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000)...................................16

Williams, 59 F.3d at 680................................................................................17

Wilson v. Phend, 417 F.2d 1197.......................................................................9

## Table of Statutes                                                              Pages

CPL section(s) 100.15(1), subd. 4(A), 100.20......................................................3

Criminal Procedure Laws §§ 100.15(3) and 100.40(4)(b)......................................6

Penal Law §§220.21(1); 220.16(1)..............................................................1, 15

Rules of the Court, Sec. 670.16(e)..................................................................10

The Constitution of the State of New York, Article 1, Section 6............................10

-SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
THE PEOPLE OF THE STATE OF NEW YORK
         Respondent

- Against -

EDWARD MR. GREEN
    Defendant

**AFFIDAVIT IN SUPPORT OF
PRO SE MOTION FOR
EDWARD GREEN**

**Indictment No. 5643/07**

TO THE SUPREME COURT )
          ss:
COUNTY OF NEW YORK  )

  **PLEASE TAKE NOTICE** that upon the annexed affidavit of Edward Green, being duly sworn, deposes and says:

  I am the defendant in the above-entitled proceeding. I make this affidavit in letter-brief form in support of an application, pursuant to section(s) 450.15 and 460.15 of the Criminal Procedure Law ("CPL") and section 670.12 (b) of the Rules of the Court, for a certificate granting permission to appeal to this Court from an Order of the Supreme Court of the State of New York, County of New York, by the Honorable Edward J. McLaughlin, J,P., upon a jury verdict, convicting Mr. Edward Green ("Green") of the crimes of Criminal Possession of a Controlled Substance, a class A felony in the First and a class B felony in the Third Degree, in violation of Penal Law, §§220.21(1), 220.16(1), on the 15 day of September 2008 and sentencing him to a term of 15 years.

  Under the provisions of CPL §460.50 (1), bail pending appeal is not statutory authorized. since the defendant is presently incarcerated and serving his prison sentence, any delay occasioned by ordinary motion practice would be extremely prejudicial. In the event that a certificate were to be ordered granting permission to allow this petitioner, pursuant to CPL §460.15, to file a pro-se supplemental brief. This petitioner will move this Court for an order

allowing for an expedited appeal.

In accordance with the requirements of Section 670.10.3(g) of the Rules of the Court, the following information is supplied:

(a) The applicant is Edward Green, Pro-se, Din: 08A5510, facility address is: Clinton Correctional Facility Annex, P.O. Box 2002, Dannemora, N.Y. 12929.

(b) The People are represented by the District Attorney of the County of New York, 1 Hogan Place, New York 10013

(c) The New York County Indictment Number is 5643/07

(d) The question of Law or Fact which ought to be viewed by this Court is whether at trial, did Mr. Edward Green received Ineffective Assistance of Counsel where trial Counsel "Mr. Arnold Keith" admitted ignorant of the applicable Criminal Procedure Law, as well as admitted to providing Mr. Green with Ineffective Assistance of Counsel at sentencing and thus could not have given Mr. Green effective advice or where counsel was not prepared for trial and was generally unfamiliar with procedures in a Criminal trial, in clear violation of Mr. Green's Constitutional Rights to the Right to Effective representation which includes the right to assistance by an attorney who is familiar with, and able to employ at trial the basic principles of Criminal Law and Procedures.

## QUESTION PRESENTED

**The Evidence Adducted at Trial was Legally Insufficient to Support Petitioner's Conviction under Penal Law §§220.41 (1) and 220.16 (1), for Criminal Possession of a Controlled Substance in the First and Third Degree**

ANSWER: YES

The indictment was invalid as a matter of law, in that the police laboratory controlled substance analysis report upon which the indictment is based did not charge and the trial Court did not find specified amounts of drugs...a fact that runs afoul of the U.S. Supreme Courts decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Court ruled that any fact that increases the penalty for a crime beyond the statutory maximum, it must be submitted to a jury and proved beyond a reasonable doubt. In light of the fact that the evidence was not only

2

material to the charges against the defendant, it was the only evidence linking him to the unlawful possession of drugs. The defendant's presence at the scene of the arrest, standing alone would not support the indictment. People v. Martin, 32 N.Y. 123, 343 N.S.Y.2d 343. The indictment was fatally defective because the grand jury had no evidence before it worthy of belief that the defendant had committed the crime charged by possessing a controlled substance

The validity of an arrest depends upon existence of probable cause at the time of the arrest and cannot be based upon evidence obtained as the result of an ensuring search (People v. McCarthy, 14 N.Y.2d 206; People v. Loria, 10 N.Y.2d 368, as was done here.

The police laboratory controlled substance analysis reports pursuant to CPL section(s) 100.15(1), subd. 4(A), and 100.20 was neither verified nor conforms to the requirements of CPLR section(s) 4540 (a), 4543 could not have commenced an action or provided a basis for a criminal prosecution.

Therefore, it became an error of such a degree that the integrity of the Grand Jury was Impaired and Prejudice to the defendant thus resulted. (People v. Williams, 73 N.Y.2d 84.

