14.        Counsel was ineffective due to the fact that counsel did not bring up the issue about the Electronic Transmittal Memorandum in accordance with Criminal Procedure Law §190.30(2-a), also the three statutory safeguards as set forth in clauses (a)(b)(c).

15.        Counsel failed to conduct an investigation into the matter of this action on behalf of his client, see, Powell v. Alabama, (1932) 287 U.S. 45, is not understandable.

16.        The right to Counsel would be meaningless if it did not require effective assistance and substantial aid, id. 287 U.S. 45.

17.        Counsel must conduct an appropriate investigation both factual and legal to determine if matters of defense can be developed and to allow himself enough time for reflection and preparation for trial see, Coles v. Payton, 1968, F2d 224.

18.        Counsel should have acquired the following documents to assist in preparing for trial and/or a defense.   Counsel should have obtain any and all reviews, reports, evaluations or other documents provided by the New York City Police Department Crime Laboratory, Laboratory reports by any forensic consultants or forensic inspector regarding controlled substance examination conducted by the Laboratory.

19.        Counsel should have acquired any an all documents, reports or other material maintained by the Laboratory containing information about the Laboratory's controlled substance examinations.   The documents reports or other materials shall include but not limited to:

20.        A. The protocol used in testing the alleged controlled substance in the above captioned case.

21.        B.   Any and all materials describing or documenting the cleanliness or lack of cleanliness and the good housekeeping or lack of good housekeeping of the laboratory.

31.      L.      The curriculum vitae for the laboratory personnel who tested the alleged controlled substance in the above captioned case.  If the curriculum vitae do not exist, a statement detailing the personnel's relevant education, training and any and all publications produced or published by the Chemist.

32.      M.      The laboratory's application for exemption from the New York State Forensic Laboratory Accreditation and any supporting documents submitted to the New York State Commission on Forensic Science.

33.      N.      Any and all documents submitted to the New York State commission on Forensic Science relating to the laboratory's application referenced in the last paragraph.

34.      Defense Counsel failed to request the documents described in the above paragraphs which were needed in order to adequately prepare a proper defense, it was necessary to have obtained copies of the requested materials or call the police chemist as witnesses for the following reasons:

35.      In order to meet its burden in the instant case, the prosecution must prove beyond a reasonable doubt that the alleged controlled substances were Cocaine.

36.      Had counsel obtained the numerous documents (laboratory reports) which, at a minimum would have strongly suggested that the New York City Police Department Crime Laboratory controlled substance examination were unreliable.  The laboratory documents would have included an evaluation of the laboratory forensic inspector with the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCD/LAB") inspectors in evaluating the laboratory.

37.      The evaluation, entitled Recommendations to the New York City Police Department regarding an Accreditation Inspection are based partly on an inspection of the

6

laboratory conducted between November 1996 and October 1999 to the present, and there is still no proof of accreditation to date.

38.      At a minimum, the recommendation would have strongly suggested that a conviction based on laboratory's controlled substance examination in this case is not "a verdict worthy of confidence", kyles v. Whitely, 514 U.S. 419, 131 L.Ed.2d 490, 506(1995).

39.      The recommendation would have strongly suggested, among other things that:  (a) the procedures used in testing the alleged controlled substance in the defendant's case are not generally accepted in the forensic field.  The recommendations would have found a reasonable expectation that the procedures currently used would not be considered as generally accepted in the field by an ASCLD/LAB inspection team.  The laboratory does not meet the ASCLD/LAB standard for using procedures generally accepted in the field or supported by data gathered and recorded in a scientific manner.

40.      That the alleged controlled substance in the defendant's case was contaminated of cleanliness and good housekeeping at the laboratory.  The recommendations describe the cleanliness and apparent good housekeeping in the laboratory as "deplorable.  The laboratory general cleanliness and apparent good housekeeping does not meet the ASCLD/LAB standard for protecting evidence from loss, cross transfer, contamination and/or deleterious change.

41.      That the laboratory does not routinely check the reliability of the reagents used in testing controlled substances in the defendants' case.  The recommendation would have found that for controlled substance determinations, the reagents for color and crystal tests are only checked at after the time of the initial preparation but not before.  The laboratory does not meet the ASCLD/LAB standard for routinely checking the reliability of its reagents.

42.      That the chain of custody regarding the alleged controlled substance in the

defendants' case were not intact.   The recommendations would have found that although signatures are required at points in the process, e.g. from the borough to the vault and to the chemist, this was not followed in all cases.   The recommendations found that the laboratory's handling and preserving the integrity of the evidence did not meet ASCLD/LAB standards.

43.        That the laboratory was not secure, permitting tampering with and/or the contamination of the alleged controlled substance in the defendants case.   The recommendation found that the laboratories security did not meet ASCLD/LAB standards.

44.        That any equipment and/or instruments used in testing the alleged controlled substance in the defendants case was not properly maintained and/or calibrated.    The recommendations found that the laboratory did not meet the ASCLD/LAB standards for maintenance and calibration of the equipment and instruments.

45.        That the chemist who tested the alleged controlled substance in the defendants case was fatigued while testing the alleged controlled substance in the defendants case and/or while evaluating the test results.   The recommendations found that most staff appear to have a second job to make ends meet, for some, it appears that the laboratory is the second job.

46.        That the chain of custody records with all the necessary data was not maintained regarding the alleged controlled substance in the defendants case.   The laboratory is required to maintain chain of custody records, however, it has been noted that the chain of custody records were being half completed, and the newly developed procedure does not require all aspect of a completed chain of custody documentation to be covered.

