Under New York State law a finding of apparent authority is dependent upon "words or conduct" of the principal [the People] and communicated to a third party [Mr. Green], that would have given rise to the appearance and belief that Mr. Keith possessed the authority to enter into a transaction [stipulation], Id. 64 N.Y.2d @ 231.  This standard as stated and supported in Hallock v. State of New York, supra, was never satisfied, which in and of itself amounted to a non-representation of a given party, which demonstrated that Mr. Keith did not have nor had he ever had the authority to enter into a binding stipulation on behalf of this petitioner and the prosecutor,

The Court should take notice that it is a fundamental precept in law, as well as legal ethics, that an attorney may not consent to any agreement on behalf of his client without the express authorization or consent of his client.  The fundamental precept is right on point, as the results was reached in Koss Co. Graphics, Inc v. Cohen, 1990, 166 A.D.2d 649 (2nd Dept.).  The Appellate Division stress that the acts of the attorney alone are insufficient to create apparent...authority.  The Court noted that the attorney in Koss, was representing a closely held corporation that was the subject of a dissolution proceeding.  The conference which gave rise to the settlement was conducted at a relatively early stage of the litigation in connection with the corporations attempt to vacate a temporary restraining order.   No representative of the corporation was in attendance other than the attorney, the corporation had been actively defending the proceedings up to that point, and no prior settlement negotiations had been conducted on these facts, the court was unable to identify any conduct by the corporate client which gave the attorney the trappings of apparent authority to settle, which is right on point with the case at bar.

Secondly, "A stipulation particularly one made in open court, is to be strictly enforced, and a party will not be relieved from the consequences of a stipulation unless it establishes cause

sufficient to invalidate a contract, such as fraud, collusion, mistake, or accident" (Quality Ceramic Tile & Marble Co. v. Cherry Val. Ltd. Partnership, 259 A.D.2d 607). A mutual mistake sufficient to warrant vacating a stipulation requires proof that the mistake existed at the time of the stipulation and that it was so substantial that the stipulation does not represent a true meeting of the minds (Mahon v. New York City Health & Hosps. Corp., 303 A.D.2d 725; Gillray l., 287 A.D.2d 865 [mutual mistake not established where in hindsight the terms of the settlement are difficult to effectuate]).

A Courts may not rewrite an agreement between the parties (Matter of Evans v. Board of Assessment Review of Town of Catskill, 284 A.D.2d 753, 755) and "a court should not under the guise of interpretation, make a new contract for the parties" (Sklerov v. Sklerov, 231 A.D.2d 622).

Accordingly, consent and authorization can not in and of itself be abridge from a silent record. Consent and authorization can not in and of itself be made binding on a party where the record is silent concerning that party and all terms associated with and supporting the stipulation of a silent and non-appearing party is barren and unsupported by the record.

Any arguments by the People, that this petitioner waived his right to argue this point at this time before this Court, are without merit.

The law is well established and supported by both State and Federal Law and its supporting case law that a record that is silent will not overcome the presumption against a waiver by a party of constitutionally guaranteed protections, (People v. Rodriquez, 50 N.Y.2d 553, 557); (People v. Thompson, 140 AD2d 652, 653(1988)), the record must show an intentional relinquishment or abandonment of a known right or privilege, "Johnson v. Zerbst, 304 U.S. 458, 464(1938)".

Where there is a silent record concerning all terms of a given stipulation in which the parties are to be bound, a party cannot give rise to a waiver of a known right by waiving that right based upon a silent record. A silent record is the same as no record at all, which makes it impossible to waive a given right based upon something that doesn't exist. Therefore, presuming a waiver from a silent record is impermissible (see, People v. Harris, 61 N.Y.2d 9, 17).

The assertion made by this petitioner of mutual mistake is supported and not belied by the record, exhibits and the papers presented before this Court on this application (see, Lowinger v. Lowinger, 303 A.D.2d 723). The record does not belie plaintiff's claim that Mr. Keith failed to understand the true nature of the stipulation, or that Mr. Keith knew that he was committing fraud upon and thereby deceiving this petitioner, by knowingly, allowing the Court to change, alter or restructurer the oral stipulation, thereby invalidating the stipulation because the oral stipulation that is now asserted before this Court is based upon a totally different set of facts.

