UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
EDWARD GREEN,                                    :
                                                 :
                        Petitioner,              :
                                                 : 14-cv-2073-RJS-FM
            -against-                             :
                                                 :
THE STATE OF NEW YORK,                           :
                                                 :
                        Respondent.              :
------------------------------------------------------------ x


## MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS


ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Respondent
120 Broadway
New York, New York 10271
Thomas.Litsky@ag.ny.gov
(212) 416-6173


LISA ELLEN FLEISCHMANN
THOMAS B. LITSKY
Assistant Attorneys General
    of Counsel

December 19, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................... 1

A.   Introduction ................................................................................ 2

B.   Petitioner's Trial ........................................................................ 4
   1.   The People's Case .................................................................. 4
   2.   The Defense Case .................................................................. 8
   3.   Evidence of Petitioner's Criminal History ........................... 8
   4.   The Verdict, Petitioner's Motion to Set Aside the Verdict,
      and Sentence ......................................................................... 9

C.   Petitioner's Direct Appeal ......................................................... 9

D.   Petitioner's Motion for a Writ of Error Coram Nobis........................ 12

E.   Petition Before This Court ...................................................... 14

F.   Exhaustion .............................................................................. 14
   1.   Petitioner's Exhausted Claims ............................................ 15
   2.   Unexhausted and Procedurally Defaulted Claims ............... 15

G.   Standard of Review.................................................................. 18

ARGUMENT ...................................................................................... 19

POINT I ............................................................................................ 19

THE APPELLATE DIVISION'S REJECTION OF
PETITIONER'S INDIVIDUAL INEFFECTIVE
ASSISTANCE OF TRIAL COUNSEL CLAIMS
WAS NEITHER CONTRARY TO, NOR AN
UNREASONABLE APPLICATION OF,
*STRICKLAND V. WASHINGTON*, 466 U.S. 668
(1984)............................................................................................ 19

A.   The *Strickland* Standard........................................................ 20

B.   Overall, Petitioner's Trial Counsel Was Highly Effective ................. 21

C.   Petitioner's  Claim Lacks Merit ............................................... 24
   1.   Opening the Door to the Introduction of Petitioner's
      Prior Convictions................................................................. 24
     a. Background ...................................................................... 24
     b. Petitioner Was Not Prejudiced ...................................... 24

i

2.    Petitioner's Remaining *Pro Se* Claims Lack Merit...........................................26

POINT II ........................................................................................................................29

PETITIONER'S     INDIVIDUAL     INEFFECTIVE
ASSISTANCE     OF     APPELLATE     COUNSEL
CLAIMS      ARE      UNEXHAUSTED      AND
PROCEDURALLY      DEFAULTED;      IN      ANY
EVENT,     THE     APPELLATE     DIVISION'S
REJECTION  OF  PETITIONER'S  CLAIMS  WAS
NEITHER     CONTRARY     TO,     NOR     AN
UNREASONABLE      APPLICATION      OF,
*STRICKLAND V. WASHINGTON*, 466 U.S. 668
(1984)..................................................................................................... 29

POINT III ......................................................................................................................37

PETITIONER'S  WEIGHT  OF  THE  EVIDENCE
CLAIM     IS     UNEXHAUSTED     AND
PROCEDURALLY     DEFAULTED.     IN     ANY
EVENT, IT IS NOT COGNIZABLE ON HABEAS
REVIEW.....................................................................................................38

CONCLUSION...............................................................................................................40

## PRELIMINARY STATEMENT

Edward Green ("petitioner") brings this habeas corpus application pursuant to 28 U.S.C. § 2254 alleging that he is being held in state custody in violation of his federal constitutional rights.  Petitioner's state custody arises from a judgment of conviction entered on October 8, 2008, in the New York State Supreme Court, New York County.  By that judgment petitioner was convicted, after a jury trial, of Criminal Possession of a Controlled Substance in the First Degree (N.Y. Penal Law ("Penal Law") § 220.21[1]), Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16[1]), and two counts of Criminally Using Drug Paraphernalia in the Second Degree (Penal Law §§ 220.50[2], [3]).  The court sentenced petitioner, as a second felony drug offender, to an aggregate prison term of 15 years, to be followed by 5 years of post-release supervision.[1]  On March 24, 2011, the Appellate Division, First Department, affirmed petitioner's conviction. *People v. Green*, 82 A.D.3d 593 (1st Dep't 2011).  On August 25, 2011, the New York Court of Appeals denied petitioner leave to appeal.  *People v. Green*, 17 N.Y.3d 816 (2011).  Petitioner is incarcerated pursuant to this judgment of conviction.

---

[1] Specifically, petitioner received a 15-year determinate sentence on the first-degree possession count, to be followed by 5 years of post-release supervision.  That term was to run concurrently with a 12-year determinate sentence on the third-degree possession count, to be followed by 3 years of post-release supervision.  On the misdemeanor counts of criminally using drug paraphernalia, petitioner received two 1-year prison terms, which merged with his felony sentences.  *See* Penal Law § 70.25[2].

1

## FACTUAL AND LEGAL BACKGROUND

**A.    Introduction**

On November 1, 2007, officers from the New York City Police Department's Major Case Unit executed a search warrant for the second-floor apartment at 451 Lenox Avenue in Manhattan.  The officers apprehended Steven Brown in that apartment.  A search incident to Brown's arrest revealed more than $900 on his person and a set of keys in his jacket pocket.  The apartment itself contained 18 bags of cocaine packaged for sale, as well as significant quantities of drug packaging materials.  The apartment was also equipped with a closed-circuit television ("CCTV") monitor whose split screen displayed real-time images of the building's front entrance and the stairwell leading to the second-floor apartment.  Officers stationed at the rear of the building reported that the CCTV wiring extended from the second-floor apartment to a fourth-floor apartment.

Officers opened the door to that fourth-floor apartment using one of Brown's keys.  Inside, officers found petitioner sitting alone in the dark.  The apartment was littered with drug paraphernalia, including substances commonly used to "cut" or dilute cocaine, digital scales, heat sealers, and hundreds of plastic baggies.  The officers arrested petitioner, and seized more than $300 and a large set of keys from his person.  Petitioner's keys opened the locks to both the second-floor apartment where Brown was arrested and the fourth-floor apartment where petitioner was arrested.

Inside the fourth-floor apartment, the officers discovered two locked safes. After obtaining a supplemental search warrant, the officers pried open the safes. One safe contained more than a pound of cocaine. A second safe contained additional cocaine, packaged for sale, and about $1,100 in cash.

By New York County Indictment No. 5643/07, filed on November 11, 2007, petitioner and Brown were jointly charged with first- and third-degree criminal possession of a controlled substance, and two counts of second-degree criminally using drug paraphernalia.[2]

Construing the petition liberally, petitioner appears to assert the following claims, renumbered here: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) the verdict was against the weight of the evidence; and (4) the two stipulations that substances analyzed by the police chemists contained cocaine should be vacated.

As explained below, petitioner's individual ineffective assistance of trial counsel claims are partially unexhausted and lack merit. Petitioner's claims concerning appellate counsel, the stipulations, and the weight of the evidence, are unexhausted and procedurally defaulted. Petitioner's weight of the evidence claim is also not cognizable. Accordingly, the Court should dismiss the petition, and issue no certificate of appealability.