As a condition precedent to admissibility, a showing by a preponderance of the evidence, that the evidence offered is what its proponent claims it to be. In other words, if the person seeks to introduce a bag of drugs into evidence, it must first establish that the bag is what the people assert it to be. The bag found at the scene of the crime. One way to establish that fact is to show the chain of custody of the bag that is where the evidence has been from the moment it was seized until the moment it is offered into evidence.

The requirements of authentication or identification as a condition precedent to admissibility is satisfied by the evidence sufficient to support a findings that the matter in question is what it proponent claims

The people's failure to establish a chain of custody is important. In order to be admissible, the testimony of a live witness must be relevant, that is it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

It should be noted that in order for Detective Alfred Hernandez ("Hernandez") or Detective Anthony Romero ("Romero") testimony to be relevant, there must be some likelihood that the substance tested by them was the substance seized from the safe on the Fourth Floor that was in a locked closet. The authentication testimony of a witness must be that person with knowledge who tested the substance and there must be testimony that a matter is what it claims to be. The People's failure to establish a chain of custody of authentication, from the time the substance was allegedly possessed to the time it was subjected to laboratory analysis makes this less likely, and thus casts doubt on the admissibility of a Hernandez or Romero's testimony.

The ultimate question is whether the authentication testimony is sufficiently complete so as to convince the Court of the improbability that the original item had not been exchanged with another or otherwise tampered with (see, United States v. Howard-Arias, supra, 697 F.2d @366.

Accordingly, establishing a chain of custody is one form of proof sufficient to support a finding that the matter in question is what its proponent claims to be.

An expert's opinion must be based upon his comparison of the results of various test made on the substances possessed by Mr. Green with the results of the same tests performed on a standard sample known to be his comparison of the results of the mass spectrometer test conducted on the standard sample with data contained by three recognized authorities in the field of chemistry. The chemist's notes and records pertaining to the test were never made available to Mr. Green or his Attorney for use at trial, which in fact became a "Brady" violation. The three

4

sources of the data the expert used for comparison with the results of the test on the sample were never identified by anyone or by name, and it is not contended that these were recognized authorities of the sort that ordinarily were accepted by experts in the field and its dossiers, the sources of which have not been independently established, scrutinized nor authenticated.

Contrary to any arguments that might be made, the trial record demonstrates that the people never satisfactorily authenticated the evidence that was sent to the police lab for analysis by conclusively establishing a chain of custody that began with the seizure and ended with the police laboratory.

There is no place found in the record where the testimony of forensic chemist's J. Bishara or Aviva Lieberman had demonstrated that the substance allegedly found in the safe was cocaine or the tests in which the substance allegedly possessed by Mr. Green was compared to substances known to be cocaine, but because the expert failed to testify, there was no proof that the substance that the chemist relied upon for comparative test was in fact tested by him and there was no proof in the record of any nature that established the accuracy of the standard as reliable norm, because of the failure of the chemist to testify, the Court must assume that the proffered expert testimony would have been incompetent to support the fact that the alleged substances was in fact cocaine. (People v. Rodriguez, 94 AD.2d 805, [462 N.Y.S.2d 914]).

Perhaps, most puzzling, is that the prosecution made no effort to clear up this discrepancy. They chose not to present the testimony of the chemist that analyzed the evidence or the lab staffer who logged it in, or the police officer who released the evidence to the lab.

In short, there was no competent proof to indicate that the evidence taken from the scene of the crime was the same one the police chemist tested. This important step in custodial pavane was omitted. As to the police chemist findings, the link was not merely rusty – it had been

5

parted. U.S. v. Ladd, 885 F.2d 954.

It should be noted, that drug field test, is a preliminary screening test, is insufficient to form a basis for prosecution on drug possession charges. The Court in Fasanaro, held that, regarding field test, where a police officer is testifying concerning the results of the field test in place of a chemist, and where he testified that the substance is in fact cocaine, the Court stated that generalized, unquantified and unspecified allegations of training and experience regarding narcotics were insufficient allegations of expertise to allege facts of an evidentiary nature showing a basis for the conclusion as to the identification of the alleged substance, and, without more, must result in a drug possession charge that is facially deficient[1], 134 Misc.2d 141; 502 N.Y.S.2d 713; CPL §§ 100.15 (B), 100.40 (4)(B).

The petitioner contends that the evidence should have been kept from the jury based upon (1) slipshod storage and handling of the evidence at the State laboratory and (2) a discrepancy in the evidence in identifying the chain of custody that binds the evidence, was so seriously flawed as to leave no reliable foundation for admission of the evidence.

The tests conducted by the police laboratory was flawed because (1) the police chemist did not testify and his failure to testify or to provide evidence that would have demonstrated that the laboratory's usual custom and praxis were followed and (2) there was no testimony by the laboratory chemist to support a findings that the evidence, once delivered, were stored in a locked evidence-locker and (3) nor was there testimony relating to whether the evidence was numbered and or labeled properly, (4) when or where the evidence were removed for internal testing and eventually replaced and (5) whether or not the laboratory procedures were followed

---

[1] It should be noted that there was no testimony before the Grand Jury or at Trial that either Detective Alfred Hernandez or Detective Anthony Romero had field tested the contents that came from the safe on the Fourth Floor.