47.        The laboratory does not meet the ASCLD/LAD standards for having records on file demonstrating a complete chain of custody with all the necessary data.

48.        That the appropriate controls and standards were not specified in the procedures

employed in the laboratory testing that was conducted in the defendants case and that the controls and standards were not used to ensure that the validity of the examination of the results in the defendants case. The Court should find that no standards or controls were used to ensure that the color and crystal tests were working properly. Because no further tests were performed after the initial validation of the reagents, the laboratory did not meet the ASCLD/LAB standards for having appropriate controls and standards specified in the procedures and used to ensure that the validity of the examination results.

49.      That any testing of the alleged controlled substance in the defendants case might have included the use of a non-functioning micro-spectrophotometer. The laboratory did not meet the ASCLD/LAB standards for instruments/equipment being in proper working order with a non-functioning micro-spectrophotometer.

50.      That the reports of the chemist who tested the alleged controlled substance in the defendants case were not reviewed by another to ensure that their conclusions are reasonable and within the constraints of scientific knowledge. The Court should find that while some review is conducted in some units, it is inadequate and usually done by a person without the necessary qualifications. For most drug cases there is essentially nothing in the file to review. The laboratory does not meet the ASCLD/LAB essential standard for reviewing the reports to ensure that the conclusions of its examiners are reasonable and within the constraints of scientific knowledge.

51.      That the chemist who tested the alleged controlled substance in the defendant's case did not have the necessary experience/training to commensurate with the examinations and anticipated testimony would have provided.

52.      The prosecutions burden at trial includes proving beyond a reasonable doubt that

the substance allegedly sold were a controlled substance and the trial testimony provided no proof of such.    Therefore, a critical issue in this case is whether the laboratory controlled substance examination was reliable; the answer is **"N0"**.

53.         To be reliable, scientific testimony must be grounded in the scientific method and must constitute more that a subjective belief or unsupported speculation, Daubert, 125 L.Ed.2d @480-481.   Among the factors bearing on reliability include: (1) whether the theory can be tested, (2) whether or not the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) to some extent, general acceptance in the field, Id. @482-483. The testimony of the police chemist who quality as experts could have fail to meet this standard of reliability.   The record is silence as to the four factors as stated above, and had the police chemist would have testify as experts their testimony would have been based upon a subjective belief and unsupported speculation.  The four points demonstrate this.

54.         Thus, having failed to meet all of the above criteria, the police chemist opinion should have still been admitted in support the defendants' contentions of unreliable scientific testing, because counsel failed to call any/all police chemist who tested the all alleged controlled substance, amounted to Ineffective Assistance of Counsel.

55.         It should be noted that Defense Counsel was unprepared as well as unaware that the only evidence the people offered at trial that showed that Green had a predisposition to commit the crime charged, was uncharged crimes.   Where a defendant may be charged with a crime where the act is unequivocal and where intent can be inferred fro the act, but where a defendant denies having committed the act altogether.   In such a situation, evidence of prior crimes was inadmissible to show intent.  See, People v. McKinney, 24 N.Y.2d 180 (1969).

56.         Also, the Court of Appeals also stated in People v. Allweiss, that the admission of

uncharged crimes, the People must establish that the defendant was the perpetrator of the crime charged. However, the fact that the defendant has committed similar crimes in the past is insufficient to do so here an allow such admittance of uncharged crimes, and thus it is an insufficient ground for admission here. 48 N.Y.2d 40 (197).

57.     The Court also stated in People v. Baez, that the use of prior uncharged crimes simply to characterize the defendant has been disallowed. ("Where a defendant is on trial for a drug sale, evidence of prior uncharged crimes was used to show that the defendant was a "big time" drug dealer. The Court reversed his conviction, stating that the use of the prior crimes in this fashion was unnecessary, 103 A.D.2d 746 (2nd Dept. 1984). The introduction of this type of evidence is generally excluded for policy reasons because it may induce the jury to render a guilty verdict based on collateral matters. (People v. Lewis, 69 N.Y.2d 321, 325; People v. Till, 201 A.D.2d 43, 46, lv. granted 84 N,Y.2d 874; also see, Richardson, Evidence sec. 4, at 2[Prince 10th Ed].

58.     In short, there was no competent testimony to indicate that Green was in possession of a controlled substance, let alone, assisted, ordered, or aided Brown in the purported sale of a narcotic drug.

59.     The Court should decline to give Law of the Case effect to this aspect of the Courts' decision. In view of no supervening authority that permits the legislature to make a defendant's rights to Effective Assistance of Counsel at trial contingent upon actions by a defendant, where the petitioner is a layperson in the matters of the law and could not have known that the omissions by his trial counsel, attacking the sufficiency of the people's evidence, in that the people had failed to prove every element of the offense charged. This was a fatal flaw in their pleadings, and the People has not argued to this Court at trial that such authority exists. Had

counsel properly performed his duty to effectively address these issues, Petitioner's conviction would have been reversed,

## MOTION TO RECONSIDER THE INSPECTION OF THE GRAND JURY MINUTES

60.      In the written decision this court ruled that the evidence before the Grand Jury was legally sufficient and procedurally proper.   It is submitted that the decision should be reconsidered.

61.      In the instant matter upon Information and Belief, the Grand Jury was presented with a laboratory report prepared by an employee of the NYPD concerning his or her analysis conducted at the NYPD Crime laboratory.   It is submitted that this evidence should be ruled insufficient to support the instant indictment.