This petitioner respectfully request that the stipulation be vacated on the grounds of mutual mistake because the parties negotiated the agreement on an incorrect promise, that is, that all claims arising from Chain of Custody was never made part of the original oral stipulation agreement. Where the record is completely silent as to the chain of custody of the evidence during the course of any Court Conferences' as well as at all Court proceedings, which demonstrated that Mr. Keith lacked all authority to enter into a binding agreement on behalf of this petitioner and the People. Thus there was no true meeting of the minds, which makes it totally impossible to effectuate a binding agreement between this petitioner and the People.

Based upon the foregoing, Mr. Keith was in violation of Judiciary Law §487(1). A claim pursuant to Judiciary Law §487(1), must fail if the alleged "deceit or collusion" is not directed at a court and did not take place during the course of a pending judicial proceeding.

(Aostalas v. Amalfitano, 305 A.D.2d 202, 204[1st Dept. 2003].   However, this petitioner contends that Mr. Keith deceived the Court in a proceeding when he represented that he was "fully authorized" to "draft, negotiate and execute" a stipulation on behalf of this Petitioner, when he in fact was not, which should demonstrate to the Court that Mr. Keith fully intended to deceived this petitioner as well as the Court, by allowing the Trial Court to alter or change the condition of the alleged agreement by asserting that the stipulation was intended to fully cover all claims by the prosecutor concerning the chain of custody of the evidence, all of which is not supported by the record in this matter.

It is evident from the record that the fair notice provision provided by Mr. Keith and the prosecutor was woefully inadequate, the totality of omissions and commissions is such that the conclusions is inescapable based upon the absence of a fair notice, the lack of a true meeting of the minds and where the Mr. Keith lacked the authority to enter into a binding agreement between this petitioner and the People.   The Court conclusions must result in the stipulation being dismissed and the case being re-entered back on the Trial's Court calendar, based upon the fact that the determinations made by the State Supreme rests on an impermissible basis, therefore, a failure to entertain this application, this petitioner would no doubt suffer a miscarriage of justice of a given right that this petitioner is constitutionally entitled too.

INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court of the United States has long recognized that the right of counsel would be meaningless if it did not require effective assistance and substantial aid (see Powell v. Alabama, 287 US 45).   Appointed counsel of record had never informed petitioner of any pertinent motions or affirmations submitted to the court, address to the District Attorney assigned, as well as had not conducted any fact finding investigations necessary to the proper preparation

of appellant's defense, all of which collectively renders if quite impossible to effectuate an adequate defense.

The denial of the opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the constitutional requirements that an accused be given assistance of counsel.

The trial court had a duty to question appellant as to whether he was in complete agreement with his appointed counsel's actions surrounding counsel's stipulating to questionable evidence. The trial court's failure to conduct a hearing could not be considered a harmless error.

In Osborn, 861 F.2d. @624, the tenth circuit commented as follows: A defense attorney, who abandons his duty of loyalty to his client and effectively joins the state in an effort to obtain a conviction, suffers from an obvious conflict of interest. Such and attorney like unwanted counsel "represent the petitioner only through a tenuous and unacceptable legal fiction". Faretta v. California, 422 US 806/821, 95 S.Ct. 2525, 2534. In fact, an attorney who is burdened by a conflict between his client's interest and his own sympathies to the prosecutors position id considerably worse than an attorney with loyalty to other defendants, because the interest of the state and his client are in opposition.

Based upon the facts and laws of this case, that contrary to this court's conclusions, there was no allegations of essential facts and laws that were relied upon to deny this petitioner's Post Conviction Motion or his Pro se Supplemental Appellate brief. In light of the fact that there was never any rule of law to conclusively refute or rebut this petitioner's allegations that was raised in his pro se Post Conviction Motion or his Pro se Supplemental Appellate brief by the use of unquestionable documentary proof.

A number of standards were endorsed by the American Bar Association of Projects on Standards for Criminal Justice and in the above relevant, in measuring the standards for inadequacy of representation reluctantly offered by Defense Counsel Mr. Arnold Keith and Appellate Counsel Natalie Rea.  Chief among them are:

| | |
|---|---|
| Section 3.1(A) | A lawyer must establish a relationship of trust with his client. |
| Section 3.8 | A lawyer has a duty to keep his client informed of the developments in the case and the progress of preparing the defense. |
| Section 6.0(A) | The commentary notes, states that a lawyer is to determine for the knowledge of all the facts, whether the client is guilty in law and not in some moral sense and a lawyer must employ ingenuity to locate witnesses. |

The Constitutional right of counsel is based upon the premise that counsel will effectively assist an accused accordingly.