---

[2] Brown pled guilty to a single count of third-degree criminal possession of a controlled substance and was sentenced to a determinate prison term of five years.

**B.    Petitioner's Trial[3]**

On September 8, 2008, petitioner proceeded to trial before Justice Edward J. McLaughlin and a jury.

**1.    The People's Case**

On November 1, 2007, Detectives Anthony Romero and Alfred Hernandez executed two search warrants for second and third-floor apartments at 451 Lenox Avenue in Manhattan. (Hernandez: 267-69, 270; Romero: 409, 411-13.)[4]   The police had information that drugs were being sold from the second-floor of the building, and that there was a "stash apartment" on an upper floor. (Hernandez: 354, 403-404.)   The officers participating in the raid were divided into two teams, one for each apartment. (Hernandez: 270, 348; Romero: 414.)

When the police entered the second-floor apartment, they found Steven Brown inside. (Hernandez: 275-276, 287; Romero: 415.)   The police searched Brown and recovered approximately $900 from his person, along with a set of keys.

---

[3] A pre-trial *Darden* hearing was conducted before Justice Edward J. McLaughlin, *See People v Darden*, 34 N.Y.2d 177 (1974).   Following that hearing, the court denied petitioner's motion to suppress a set of keys seized from his person and the contraband recovered from the fourth-floor apartment, finding that petitioner lacked standing. *People v. Brown & Green*, 20 Misc. 3d 1120(A) (N.Y. Sup. Ct. 2008).   On August 11, 2008, the court granted reargument and modified its initial ruling by suppressing the keys seized from petitioner. *People v. Green*, 20 Misc. 3d 1133(A) (N.Y. Sup. Ct. 2008).   During the trial, however, the court permitted the People to introduce the keys on the ground that defense counsel's opening statement had opened the door to their admission. (T. 475-77; Romero: 485-86.) Petitioner does not challenge the admission of the keys at his trial.

[4] Parenthetical references preceded by "T___, "S____," and "SR-__", refer to the trial and sentencing proceedings, and the state court record, respectively.   Parenthetical references with witnesses' names, refer to the minutes of their trial testimony.

(Hernandez: 277, 284, 296, 357; Romero: 415, 419).  The officers seized numerous items, including: 18 half-gram plastic baggies of cocaine, and plastic bags typically used to package cocaine for sale.  (Hernandez: 276-277, 279-280, 288-289, 293; Romero: 416.)  Several of the empty plastic bags bore the "Red Apple" stamp, a label commonly used in local cocaine trade.  (Hernandez: 279-281, 367.)  The shelving unit where Hernandez had recovered the packaged cocaine was covered in a white cocaine or cutting-agent residue.  (Hernandez: 281-283, 284, 367-369; Romero: 416.)  A split-screen CCTV monitor mounted on the wall showed views of the building's front entrance and the stairwell leading to the second-floor apartment. (Hernandez: 285; Romero: 417.)  Soon after arresting Brown, the officers disconnected the CCTV cables and monitors.  (Hernandez: 323.)

In the meantime, as the third-floor team approached the third-floor landing, officers heard the sound of running steps above them, and a door slamming. (Hernandez: 301, 358; Romero 420.)  At the landing, where the officers expected to see the single apartment that was the subject of the warrant, they instead discovered "multiple doors to multiple rooms," and an additional stairway leading to the fourth-floor.  (Hernandez: 298-299.)  As the third-floor team weighed the situation, other officers reported that CCTV wires from the second-floor apartment extended from that apartment to the rear southwest apartment on the fourth-floor. (Hernandez: 301, 358, 360; Romero: 417, 420.)

On the basis of that information, Romero and Hernandez went up to that fourth-floor apartment. (Hernandez: 302, 359; Romero: 420.)  Romero knocked on

the door of that apartment "numerous times," announcing the police presence and commanding anyone inside to come out.  There was, however, no response from inside.  (Romero: 421-422.)

Romero used a key seized from Brown, opened the door, shined a flashlight into the dark room, and discovered petitioner sitting silently on a couch.  (Hernandez: 303-304; Romero: 420, 422-423.)  Hernandez turned on the lights; black garbage bags had been taped over the windows.  (Hernandez: 304; Romero: 423.) There was drug "paraphernalia all over."  (Romero: 425.)  The officers placed petitioner under arrest and recovered $330 in cash and a large set of keys from his person.  (Hernandez: 305, 314-315, 351; Romero: 427, 485.)  Keys from that set opened the door to both the second-floor apartment where Steven Brown was arrested and the fourth-floor apartment where petitioner was arrested.  (Romero: 487-488.)

After securing petitioner, Hernandez and Romero opened a small closet containing two combination-lock safes, assorted drug packaging materials, and several digital scales.  (Hernandez: 305-306, 311, 370; Romero: 426.)  Romero left the building in order to secure a supplemental search warrant covering the fourth-floor apartment and its contents.  (Hernandez: 313; Romero: 426.)  Once the new warrant was ready, Romero called Hernandez and directed him to pry open the safes.  (Hernandez: 314; Romero: 426.)  The larger of the two safes contained three "large chunk[s]" of cocaine.  (Hernandez: 314, 328-329, 338-339.)  The smaller safe contained approximately $1,100 and some packaged cocaine "sealed up and ready

for sale." (Hernandez: 314, 324-329, 338-339.) The apartment contained no personal items or clothing. (Romero: 510-02.)

In the room where petitioner was sitting when the police entered the apartment, there was a small glass table covered in cocaine residue, and a heat sealer. (Hernandez: 306-308, 315, 338-339, 375-376; Romero: 425.) Several boxes of plastic baggies, as well as a bottle of peroxide and a box of baking soda — items commonly used to "cut," or dilute, pure cocaine — were on the mantel above the fireplace. (Hernandez: 306, 308, 309, 324-328, 338-339; Romero: 425.) Also recovered from the main room were ten digital scales, two "kilo wrappers" typically used to package bricks of cocaine, and "thousands of small Ziploc bags" bearing the "Red Apple" logo, like those discovered on the second-floor. (Hernandez: 307, 318, 376; Romero: 425.) And above the fireplace mantel was a small television monitor.[5] (Hernandez: 306).

Detective Romero vouchered the cocaine seized from inside the second and fourth-floor apartments and sent it to the police laboratory for testing. (Hernandez: 290, 292; Romero: 417-18.) Based on its packaging, as well as the presence of a voucher or property clerk's invoice number, Hernandez recognized the cocaine in People's Exhibit 3 as the cocaine that the police seized from the second-floor apartment. (Hernandez: 293, 295.) Hernandez also recognized the cocaine in People's Exhibit 10 as the drugs seized from the fourth-floor apartment.

---

[5] When Hernandez turned on the monitor, after the security cameras outside the building had already been torn down by other officers, the monitor showed only static. (Hernandez: 320-321, 323.)

(Hernandez: 331.)   The cocaine seized from both apartments was introduced into evidence without objection.   (Hernandez: 284-96, 333-34.)