62.      Pursuant to an article which appeared in the New York Daily News (attached), and the New York /times (appearing in the paper thanksgiving weekend) The NYPD laboratory has been denied accreditation by the American Society of Crime Lab Directors.   The denial of accreditation was made pursuant to an inspection by the Society in November 1996 and again in 1999.   The Society is the body charged with accrediting crime laboratories in the State of New York.

63.      According to the article the laboratory was denied accreditation in part because after an inspection the Society found "several serious lapses" at the lab.   Included in these lapses was the fact that at least seven of the NYPD chemists could not identify heroin crystals in a drug sample.

64.      Furthermore, according to the article, ROBERT KEATON, a Board member of the Society confirmed that the NYPD lab has not been accredited by the Society.   The article also stated that the Society would continue to inspect the lab until the lab passed the inspection and

became accredited.  The newspaper confirmed that New York State law requires accreditation of all Crime Labs in this State.

65.        It is submitted that the admittance of expert evidence concerning laboratory analysis fro a Crime Lab that is not accredited is in violation of New York State Law, and therefore cannot be considered competent evidence to support an indictment.  It is submitted that if the NYPD lab cannot earn full accreditation as required by New York State from the oversight Crime lab Society, the prosecutor cannot introduce as expert testimony the results of tests performed by the flawed laboratory.  In effect, the Grand Jury heard evidence from a laboratory that has not been ruled competent to perform tests and, accurately report the results of these laboratory tests.  To allow said evidence before the Grand Jury impairs the integrity of that body. It is submitted that an indictment based on such flawed evidence is improper and must be dismissed.

66.        Furthermore, it is submitted that the failure of the prosecutor to inform the Grand Jury that the NYPD lab had not gained accreditation was improper and tainted the Grand Jury proceeding.  The Grand Jury was not given evidence it should have considered in making the determination of whether the expert testimony that would have been given by the laboratory analyst was competent and credible.  It is submitted that the Grand Jury should have been informed about the lack of accreditation of the NYPD lab, it would have aided the jurors in determining whether the evidence presented by the expert witness based on tests performed at this lab was correct, sufficient, and worthy of belief.  In effect, by failing to so inform the Grand Jury of the failure of the NYPD lab to gain accreditation, the Jurors were denied the tools necessary to evaluate whether, the expert testimony of the witness, based on tests performed at a lab that has not been accredited, should be accepted as sufficient in this case.

67.          In the present matter the fact that a narcotic was sold or possessed is an element of the crime charged. The failure of the prosecutor to supply the Grand Jury with the information that the NYPD lab is not accredited, has deprived the Jurors of any meaningful opportunity to reasonably and rationally consider whether, there has been sufficient proof presented to establish that the items the defendant allegedly sold and/or possessed, were indeed a controlled substance. It is submitted that this failure severely affected the Grand Jury process and impaired the integrity of the Grand Jury.

68.          Therefore, it is submitted that this court should reconsider it's ruling concerning the sufficiency of the Grand Jury and upon reconsideration, dismiss the indictment because: (1) the NYPD laboratory was not accredited and therefore the conclusions based on it's work cannot be submitted to the Grand Jury, and (2) the failure of the prosecutor to so inform the Grand Jury about the lack of accreditation impaired the Grand Jury's deliberation concerning an element of the crime charged. Thus, it is submitted that the indictment should be dismissed.

**MR. GREEN WAS DEPRIVED OF MEANINGLESS REPRESENTATION BY HIS TRIAL COUNSEL, WHEN COUNSEL FAILED TO PREPARE A PROPER DEFENSE OR CALL WITNESSES.**

69.          It is elementary that the right to effective assistance of representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and facts relevant to the defense and who is familiar with and able to employ at trial both the basic principles of criminal law and procedures. The Supreme Court of the United States have long recognized that the right to counsel would be meaningless if it did not require effective assistance and substantial aid, Powell v. Alabama, 287 U.S. 45.

70.          Professionalism demands that counsel must thoroughly review the facts and laws of the case relevant to his clients' defense and exhibit his practice expertly because proper

14

representation involves more than courtroom conduct.   It is axiomatic that counsel must investigate all apparently substantial defenses available to a defendant and must assert them in a proper and timely manner.   This was not the case in this instance matter, no matter what the apparent degree of a defendant's depravity or the likelihood of his guilt, the right to the constitutional shelter of Effective Assistance of Counsel and a fair trial are to forever remain in violate.   Wilson v. Phend, 417 F.2d 1197; Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981); Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.

71.        The Due Process Clause of the Fourteenth Amendment mandates that the State prove the existence of each and every element of the offense charged beyond a reasonable doubt. This was not done since defense counsel failed to investigate and call (all) possible witnesses, present document or to prepare a defense.

72.        Defense Counsel demonstrated a total ignorance of applicable law (United States v. Goodwin, 531 F.2d 347 and the failure to conduct any legal research (Cosey v. Wolff, 562 F.Supp. 140, aff'd 727 F.3d 656, in that he failed to recognized that under New York State law, that before evidence implicating another suspect can be admitted "there must be such proof of connection with the crime, such as a train of facts or circumstances as tending to clearly point out someone besides the accused as the guilty party".   Evidence of motive, ability, and the opportunity for a third person or persons to commit the crime is a sufficient foundation for the introduction of other suspect evidence.   Such evidence must be "coupled" with other evidence tending to connect such other person with the actual commission of the crime charged. (United States v. Armstrong, 621 F2d. 951, 953; see also, United States v. Perkins, 937 F.2d 1397, 1400(A defendant is entitled to introduce evidence which tends to prove someone else committed the crime); United States v. Brannon, 616 F2d 413, 418(A defendant is entitled to

prove his innocence by showing that someone else committed the crime).