The failure of counsel to render adequate assistance constitutes a denial of the petitioner's rights and requires a reversal of his conviction.

The Sixth Amendment of the United States Constitution has guarantees indigent defendants the right of counsel.

A defendant is denied the right to effective assistance of counsel as guaranteed by the Sixth Amendment when, absent inquiry, by the Court and the informed consent of a defendant, defense Counsel represents interests which are actually in conflict with those of a defendant. (People v. Mattison, 67 NY2d 462, 469-479); (People v. Lomardo, 61 NY2d 97, 102-103); (People v. Macerola, 47 NY2d 257, 264-265) ;(People v. Gomberg, 38 NY2d 307, 313-314); (People v. Wilkins, 28 NY2d 53, 55).  Initially it is defense counsel's burden to recognize the

existence of a potential conflict of interest, to alert both the client and the Court to the potential risks involved, and to obtain the clients informed consent for counsel's continued representation despite those risks. (People v. Lloyd, 51 NY2d 107, 111)(see Code of Professional Responsibility EC 5-16, 5-19; DR 5-105(c); ABA Standards for Criminal Justice, Defense function §3.5 (A)(1971). Further, the prosecutor is also obliged to alert the Court when he or she possesses knowledge of facts from which apparent conflict can be inferred (People v. Mattison, 67 NY2d @ p. 469), also the Trial Judge owes a duty independent of Counsel "to protest the right of an accused to effective assistance of counsel" (Mattison, supra, cf People v. McDonald, 68 NY2d 1).

The very core of this Amendment is based upon the reality that assistance be both adequate and effective. Upon comparing the levels of representation that was provided by both Trial and Appellate Counsel, with the American bar Association's Standards, it becomes self evident that said representation by both counsel(s) does not measure up to the constitutionally required levels.

`A defendant is entitled to the protection of the due process clause of the Fourteenth Amendment throughout his entire criminal proceedings. Each case presents its own facts and rest on its own issues. Factors such as inadequate preparations, incomplete investigations, refusal to call witnesses, the failure to submit proper motions and the refusal to interpose a proper defense will necessary be viewed in light of the effects of these shortcomings has on the fairness of a defendant's trial and at sentencing.

It is well settled that a defendant's right to counsel [is] adversely affected when his attorney, either voluntarily or at the Courts urging, [becomes] a witness against his client. People v. Santana, 156 A.D.2d 736, 737 (1989); People v. Rozzell, 20 N.Y.2d 712, 713; People v.

Sawyer, 55 A.D.3d 9951; People v. Mills, 45 A.D.3d 892, 895-896 (2007), Iv. Denied 9 N.Y.3D 1036 (2008); People v. Milazo, 33 A.D.3d 1060, 1061 (2006, Iv. Denied 8 N.Y.3d 883(2007). Once counsel took a position adverse to his client, the Trial Court should have proceeded to determine whether the petitioner was in agreement with the stipulation agreed to by defense counsel and the prosecutor.

Here, defense counsel never advised the Trial Court that he was unable to represent his client with respect to any contentions of Ineffective  Assistance of Counsel, in fact defense counsel made a statement in open court and on the record and since defense counsel took the position that he agreed with his client that he had rendered his client ineffective assistance of counsel and did not take a position adverse to his client's pro se Post conviction Motion to set aside the verdict.

Due consideration should be given to all factors required by statute, including the instant stipulation.  Based upon the record, no reason was ever stated by the trial court in reply to petitioner's Post Conviction Motion for the reasons to include a non – appearing party's opinion within the terms of the stipulation.  The decision by the trial court could not be properly characterized as a harmless error.

The evidence in the trial record points towards the trial court's decision being pre-determined and that decision amounted to a restructicing of the stipulation without the express consent or authorization of all parties.

Defense Counsel should have understood that the Trial Court's vouching for the chain of custody of the evidence without any testimony from all persons whom had handled the evidence only demonstrated that the trial court was making itself an unsworn witness.  It is a fundamental rule that a court must not carry out its functions "in language and manner" from which a jury will

gain the impression of the existence of an opinion on the part of the court as to the merits of any issues in the case.