At trial, the parties entered into two stipulations concerning the results of the laboratory testing of the substances seized from the second and fourth-floor apartments. (SR-376. 378.)   Each stipulation indicated that a police department chemist, trained in the field of chemical and microscopic analysis: (1) received a sealed property clerk envelope bearing a particular invoice number; (2) removed and weighed the substance inside each envelope; and (3) analyzed the substance and determined that it was cocaine.   Each stipulation further indicated that after the chemist conducted her examination, she placed the cocaine, the property clerk's envelope, and the report of her findings in a large plastic envelope, sealed said envelope, returned the envelope to the Police Laboratory safe, and that thereafter the envelope was taken to the Police Property Clerk.   The separate stipulations confirmed that that cocaine analyzed weighed 17.87 ounces and .16 ounces, respectively.   (T: 464).   The court summarized the written stipulations before circulating them to the jury.  (T. 464.)

### 2.    The Defense Case

Petitioner presented no evidence.

### 3.    Evidence of Petitioner's Criminal History

In the course of the defense summation, counsel intimated that in contrast to a person involved in drug trafficking, petitioner did not recognize the drug paraphernalia in the fourth-floor apartment.  (T. 538.)   In response, the People

sought to reopen their case to present evidence that petitioner sold drugs in the past.  (T. 547) Following a conference with the parties, and before the People's summation, the court advised the jury that petitioner had two 1996 felony drug convictions.  (T. 560.)

### 4.    The Verdict, Petitioner's Motion to Set Aside the Verdict, and Sentence

The jury found petitioner guilty of first-degree criminal possession of a controlled substance, third degree criminal possession of a controlled substance, and two counts of second-degree criminally using drug paraphernalia.

Petitioner filed a *pro se* motion to set aside the verdict under C.P.L. § 330.30. Petitioner claimed that he received ineffective assistance of trial counsel for several reasons, and the laboratory reports introduced in the grand jury were defective and the evidence before the grand jury was insufficient to charge him with the drug possession.  (SR-1-21.)  The court denied that motion from the bench at petitioner's sentencing on October 8, 2008.  (S. 6.)  As discussed previously, the court sentenced petitioner, as a second felony drug offender, to an aggregate prison term of 15 years, to be followed by 5 years of post-release supervision.  (S. 17.)

### C.    Petitioner's Direct Appeal

Natalie Rea, Esq., filed a 45-page brief on petitioner's behalf.  Through counsel, petitioner argued that the trial court deprived him of his right to counsel and his right to be present during the police testimony at the *Darden* hearing. Additionally, he contended that the trial court committed a mode-of-proceedings error by addressing a jury note off-the-record.  Next, petitioner argued that the trial

court erred in ruling that remarks in counsel's opening statement opened the door to admission of the keys that had been suppressed.  Finally, petitioner argued that he was denied effective assistance of trial counsel when his attorney's closing statement opened the door to evidence regarding petitioner's criminal history.  (SR-22-76.)

Petitioner filed a *pro se* supplemental brief, in which he contended that the trial evidence was legally insufficient to support his convictions for first- and third-degree criminal possession of a controlled substance (SR-82), the verdict was against the weight of the evidence with respect to the third-degree criminal possession of a controlled substance (SR-92), and that his trial counsel had been ineffective for several reasons.  (SR-77-101.)

The People filed an opposing brief.   (SR-102-70.)  And petitioner filed a reply brief.  (SR-171-85)

By Decision and Order dated March 24, 2011, the Appellate Division, First Department, unanimously affirmed petitioner's judgment of conviction.  *People v. Green*, 82 A.D.3d 593 (1st Dep't 2011).   (SR-186-89.)  The Appellate Division found that the "evidence overwhelmingly established that [petitioner] was a participant in a drug-selling operation and a possessor of contraband found in two apartments being used as drug factories," and that the verdict was based on legally sufficient evidence and was not against the weight of the evidence.  *Green*,  82 A.D.3d at 593.

Next, the Appellate Division found that petitioner had not established a violation of the principles of *People v O'Rama* 78 N.Y.2d 270 (1991), in connection

with a note from the deliberating jury. *Green*, 82 A.D.3d at 593. The Appellate Division found that the court's response to a note from the jury requesting permission to open an evidence bag and try a key in a lock, was ministerial rather than substantive, and there was no need for input from counsel before responding. *Id.*

The Appellate Division found further that the court properly conducted an *in camera*, *ex parte* hearing concerning an informant's existence and his communications to the police, in accordance with *People v Darden*, 34 N.Y.2d 177 (1974). The Appellate Division rejected petitioner's claim that the hearing also constituted a general suppression hearing at which he had a right to be present. The Appellate Division found that after the hearing, the court informed the parties that the hearing testimony raised issues that might warrant an adversarial suppression hearing, and released pertinent portions of that testimony. The court made no determinations regarding those issues at that time, and offered petitioner the opportunity to litigate them at a conventional hearing. Defense counsel declined the offer of a hearing, and chose to rely on written submissions and the *Darden* hearing minutes. Accordingly, the Appellate Division found that petitioner waived any objection to the procedure by which the court resolved the suppression issues. *Green*, 82 A.D.3d at 593.

The Appellate Division found further that petitioner "received effective assistance of counsel under the state and federal standards," and petitioner "ha[d] not shown a reasonable probability that counsel's isolated error in opening the door

to the introduction of two of petitioner's prior convictions affected the outcome of the trial, given the overwhelming evidence of guilt." *Id.* And the court found that the additional ineffective assistance arguments raised in petitioner's *pro se* supplemental brief were "unreviewable on direct appeal because they involve[d] matters outside the record." *Id.* at 594.

Finally, the Appellate Division found that the court "properly exercised its discretion in determining that defense counsel's opening statement opened the door to admission of an item of physical evidence that the court had suppressed," and "[i]n any event, any error in admitting this evidence was harmless." *Id.*

Petitioner filed a counseled leave application requesting that the New York Court of Appeals review "all issues outlined in defendant-appellant's brief." (SR-190.) Counsel provided the New York Court of Appeals with the briefs filed in the Appellate Division, and later filed a supplemental leave letter. (SR-190-98.) The People opposed that application. (SR-199-203.) On August 25, 2011, the Court of Appeals denied petitioner leave to appeal. *People v. Green*, 17 N.Y.3d 816 (2011). (SR-204.)

## D.  Petitioner's Motion for a Writ of Error Coram Nobis

Petitioner filed a *pro se* motion for a writ of error coram nobis, dated September 20, 2011, and a supplemental affidavit, denominated, "Affidavit in Support for an Order to Show Cause for Summary Judgment Pursuant to Section 5530 of the Civil Practice Law and Rules," dated November 7, 2011. (SR-205-322, 323-46.) Petitioner raised a litany of claims in three main categories.

12

First, petitioner challenged the trial judge's denial of his post-judgment motion. (SR-234.)   Next, petitioner advanced a laundry list of complaints about the performance of his appellate attorney.   Petitioner contended that his appellate counsel was ineffective because she failed to: introduce evidence, review the trial record, or conduct adequate legal research; perform adequately at oral argument before the Appellate Division; seek leave to appeal the Appellate Division's March 24, 2011 order denying petitioner's direct appeal; and vigorously challenge the sufficiency of the trial evidence.   (SR-244-57, 327-31.)   Finally, petitioner alleged that his appellate attorney was ineffective for failing to challenge various aspects of trial counsel's performance.   At the center of this last category of allegations is a series of complaints about trial counsel's stipulation to the laboratory analysis of the cocaine seized.   (SR-224-44, 333-45.)   The People filed an opposing affirmation. (SR-347-78.)   By Order dated January 8, 2013, the Appellate Division, First Department, denied petitioner's motion.   (SR-379.)[6]

---

[6] The District Attorney's Office informed the Attorney General's Office that it served petitioner with a notice of entry of that order on January 8, 2013.  The New York Court of Appeals Clerk's Office informed the Attorney General's Office that petitioner never moved for leave to appeal or for permission to file a late notice of appeal.