73.        Because of defense counsel's unpreparedness, counsel failed to put before the jury evidence that someone else had committed the crime charged.  Because of counsel's failure to capitalized on Mr. Steven Brown's ("Brown) sentencing allocution which demonstrated that someone other than the petitioner committed the crime charged.   Counsel also failed to demonstrate that someone else had the opportunity, ability, and motive to commit the crime. Most importantly, the excluded evidence showed that the evidence would have supported an alternative theory of how the crime might have been committed

74.        This argument was crucial to the defense because the sale and possession occurred in Brown's apartment, and the petitioner and Brown was the only other persons known to be at the scene of the crime.  The jurors would naturally ask themselves that, "if the defendants was in the building, then he probability committed the crime charged.

75.        The introduction of Brown as the true person that committed the crime and was in possession of the controlled substance, would have answered that question, rebutting the inference that Edward Green("Green") must have possessed the drugs, because no one else was in a position to do so.  In addition, petitioner's attorney failed to argue that the prosecution's evidence didn't prove that petitioner had been in possession of a controlled substance, this is also significant because there was so little direct evidence of what actually happened, and this was far from an admission of guilt.

76.        Because petitioner's counsel was unfamiliar with the case he was barred from introducing the evidence that someone else was in possession of the drugs, nor could he fully argue the police sloppy investigation theory.  Because of counsels being unfamiliar with the case he could not point out what the police hadn't done, nor could he suggest no exculpatory evidence

16

that the police might have found had they conducted a more thorough investigation.   The excluded evidence would have lent support to the petitioner's theory that someone else had possession of the drugs and under mined the prosecutor's claim that a more thorough investigation would have turned up nothing of value.   Rather than being limited to trying to poke holes in the prosecutions case, counsel could have plausibly argued that a more thorough investigation would have produced evidence incrimination only Brown as having possession of the drugs.

77.          Finally, in light that the prosecution had no other eyewitnesses and the rest of its case consisted of weak circumstantial proof, Green should not have been found guilty of the crime of Criminal Possession of a Controlled Substance.

78.          The people failed to present legally sufficient evidence to convict Green of the charge of Criminal Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law §§220.21(1), 220.16(1)and

79.          In order to be convicted as an accomplice, a defendant must act with the mental culpability required for the commission of the offense and must request, solicit, command, importune or intentionally aid the principal actor ("Brown") to engage in the commission of the offense. see, Penal Law ("PL")§20.00.Furthermore, there was no evidence that Green and the person (Brown) who possessed and sold the drugs, had any interaction either before or after the actual sale by Brown.   Clearly, the record shows that Green was engaged in no criminal conduct of any description when arrested.   Significantly, no contraband or buy money was recovered from Green after his arrest which supports the conclusion that Green in no way assisted, requested, solicited, commanded, importuned or intentionally aided Brown to engage in the commission of possession or the sale of a controlled substance.

80.        Further, the testimony did not show, as would have been necessary to sustain his conviction as an accomplice for the Criminal Possession with the intent to Sale a Controlled Substance or that he shared the seller's intent to bring about the drug transaction.

81.        Further, Green, did nothing to possessed, let alone, demand or importune the illicit possession or sale of a controlled substance.  The necessary conditions for establishing accomplice liability having been thus left unsatisfied, and there being no other capacity in which the defendant may be said to have participated in the charged possession and or sale.  The record is barren of testimony which demonstrated that Green possessed with the intent to sale or ordered or engaged any person to possess and sale a narcotic drug.  Had Counsel properly perform his duty to effectively address these issues, Greens conviction would have been reversed.

## DEFENSE COUNSEL FAILURE TO PREPARE A DEFENSE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL

82.        The failure of Green's Counsel to prepare a defense constituted Ineffective Assistance of Counsel.  First, Mr. Keith decided not to prepare a proper defense for Green solely because he was confident that at the close of the prosecution's presentation of its evidence, the trial judge would have granted the defense motion to dismiss or the jury would have found Green not guilty.   Counsel opted not to prepare a defense based entirely on this rational militates strongly in favor of the conclusion that his representation of Green was Constitutionally deficient. See, Harris v. Reed, 894 F2d 871, 878-879.

83.        [S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable, and strategic choices make after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigations.  Defense counsel had a duty to make a

18

reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. Where ineffective assistance counsel is alledged, a particular investigation must be directly assessed for reasonableness in all circumstances. As to a "conscious" decision, see Bean v. Calderon , 163 F3d 1073, 1079(noting that a decision cannot be characterized as "strategic" where it was a resulted only from confusion); United States v. Gray, 878 F.2d 702, 712("counsel's behavior was not colorably based on tactical considerations but merely upon a lack of diligence").