> **The Court Stated:   When I gave you the preliminary instruction, I said there were three ways to get evidence.   I said that via stipulation.   There are two stipulations here with respect to the material that was seized, supposedly being narcotics, and there are stipulations with respect to two different voucher numbers, the voucher numbers the ones ending in 21910 and 21912.**
>
> **With regard to 21912, a chemist received this intact condition, in an envelope, sealed. He or she opened it, weighed it, analyzed it.  The weight was 17.87 ounces, the chemist determined that it was cocaine and the chemist resealed it and sent it back and it is what is introduced into the trial here.**
>
> **The other voucher, 2910, is also cocaine.  The chemist received it sealed, analyzed it.  The weight is .16 ounces or 4.7 grams and then the chemist sealed it, sent it back and the thing admitted in the trial also.  You can see the exhibits. I reiterate, you do not have to memorize the details.  Please pass the things among each other. (see, DEFENSE – CROSS – ROMERO, Pg. 464, Trial Transcripts, see, Ex. "F").**

This petitioner was deprived of a fair trial because of the cumulative impact of the following errors. (People v. Johnson, 89 A.D.2d 506); (People v. Dowdell, 88 A.D.2d 239).  The trial Court twice advised the jury that sufficient evidence had been presented for them to reach a verdict, based upon a questionable stipulation and where the trial judge so vouched for the Chain of Custody of the Evidence, thus creating the possibility that the stated opinion of the trial court or even the suggestion of an opinion by the trial court might be seized upon by the jury and eventually prove decisive (People v. Mendes, 3 NY2d 120, 121) (People v. Bell, 38 NY2d 116, 120).  Most prejudicial, however, was the court's inclusion of a Sandstrom charge (see, Sandstrom v. Montana, 442 US 510; 99 S.Ct. 2450).

In the Trial Court's initial instruction on the definition of intent, the Court categorically stated that a person intends the natural and probable consequences of his act.  The Sandstrom

instruction was clearly no a harmless error (Connecticut v. Johnson, 103 S.Ct. 969), in as much as it created a conclusive presumption of intent. The cumulative impact of error deprived this petitioner of a fair trial, requires reversal. U.S.C.A. Const. Amend. 6.

The Court should take judicial notice, perhaps, most puzzling, is the prosecution and the trial court made no effort to clear up the discrepancy, they chose not to present the testimony from the laboratory staffers who logged it in or the police officer who release the evidence to the laboratory. Similarity, nor the prosecutor or the trial court offered no evidence to show whether the miswritten evidence voucher number(s) [21910] and [21912] was assigned to some other evidence still in house or to account for the designation for the laboratory analysis voucher number(s) [N932910] and [N932912].

Contrary to any arguments that might be made, the trial record demonstrated that the People had never satisfactory authenticated the evidence send to the police laboratory for analysis by conclusively establishing a chain of custody that begin with the seizure and ending with the police laboratory prior to the prosecutor and defense counsel entering into a questionable stipulation that was not supported by unquestionable documentary proof.

In light of the unexplained discrepancies between the voucher Numbers [21910] and [21912], and the voucher numbers received by the police laboratory [N932910] and [N932912], the chain of custody was broken and the laboratory analysis report as well as the laboratory analysis results should not have been admitted,[3] (U.S. v. Ladd, 885 F.2d. 954). Even thro this petitioner raised this issue in his pro se Post Conviction CPL 330 motion. The Court below did not address this question.

---

[3] See PEOPLE'S VOLUNTARY DISCLOSURE FORM, hereto attached as exhibit "C". See section: Police Laboratory Controlled Substance Analysis Report, voucher number(s), N932912 [Pg. 1 & 2], dated 11/07/07 and N932910, dated 11/03/07, respectfully.

In short, there was no competent proof to indicate that the evidence taken from the scene of the crime was the same evidence that the police chemist tested. This important step in custodial pavane was omitted. The conclusions here are inescapable, as to the stipulation and the police chemist findings, the link was not merely rusty-it had been parted. Due to the missing link, the stipulation and the police chemist test results as well as the alleged unknown substances should not have been admitted into evidence.

Clearly, no one can say in this closely balanced case, that no juror was not influenced by the though that people who possesses illicit drugs deserves punishment for whatever ensures. Truly, defense counsel's failure to object to questionable evidence only demonstrates counsel's failure to preserve strong issues for appeal. It is evident from the record that the representation afforded appellant was woefully inadequate.