13

### E.   Petition Before This Court

In his timely petition, dated March 13, 2014, petitioner annexes his C.P.L. § 330.30 motion, *pro se* supplemental Appellate Division brief, and motion for a writ of error coram nobis.  Construing the petition liberally, petitioner appears to assert the following claims renumbered here: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) the verdict was against the weight of the evidence; (4) the two stipulations that certain substances analyzed by police chemists contained cocaine, should be vacated.[7]

### F.   Exhaustion

It is well-settled that a federal court may not consider the merits of a claim unless the petitioner has first given the state the "'opportunity to . . . correct' alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  Thus, the petitioner "'must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.'"  *Id.* at 29; *Duncan*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  As discussed below, petitioner has only partially exhausted his claims.

---

[7] In his motion for a writ of error coram nobis, petitioner appeared to claim that appellate counsel was ineffective for not challenging trial counsel's decision to stipulate.  (SR-212, 217-18.)  We will discuss petitioner's claim concerning the stipulations in the context of addressing petitioner's individual ineffective appellate counsel claims.  *See* Point III, *infra*.

14

### 1.    Petitioner's Exhausted Claims

Petitioner arguably exhausted his individual ineffective assistance of counsel claims.  Petitioner collectively raised these claims in constitutional terms in his counseled and *pro se* briefs on direct appeal.  (SR-26-67, 88-98.)   In his initial counseled application for leave to appeal, counsel asked the Court of Appeals to review "all issues outlined in defendant-appellant's brief," and provided the court with the direct appeal briefs.  Although counsel indicated that she was seeking leave to appeal all issues raised in appellant's "brief," we presume that counsel was seeking to appeal all issues raised in both the counseled and *pro se* supplemental briefs.  While counsel later filed a follow-up letter seeking leave to review "two questions," she did not specifically withdraw her request that the court examine "all" claims raised on appeal.

### 2.    Unexhausted and Procedurally Defaulted Claims

Petitioner's individual ineffective assistance of appellate counsel claims remain unexhausted, insofar as he has not sought leave to appeal to the New York State Court of Appeals from the January 8, 2013 order of the Appellate Division denying petitioner's motion for a writ of error coram nobis. *See* pp. 13-14 n. 6.  There is no indication that he has sought an extension of time to seek leave to appeal, and his time to do so has long passed.  *See* C.P.L. §460.10[5][a] (defendant has thirty days from service of underlying order and notice of entry to seek leave to appeal); C.P.L. § 460.30[1] (a defendant has one year to move for an extension of time to file a late leave application).  As a result, petitioner's unexhausted individual ineffective

appellate counsel claims should be deemed exhausted and found to be procedurally defaulted. *See Davis v. Woods*, No. 05-CV-03414, 2010 U.S. Dist. LEXIS 97776, at *46-48 (E.D.N.Y. Sep't 17, 2010) (ineffective appellate counsel claim unexhausted and procedurally defaulted where petitioner failed to seek leave or move for an extension of time to seek leave within the one-year grace period under C.P.L.§ 460.30[1]).

Petitioner also failed to exhaust his weight of the evidence claim. Although petitioner raised a weight of the evidence claim with respect to the third-degree criminal possession count in his *pro se* supplemental brief on direct appeal, he did not raise that claim in constitutional terms. And petitioner did not appear to attack the weight of the evidence with respect to the other counts. Petitioner similarly did not exhaust his claim relating to the stipulations because he failed to raise this record-based claim on direct appeal. Petitioner cannot return to state court to exhaust these claims, because he has already had the one direct appeal, and one discretionary appeal to the Court of Appeals, to which he is entitled. *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001); *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). And, he may not now seek collateral review. *See* C.P.L. § 440.10[2][c] (barring collateral review if claim could have been raised on direct review but was not). As a result, these unexhausted claims should be deemed exhausted and found to be procedurally defaulted. *See Ramirez v. Attorney General*, 280 F.3d 87, 94 (2d Cir. 2001).

Petitioner's procedurally defaulted claims may not be reviewed by this Court unless petitioner can demonstrate either (1) "'cause'" for the default and actual "'prejudice'" from barring the claims, or (2) that the failure to consider the claims will result in a "'fundamental miscarriage of justice.'" *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986).

With respect to establishing cause for the default of his individual ineffective assistance of appellate counsel claims, petitioner appears to assert that he did not seek leave to appeal to the Court of Appeals because by the time he received a copy of the Appellate Division's order denying his motion for writ of error coram nobis, the time to seek leave to appeal had passed.  (Pet. ¶ 12(d).)  Petitioner, however, neither states when he received the notice of entry, nor why he did not to move for permission to file a late leave application.

With respect to his weight of the evidence claim and claim concerning the stipulations, petitioner offers no cause for his default.  Although an ineffective assistance of appellate counsel claim may serve as cause for a default, counsel's representation must rise to the level of a constitutional deficiency, *see Murray*, 477 U.S. at 488-89, the claim must "be presented in state court as an independent constitutional claim," *see DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006) (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000)), and the claim must be exhausted.  *See Brown v. Conway*, No. 08-CV-1780, 2012 U.S. Dist. LEXIS 97021, at *19 (E.D.N.Y. July 11, 2012).  In his motion for a writ of error coram nobis, petitioner did not assert that appellate counsel was ineffective for failing to raise a

weight of the evidence claim.   Although in that motion petitioner asserted that appellate counsel was ineffective for failing to raise a claim concerning the stipulations, when the Appellate Division rejected that claim, petitioner neither sought leave to appeal nor permission to file a late leave application.   Accordingly, petitioner has failed to show cause for his default.

Because petitioner has not shown cause, the Court need not consider prejudice.   *See Stepney v. Lopes*, 760 F.2d at 45.   Of course here, there was no prejudice because as discussed in the Argument section, petitioner's claims lack merit.   Furthermore, petitioner has failed to establish that this Court's failure to review these defaulted claims will result in a miscarriage of justice.   *See Murray v. Carrier*, 477 U.S. at 495.

For all of the above reasons, petitioner's unexhausted claims should be denied as procedurally defaulted.

## G.   Standard of Review

A state court decision on the merits is subject to extraordinarily deferential review by a federal habeas court.   *See Hardy v. Cross*, 132 S. Ct. 490, 491 (2011); Bobby v. Dixon, 132 S. Ct. 26, 27 (2011).   A state court's conclusions and applications of federal law are binding in a § 2254 proceeding unless they conflict with "clearly established Federal law as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1).   State court findings of fact are similarly insulated from hard scrutiny. Such findings are not to be disturbed unless they

were "unreasonable . . . in light of the evidence presented in the State court proceeding." *See id*. § 2254(d)(2).