84.     As to "reasonably informed" decisions: see, Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000)(noting that a decision based on a legal misunderstanding was not animated by "strategic" calculation); Kimmelman, 477 U.S. at 368, 106 S.Ct. 2574(noting that a decision based on ignorance of relevant facts and mistaken beliefs was not based on "strategic considerations);Smith v. Stewart, 189 F.3d 1004, 1010(holding that an attorney's decision not to pursue certain evidence was not "strategic" where, it was based on a lack of understanding of what constituted such evidence) and Williams, 59 /f.3d at 680(because of his ignorance, counsel was unable to make any strategic decision"); and compare Crisp v. Duckworth, 743 F.2d 580, 587("contrasting an attorney's general polic[y]" of how to defend a case with "strategic decisions," which are "decisions based on the specific facts of a given case"). The Supreme Court has explained that "[s]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052. But "virtually unchallengeable" does not mean wholly unchallengeable, see, Phoenix v. Matesanz, 233 F.3d 77, 82, n.2(1st Cir. 2000), and decisions that are not reasonably informed have emphatically not been "made after a thorough investigation of law and facts."

85.     Green's trial counsel failure to call any witnesses and to rely entirely on the people's

evidence in exonerating the defendants was thus "strategic" in the sense that it related to a question of trial strategy which witnesses to call and it was trial "strategy" also in that it was made by counsel to advance a particular goal. That goal, was mainly avoiding work-not, as it should have been, serving Green's interests by providing him with reasonably effective representation.

86.     Counsel's decision was "strategic" in some senses of the word, it was not the sort of conscious, reasonably informed decision made by an attorney with an eye to benefitting his client that the Federal Courts have denominated "strategic" and especially reluctant to disturb.

87.     Accordingly, the hesitation to disturb "strategic" decisions described above has no bearing on this case. There are many ways to properly assist a client, but making important decisions with no regard for a client's interests is not one of them.

88.     Counsel's representation of Green was unprofessional to the point of being constitutionally "deficient" and "flawed". The cumulative weight of these flaws deprived Green of his constitutionally protected Sixth Amendment Right to Effective Assistance of Counsel.

## CONCLUSIONS

WHEREFORE, based upon these and a multitude of other failures, Green was deprived of meaningful representation. Accordingly, the petitioner's conviction should be reversed and a new trial ordered. In the alternative, a hearing should be held for a finding of facts.

WHEREFORE, your deponent submits that the aforesaid conviction was obtained in violation of Green's rights under the Constitution of the United States, and Green moves this Court in

accordance with CPL §330.30(1), 330.40(2)(a), 330.50(1) in vacating the judgment of the
Supreme Court and reversing Green's conviction and ordering a new trial based upon the facts
that Green was denied Effective Assistance of Counsel. Such grounds, if raised on appeal would
require a reversal of conviction as a matter of law, and for such other and further relief as may be
just and proper.

Dated: ~~September~~ *October* 2008

Respectfully Submitted

Edward Green, Pro-se
Manhattan House of Detention
125 White Street
New York, New York 10013
*349-07-20179*

Sworn to before me this
day of ~~September~~ 2008
*October*

**TO:**   CLERK OF THE SUPREME COURT
100 Centre Street
New York, New York 10013

Hon. Robert M. Morgenthau, Esq.,
District Attorney, County of New York
One Hogan Place
New York, New York 10013

*Arnold R. Keith Jr. Esq.*
*350 Broadway, Suite 1201*
*New York, N.Y. 10013*
*Defense Counsel*

Sworn to before me this
day of ~~September~~ 2008
*October*

21

To be argued by
**EDWARD GREEN**

# NEW YORK STATE SUPREME COURT
# COUNTY OF NEW YORK
# APPELLATE DIVISION-FIRST DEPARTMENT

The People of the State of New York,
                                        Respondent

                – Against –

**EDWARD GREEN,**
                        Defendant – Appellant.

## PETITIONER'S MOTION FOR AN WRIT OF ERROR OF CORAM NOBIS
## INDICTMENT NO.  5643/07

**EDWARD GREEN, Pro se 08A5510**
**Eastern Correctional Facility**
**P. O. Box 338**
**Napanoch, N.Y. 12458-0338**

September 2011

# TABLE OF CONTENTS

### PAGES

TABLE OF AUTHORITIES…………………………………………1

QUESTIONS PRESENTED………………………………………3

PROCEDURAL DEFAULT………………………………………3

STATEMENT OF FACTS…………………………………………5

ARGUMENTS

Point One – The Stipulation………………………………..……......10

Point Two – Vacating the Stipulation………………………………17

Point Three – Ineffective Assistance of Counsel………………......29

CONCLUSIONS……………………………………...…………......44

i

# TABLE OF AUTHORITIES

## TABLE OF CASES                                          PAGES

American Bridge Co. v. Acceptance Ins. Co., 51 AD3d 607 [2008]...................................16

Ander's v. California, 386 US 738............................................................................2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)...............................15, 18

Aostalas v. Amalfitano, 305 A.D.2d 202, 204[1st Dept. 2003]......................................31

Baksi v. Wallman, 62 N.Y.S.2d 26 Sup. Ct. N.Y. (1946)............................................24

Barcia v. Barcia, 283 A.D. 726, 127 N.Y.S.2d 443 (2nd Dept. 1954).............................24

Bond v. Bond, 260 A.D. 781, 24 N.Y.S.2d 169 (2nd Dept. 1940)....................................24

Bonnette v. Long Island coll. Hosp., 3 NY3d 281............................................18, 25, 26

Cabbad v. Melendez, 81 AD2d 626 (2nd Dept. 1981)..........................................14, 17

Campbell v. Bussing, 274 A.D. 893, 82 N.Y.S.2D 616 (2ND Dept. 1948).............................24

Coleman v. Thompson, 501 US 722, 750 [1991]..........................................................4