The totality of omissions and commissions is such that the conclusion is inescapable in that petitioner was deprived of effective assistance of counsel and thereby a fair trial, a right to which petitioner is constitutionally entitled. Clearly, in the instant case, the propriety of the defense counsel entering into a questionable stipulation and the trial court vouching for the chain of custody of the evidence, was a central issue to the defense, and on that issue, the case stood or felled, and the failure of petitioner's appointed counsel to address these issues promptly was a fatal deficiency.

This court must consider the inadequacy of counsel's performance to the degree which counsel's errors impacted the basic points essential to the defense. Strickland, supra, also see, People v. Droz, 39 N.Y.2d 457, 462; People v. Roff, 67 A.D.2d 805.

Under State and Federal law, the requirements that the district attorney make's a complete record so that an appellate court may review its decision is a solid one, People v. Liotta, 79 N.Y.2d 841 (1992); United States v. Molt, 631 F.2d. 258, 262 (3rd Cir. 1980)

Under New York law, if the people fails to make a complete record of the stipulation and the Court's ruling no where states the basis for the stipulation, the Court's ruling denying petitioner's Post Conviction Motion charging a chain of custody violation and an ineffective assistance claim was done in error.

The Trial Court's denial of petitioners Post Conviction Motion for such relief was an abuse of discretion under the circumstances. It impermissibly charged petitioner with the untoward consequences emanating from trial counsel's inadequate and ineffective representation. One cannot help but see that defense counsel's performance during pre-trial proceedings and at trial miserably failed the standards set by Strickland. This court should find that defense counsel's performance at pre-trial proceedings and at trial was inadequate. Counsel further demonstrated ineffective representation to his client when counsel failed to object to evidence that was inadmissible and damaging.

Trial Counsel should have understood that the Trial Court may not either in the course of closing arguments or even in a less argumentative trial context, express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence. Trial Counsel's failure to object to the Trial Court making itself an unsworn witness was a fatal error.

Both Appellate and Trial Counsel's should have known that under New York State and Federal law, for testimony surrounding controlled substances, to be reliable, scientific testimony must be grounded in some scientific method and must constitute more than a subjective belief or unsupported speculation. Because the record is silence as to how the evidence was tested or how

it was sent to the laboratory for analysis, or just who handled the evidence and where no records were created explaining the method of testing used or provide testimony in support of the chain of custody of the evidence and without such testimony, only demonstrated that the trial courts vouching for the chain of custody of the evidence without any testimony from the two police chemist, the Trial Court thereby became an unsworn witness and where defense counsel fail to object to the Courts becoming an unsworn witness, defense counsel abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecutor in its efforts to convict his client.

Because defense counsel's abandonment of his duty of loyalty to his client by assisting the prosecutor in obtaining a conviction of his client, also created a conflict of interest.

Accordingly, it should be noted that the prosecutor and appointed counsel were under a mandatory affirmation obligation to recognize the existence of a potential conflict of interest concerning the stipulation that was entered into by defense counsel and the prosecutor, in which defense counsel vouched for an unknown substance as being cocaine without unquestionable documentary proof that demonstrated that the unknown substance was in fact cocaine.

Here, both appointed counsel and the prosecutor were aware that a conflict of interested existed surrounding the stipulation and their failure to bring the facts to this petitioner's or the court's attention was inexcusable.

Because counsel was completely ignorant of the applicable laws and procedures governing controlled substances and where counsel failed to prepare on the essentials of the defense, failed to file the proper motions challenging questionable evidence and where counsel failed to make the proper objects at the proper time thereby allowing the trial court to become an unsworn witness by vouching for the chain of custody of the evidence where the record was

silent to that fact and where defense counsel failed to consult with his client concerning the stipulation and the potential conflict of interest that resulted there from.

Had Defense or Appellate Counsel made this argument, the outcome would have been different. Defense and Appellate Counsel should have known that the trial testimony failed to establish his client's was in possession of a controlled substance, i.e., cocaine and drug paraphernalia that was seized from the apartment by non-hearsay factual evidence. Specifically, Mr. Green contends that the deponent police officer's assertion that the apartment where those items were found was the defendant's apartment is an uncorroborated hearsay allegation.

In order to support a charge that the defendant was in constructive possession of tangible property, the People must show that the defendant exercised dominion and control over the property by demonstrating that he had a sufficient level of control over the area in which the contraband was found or over the persons from whom it was seized (see, People v. Manini, 79 NY2d 561, 573 [1992]. Constructive possession is established where, a defendant has been found in proximity to contraband recovered from the premises under the defendant's control (see, People v. Tirado, 47 A.D.2d 193 [1st Dept. 1975].