## ARGUMENT

## POINT I

**THE APPELLATE DIVISION'S REJECTION OF PETITIONER'S INDIVIDUAL INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS WAS NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984).**

In petitioner's *pro se* supplemental brief on direct appeal, petitioner contended that his trial counsel was ineffective for several reasons. *See* Section C(2) below. In his counseled direct appeal brief, petitioner contended that his trial counsel was ineffective because his closing statement opened the door to evidence regarding petitioner's criminal history. Assuming that petitioner is reasserting these claims on habeas review, none of these individual claims have merit. The Appellate Division found that petitioner's *pro se* claims were unreviewable on direct appeal because they involved matters outside the record. With regard to petitioner's counseled claim, the Appellate Division found that petitioner received effective assistance under the federal standard, and there is no reasonable probability that counsel's isolated error in opening the door to the introduction of two of petitioner's prior convictions affected the outcome of the trial, given the overwhelming evidence of guilt. *Green*, 82 A.D.3d at 594. The Appellate Division's rejection of petitioner's counseled claim was neither contrary to, nor a reasonable application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

19

A.      The *Strickland* Standard

In order to establish his ineffective counsel claim, petitioner must show both that his attorney provided deficient representation and that petitioner suffered prejudice as a result of that deficient performance.  S*ee Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court reviewing an ineffective counsel claim is required to "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," and petitioner bears the burden of overcoming that presumption.  *Strickland*, 466 U.S. 689.  With respect to prejudice, petitioner is required to show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Although *Strickland* sets forth two prongs, a reviewing court need not address both.  Instead, where the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," the court should do so.  *Id.* at 697.

The standard created by *Strickland* is "highly deferential."  *Id.* at 689.  And, in the context of a federal habeas proceeding, the habeas court must apply "doubly deferential judicial review" to a state court's decision on *Strickland* claims.  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Thus, for petitioner to be entitled to federal habeas relief, he must establish that the state court unreasonably applied *Strickland*'s holding.   "[T]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  Significantly, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.*  In reaching its conclusion, "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding" in *Strickland*. *Richter*, 131 S. Ct. at 786.  If fairminded jurists could disagree on the correctness of the state court's decision, federal habeas relief is precluded.  *Id.*  As explained below, petitioner's individual ineffective trial counsel claims lack merit.

## B.    Overall, Petitioner's Trial Counsel Was Highly Effective

The record reflects that petitioner received competent representation. Counsel filed a comprehensive omnibus motion supported by his own affirmation, and succeeded in obtaining a *Darden* hearing and an opportunity to challenge the police activity on the fourth-floor of the building.  (People's Appellate Division Brief at SR-188.)  In support of his Motion to Controvert the Search Warrant, counsel submitted a 27-page memo raising three legal points.  (*Id.*)  Following a hearing, on June 30, 2008, the court denied petitioner's motion to suppress a set of keys seized from his person and the contraband recovered from the fourth-floor apartment, finding petitioner lacked standing.  *People v. Brown & Green*, 20 Misc. 3d 1120(A) (N.Y. Sup. Ct.  2008).  When the court denied that motion, counsel promptly moved to reargue, and won suppression of the keys seized from defendant.  *People v. Green*,

20 Misc. 3d 1133(A) (N.Y. Sup. Ct. 2008). Defense counsel also adamantly opposed the People's *Sandoval*[8] application, and secured another favorable ruling. (T. 16-18.) These preliminary efforts conclusively demonstrate that defense counsel was engaged in measured decision-making from the case's earliest stages, and had diligently conducted all preparation necessary to mount an effective defense.

At trial, counsel was an active participant in jury selection. For example, counsel explored whether panelists who knew police officers could be fair. (T. 103-06, 177-79, 218-19, 224.) And counsel explored whether panelists who knew people who had overdosed or had drug arrests could be fair. (T. 111, 176.)

After jury selection, defense counsel made proper objections (T. 244, 286, 309, 323, 333, 402, 420, 574), and cross-examined the People's witnesses (Hernandez: 346-376, 385-401, 407; Romero: 429-460, 488-502.) Counsel questioned both investigators about CCTV wiring entering the second and fourth-floor apartments, and introduced a photograph depicting wiring in the front of the building. (Romero: 416-17, 445-46; Hernandez: 286. 360, 362-64.) Through Romero, counsel elicited that petitioner told the police that he lived in the Bronx. (Romero: 449.) Counsel further elicited that while Romero spoke with petitioner about why he had "so many keys," the police never bothered to check to see if petitioner's keys unlocked doors other than the second- and fourth-floor apartments, and the front entrance. (Romero: 490-91.) And counsel confronted Detective Romero with his allegedly inconsistent prior statements. (Romero: 437-444.)

---

[8] *See People v. Sandoval*, 34 N.Y.2d 371 (1974).

Counsel's efforts did not stop there.  In the course of the trial, counsel made four mistrial motions, each time vigorously arguing his position (T. 477-484; 499-500; 549-560; 623-624.)  At the close of the People's case, defense counsel timely moved for a trial order of dismissal.  (T. 514-515.)  When that motion was denied, counsel presented a cogent summation, which marshalled the evidence effectively and vigorously attacked the police investigation of the case.  (T. 517-546.)  Defense counsel argued that the People's case was "very weak" and "built on reasonable doubt."  (T. 520.)  Counsel suggested CCTV wiring was simply to permit tenants in the building to see who they buzzed into the building.  (T. 528,)  And counsel suggested that Hernandez's trial testimony that he did not recall that CCTV wiring depicted in the photograph was not credible.  (Hernandez: 363, 407.)  Counsel also reminded the jury that petitioner "did not live at 451 Lenox Avenue" and argued that it was "speculation" that the cocaine in the locked safe was his because he "had keys to just about everything in that building."  (T. 521.)  And counsel argued that the fact that petitioner had multiple keys suggested that he worked in the building. (T. 526.)

As the record supports and as the Appellate Division found, petitioner received effective assistance of counsel federal standard.  *Green*, 82 A.D.3d at 594 (citing *Strickland*,  466 U.S. 668).

**C.     Petitioner's  Claim Lacks Merit**

**1.     Opening the Door to the Introduction of Petitioner's Prior Convictions**

**a.     Background**

In summation, defense counsel downplayed the significance of the paraphernalia in open view in the fourth-floor apartment.   Counsel acknowledged that while "a person involved in drug trafficking may recognize that some of the items can possibly be used" in the drug trade, "the [b]aggies are regular Ziplock sandwich [b]aggies on the counter."  (T. 538).  And counsel argued, "How are we to assume [petitioner], even if he were sitting right next to a digital scale, would know what it is?"  (T. 523.)  After defense counsel's summation, the prosecutor sought to reopen the People's case to put in evidence that petitioner sold drugs in the past. (T. 547.)   Following a conference with the parties (T. 547-560), and before the People's summation, the trial court informed the jury that petitioner had "two [1996] convictions related to drug felony charges": one for "possessing a shotgun in connection with armed narcotics trafficking," and one for "an attempt to commit a drug sale" (T. 560-561).