Connecticut v. Johnson, 103 S.Ct. 969...................................................................37

Countryman v. Breen, 241 App. Div. 392 [271 N.Y.S. 744, aff'd, 268 NY 643]....................27

De Gaust v. De Gaust, 237 A.D.2d 862...................................................................16

DeSantolo v. LaPorte, 89 N.Y.S.2d 114 (City Ct. Mt. Vernon (1949)...............................24

Donovan v. Twist, 119 App. Div. 734, 104 N.Y.S. 1...................................................23

Evitts v. Lucey, 469 US 387...............................................................................6

Faretta v. California, 422 US 806/821, 95 S.Ct. 2525, 2534..........................................32

Foote v. Adams, 232 App. Div. 60, 63, 248 NYS 539, 543.............................................19

Frikilman v. 31st Ave. Realty Corp., 39 AD3d 812, 813 [2007]......................................16

Gillray l., 287 A.D.2d 865...............................................................................29

Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569[2002]..................................16, 25

Hallock v. State of New York, supra, 64 N.Y.2d 224, 230..............................................27

Hallow v. Hallow, 200 A.D. 642, 193 N.Y.S. 460 (1st Dept. 1922)....................................24

Hamlin v. Sears, 82 N.Y. 327, 333.......................................................................20

Harris v. Reed, 489 US 255, 262 [1989]..................................................................6

Heiter v. Joline, 135 App. Div. 13, 119 N.Y.S 142....................................................23

Hillock v. NY, 485 NYS2d 510.........................................................................15, 28

Hinds v. Gulutz, 61 Misc.2d 384 (Sup. Ct. Suffolk 1969)..............................................24

Hugh O'Kane Electric Co. Inc v. County of Westchester, 54 AD3d 660 [2008]...................16

In re Frutiger's Estate, 29 NY2d 143, 149-150, (1971)................................................17

Jackson v. Bartlett, 8 Johns 361........................................................................26

Johnson v. Zerbst, 304 U.S. 458, 464(1938)...........................................................29

Kellogg v. Gilbert, 10 Johns 220........................................................................27

Klein v. Mt. Sinai Hosp., 61 N.Y.2d 865, 866 (1984).................................................25

Koss Co. Graphics, Inc v. Cohen, 1990, 166 A.D.2d 649 (2nd Dept.)................................28

Kubat v. Thieret, 807 F.2d. 351, 368 [7th Cir.]......................................................2, 9

Leslie v. Van Vranken, 24 A.D.2d 658.................................................................27

Lowinger v. Lowinger, 303 A.D.2d 723................................................................30

Magnolia Metal co. v. Pound, 60 App. Div. 318, 70 NYS 230.......................................18

Mahon v. New York City Health & Hosps. Corp., 303 A.D.2d 725................................29

Matter of Dirhim A. A.D.2d 339 [1st Dept. 1991]...................................................42

Matter of Evans v. Board of Assessment Review of Town of Catskill, 284 A.D.2d 753, 755....29

Matter of Galasso, 35 N.Y.2d 319, 321 (1971)......................................................26

Matter of Ossing Urban Renew Agency v. Lord, 60 N.Y.2d 845....................................25

Mayo v. Henderson, 13 F3d 528, 532 [2d. Cir. 1994]............................................3, 9

Mazzella v. American Home Constr. Co. 12 A.D.2d 910............................................27

McCoy v. Feinman, 99 N.Y.2d 295, 302[2002].....................................................26

Mutual Life Ins. Co. v. O'Donnell, 146 NY 275.....................................................27

Nabisco, Inc. v. Warner-Lambert Co. 220 F.3d 43, 45 (2d Cir. 2000)............................15

Osborn, 861 F.2d. @624................................................................................32

Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004).........15

Peopel v. Cavalli, 266 A.D.2d 666...................................................................14

People v. Armstrong, 160 A.D.2d 206 [1st Dept. 1990]...........................................42

People v. Bacbent, 69 N.Y.2d 593.....................................................................5

People v. Bailey – 602 NYS2d 177, 178, 5-7........................................................16

People v. Bell, 38 NY2d 116, 120.....................................................................36

People v. Blyrd, 284 A.D.2d 509.....................................................................16

People v. Bouton, 50 NY2d 130, 135.................................................................18

People v. Canty, 153 A.D.2d 640, 641 [2d Dept. 1989]............................................43

People v. Carter, 86 N.Y.2d 721, 722-723................................................................13

People v. Decker, 134 A.D.2d 726..............................................................................3

People v. Dowdell, 88 A.D.2d 239............................................................................36

People v. Droz, 39 N.Y.2d 457, 462..........................................................................38

People v. Dumars, 68 NY2d 729, 730 [1986]............................................................42

People v. Gomberg, 38 NY2d 307, 313-314.............................................................33

People v. Gorden, 71 Misc.2d 540............................................................................43

People v. Harris, 200 A.D.. 761................................................................................17

People v. Harris, 61 N.Y.2d 9, 17.............................................................................30

People v. Harris, 74 A.D.2d 879, 880.......................................................................43

People v. Johnson, 89 A.D.2d 506............................................................................36

People v. Lefkowitz, 276 A.D.2d 598........................................................................16

People v. Lefrois, 151 A.D.2d 1046............................................................................3

People v. Letendue 696 NYS2d 583..........................................................................15

People v. Liotta, 79 N.Y.2d 841 (1992).....................................................................39