A defendant has been found to have control over premises which he provides as a home address to city agencies (People v. V142 A.D.2d 698 [2d Dept. 1988]; over premises where he is named as a tenant on the lease (People v. Torres, 68 NY2d 677 [1986]; and over premises to which he possesses a key[4] (see, People v. Torres, 68 NY2d 677 [1986]; People v. Sandobar, 191

---

[4] The Trial Court recognized that the People had no case with the keys from Green being suppressed, so the Trial Court had found a way to unsuppressed the keys to insure that the People maintain a tactical advance of the outcome of the case, in violation of Mr. Green's Constitutional Right under the Due Process Clause of the United States Constitution. [see, TRIAL TRANSCRIPT, PROCEEDING – COURT Pg. 30, L. 8 -to- 22, Ex. "F"]. Also, the record before this Court and at the Appellate Hearing on October 3, 2011, supported a finding that the keys that were possessed by Mr. Green fitted no locked door on either the First, Second, Third or

A.D.2d 375 [1st Dept. 1993]; Matter of Dirhim A. A.D.2d 339 [1st Dept. 1991]; People v. Armstrong, 160 A.D.2d 206 [1st Dept. 1990]; People v. Robertson, 61 A.D.2d 600 [1st Dept. 1978]; People v. Vasquez, 141 A.D.2d 698 [2d Dept 1998].

Here, the defendant is accused of knowingly and unlawfully possessing a quantity of cocaine and purported drug paraphernalia which were allegedly recovered from "the defendant's apartment".  Possession suffices to permit the inference that the possessor knows what he possesses, especially if its in his hand, on his person, in his vehicle or on his premises (People v. Reaman, 29 NY2d 278, 285 [1971]).

Apart from the deponent officer's assertion that the apartment was the defendant's, however, there are no evidentiary facts alleged to support the inference that the defendant owned or occupied the apartment, for example, there is no allegation that the officer observed the defendants name on a lease to the apartment or that he observed mail addressed to the defendant at the apartment; or even that the defendant admitted to the officers that he lived in the apartment.

Hence, the officer's statement that the apartment was the defendant is completely conclusory (see, People v. Dumars, 68 NY2d 729, 730 [1986]; People v. Rosado, 192 Misc.2d 184, 286 [Crim. Ct. NY County 2002].  Without evidentiary facts to demonstrate that the defendant exercised dominion and control over the premises, the sole allegation that the items were recovered from "the defendant's apartment" is insufficient to provide reasonable cause to believe that the defendant knowingly possessed the alleged cocaine and drug paraphernalia recovered from the apartment this case.  Indeed, although constructive may not be inferred from a defendant's mere presence in premises where contraband is found (People v. Pearson, 75 NY2d 1001 [1990]).

---

the Fourth floors to the building at 451 Lenox Avenue, NYC.

Furthermore, the officer's assertion that the apartment was the defendant's is deficient because the officer cannot attest to the defendant's ownership of the apartment as a matter of his personal knowledge (see, People v. Canty, 153 A.D.2d 640, 641 [2d Dept. 1989]).   No supporting deposition verifying the defendant's ownership or occupancy of the apartment has ever been filed in this case.   As such, this allegation is rank hearsay which remains uncorroborated.

Moreover, because there was never any unquestionable documental proof presented at the Grand Jury or at Trial to support a finding that the alleged unknown substance was in fact cocaine which pertains to the alleged bag recovered from a lock safe within the apartment of which this petitioner never owned, leased or had controlled over.   The evidence was insufficient to support a guilty verdict on behalf of Mr. Green for the Criminal Possession of a Controlled Substance in the 1st and 3d degree.

Accordingly, without the evidentiary facts demonstrating that the defendant had dominion and control over the premises or corroborated of his ownership of the apartment and without corroboration that this petitioner possessed knowledge of the content within the lock safe, for which this petitioner did not have access to.   The Counts within the indictment were facially insufficient and consequently must be dismissed.   Had defense counsel or Appellate Counsel made these arguments we would not be here now?