**b.     Petitioner Was Not Prejudiced**

The Appellate Division found that petitioner had not shown a reasonable probability that counsel's "isolated error in opening the door to the introduction of two of [petitioner's] prior convictions affected the outcome of the trial, given the overwhelming evidence of guilt." *Green*, 82 A.D.3d at 594.  The Appellate Division's finding comported with Supreme Court law.  Although petitioner's criminal record

24

provided a connection between the paraphernalia and the drugs recovered, that connection had been well-established by the time counsel began his closing argument. Among other things, the evidence at trial established that petitioner sat silently in the dark, and refused to respond when police knocked on the fourth-floor apartment door. (Romero: 443.)   Furthermore, when the police entered the apartment, they discovered that it was littered with drug paraphernalia and evidence of the drug trade, including digital scales, heat sealers, and empty kilogram wrappers. (Hernandez: 309-10, 324, 334, Romero: 450.)   And the safes discovered inside that apartment contained chunks of cocaine which together weighed more than a pound, additional cocaine, already packaged and ready for sale, and over $1,100 in cash. (Hernandez: 314-15.)   Finally, petitioner had keys to both the fourth-floor apartment, as well as the second-floor apartment, where Brown was arrested. (Romero: 485, 487.) And inside the second-floor apartment, the police recovered additional cocaine and paraphernalia, and over $900. (Hernandez: 276-81.)   All this evidence left no doubt that petitioner and Brown were participants in the same drug-selling business, and thus both had knowledge of and control over the drugs and paraphernalia.   In the face of that conclusive evidence, it is simply not persuasive to suggest that the jury would have reached a different conclusion had it not learned of petitioner's decades-old drug convictions.

### 2.      Petitioner's Remaining *Pro Se* Claims Lack Merit

Petitioner's claim that his attorney "pursued no defense at trial," he must have "failed to prepare a proper defense," and even "affirmatively aided the prosecution" (SR-116-17; *Pro se* Supplemental Brief: 11-12) is not supported by the record.   As discussed previously, counsel exhaustively litigated the case in its early stages, actively pursuing numerous pretrial motions.  *See* pp. 21-22, *supra*.  At trial, counsel vigorously cross-examined the People's witnesses (Hernandez:  346-76, 385-401, 407; Romero: 429-60), and delivered a cogent summation (T. 517-46).

Petitioner's claim that counsel did not recognize that the People purportedly had failed to prove "intent to sell" under the count charging third-degree criminal possession, is similarly unpersuasive.   (SR-117; *Pro se* Supplemental Brief: 12).  Petitioner overlooks the fact that the People presented overwhelming evidence of intent to sell: the possession of more cocaine than would be consistent with mere recreational use; possession of cocaine packaged for sale; the presence throughout the apartments of materials used to mix, portion, and package drugs for sale; and, finally, the large amounts of cash recovered from both petitioner and Brown.  Of course, one cannot intend to sell drugs about which he lacks knowledge, or over which he lacks dominion and control.   Therefore, it was perfectly sensible for defense counsel to assert that knowing possession had not been satisfactorily proved, as that defense subsumed a claim of no intent to sell.

Also without merit is petitioner's claim that counsel, purportedly having conducted insufficient legal research, failed to recognize that "control over an area

will not in and of itself give [rise] to a conclusive presumption that a defendant also knew contraband was present," and, further, would not necessarily establish constructive possession. (SR-117; *Pro se* Supplemental Brief at 12). Nothing in the record suggests that counsel erroneously believed that proof of petitioner's control of the apartment established either knowledge or possession of the seized drugs. Counsel never argued as much, and acquiesced in the court's statement that "the fact that defendant had keys to the fourth-floor still leaves for the jury the issues of whether he knew about the existence or contents of the arguably hidden safe and whether he exercised dominion or control of the drugs" (T. 477). And, of course, the court expressly instructed the jury that if they concluded that petitioner had dominion and control over the apartment, that did not lead to the inexorable conclusion that he exercised dominion and control over the apartment's contents. (T. 626-627, 629.) Thus, even had defense counsel been ignorant of the law, as petitioner alleges, the court's instructions would have prevented any prejudice in this regard.

Petitioner's claim that counsel was ineffective for failing to understand and present "other suspect" evidence – namely, that co-defendant Steven Brown was the guilty party, not petitioner (SR-118; *Pro se* Supplemental Brief: 13) – is meritless. Defense counsel prudently refrained from pressing such a defense. After all, there was plenty of evidence connecting petitioner with Brown in a shared drug-dealing enterprise, and establishing the two apartments as the locales of that enterprise. Among other things, Brown and petitioner had keys to both the second- and fourth-

floor apartments (Hernandez: 284, 296, 302, 357; Romeo: 431, 485, 487), there were similar clear plastic bags with identical "Red Apple" label stamps found in each apartment (Hernandez: 280, 280, 306), and there was CCTV wiring coming from the second-floor to the fourth-floor apartment (Hernandez: 301.)   Under those circumstances, attempts to cast blame exclusively on Brown would have been futile.

Finally, petitioner's claim that his attorney failed to conduct a thorough investigation and was unable to "point out what the police hadn't done" or suggest "any exculpatory evidence that the police might have found had they conducted a more thorough investigation" (SR-119; *Pro se* at 14), is unpersuasive.  Petitioner's claim is patently speculative, both in its unsupported assertion that defense counsel did not investigate the case and in its suggestion that there was somehow "more" for the police to discover.  Moreover, as stated previously, defense counsel attacked the police investigation in the pretrial motion practice, *see* pp. 21-22, *supra*, and extensively cross-examined both police witnesses at trial.  (Hernandez: 346-376, 385-401, 407; Romero: 429-460, 488-502.)   Thus, counsel's efforts reveal that, contrary to petitioner's contention, counsel was familiar with the details of the police action in this case, and had formulated a cogent plan to attack the evidence provided by the police witnesses.

*     *     *     *

In sum, to the extent that petitioner is reasserting his individual direct appeal claims that his trial counsel was ineffective, those claims lack merit.   The Appellate Division's rejection of petitioner's claim that his trial counsel was

ineffective because he opened the door to evidence regarding petitioner's criminal history, was neither contrary to, nor an unreasonable application of, *Strickland*. Accordingly, these claims present no basis for habeas relief.

## POINT II

**PETITIONER'S INDIVIDUAL INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIMS ARE UNEXHAUSTED AND PROCEDURALLY DEFAULTED; IN ANY EVENT, THE APPELLATE DIVISION'S REJECTION OF PETITIONER'S CLAIMS WAS NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984).**

Petitioner contends that his appellate counsel was ineffective. In his *pro se* motion for a writ of error coram nobis, petitioner appeared to contend that his appellate counsel was ineffective because she failed to: introduce evidence, review the trial record, or conduct adequate legal research; challenge various aspects of trial counsel's performance, including counsel's stipulating that the substance seized was cocaine; vigorously challenge the sufficiency of the trial evidence; adequately perform in oral argument; and seek leave to appeal the Appellate Division's Decision and Order on petitioner's direct appeal. To the extent that petitioner is reasserting these claims here, they are unexhausted and procedurally defaulted because petitioner failed to seek leave to appeal after the Appellate Division denied petitioner's motion for a writ of error coram nobis, and his time for seeking leave to appeal has long passed. (*See* Exhaustion section.) In any event, these individual claims lack merit. The Appellate Division's rejection of these claims was neither contrary to, nor an unreasonable application of, *Strickland*.