People v. Lloyd, 51 NY2d 107, 111...........................................................................34

People v. Lomardo, 61 NY2d 97, 102-103.................................................................33

People v. Macerola, 47 NY2d 257, 264-265..............................................................33

People v. Mack, 195 AD2d 485.................................................................................17

People v. Manini, 79 NY2d 561, 573 [1992]..............................................................41

People v. Mattison, 67 NY2d @ p. 469......................................................................34

People v. McDonald, 68 N.Y.2d 1, 8..........................................................................34

People v. Mendes, 3 NY2d 120, 121..........................................................................36

People v. Milazo, 33 A.D.3d 1060, 1061 (2006, Iv. Denied 8 N.Y.3d 883(2007)..............20, 35

People v. Mills, 45 A.D.3d 892, 895-896 (2007), Iv. Denied 9 N.Y.3D 1036 (2008)........20, 35

People v. Pearson, 75 NY2d 1001 [1990]...................................................................42

People v. Quarles, 187 AD2d 200, 203......................................................................15

People v. Reaman, 29 NY2d 278, 285 [1971]............................................................42

People v. Robertson, 61 A.D.2d 600 [1st Dept. 1978]................................................42

People v. Rodriguez, 185 A.D.2d 198..........................................................................3

People v. Rodriguez, 250 A.D.2d 478, 479 [1st Dept. 1989]………………………………….6

People v. Rodriquez, 50 N.Y.2d 553, 557……………………………………………………….29

People v. Rodriquez, 94 A.D.2d 805, 806 [2d Dept. 1983]…………………………………….9

People v. Roff, 67 A.D.2d 805…………………………………………………………………..38

People v. Rosado, 192 Misc.2d 184, 286 [Crim. Ct. NY County 2002]………………………..42

People v. Rozzell, 20 N.Y.2d 712, 713………………………………………………………20, 34

People v. Sandobar, 191 A.D.2d 375 [1st Dept. 1993]……………………………………….41

People v. Santana, 156 A.D.2d 736, 737 (1989)…………………………………………..20, 34

People v. Sarai, 267 A.D.2d 295………………………………………………………………...14

People v. Sawyer, 55 A.D.3d 9951…………………………………………………………18, 35

People v. Seminana, 58 A.D.2d 841……………………………………………………………48

People v. Sullivan, 209 A.D.2d 558-559[1994]………………………………………………..8

People v. Thompson, 140 AD2d 652, 653(1988)………………………………………………29

People v. Tirado, 47 A.D.2d 193 [1st Dept. 1975]……………………………………………41

People v. Torres, 68 NY2d 677 [1986]………………………………………………………..41

People v. V142 A.D.2d 698 [2d Dept. 1988]………………………………………………….41

People v. Vasquez, 141 A.D.2d 698 [2d Dept 1998]………………………………………….42

People v. Wedra, 56 A.D.2d 903……………………………………………………………….43

People v. Whitefield, 81 N.Y.2d 904, 906……………………………………………………..13

People v. Wilkins, 28 NY2d 53, 55……………………………………………………………33

Powell v. Alabama, 287 US 45…………………………………………………………………30

Quality Ceramic Tile & Marble Co. v. Cherry Val. Ltd. Partnership, 259 A.D.2d 607………..29

Ragen v. City of New York, 45 A.D. 2d 1046, 385 N.Y.S.2d 62 (2nd Dept. 1974)…………….24

Rainbow v. Swishre, 72 N.Y.2d 106, 109……………………………………………………..16

Reed v. Ross, 468 US 1, 16; 104 S.Ct. 2901, 2910……………………………………………..7

Reiss v. Financial Performance Corp., 97 N.Y.2d 195, 199[2001]……………………………..26

Sacks v. Stewart, 75 A.D.2d 536, 537…………………………………………………………20

Sandstrom v. Montana, 442 US 510; 99 S.Ct. 2450……………………………………………36

Sklerov v. Sklerov, 231 A.D.2d 622…………………………………………………………..29

Slamlow v. Del Col., 79 N.Y.2d 1016, 1018 [1992]…………………………………………..25

Solack Estates, Inc. v. Goodman, 102 Misc.2d 504 (App. Term, 1st Dept. 1979), Aff'd. 78 AD2d 512 (App. Term, 1st Dept. 1980)...........................................................................17

Sontag v. Sontag, 1985, 114 A.D.2d 892...........................................................................27

Spisto v. Thompson, 39 A.D.2d 598.................................................................................27

Stockfield, 131 AD2d 834.............................................................................................15

Thermalectric, Inc v. Still-Man Mfg. Corp., 43 A.D.2d 734..............................................24

U.S. v. Ladd, 885 F.2d. 954............................................................................................37

United States Ex Rel Williams v. Brown, 721 F2d. 115, 1119, 1121 [7th Cir. 1983]................3

United States v. Molt, 631 F.2d. 258, 262 (3rd Cir. 1980)................................................39

United States v. Tucker, 716 F.2d. 576, 579-586' 595 [1983]...........................................8

Van Nuys v. Titsworth, 57 Hun 5, 10 NYS 507...............................................................17

Wallace v. 600 Partners Co., 86 NY2d 543 [1995]...........................................................16

Woodman v. WWOR-TV, Inc. 411 F3d 69, 86 (2n Cir. 2005)...........................................19

Yonkers Fur Dressing Co. v. Royal Ins., 247 NY 435, 445..............................................18

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
THE PEOPLE OF THE STATE OF NEW YORK