Accordingly, there was no evidence presented at trial to demonstrate that the petitioner had a present ability to transfer to any one, any drugs.   The testimony before the Grand Jury and at trial indicated that no drugs were given to anyone by Mr. Green.   Indeed, it appears that Mr. Green never obtained any controlled chemical substances and had no controlled chemical substances on or in his possession.   The threats of such sever and inflexible punishment should

43

no be applied to mere uncorroborated hearsay conversation concerning the uncorroborated reference by the police officer as to the undocumented and uncorroborated ownership of an apartment.  To subject this speech alone to a criminal penalty of 15 years imprisonment, would be grossly disproportionate as to constitute cruel and unusual punishment in violation of the Constitutional Limitations.   It is well established that the penal statutes must be strictly and narrowly construal (People v. Gorden, 71 Misc.2d 540) and applied fairly to all.

Based upon the circumstances of petitioner's allegations, the Court should find that a violation of petitioner's rights has occurred and based upon the circumstances of this case a hearing is required to determine the validity of this petitioner's allegations. (People v. Harris, 74 A.D.2d 879, 880; People v. Seminana, 58 A.D.2d 841; People v. Wedra, 56 A.D.2d 903).

Therefore, a failure to entertain this application, this petitioner would no doubt suffer a Miscarriage of Justice of a given Right that this petitioner is constitutionally entitled too.

This Court should find that this petitioner has demonstrated a violation of his rights under the Due Process Clause of the Fourteen Amendment of the United States Constitution.

## CONLUSIONS

**WHEREFORE,** this petitioner respectfully request that this Honorable Court issue an order for Reconsideration of Petitioner's petition for a Writ of Error Coram Nobis for Ineffective Assistance of Appellate and Trial Counsel thereby vacating and setting aside the order of stipulation with prejudice, and restoring this action back to the calendar of this Court for the earliest possible date or in the Alternative, assign another Appellate Attorney to properly perfect Petitioner's Appeal and for such other and further relief as to this Court may deem just and proper.

No prior application has been made for the relief sough herein

**PLEASE TAKE NOTICE** that pursuant to NY CPLR Rule 2214(b) answering affidavits and all papers in opposition to this petition, if any, is required to be served upon the undersigned at least seven (7) days prior to the return date of this petition.

Dated: September 2011

Respectfully Submitted

*Edward Green*

Edward Green, Pro-se,
Eastern Correctional Facility Annex
P.O. Box 338
Napanoch, NY 12458-0338

## PRINTING SPECIFICATIONS STATEMENT

The word count for this brief is 13,923 excluding the table of Contents, the Table of Authorities, and the Rule 5531. The word processing system used to prepare the brief and calculate the word count was Microsoft Word 2003. The brief is printed in Times New Roman, a verified, proportionally spaced typeface. The type size is 12 points in the text and headings, and 12 points in the footnotes. The line spacing is two.

# VERIFICATION

I, Edward Green, being duly sworn according to the law of the State of New York, deposes and says that I am the plaintiff in the within action and that the facts set forth in the foregoing answer are true and correct to the best of my knowledge, information and belief, except as to matters therein to be alleged upon information and belief and as to those matters I believe it to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are based upon my review of defendant's petitions in the within matter.

Dated:
September 2011

Respectfully Submitted
*Edward Green*
Edward Green, Pro-se 08A5510
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458-0338

Sworn to before me this
day of September 2011

# AFFIDAVIT OF SERVICE

I Edward Green, being duly sworn, depose and says:

I Edward Green` make and serve A true copy of the following papers: Petitioner's Notice of Motion and Affidavit in Support of Motion for Petitioner's Pro se Writ of Error Coram Nobis, plus Exhibits A - G to the Appellate Division-First Department, located at 27 Madison Ave. @ 25th Street, NY, NY 10010 by mailing the same in a sealed envelope on the____day of September Two Thousand Eleven, with postage prepaid thereon in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee as indicated below:

cc:  **Office of the District Attorney**
Appeals Unit
One Hogan Place
New York, New York 10013

**Mr. Arnold P. Keith**
350 Broadway, Suite 1201
New York, New York 10013

**STEVEN BANKS - NATALIE REA of Counsel**
Attorney for Defendant-Appellant
THE LEGAL AID SOCIETY
Criminal Appeals Bureau
199 Water Street – 5th Floor
New York, New York 10038

**Dated:**
**September 2011**

Respectfully Submitted

*Edward Green*

**Edward Green, Pro se 08A5510**
**Eastern Correctional facility**
**P.O. Box 338**
**Napanoch, New York 12458-0338**

**Sworn to before me this**
**day of September 2011**