A petitioner claiming ineffective assistance of appellate counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, it is reasonably probable that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. In order to satisfy the first *Strickland* prong, it is not enough for a petitioner to show that appellate counsel omitted a colorable argument, as counsel may winnow out weaker arguments on appeal and focus on one or two key issues that present "'the most promising issues for review.'" *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). Instead, petitioner must demonstrate that appellate counsel "'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). Counsel is "'strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment.'" *Strickland*, 466 U.S. at 689-90. To satisfy the second prong, petitioner must demonstrate that "'there was a 'reasonable probability' that [his] claim would have been successful before the [state's highest court].'" *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (citation omitted).

And again, in the context of a federal habeas proceeding, the habeas court must apply "'doubly deferential judicial review'" to a state court's decision on *Strickland* claims. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In reaching its conclusion, "'a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether

it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding'" in *Strickland*. *Richter*, 131 S. Ct. at 786.

Here, petitioner's appellate counsel did not "'omit[] significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Clark v. Stinson*, 214 F.3d at 322. Counsel filed a 45-page brief arguing that: (1) the trial court deprived him of his right to counsel and his right to be present during the police testimony at the pretrial hearing; (2) the trial court committed a mode-of-proceedings error by addressing a jury note off the record; (3) the trial court erred in ruling that remarks in counsel's opening statement opened the door to admission of the keys that had been suppressed; and (4) he was denied effective assistance of trial counsel when his attorney's closing statement opened the door to evidence regarding petitioner's criminal history. (SR-47-101.) And counsel filed a reply brief. (SR-196-210.) As evident from the quality of counsel's main and reply briefs, counsel's arguments were carefully researched and intelligently presented.

Even assuming, *arguendo*, that appellate counsel unreasonably failed to present any of the additional claims referenced above on appeal, petitioner has not established a reasonable probability that any of these additional claims would have been successful in the New York Court of Appeals. *Mayo*, 13 F.3d at 534. To the contrary, the additional claims are meritless.

First, petitioner complains that his appellate attorney "fail[ed] to produce statutory [sic] required mitigating evidence" supporting "[petitioner's] contention that the crime could not have occurred under the circumstance alleged." (216, 222.)

31

The Appellate Division's review is "limited by the record on appeal." *Block v. Nelson*, 71 A.D.2d 509, 511 (1st Dep't 1979).   Accordingly, appellate counsel could not have produced evidence not presented at trial even if it could be shown that such evidence existed; such a claim may be raised only in a collateral proceeding.

Next, petitioner faults appellate counsel for presenting "grossly substandard, rambling and incoherent" oral argument before the Appellate Division on October 3, 2010. (SR-216, 222.)  It is not clear on what basis petitioner makes this allegation, as he has been continuously incarcerated since his conviction and was not present at oral argument. (SR-355; People's Aff. in Opposition to Coram at p. 9.)   In any event, the Appellate Division's rules do not require oral argument of an appeal.  *See* 22 N.Y.C.R.R. § 600.11[f][1].  Given that counsel was not required to present any argument at all, petitioner is hard-pressed to claim that the argument she did present somehow constituted ineffective assistance of appellate counsel.

Petitioner's contention that counsel misled him by promising to seek leave to appeal his conviction to the Court of Appeals, and then failing to make good on that argument (SR-215) is belied by the record.   Counsel filed an initial leave application, and then presented a supplemental letter to the Court of Appeals, discussing why the Court should grant leave. (SR-365. 367-72.)

Petitioner next appears to fault his appellate counsel for electing not to challenge the legal sufficiency of the evidence supporting his conviction. (SR-221.) But appellate counsel actually made a wise choice, given the quality and quantity of the evidence establishing petitioner's guilt.  Appellate counsel likely declined to

challenge that evidence for the obvious and apparent reasons that it was not only sufficient, but crushing.  As discussed in greater detail in Point I of the People's Appellate Division Brief (SR-78-82), the evidence was overwhelming.  In any event, petitioner suffered no prejudice because he presented a legal sufficiency argument in his *pro se* supplemental brief.  The Appellate Division rejected that meritless claim. finding that the trial evidence "overwhelmingly established that [petitioner] was a participant in a drug-selling operation and a possessor of contraband found in two apartments used as drug factories."  *Green*, 82 A.D. 3d at 593.  Counsel's "'[f]ailure to make a meritless argument does not amount to ineffective assistance.'" *See United States Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999).

Petitioner's remaining claims alleged in his petition for a writ of error coram nobis is that appellate counsel was ineffective for failing to challenge on direct appeal certain aspects of trial counsel's performance.  But again, petitioner raised numerous complaints about his trial attorney in his *pro se* supplemental brief.  (SR-88-95.)  Many of the complaints that petitioner lodged about his trial representation merely reprise those same arguments: namely, that his trial attorney was ignorant of the law and unprepared; that he failed to mount any cogent defense; and that he affirmatively aided the prosecution.  (SR-253-54, 256.)  As a threshold matter, as the Appellate Division determined that these *pro se* claims of ineffective assistance were "unreviewable on direct appeal because they involve[d] matters outside the record" and should be raised not on appeal, but in a motion to vacate the conviction

pursuant to C.P.L. § 440.10. *Green*, 82 A.D.3d at 594. Appellate counsel cannot be faulted for recognizing just that, and raising instead an ineffectiveness challenge that was reviewable on the existing record.

In his coram nobis motion, petitioner's central complaints about his trial representation focused on counsel's stipulation to the contents of the laboratory reports confirming that the substance seized from the two apartments was, indeed, cocaine. (T. 464.) Petitioner contends that he did not agree to the full scope of information included in the stipulation, and that the entry of the stipulation thus demonstrated a "conflict of interest" between petitioner and his trial attorney because counsel effectively "created" evidence unfavorable to petitioner. (SR-217-18, 226, 233, 244, 253.) But the trial record concerning the stipulation is simple and clear. Before jury selection, trial counsel notified the court that the defense "agreed to stipulate that the white powdery substance [was] cocaine." (T. 36.) Petitioner voiced no objection. Petitioner likewise remained silent when the trial judge orally summarized the written stipulations for the jury before circulating the stipulations to the jury. (T. 464). Thus, the existing record in no way supports petitioner's contention that his trial attorney entered stipulations to which petitioner had not agreed.

In any event, petitioner is hard-pressed to maintain that his appellate counsel should have challenged trial counsel's thoroughly sensible decision to stipulate to the laboratory evidence. Nothing in the record suggests that either trial counsel or petitioner had reason to suspect that the substance seized was not

cocaine, or that the laboratory reports confirming the identification of the substance were somehow defective. Under those circumstances, trial counsel made the entirely sensible decision to stipulate to the contents of the chemists' reports and concentrate instead on challenging the People's proof that petitioner possessed the drugs. And, of course, the quantity of cocaine seized in this case – over a pound – was considerable; prolonged testimony about the laboratory analysis would have served only to focus the jury on that damning evidence. *See, e.g., Salcedo v. United States*, No. 98-CV-7638, 1999 U.S. Dist. LEXIS 7690, at *8 (S.D.N.Y. May 24, 1999) ("[t]he strategic decision to enter into a stipulation . . . regarding the chemist's testimony was entirely reasonable even if made without consultation [of] the defendant."); *People v. McKay*, Ind. No. 10729/2006, 2010 N.Y. Misc. LEXIS 2086, at *9 (Kings Co. Sup. Ct. Jan. 27, 2010) (where the defense was that the cocaine was not defendant's, counsel's tactical decision to stipulate to chemists' testimony was reasonable, and did not give rise to an ineffective assistance of counsel claim); *accord People v. Vega,* 268 A.D.2d 257, 257 (1st Dept. 2000); *People v. Brown,* 175 A.D.2d 210, 211 (2d Dept. 1991). And, of course, because trial counsel cannot be faulted for adopting a sound trial strategy, an appellate attorney can scarcely be ineffective for failing to challenge that decision on appeal.