                                            Respondent,

                    - AGAINST -

EDWARD GREEN
                            Petitioner,

**NOTICE OF MOTION FOR
A WRIT OF ERROR
CORAM NOBIS**

**Indictment No. 5643/07**

TO THE STATE SUPREME COURT
OF THE COUNTY OF NEW YORK

**PLEASE TAKE NOTICE,** that upon the annexed affidavit of Edward Green, the

defendant herein, sworn to this____day of September 2011, and upon all the proceedings

theretofore had herein, the undersigned will move this Court at a term thereof to be held on the

24th day of October 2011, at the Courthouse located at 27 Madison Ave. at 25th Street, New

York, New York 10010, pursuant to section 460.15 (1) of the Criminal Procedure Law, of the

State of New York for an order granting leave to appeal to this Court from an order of the

Appellate Division-First Department [hereto attached as exhibit "A"] for the crimes of Criminal

Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law,

§§220.21(1), 220.16(1), rendered by a jury and before the Honorable McLaughlin, J,P., on the 15

day of September 2008, upon the grounds that:

> **"Did Petitioner receive Ineffective Assistance of Trial and
> Appellate Counsel wherein both Trial and Appellate Counsel
> should have known as well as understood but fail to advance the
> argument that an Attorney cannot help create evidence that will
> be used to convict his or her client at trial, without creating a
> conflict of Interest between the client and the Attorney, thereby
> rendering Ineffective Assistance of Representation to his or her
> client".**

Such grounds, if it was raised on appeal would require a reversal of conviction as a matter of law,

and for such other and further relief as may be just and proper.

Dated: September 2011

Respectfully Submitted

Edward Green, Pro-se
Eastern Correctional Facility
P.O. Box 338
Napanoch, NY 12458-0338

TO:    **CLERK OF THE SUPREME COURT**
       **APPELLAT DIVISION-FRIST DEPARTMENT**
       27 Madison Ave. at 25th Street
       New York, New York 10010

       **Hon. Robert M. Morgenthau, Esq.,**
       District Attorney, County of New York
       One Hogan Place
       New York, New York 10013

       **STEVEN BANKS - NATALIE REA of Counsel**
       Attorney for Defendant-Appellant
       THE LEGAL AID SOCIETY
       Criminal Appeals Bureau
       199 Water Street – 5th Floor
       New York, New York 10038

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
THE PEOPLE OF THE STATE OF NEW YORK

                                    Respondent,

**AFFIDAVIT IN SUPPORT
OF MOTION FOR
WRIT OF ERROR
CORAM NOBIS**

EDWARD GREEN

                  Petitioner,

**Indictment No. 5643/07**

TO THE STATE SUPREME COURT
OF THE COUNTY OF NEW YORK

    **PLEASE TAKE NOTICE that** upon the annexed affidavit of the above named petitioner, this petitioner makes this affidavit in support of Notice of Motion to Appeal to the Appellate Division-First Department for a certificate to Appeal pursuant to sections 460.15 (1) of the Criminal Procedure law of the State of New York, certifying that this case involves a question of Law that should be reviewed by the Appellate Division, and granting leave to appeal to the Appellate Division-First Department from a decision and order of the Appellate Division-first Department of the State of New York, County of New York, dated March 24, 2011 ("Luis A. Gonzalez, P. J.") hereto attached as exhibit"A".

    The case under indictment number 5643/07 was appealed to the Appellate Division-First Department was heard at the Appellate Division-First Department on November 3, 2010. The Appellate Division-First Department affirmed the conviction from an Order of the Supreme Court of the State of New York, County of New York, by the Honorable Edward J. McLaughlin, J,P., upon a jury verdict, convicting Mr. Edward Green of the crimes of Criminal Possession of a Controlled Substance, a class A felony in the First and a class B felony in the Third Degree, in violation of Penal Law, §§220.21(1), 220.16(1), on the 15 day of September 2008 and sentencing him to a term of 15 years.

This petitioner was lead to believe that his Appellate Counsel was going to make an application to the New York State Court of Appeals after receiving the Appellate Division-First Department's decision affirming his conviction on March 24, 2011. It should be noted that Appellant Appellate Counsel had never made an application to the New York State Court of Appeals on behalf of her client. Because of Appellate counsel's failure to promptly mail a copy of the Appellate Division determination affirming Mr. Edward Green's ("Mr. Green") conviction to her client and because of the late date by which Mr. Green received the Court's decision affirming his conviction, it was beyond the thirty days allowed to make an a application to or request an extension of time to file an appeal to the New York State Court of Appeals.

Bail pending appeal is not statutory authorized. Since the defendant is presently incarcerated and serving his prison sentence, any delay occasioned by ordinary motion practice would be extremely prejudicial. This petitioner will move this Court for an order allowing for an expedited appeal in the event that a certificate were to be ordered granting permission to allow this petitioner to appeal.

In accordance with the requirements of Section 670.10.3(g) of the Rules of the Court, the following information is supplied:

(a)     The applicant is Edward Green, Pro-se, Din: 08A5510, facility address is: Eastern Correctional Facility, P.O. Box 338, Napancoh, New York 12458-0338.

(b)     The People are represented by the District Attorney of the County of New York, 1 Hogan Place, New York 10013

(c)     The New York County Indictment Number is 5643/07

(d)     The question of Law or Fact which ought to be viewed by this Court is whether at trial, did Mr. Edward Green ("Green") received Ineffective Assistance of Appellate Counsel,

2