Nor can appellate counsel be ineffective for not asserting claims concerning the stipulations. First, petitioner's claim that the stipulations were procedurally defective because they were not reduced to writing (SR-239), is belied by the record. (SR-376, 378.)

Next, petitioner argues that the trial court modified the core agreement of the stipulation by "includ[ing] the chain of custody of the evidence" in his recital (SR-225, 234-35.)   But as the stipulations and the trial record make plain, the "chain of custody evidence" was part of the written agreement the judge summarized for the jury.  (SR-376, 378; T. 464.)   Both stipulations provided that after the chemists conducted their respective analyses, their sealed plastic envelopes bearing particular laboratory numbers was "returned to the safe at the Police Laboratory" and "in accordance with the regular course of business of the New York City Crime Laboratory . . . [later] taken to the Police Department Property Clerk for safekeeping."[9]   (SR-376, 378.)  Accordingly, the judge was not acting as an "unsworn witness" or expressing a "personal belief" as to the "truth or falsity" of the evidence (SR-252): he was simply reading aloud the salient details of the stipulation (T. 464).

Finally, petitioner protests that a stipulation between defense counsel and the People is not the equivalent of a binding stipulation between the People and defendant himself.  (SR-243.)  Petitioner is wrong.  It is well-established law that, by accepting an attorney's representation, a defendant "relegates control of much of the case to the lawyer except as to certain fundamental decisions." *People v. Ferguson,* 67 N.Y.2d 383, 390 (1986).  The decision on "what stipulations should be made" belongs in category of constitutional rights that are not "fundamental" but "waivable by defense counsel on defendant's behalf." *Brown v. Artuz*, 124 F.3d 73,

---

[9] The evidence at trial established that the police obtained this evidence from the Property Clerk before trial.  (Hernandez: 294.)

77 (2d Cir. 1997); *see, e.g., Salcedo v. United States*, No. 98-CV-7638, 1999 U.S. Dist. LEXIS 7690, at *8 (S.D.N.Y. May 25, 1999) ("[t]he strategic decision to enter into a stipulation is one that defense counsel may make on the defendant's behalf ....") (citing *Brown v. Artuz*, 124 F.3d at 77; *Horan v. Conway*, No. 03-CV-0486, 2007 U.S. Dist. LEXIS 26139, at *29 (N.D.N.Y. March 9, 2007) ("'[e]ntering into a stipulation is a strategic decision that defense counsel may make on the defendant's behalf.'") (citing *Goicochea-Melchor v. United States*, No. 99-CV-729, 1999 U.S. Dist. LEXIS 15715, at *14 (S.D.N.Y. Oct. 5, 1999)).   Appellate counsel cannot be adjudged ineffective for failing to challenge a strategic decision that was both within trial counsel's authority and discretion and unquestionably wise.

In sum, appellate counsel was effective.  The Appellate Division's rejection of petitioner's individual ineffective appellate counsel claims was neither contrary to, nor an unreasonable application of, *Strickland*.   Accordingly, petitioner's claims present no basis for habeas relief.

## POINT III

### PETITIONER'S WEIGHT OF THE EVIDENCE CLAIM IS UNEXHAUSTED AND PROCEDURALLY DEFAULTED.  IN ANY EVENT, IT IS NOT COGNIZABLE ON HABEAS REVIEW.

Petitioner contends that verdict is against the weight of the evidence.  As discussed previously (Exhaustion section), this claim is unexhausted and procedurally defaulted.  As discussed below, this claim is also not cognizable on habeas review.

Petitioner's weight of the evidence claim is not cognizable because it is a state law claim. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. Appx. 69, 75 (2d Cir. May 24, 2011) (citations omitted). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15[5], which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15[5]. Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. *See Black v. Conway*, No. 11-CV-0480, 2011 U.S. Dist. LEXIS 70838, at *41-43 (S.D.N.Y. June 30, 2011) (citations omitted), *Rep. Adopted*, 2012 U.S. Dist. LEXIS 180120 (S.D.N.Y., Dec. 20, 2012); *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). Accordingly, this claim is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Although petitioner does not specifically assert that the evidence at his trial was legally insufficient to establish his guilt beyond a reasonable doubt, in petitioner's *pro se* supplemental brief on direct appeal, petitioner asserted that the evidence was insufficient to establish petitioner's guilt with respect to first- and third-degree criminal possession of a controlled substance. (SR-82.) If the Court construes petitioner to be raising such a claim, it lacks merit.

38

To establish petitioner's guilt with respect to first-degree criminal possession of a controlled substance, the People were required to establish that petitioner knowingly and unlawfully possessed eight ounces or more of a narcotic drug. (Penal Law § 220.21), To establish petitioner's guilt with respect to third-degree criminal possession of a controlled substance, the People were required to establish that petitioner knowingly and unlawfully possessed a narcotic drug with intent to sell. Here, the parties stipulated that the chemists determined that the substance seized from both apartments was cocaine, and that the cocaine weighed more than eight ounces. And cocaine is a narcotic drug. *See* N.Y. Public Health Law §3306, Schedule II(b)(4). As reviewed in greater detail in Point I of the People's Appellate Division brief (SR-145-153), the evidence overwhelmingly established petitioner's guilt. The Appellate Division's finding that the "evidence overwhelmingly established that [petitioner] was a participant in a drug-selling operation and a possessor of contraband found in two apartments being used as drug factories," *Green*, 82 A.D.3d at 593, is supported by the record, and neither contrary to, nor an unreasonable application of, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In sum, petitioner's procedurally defaulted weight of the evidence claim is not cognizable on habeas review, and, if construed as a legal sufficiency claim, it lacks merit.

## **CONCLUSION**

For the reasons set forth above, the petition for a writ of habeas corpus should be denied, and no certificate of appealability should be issued.

Respectfully submitted,

Eric T. Schneiderman
Attorney General of the
State of New York
120 Broadway
New York, New York 10271

/s Thomas B. Litsky

By: _____
THOMAS B. LITSKY (TL-8976)
Assistant Attorney General
(212) 416-6173
Thomas.Litsky@ag.ny.gov

LISA ELLEN FLEISCHMANN
THOMAS B. LITSKY
Assistant Attorneys General
    Of Counsel

December 19, 2014

DECLARATION OF SERVICE

THOMAS B. LITSKY, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows: that on December 19, 2014, he served respondent's declaration in opposition to the petition, memorandum of law, and any unpublished cases cited therein, and the bound state court record, by mailing a copies to petitioner at the following address:

> Edward Green
> 08-A-5510
> Eastern New York Correctional Facility
> P.O. Box 338
> Napanoch, NY 12458

Executed on December 19, 2014

/s/ Thomas B. Litsky
_____
THOMAS B. LITSKY (TL-8976)
Assistant Attorney General
120 Broadway
New York, New York 10271
Thomas.Litsky@ag.ny.gov
(212) 416-6173