SUPREME COURT OF THE STATE OF
NEW YORK
COUNTY OF NEW YORK
TERM PART: 93

---

EDWARD GREEN

Defendant

---

# NOTICE OF MOTION TO VACATE JUDGMENT
### Indictment No. 5643/07

---

Prepared by:

*Edward Green*

Edward Green, Pro-se
125 White Street
New York, New York 10013

Dated:
October 3rd, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM PART *93*          *Affidavit in Support of*
THE PEOPLE OF THE STATE OF NEW YORK
         Respondent     **NOTICE OF MOTION TO SET**
                  **ASIDE VERDICT PURSUANT**
      - Against -         **TO SECTION 330.30(1) OF THE**
                  **CRIMINAL PROCEDURE LAW**

                  **Indictment No. 5643/07**

EDWARD GREEN
       Defendant

TO THE SUPREME COURT   )
OF THE COUNTY OF NEW YORK )

    I, Edward Green, being duly sworn, deposes and says:

1.  I am the defendant in the above-entitled matter and I make this affidavit in support of a

motion to set aside Verdict and Order a new trial pursuant to section(s) 330.30(1), 330.40(2)(a),

330.50(1) of the Criminal Procedure Law ("C.P.L.").

2.  Hereto, although I am familiar with all of the statements and facts herein submitted, I am

a layperson in the matters of the law and I seek this Court's indulgence for errors, omissions,

defects and any irregularity pursuant to section 2001 and 2101(F) of the Civil Practice Law and

Rules of the State of New York.

3.  I was indicted by the grand jury in the County of New York, on the 12 day of ~~September~~ *November*

2007, and charged with the offences of Criminal Possession of a Controlled Substance in the

First and Third Degree in violation of Penal Law §§220.21(1), 220.16(1), respectfully under

indictment No.5643/07

4.  The case was tried before the Honorable McLaughlin, J.S. of the State Supreme Court,

on the 12 day of September 2008. the outcome of the case was the finding of the defendant guilty

of Criminal Possession of a Controlled Substance in the First and third degree, in violation of

Penal Law, §§220.21(1), 220.16(1), respectfully.

5.    The defendant moves in this instant motion for an order setting aside the verdict of

guilty on the aforestated charges and ordering a new trial upon the following grounds:

> a)  Ineffective Assistance of Counsel.
> b)  Police laboratory Controlled Substance Analysis Report
> were defective on the grounds that it doesn't conform to the
> requirements of C.P.L. §190.30(2-a)(a)(b)(c).
> c)  Counsel failed to obtained any and all documents, i.e.
> reviews, reports, evaluations and other materials that's
> maintained by the Crime Laboratory

6.    There is a reasonable cause to believe that the evidence that was before the Grand Jury

was insufficient to support the charges in the Indictment under the provisions of C.P.L.

§§220.39(1), 220.41(1) in that the proceedings were defective and failed to conform to the

requirements of C.P.L. §§190.30(2-a), 190.65(1)(3), 70.10(1), 210.20, see also, People v. Deegan,

516 NYS2d 651, 652.

7.    It is the defendant's belief that a review of the Grand Jury minutes will conclusively

show that the essential elements of the alleged crime was not proven to a "moral certainty" as

applied to a case involving wholly circumstantial evidence, this standard limits the reviewing

Court's inquiry to determining whether the facts and the inferences that logically flow from the

facts that supply proof of every element of the offense charged. [see, C.P.L. §§210.20(1)(b),

190.50(1)(b)].

8.    It is the defendant argument that proof of intent, where the requisite knowledge was

completely lacking in the evidence presented to the Grand Jury and that the said evidence was

insufficient to establish even a "prima facie" case against the defendant. (see, C.P.L.

§§210.20(1)(B), 190.65(1)(B)).

9.    In the case at bar, the defendant argues that the laboratory report(s) and or field test report

does not contain the Electronic Transmittal Memorandum and the Grand Jury foreman stamp

2

**SR 003**

conforming to the requirements of C.P.L. §190.30(2-a)[1], nevertheless, it was still entered as evidence by the prosecution under indictment No.5643/07, for a defendant to be further prosecuted at trial in violation of the defendant's Constitutional rights to Due Process and Equal Protection (see, People v. River, 612 NYS2d 782; Dougherty v. Milliken, 163 NY 527, 533. Since the failure to file the certified report or a certified copy of the report herein entered can not be considered as a harmless error, since it was a plain error of such a degree that the integrity of the Grand Jury was impaired and Prejudiced resulted in a guilty verdict.

10.     There was insufficient evidence to establish that the defendant had sold a controlled substance or possessed a controlled substance.  Furthermore, the evidence was not sufficient, credible or worthy to warrant a prosecution in this case, see, People v. Tomaino, 670 NYS2d 938, 953-954, the defendant does not believe that a true bill was entered by the Grand Jury's foreman [see, People v. Martin, 419 NYS2d 724, People v. Neidhart, 71 NYS2d 591]

11.     To determine whether the prosecution gave legal instructions to the Grand Jury on the Public Health Laws Article 33, section(s) 3306, 3371, 3374, which establishes the schedules of groups of controlled substances (see, C.P.L. §715.50(1)(2)(3).

12.     To determine whether the prosecution refused to answer or improperly answered questions or inquiries' made by members of the Grand Jury, constituting prejudicial error and rendering the indictment mull and void (see, People v. Montalvo, 449 NYS2d 377).

13.     To determine whether the prosecution gave legal instruction as to the weight of the Controlled Substances-to wit-aggregated and/or pure weight in that the defendant knowingly and unlawfully sold and/or possessed a narcotic drug.

---

[1] **Exhibit A is being submitted for the limited purposes of demonstrating to the Court just what a proper laboratory report with all of the above requirements of C.P.L. §190.30(2-a) in place**

3

14.        Counsel was ineffective due to the fact that counsel did not bring up the issue about the Electronic Transmittal Memorandum in accordance with Criminal Procedure Law §190.30(2-a), also the three statutory safeguards as set forth in clauses (a)(b)(c).

15.        Counsel failed to conduct an investigation into the matter of this action on behalf of his client, see, Powell v. Alabama, (1932) 287 U.S. 45, is not understandable.

16.        The right to Counsel would be meaningless if it did not require effective assistance and substantial aid, id. 287 U.S. 45.

17.        Counsel must conduct an appropriate investigation both factual and legal to determine if matters of defense can be developed and to allow himself enough time for reflection and preparation for trial see, Coles v. Payton, 1968, F2d 224.

18.        Counsel should have acquired the following documents to assist in preparing for trial and/or a defense.  Counsel should have obtain any and all reviews, reports, evaluations or other documents provided by the New York City Police Department Crime Laboratory, Laboratory reports by any forensic consultants or forensic inspector regarding controlled substance examination conducted by the Laboratory.

19.        Counsel should have acquired any an all documents, reports or other material maintained by the Laboratory containing information about the Laboratory's controlled substance examinations.  The documents reports or other materials shall include but not limited to:

20.        A. The protocol used in testing the alleged controlled substance in the above captioned case.

21.        B.  Any and all materials describing or documenting the cleanliness or lack of cleanliness and the good housekeeping or lack of good housekeeping of the laboratory.

31.       L.       The curriculum vitae for the laboratory personnel who tested the alleged controlled substance in the above captioned case.   If the curriculum vitae do not exist, a statement detailing the personnel's relevant education, training and any and all publications produced or published by the Chemist.

32.       M.       The laboratory's application for exemption from the New York State Forensic Laboratory Accreditation and any supporting documents submitted to the New York State Commission on Forensic Science.

33.       N.       Any and all documents submitted to the New York State commission on Forensic Science relating to the laboratory's application referenced in the last paragraph.

34.       Defense Counsel failed to request the documents described in the above paragraphs which were needed in order to adequately prepare a proper defense, it was necessary to have obtained copies of the requested materials or call the police chemist as witnesses for the following reasons:

35.       In order to meet its burden in the instant case, the prosecution must prove beyond a reasonable doubt that the alleged controlled substances were Cocaine.

36.       Had counsel obtained the numerous documents (laboratory reports) which, at a minimum would have strongly suggested that the New York City Police Department Crime Laboratory controlled substance examination were unreliable.   The laboratory documents would have included an evaluation of the laboratory forensic inspector with the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCD/LAB") inspectors in evaluating the laboratory.

37.       The evaluation, entitled Recommendations to the New York City Police Department regarding an Accreditation Inspection are based partly on an inspection of the

6

laboratory conducted between November 1996 and October 1999 to the present, and there is still no proof of accreditation to date.

38.     At a minimum, the recommendation would have strongly suggested that a conviction based on laboratory's controlled substance examination in this case is not "a verdict worthy of confidence", kyles v. Whitely, 514 U.S. 419, 131 L.Ed.2d 490, 506(1995).

39.     The recommendation would have strongly suggested, among other things that: (a) the procedures used in testing the alleged controlled substance in the defendant's case are not generally accepted in the forensic field.  The recommendations would have found a reasonable expectation that the procedures currently used would not be considered as generally accepted in the field by an ASCLD/LAB inspection team.  The laboratory does not meet the ASCLD/LAB standard for using procedures generally accepted in the field or supported by data gathered and recorded in a scientific manner.

40.     That the alleged controlled substance in the defendant's case was contaminated of cleanliness and good housekeeping at the laboratory.  The recommendations describe the cleanliness and apparent good housekeeping in the laboratory as "deplorable.  The laboratory general cleanliness and apparent good housekeeping does not meet the ASCLD/LAB standard for protecting evidence from loss, cross transfer, contamination and/or deleterious change.

41.     That the laboratory does not routinely check the reliability of the reagents used in testing controlled substances in the defendants' case.  The recommendation would have found that for controlled substance determinations, the reagents for color and crystal tests are only checked at after the time of the initial preparation but not before.  The laboratory does not meet the ASCLD/LAB standard for routinely checking the reliability of its reagents.

42.     That the chain of custody regarding the alleged controlled substance in the

7

defendants' case were not intact. The recommendations would have found that although signatures are required at points in the process, e.g. from the borough to the vault and to the chemist, this was not followed in all cases. The recommendations found that the laboratory's handling and preserving the integrity of the evidence did not meet ASCLD/LAB standards.

43.        That the laboratory was not secure, permitting tampering with and/or the contamination of the alleged controlled substance in the defendants case. The recommendation found that the laboratories security did not meet ASCLD/LAB standards.

44.        That any equipment and/or instruments used in testing the alleged controlled substance in the defendants case was not properly maintained and/or calibrated. The recommendations found that the laboratory did not meet the ASCLD/LAB standards for maintenance and calibration of the equipment and instruments.

45.        That the chemist who tested the alleged controlled substance in the defendants case was fatigued while testing the alleged controlled substance in the defendants case and/or while evaluating the test results. The recommendations found that most staff appear to have a second job to make ends meet, for some, it appears that the laboratory is the second job.

46.        That the chain of custody records with all the necessary data was not maintained regarding the alleged controlled substance in the defendants case. The laboratory is required to maintain chain of custody records, however, it has been noted that the chain of custody records were being half completed, and the newly developed procedure does not require all aspect of a completed chain of custody documentation to be covered.

47.        The laboratory does not meet the ASCLD/LAD standards for having records on file demonstrating a complete chain of custody with all the necessary data.

48.        That the appropriate controls and standards were not specified in the procedures

employed in the laboratory testing that was conducted in the defendants case and that the controls and standards were not used to ensure that the validity of the examination of the results in the defendants case. The Court should find that no standards or controls were used to ensure that the color and crystal tests were working properly. Because no further tests were performed after the initial validation of the reagents, the laboratory did not meet the ASCLD/LAB standards for having appropriate controls and standards specified in the procedures and used to ensure that the validity of the examination results.

49.        That any testing of the alleged controlled substance in the defendants case might have included the use of a non-functioning micro-spectrophotometer. The laboratory did not meet the ASCLD/LAB standards for instruments/equipment being in proper working order with a non-functioning micro-spectrophotometer.

50.        That the reports of the chemist who tested the alleged controlled substance in the defendants case were not reviewed by another to ensure that their conclusions are reasonable and within the constraints of scientific knowledge. The Court should find that while some review is conducted in some units, it is inadequate and usually done by a person without the necessary qualifications. For most drug cases there is essentially nothing in the file to review. The laboratory does not meet the ASCLD/LAB essential standard for reviewing the reports to ensure that the conclusions of its examiners are reasonable and within the constraints of scientific knowledge.

51.        That the chemist who tested the alleged controlled substance in the defendant's case did not have the necessary experience/training to commensurate with the examinations and anticipated testimony would have provided.

52.        The prosecutions burden at trial includes proving beyond a reasonable doubt that

the substance allegedly sold were a controlled substance and the trial testimony provided no proof of such.   Therefore, a critical issue in this case is whether the laboratory controlled substance examination was reliable; the answer is **"N0"**.

53.        To be reliable, scientific testimony must be grounded in the scientific method and must constitute more that a subjective belief or unsupported speculation, Daubert, 125 L.Ed.2d @480-481.   Among the factors bearing on reliability include: (1) whether the theory can be tested, (2) whether or not the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) to some extent, general acceptance in the field, Id. @482-483.   The testimony of the police chemist who quality as experts could have fail to meet this standard of reliability.   The record is silence as to the four factors as stated above, and had the police chemist would have testify as experts their testimony would have been based upon a subjective belief and unsupported speculation.   The four points demonstrate this.

54.        Thus, having failed to meet all of the above criteria, the police chemist opinion should have still been admitted in support the defendants' contentions of unreliable scientific testing, because counsel failed to call any/all police chemist who tested the all alleged controlled substance, amounted to Ineffective Assistance of Counsel.

55.        It should be noted that Defense Counsel was unprepared as well as unaware that the only evidence the people offered at trial that showed that Green had a predisposition to commit the crime charged, was uncharged crimes.   Where a defendant may be charged with a crime where the act is unequivocal and where intent can be inferred from the act, but where a defendant denies having committed the act altogether.   In such a situation, evidence of prior crimes was inadmissible to show intent. .See, People v. McKinney, 24 N.Y.2d 180 (1969).

56.        Also, the Court of Appeals also stated in People v. Allweiss, that the admission of

uncharged crimes, the People must establish that the defendant was the perpetrator of the crime charged.  However, the fact that the defendant has committed similar crimes in the past is insufficient to do so here an allow such admittance of uncharged crimes, and thus it is an insufficient ground for admission here. 48 N.Y.2d 40 (197).

57.         The Court also stated in People v. Baez, that the use of prior uncharged crimes simply to characterize the defendant has been disallowed. ("Where a defendant is on trial for a drug sale, evidence of prior uncharged crimes was used to show that the defendant was a "big time" drug dealer.  The Court reversed his conviction, stating that the use of the prior crimes in this fashion was unnecessary, 103 A.D.2d 746 (2nd Dept. 1984).  The introduction of this type of evidence is generally excluded for policy reasons because it may induce the jury to render a guilty verdict based on collateral matters. (People v. Lewis, 69 N.Y.2d 321, 325; People v. Till, 201 A.D.2d 43, 46, Iv. granted 84 N,Y.2d 874; also see, Richardson, Evidence sec. 4, at 2[Prince 10th Ed].

58.         In short, there was no competent testimony to indicate that Green was in possession of a controlled substance, let alone, assisted, ordered, or aided Brown in the purported sale of a narcotic drug.

59.         The Court should decline to give Law of the Case effect to this aspect of the Courts' decision.  In view of no supervening authority that permits the legislature to make a defendant's rights to Effective Assistance of Counsel at trial contingent upon actions by a defendant, where the petitioner is a layperson in the matters of the law and could not have known that the omissions by his trial counsel, attacking the sufficiency of the people's evidence, in that the people had failed to prove every element of the offense charged.  This was a fatal flaw in their pleadings, and the People has not argued to this Court at trial that such authority exists.  Had

11

SR 011

counsel properly performed his duty to effectively address these issues, Petitioner's conviction would have been reversed,

## MOTION TO RECONSIDER THE INSPECTION OF THE GRAND JURY MINUTES

60.        In the written decision this court ruled that the evidence before the Grand Jury was legally sufficient and procedurally proper.  It is submitted that the decision should be reconsidered.

61.        In the instant matter upon Information and Belief, the Grand Jury was presented with a laboratory report prepared by an employee of the NYPD concerning his or her analysis conducted at the NYPD Crime laboratory.  It is submitted that this evidence should be ruled insufficient to support the instant indictment.

62.        Pursuant to an article which appeared in the New York Daily News (attached), and the New York /times (appearing in the paper thanksgiving weekend) The NYPD laboratory has been denied accreditation by the American Society of Crime Lab Directors.  The denial of accreditation was made pursuant to an inspection by the Society in November 1996 and again in 1999.  The Society is the body charged with accrediting crime laboratories in the State of New York.

63.        According to the article the laboratory was denied accreditation in part because after an inspection the Society found "several serious lapses" at the lab.  Included in these lapses was the fact that at least seven of the NYPD chemists could not identify heroin crystals in a drug sample.

64.        Furthermore, according to the article, ROBERT KEATON, a Board member of the Society confirmed that the NYPD lab has not been accredited by the Society.  The article also stated that the Society would continue to inspect the lab until the lab passed the inspection and

12

SR 012

became accredited. The newspaper confirmed that New York State law requires accreditation of all Crime Labs in this State.

65.        It is submitted that the admittance of expert evidence concerning laboratory analysis fro a Crime Lab that is not accredited is in violation of New York State Law, and therefore cannot be considered competent evidence to support an indictment. It is submitted that if the NYPD lab cannot earn full accreditation as required by New York State from the oversight Crime lab Society, the prosecutor cannot introduce as expert testimony the results of tests performed by the flawed laboratory. In effect, the Grand Jury heard evidence from a laboratory that has not been ruled competent to perform tests and, accurately report the results of these laboratory tests. To allow said evidence before the Grand Jury impairs the integrity of that body. It is submitted that an indictment based on such flawed evidence is improper and must be dismissed.

66.        Furthermore, it is submitted that the failure of the prosecutor to inform the Grand Jury that the NYPD lab had not gained accreditation was improper and tainted the Grand Jury proceeding. The Grand Jury was not given evidence it should have considered in making the determination of whether the expert testimony that would have been given by the laboratory analyst was competent and credible. It is submitted that the Grand Jury should have been informed about the lack of accreditation of the NYPD lab, it would have aided the jurors in determining whether the evidence presented by the expert witness based on tests performed at this lab was correct, sufficient, and worthy of belief. In effect, by failing to so inform the Grand Jury of the failure of the NYPD lab to gain accreditation, the Jurors were denied the tools necessary to evaluate whether, the expert testimony of the witness, based on tests performed at a lab that has not been accredited, should be accepted as sufficient in this case.

67.          In the present matter the fact that a narcotic was sold or possessed is an element of the crime charged.  The failure of the prosecutor to supply the Grand Jury with the information that the NYPD lab is not accredited, has deprived the Jurors of any meaningful opportunity to reasonably and rationally consider whether, there has been sufficient proof presented to establish that the items the defendant allegedly sold and/or possessed, were indeed a controlled substance. It is submitted that this failure severely affected the Grand Jury process and impaired the integrity of the Grand Jury.

68.          Therefore, it is submitted that this court should reconsider it's ruling concerning the sufficiency of the Grand Jury and upon reconsideration, dismiss the indictment because: (1) the  NYPD laboratory was not accredited and therefore the conclusions based on it's work cannot be submitted to the Grand Jury, and (2) the failure of the prosecutor to so inform the Grand Jury about the lack of accreditation impaired the Grand Jury's deliberation concerning an element of the crime charged.  Thus, it is submitted that the indictment should be dismissed.

### MR. GREEN WAS DEPRIVED OF MEANINGLESS REPRESENTATION BY HIS TRIAL COUNSEL, WHEN COUNSEL FAILED TO PREPARE A PROPER DEFENSE OR CALL WITNESSES.

69.          It is elementary that the right to effective assistance of representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and facts relevant to the defense and who is familiar with and able to employ at trial both the basic principles of criminal law and procedures.  The Supreme Court of the United States have long recognized that the right to counsel would be meaningless if it did not require effective assistance and substantial aid, Powell v. Alabama, 287 U.S. 45.

70.          Professionalism demands that counsel must thoroughly review the facts and laws of the case relevant to his clients' defense and exhibit his practice expertly because proper

representation involves more than courtroom conduct. It is axiomatic that counsel must investigate all apparently substantial defenses available to a defendant and must assert them in a proper and timely manner. This was not the case in this instance matter, no matter what the apparent degree of a defendant's depravity or the likelihood of his guilt, the right to the constitutional shelter of Effective Assistance of Counsel and a fair trial are to forever remain in violate. Wilson v. Phend, 417 F.2d 1197; Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981); Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.

71.        The Due Process Clause of the Fourteenth Amendment mandates that the State prove the existence of each and every element of the offense charged beyond a reasonable doubt. This was not done since defense counsel failed to investigate and call (all) possible witnesses, present document or to prepare a defense.

72.        Defense Counsel demonstrated a total ignorance of applicable law (United States v. Goodwin, 531 F.2d 347 and the failure to conduct any legal research (Cosey v. Wolff, 562 F.Supp. 140, aff'd 727 F.3d 656, in that he failed to recognized that under New York State law, that before evidence implicating another suspect can be admitted "there must be such proof of connection with the crime, such as a train of facts or circumstances as tending to clearly point out someone besides the accused as the guilty party". Evidence of motive, ability, and the opportunity for a third person or persons to commit the crime is a sufficient foundation for the introduction of other suspect evidence. Such evidence must be "coupled" with other evidence tending to connect such other person with the actual commission of the crime charged. (United States v. Armstrong, 621 F2d. 951, 953; see also, United States v. Perkins, 937 F.2d 1397, 1400(A defendant is entitled to introduce evidence which tends to prove someone else committed the crime); United States v. Brannon, 616 F2d 413, 418(A defendant is entitled to

15

SR 015

prove his innocence by showing that someone else committed the crime).

73.        Because of defense counsel's unpreparedness, counsel failed to put before the jury evidence that someone else had committed the crime charged.  Because of counsel's failure to capitalized on Mr. Steven Brown's ("Brown) sentencing allocution which demonstrated that someone other than the petitioner committed the crime charged.   Counsel also failed to demonstrate that someone else had the opportunity, ability, and motive to commit the crime. Most importantly, the excluded evidence showed that the evidence would have supported an alternative theory of how the crime might have been committed

74.        This argument was crucial to the defense because the sale and possession occurred in Brown's apartment, and the petitioner and Brown was the only other persons known to be at the scene of the crime.   The jurors would naturally ask themselves that, "if the defendants was in the building, then he probability committed the crime charged.

75.        The introduction of Brown as the true person that committed the crime and was in possession of the controlled substance, would have answered that question, rebutting the inference that Edward Green("Green") must have possessed the drugs, because no one else was in a position to do so.  In addition, petitioner's attorney failed to argue that the prosecution's evidence didn't prove that petitioner had been in possession of a controlled substance, this is also significant because there was so little direct evidence of what actually happened, and this was far from an admission of guilt.

76.        Because petitioner's counsel was unfamiliar with the case he was barred from introducing the evidence that someone else was in possession of the drugs, nor could he fully argue the police sloppy investigation theory.  Because of counsels being unfamiliar with the case he could not point out what the police hadn't done, nor could he suggest no exculpatory evidence

that the police might have found had they conducted a more thorough investigation. The excluded evidence would have lent support to the petitioner's theory that someone else had possession of the drugs and under mined the prosecutor's claim that a more thorough investigation would have turned up nothing of value. Rather than being limited to trying to poke holes in the prosecutions case, counsel could have plausibly argued that a more thorough investigation would have produced evidence incrimination only Brown as having possession of the drugs.

77.       Finally, in light that the prosecution had no other eyewitnesses and the rest of its case consisted of weak circumstantial proof, Green should not have been found guilty of the crime of Criminal Possession of a Controlled Substance.

78.       The people failed to present legally sufficient evidence to convict Green of the charge of Criminal Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law §§220.21(1), 220.16(1)and

79.       In order to be convicted as an accomplice, a defendant must act with the mental culpability required for the commission of the offense and must request, solicit, command, importune or intentionally aid the principal actor ("Brown") to engage in the commission of the offense. see, Penal Law ("PL")§20.00.Furthermore, there was no evidence that Green and the person (Brown) who possessed and sold the drugs, had any interaction either before or after the actual sale by Brown. Clearly, the record shows that Green was engaged in no criminal conduct of any description when arrested. Significantly, no contraband or buy money was recovered from Green after his arrest which supports the conclusion that Green in no way assisted, requested, solicited, commanded, importuned or intentionally aided Brown to engage in the commission of possession or the sale of a controlled substance.

80.      Further, the testimony did not show, as would have been necessary to sustain his conviction as an accomplice for the Criminal Possession with the intent to Sale a Controlled Substance or that he shared the seller's intent to bring about the drug transaction.

81.      Further, Green, did nothing to possessed, let alone, demand or importune the illicit possession or sale of a controlled substance.  The necessary conditions for establishing accomplice liability having been thus left unsatisfied, and there being no other capacity in which the defendant may be said to have participated in the charged possession and or sale.  The record is barren of testimony which demonstrated that Green possessed with the intent to sale or ordered or engaged any person to possess and sale a narcotic drug.  Had Counsel properly perform his duty to effectively address these issues, Greens conviction would have been reversed.

## DEFENSE COUNSEL FAILURE TO PREPARE A DEFENSE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL

82.      The failure of Green's Counsel to prepare a defense constituted Ineffective Assistance of Counsel.  First, Mr. Keith decided not to prepare a proper defense for Green solely because he was confident that at the close of the prosecution's presentation of its evidence, the trial judge would have granted the defense motion to dismiss or the jury would have found Green not guilty.    Counsel opted not to prepare a defense based entirely on this rational militates strongly in favor of the conclusion that his representation of Green was Constitutionally deficient. See, Harris v. Reed, 894 F2d 871, 878-879.

83.      [S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable, and strategic choices make after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigations.  Defense counsel had a duty to make a

reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. Where ineffective assistance counsel is alledged, a particular investigation must be directly assessed for reasonableness in all circumstances. As to a "conscious" decision, see Bean v. Calderon , 163 F3d 1073, 1079(noting that a decision cannot be characterized as "strategic" where it was a resulted only from confusion); United States v. Gray, 878 F.2d 702, 712("counsel's behavior was not colorably based on tactical considerations but merely upon a lack of diligence").

84.     As to "reasonably informed" decisions: see, Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000)(noting that a decision based on a legal misunderstanding was not animated by "strategic" calculation); Kimmelman, 477 U.S. at 368, 106 S.Ct. 2574(noting that a decision based on ignorance of relevant facts and mistaken beliefs was not based on "strategic considerations);Smith v. Stewart, 189 F.3d 1004, 1010(holding that an attorney's decision not to pursue certain evidence was not "strategic" where, it was based on a lack of understanding of what constituted such evidence) and Williams, 59 /f.3d at 680(because of his ignorance, counsel was unable to make any strategic decision"); and compare Crisp v. Duckworth, 743 F.2d 580, 587("contrasting an attorney's general polic[y]" of how to defend a case with "strategic decisions," which are "decisions based on the specific facts of a given case"). The Supreme Court has explained that "[s]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052. But "virtually unchallengeable" does not mean wholly unchallengeable, see, Phoenix v. Matesanz, 233 F.3d 77, 82, n.2(1st Cir. 2000), and decisions that are not reasonably informed have emphatically not been "made after a thorough investigation of law and facts."

85.     Green's trial counsel failure to call any witnesses and to rely entirely on the people's

evidence in exonerating the defendants was thus "strategic" in the sense that it related to a question of trial strategy which witnesses to call and it was trial "strategy" also in that it was made by counsel to advance a particular goal. That goal, was mainly avoiding work-not, as it should have been, serving Green's interests by providing him with reasonably effective representation.

86.        Counsel's decision was "strategic" in some senses of the word, it was not the sort of conscious, reasonably informed decision made by an attorney with an eye to benefitting his client that the Federal Courts have denominated "strategic" and especially reluctant to disturb.

87.        Accordingly, the hesitation to disturb "strategic" decisions described above has no bearing on this case. There are many ways to properly assist a client, but making important decisions with no regard for a client's interests is not one of them.

88.        Counsel's representation of Green was unprofessional to the point of being constitutionally "deficient" and "flawed". The cumulative weight of these flaws deprived Green of his constitutionally protected Sixth Amendment Right to Effective Assistance of Counsel.


## CONCLUSIONS


WHEREFORE, based upon these and a multitude of other failures, Green was deprived of meaningful representation. Accordingly, the petitioner's conviction should be reversed and a new trial ordered. In the alternative, a hearing should be held for a finding of facts.


WHEREFORE, your deponent submits that the aforesaid conviction was obtained in violation of Green's rights under the Constitution of the United States, and Green moves this Court in

20

**SR 020**

accordance with CPL §330.30(1), 330.40(2)(a), 330.50(1) in vacating the judgment of the Supreme Court and reversing Green's conviction and ordering a new trial based upon the facts that Green was denied Effective Assistance of Counsel.  Such grounds, if raised on appeal would require a reversal of conviction as a matter of law, and for such other and further relief as may be just and proper.

Dated: ~~September~~ October   2008

Respectfully Submitted

Edward Green, Pro-se
Manhattan House of Detention
125 White Street
New York, New York 10013
349-07-20174

Sworn to before me this
day of ~~September~~ 2008
October

**TO:**   CLERK OF THE SUPREME COURT
100 Centre Street
New York, New York 10013

Hon. Robert M. Morgenthau, Esq.,
District Attorney, County of New York
One Hogan Place
New York, New York 10013

Arnold P. Keith Jr. Esq.
350 Broadway, Suite 1201
New York, N.Y. 10013
Defense Counsel

Sworn to before me this
day of ~~September~~ 2008
October

21

**SR 021**

*To be argued by*
**NATALIE REA**

# NEW YORK SUPREME COURT

## APPELLATE DIVISION — FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

**EDWARD GREEN,**

Defendant-Appellant.

## BRIEF FOR DEFENDANT-APPELLANT

**STEVEN BANKS**
Attorney for Defendant-
Appellant
THE LEGAL AID SOCIETY
Criminal Appeals Bureau
199 Water Street - 5th Floor
New York, New York 10038
(212) 577-3403

NATALIE REA
*Of Counsel*
February, 2010

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iv

PRELIMINARY STATEMENT................................................................ 1

QUESTIONS PRESENTED ................................................................... 2

INTRODUCTION............................................................................... 2

STATEMENT OF FACTS .................................................................... 4

PRETRIAL PROCEEDINGS ................................................................ 4

    The Darden-type Hearing ............................................................. 5

    The Redacted Testimony ............................................................. 5

    Findings of the Court.................................................................. 8

        Original Findings ................................................................. 8

        Modified Findings ............................................................... 9

        Supplemental Findings ....................................................... 11

THE TRIAL ..................................................................................... 12

    Opening Statements and "door opening" Motion ............................. 12

    The Trial Evidence .................................................................... 16

        The Second-floor Apartment ................................................ 16

        The Fourth-Floor Apartment ................................................ 18

    Motions and Summations............................................................ 20

    Charge, deliberations, jury notes, and verdict.................................. 23

i

ARGUMENT

## POINT I

THE COURT COMMITTED A MODE-OF-PROCEEDINGS ERROR AND VIOLATED APPELLANT'S RIGHT TO COUNSEL WHEN IT FAILED TO NOTIFY EITHER APPELLANT OR COUNSEL ABOUT, AND NEVER ANSWERED, A JURY NOTE ASKING TO OPEN AN EXHIBIT BAG TO TEST THE KEY AND LOCK CONTAINED THEREIN. U.S. CONST., AMENDS. VI, XIV; N.Y. CONST., ART. I, §6; C.P.L. §310.30.

## POINT II

THE COURT DEPRIVED APPELLANT OF HIS RIGHTS TO COUNSEL AND TO BE PRESENT AT ALL MATERIAL STAGES OF THE PROCEEDINGS WHEN IT HELD THE SUPPRESSION HEARING IN THE ABSENCE OF BOTH COUNSEL AND APPELLANT, MANDATING REVERSAL. U.S. CONST., AMENDS. VI, XIV; N.Y. CONST., ART. I, §6; C.P.L. §§260.20.

## POINT III

COUNSEL WAS INEFFECTIVE WHEN, IN SUMMATION, HE TOLD THE JURY THAT ONLY SOMEONE IN "DRUG TRAFFICKING" WOULD RECOGNIZE THE DRUG PARAPHERNALIA, OPENING THE DOOR TO APPELLANT'S TWO PRIOR DRUG FELONY CONVICTIONS AND TO THE PROSECUTOR'S REPEATED STATEMENTS

...25

...29

ii

IN CLOSING THAT APPELLANT WAS A CONVICTED DRUG DEALER. U.S. CONST., AMENDS. VI, XIV; N.Y. CONST., ART. I, §6.. ................... 33

POINT IV

THE COURT ERRED IN FINDING THAT COUNSEL'S RHETORICAL COMMENTS IN OPENING "OPENED THE DOOR" TO THE INTRODUCTION OF THE ILLEGALLY RECOVERED AND PREVIOUSLY SUPPRESSED KEYS. U.S. CONST., AMENDS. IV, XIV; N.Y. CONST., ART. I, §6. ....................................... 39

CONCLUSION ........................................................................... 44

ADDENDUM

STATEMENT PURSUANT TO RULE 5531 .................................. 1A

iii

# TABLE OF AUTHORITIES

## FEDERAL CASES

Snyder v. Massachusetts, 291 U.S. 97 (1934) ............................................... 30

Strickland v. Washington, 466 U.S. 668 (1984) ............................... 30, 34, 43


## STATE CASES

People v. Anderson, 16 N.Y. 2d 282 (1965) ................................... 3, 30-31, 33

People v. Baldi, 54 N.Y. 2d 137 (1981) .......................................... 34-35, 43

People v. Betts, 70 N.Y. 2d 289 (1987) ......................................................... 28

People v. Bonaventure, 251 A.D. 2d 422 (2d Dept. 1998) ........................... 39

People v. Brown, 48 N.Y. 2d 388 (1979) ..................................................... 28

People v. Darden, 34 N.Y. 2d 177 (1974) ............................................. Passim

People v. De Los Angeles, 270 A.D. 2d 196 (1st Dept. 2000) ..................... 36

People v. Delarosa, 287 A.D. 2d 735 (2d Dept. 2001) ................................. 35

People v. Dokes, 79 N.Y. 2d 656 (1992) ...................................................... 30

People v. Duplessis, 16 A.D. 3d 846 (3rd Dept. 2005) ................................ 36

People v. Henry, 95 N.Y. 2d 563 (2000) ................................................. 34-35

People v. Kelly, 11 A.D. 3d 133 (1st Dept. 2004) ........................................ 27

People v. Kisoon (Martin), 8 N.Y. 3d 129 (2007) ............................... 3, 26-28

People v. Lauderdale, 295 A.D. 2d 539 (2d Dept. 2002) ............................. 35

iv

People v. Massie, 2 N.Y. 3d 179 (2004) ...................................................... 39

People v. Melendez, 55 N.Y. 2d 445 (1982) ................................................ 14

People v. Mullins, 179 A.D. 2d 48 (3d Dept. 1992), leave denied, 80
    N.Y. 2d 835 (1992) ........................................................................... 39, 41

People v. O'Rama, 78 N.Y. 2d 270 (1991)............................................. 26, 28

People v. Ofunniyin, 114 A.D. 2d 1045 (2d Dept. 1985)............................. 37

People v. Rojas, 97 N.Y. 2d 32 (2001) ........................................................ 14

People v. Slaughter, 78 N.Y. 2d 485 (1991)............................................ 31, 33

People v. Snider, 49 A.D. 3d 459 (1st Dept. 2008) ..................................... 27

People v. Tabb, 13 N.Y.3d  852 (2009) ........................................... 3, 26, 28

People v. Trait, 139 A.D. 2d 937 (4th Dept. 1988) ..................................... 35

People v. Wardlaw, 6 N.Y. 3d 556 (2006)................................................ 31, 33

People v. Wesley, 73 N.Y. 2d 351 (1989) .................................................... 32

People v. Williams, 38 A.D. 3d 429 (1st Dept. 2007).................................. 27

## CONSTITUTIONAL PROVISIONS

N.Y. Const., Art. I, §6 ..........................................................................Passim

U.S. Const. Amend. VI ........................................................................Passim

U.S. Const., Amend. XIV .....................................................................Passim

v

## STATUTES

C.P.L. §240.50 ................................................................................ 4

C.P.L. §260.20 ........................................................................ 29-30

C.P.L. §310.30 ....................................................................... Passim

P.L. §220.16(1)) .............................................................................. 1

P.L. §220.21(1) .............................................................................. 1

P.L. §220.50(2) and (3)) ................................................................. 1

vi

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:   FIRST DEPARTMENT

----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,                        :

                             Respondent,                        :

                     -against-                        :

EDWARD GREEN,                        :

                  Defendant-Appellant.          :

----------------------------------------------------------------X

## PRELIMINARY STATEMENT

      This is an appeal from a judgment of the Supreme Court, New York County, rendered October 8, 2008, convicting appellant after a jury trial, of criminal possession of a controlled substance in the first and third degree (P.L. §§220.21(1) and 220.16(1)), criminal use of drug paraphernalia in the second degree (P.L. §220.50(2) and (3)), and sentencing him to a determinate term of imprisonment of fifteen years followed by five years of post-release supervision on the top count and lesser concurrent sentences on the remaining offenses (McLaughlin J., at hearing, trial, and sentence).

      No stay of execution of the sentence has been sought and appellant is presently incarcerated pursuant to the judgment herein appealed.

1

## QUESTIONS PRESENTED

1.     Whether the court committed a mode-of-proceedings error and violated appellant's right to counsel mandating reversal when it failed to notify either appellant or counsel about, and never answered, a jury note asking to open an exhibit bag to test the key and lock contained therein.

2.     Whether the court deprived appellant of his rights to counsel and to be present at all material stages of the proceedings when it held the suppression hearing in the absence of both counsel and appellant, mandating reversal.

3.     Whether counsel was ineffective when, in summation, he told the jury that only someone in "drug trafficking" would recognize the drug paraphernalia, opening the door to appellant's two prior drug felony convictions and to the prosecutor's repeated statements in closing that appellant was a convicted drug dealer.

4.     Whether the court erred in finding that counsel's rhetorical comments in opening "opened the door" to the introduction of the illegally recovered and previously suppressed keys.

## INTRODUCTION

On November 1, 2007, police officers executed a search warrant in the second-floor apartment of 451 Lenox Avenue where they arrested Steven Brown, the co-defendant.  Shortly thereafter, they entered an apartment on

2

the fourth floor – without probable cause – and arrested appellant.   Drugs and drug paraphernalia were recovered.   The drugs were in locked safes in a closed closet.   Appellant was charged with criminal possession of a controlled substance in the first and third degree and possession of drug paraphernalia in the second degree.   The defense was lack of knowledge and lack of dominion and control.

The conviction should be reversed for the following reasons.   First, the court never notified counsel or appellant about, and never answered, a jury note asking to open an evidence bag to test the key and lock contained therein.  People v. Tabb, 13 N.Y.3d  852 (2009); People v. Kisoon (Martin), 8 N.Y. 3d 129, 133, 135 (2007).   Second, the court held the suppression hearing *in camera* in the absence of both appellant and counsel.  People v. Anderson, 16 N.Y. 2d 282 (1965). Third, counsel was ineffective when, in summation, he opened the door to evidence of appellant's prior drug felony convictions and to the prosecutor's repeated reference to appellant as a convicted drug dealer.  Finally, the judgment must be reversed because the court  mistakenly found that counsel had opened the door to the introduction of the suppressed keys.

3

## STATEMENT OF FACTS

Appellant was arrested on November 1, 2007, in the fourth-floor apartment of 451 Lenox Avenue.

## PRETRIAL PROCEEDINGS

In his Omnibus Motion, counsel, describing appellant as the superintendent of the entire building, the manager of the first-floor laundromat, and an invitee in the fourth-floor apartment, moved to controvert the search warrants and to suppress the evidence recovered from the two apartments   (Omnibus Motion ¶¶20 and 23, filed January 18, 2008). The court granted a hearing as to the fourth-floor apartment but summarily denied the motion as to the second-floor apartment for lack of standing (Decision, dated February 19, 2008, Solomon J.,).    Judge Solomon specifically ordered a hearing "with regard to the legality of the detectives' initial entry into this fourth-floor apartment as well as their actions once inside." According to the court, the question was "[w]hether the information contained in the affidavit stemmed from unlawful police conduct and tainted the warrant application." Id. The People were to either turn over the search

4

warrant application and supporting documentation or petition for a "protective order," pursuant to C.P.L. §240.50, i.e. Darden hearing (Decision, dated February 19, 2008, Solomon J.). The case was assigned to the Honorable Justice Joseph McLaughlin and a "Darden-type" hearing later held.

The Darden-type Hearing[1]

The hearing court believed that it had been ordered to conduct a Darden hearing as well as "a hearing related to what was known and what was the basis for probable cause," (H: 56), "at which the basis for the Police entry into the fourth-floor apartment ... would be explored," (Letter from the court to the parties, dated April 10, 2008). The confidential informant and the arresting officer, Detective Anthony Romero, testified at the hearing. Neither appellant nor counsel were present during the testimony.

---

[1]   A Darden hearing is a hearing held in the absence of counsel and defendant, but in the presence of the People, to verify the existence of the confidential informant and whether the police officers had information from the confidential informant amounting to probable cause. See People v. Darden, 34 N.Y. 2d 177 (1974). The testimony of the confidential informant, in this case, is sealed. The redacted hearing testimony of Detective Romero was provided to the parties after the hearing. References to redacted pages of the hearing are preceded by "H".

5

The Redacted Testimony

At the end of the testimony of the confidential informant, the court stated:

> This is a unique situation because this is – we've got a confidential informant and the Judge has ordered – me partially and another judge ordered some hearings.
>
> I have the unfamiliar role of being the defense lawyer here.
>
> This courtroom is locked and everything is sealed. I've obviously just spoken or heard the testimony of what I'm referring to as "001" the informant.
>
> But now, of course, we've got some questions for you [Detective Romero].

(H: 21). Examined by the court, Detective Anthony Romero described the execution of two search warrants at 451 Lenox Avenue on November 1, 2007 (H: 23- 56).  He testified that his team – assigned to the second-floor warrant -- entered the building behind the third-floor warrant team (H: 24). They secured the floor; the door to the apartment was open, they entered and arrested the co-defendant surrounded by drug paraphernalia (H: 23-26; see 28-29).

While Romero and his team conducted the search of the second-floor apartment, the other team rammed the door to the third floor (H: 23).

6

Romero could not hear them (H: 28). Instead of finding one apartment, however, they found four separate locked rooms with a bathroom and, as a result, they could not execute the third-floor warrant (H: 23, 29-32). They had received no information from the confidential informant about the fourth floor (H: 42). Romero testified that "further investigation brought us" to the fourth floor (H: 23). When the court asked: "[h]ow was it that you went into the one [apartment] where whats-his-name [i.e. appellant] was found?" Romero said the lieutenant told him that "they [had] heard someone go into an apartment on that floor and slam a door   (H: 29-31, 34, 39). They secured that floor and Romero returned to the second-floor  (H: 33). A key chain with 5 to 10 unmarked keys was recovered from a jacket on a chair (H: 24, 28). Romero mentioned that the second-floor apartment had a TV monitor directed at the outside of the building and some TV cables went to the fourth floor (H: 33).

The fourth floor, like the third floor, consisted of four individual residences (H: 34, 39). Romero returned from the second-floor and tried the keys recovered from the jacket in the second-floor apartment, one fit the second-floor apartment, one the fourth-floor apartment, and another the door

7

to the third floor (H: 27, 31, 48).   Romero inserted the key into the fourth-floor apartment door and turned it. Before opening, he announced "police;" no one answered; he repeated "police" and then opened the door (H: 36, 43). The apartment [described at trial as the size of a jury box] was completely dark, the TV monitor was off, and appellant was sitting on the couch (H: 36, 44).[2] They arrested him, turned on the light, and found drug paraphernalia in plain view (H: 36-37).   Appellant was carrying a ring with  keys "to just about everything in the building including the laundromat" (H: 36).   The officers got a warrant to search the rest of the fourth-floor apartment including the closet with safes later found to contain approximately 775 grams of cocaine (H: 39-40; T: 313).

Findings of the Court

Original Findings

At the end of the hearing, the prosecution asked the court to limit its findings, in accordance with Darden, to the existence of the confidential informant and the information given by the informant to the officer who gave the information in support of the warrant (H: 58-59).   The prosecutor

---

[2]     There was no evidence that the monitor worked (H: 38).

8

asked that other issues such as the scope of the execution of the warrant be dealt with in an "adversary proceeding" (H: 60). The court agreed that ordinarily those would be the relevant issues but here a "different kind of hearing" had been ordered (H: 59). A hearing had been ordered "to decide about probable cause" (H: 59). Finding that there was no probable cause to search the fourth floor, the court concluded that there was no issue regarding the scope of the warrant (H: 60). The prosecutor commented that "this is a little bit awkward because we do have arguments and law upon which to base our arguments" (H: 64). The court responded that its findings were "not set in stone" (H: 64).

Modified Findings

The day after the hearing, the court informed the parties that it was "not bound by the preliminary remarks made at the end of the hearing" and that it could be "convinced to alter both factual assessments and preliminary identification of the issue" (Letter Dated April 10, 2008). It agreed with the People's request "to litigate any issues presented by the police entry into the fourth-floor" apartment (Id.). The court released the redacted minutes of Romero's testimony and its conclusions, inviting the parties to either

9

"resume the hearing with a further appearance by Det. Romero," "choose to brief the issues which Judge Solomon asked to be resolved," or "submit papers regarding them." Id.

The defense did not ask to recall Detective Romero for cross-examination and requested time to brief "the issue of the constitutionality of the search" (See People's Response to Defendant's Motion to Suppress ["People's Response"], dated June 17, 2008). The defense argued that the evidence recovered from the fourth-floor apartment had to be suppressed (Defense Memorandum, dated May 20, 2008). After summarizing the closed-court redacted testimony of Detective Romero, appellant argued that, as the superintendent of the building, with keys to everything in the building, and a guest in that apartment, he had standing (Defense Memorandum at 13). Judge Solomon has implicitly so found when he had summarily denied the motion as to the second floor for lack of standing (Defense Memorandum at 12). There was no probable cause to enter and therefore, the evidence had to be suppressed (Defense Memorandum at 15-27). The People argued that appellant had no standing and that there had been

10

probable cause to search, the entry was legal because of exigent circumstances and as a valid security sweep (People's Response ¶¶ 1 to 4).

The court found no probable cause to enter the fourth-floor apartment but did not suppress the evidence, finding that appellant lacked standing (Decision, dated June 30, 2008, at 2).  The court acknowledged that counsel and appellant had been excluded from the <u>Darden</u>-type hearing but it had "invited counsel to reopen the hearing for <u>any reason, including cross-examination</u> of Romero" (Decision, dated June 30, 2008, at 9) and counsel had declined.

<u>Supplemental Findings</u>

Appellant moved to reargue asking the court to find that (1) appellant had standing to challenge the admissibility of the drugs recovered from the fourth-floor apartment; (2) the hearing should be reopened to allow appellant to establish standing; and (3) at the very least, the court should suppress the keys recovered from his person  since the entry had been illegal (Defense Motion to Reargue, dated July 12, 2008, at 6).

The court granted the motion in part. It  agreed to suppress the keys recovered from appellant but denied appellant's request to conduct a

11

hearing on the standing issue.   While the court admitted that the keys recovered from appellant "corroborated appellant's statement in the omnibus motion that he was the superintendent, that "testimony, standing alone," did not prove that he was the superintendent   (Decision on the Motion to Reargue at 2).   According to the court, there was no evidence that appellant was an invitee (Id. at 3).

## THE TRIAL

At a Sandoval hearing, the prosecution asked the court to allow the People to introduce evidence of three prior felonies: a 1996 conviction in New York for attempted criminal sale on the third degree, "where along with a co-defendant he sold ziplock bags of cocaine to an undercover"; a 1996 conviction in federal court for possession of a firearm during drug trafficking (the People had little information about this conviction); and a 1982 conviction for attempted kidnapping in the first degree (14-15).   The court ruled that, if appellant testified, the People would be permitted to ask whether he had two felony convictions, whether he had possessed a shotgun, and sold a controlled substance to an undercover (22).   Appellant did not testify at trial.

12

<u>Opening Statements and "door opening" Motion</u>

In his opening statement, the prosecutor told the jury that appellant had been arrested in the fourth-floor apartment of 451 Lenox Avenue, surrounded by drug paraphernalia – including baggies marked "Red Apple" – and 500 grams of cocaine in the closet (233, 245-46).  The prosecutor told the jury that the apartment was a drug den and appellant knew it.  Counsel, during voir dire, had "said numerous times that appellant was merely at the wrong place at the wrong time" but the evidence would show otherwise (249).[3]  Counsel responded by telling the jury that the People would not be able to prove possession beyond a reasonable doubt (256).  He said:

> Now, at the end of the case, when Judge McLaughlin explains the law, he will give you law, he will give you examples and ask you to consider whether the drugs were in a place or a thing that Mr. Green had dominion and control. Was it his home? No. Was it his apartment? Was it his hotel room? No.  Was it his business establishment? Is it? No. Obviously not his automobile.  Did he have the power and authority to do with it as he pleased? How would he know the stuff was in a closet in a locked safe? The judge will instruct you along the lines with regards

---

[3]     During voir dire, counsel mention that appellant had been at the "wrong place at the wrong time" once (111).

13

to whether or not the People can prove possession beyond a reasonable doubt.

Counsel went on to say "what we will learn from the evidence is that this apartment is not owned or leased [by appellant]." "This is a place where clearly others had access. As the police, when they went to the second-floor apartment, they found a set of keys which gave them access to this apartment" (257). Counsel argued that the jury would conclude that there was no proof beyond a reasonable doubt (257).

The prosecutor took the position that by asking the questions about the "place of business," "home," and "apartment," the defense was questioning the existence of dominion and control (379). By repeatedly referring to "the wrong place at the wrong time," he had "affirmatively misled the jury" and opened the door to the introduction of the keys (384, 471-72). In the court's view, counsel had suggested that "others had access to the apartment," meaning that "[appellant] had no access" (460, 462-63). "Since [appellant] had no keys, he must have been let in by somebody with real control" (380). The jury would wonder what to do about appellant in the apartment (383). "The jury should understand about the keys," said the court (380). Counsel responded that he had not "opened the door" to the

14

introduction of the keys (380, 473-74). Relying on People v. Melendez, 55 N.Y. 2d 445, 452 (1982) and People v. Rojas, 97 N.Y. 2d 32, 39 n. 5 (2001), he argued that an opening statement cannot, without some evidence presented at trial, open the door to (1) previously suppressed evidence and certainly not to (2) evidence obtained as a result of illegal police activity (474).

The court disagreed (475). In its view, counsel had mentioned that appellant had been at "the wrong place at the wrong time," he had made a statement about "others having access," "tantamount to saying" that appellant "had no more access to the apartment than anyone else without keys." The court noted that counsel's statement that the jury would not "hear evidence" that appellant had access was "within the legal use of the suppression hearing" (476). The court added that by saying "that not even a New York City Police Officer could get in the apartment without somebody else's keys twisted the suppression ruling by arguing that the defendant had no connection to the apartment and had no means of getting into it other than by someone else's keys" (476). Therefore, the People could introduce the suppressed keys into evidence (477). The court concluded that the

15

introduction of the keys "while adverse to the defendant, is not so overwhelmingly admitted" (477).

The Trial Evidence[4]

Detectives <u>Alfred</u> <u>Hernandez</u> and <u>Anthony</u> <u>Romero</u> described the search of the building at 451 Lenox Avenue on November 1, 2007 (Hernandez: 260; Romero: 408). The detectives and their team, approximately 15 officers in all, went to execute two separate search warrants, one for the second-floor and one for, what they believed, was a single apartment on the third floor (Hernandez: 268, 260). Officers were assigned to teams and to different tasks on the teams such as back-up, front security, back security, and area close-down (Hernandez: 270). They arrived around 5:00 p.m. with their special equipment, battery rams, Kelly tools, shields and flashlights and found a four-story building with a laundromat on the first floor (Hernandez: 270; Romero 411).

---

[4]      References to pages of the trial transcript are preceded by the name of the testifying witness unless they refer to pages of colloquy; references to pages of the sentencing minutes are preceded by "S."

16

The Second-floor Apartment

Hernandez was on the team assigned to the second floor (Hernandez: 273).   The third-floor team went in first, his team followed (Romero: 413). When he got to the second floor, the door to the apartment was open (Hernandez: 274; Romero: 415).   He entered and found the co-defendant sitting at a large table (Hernandez: 276).   The apartment had been turned into an office with a living room to the left of the entrance, a small kitchen to the right, and an alcove with a bathroom (Hernandez: 275-76).   On the table in front of the co-defendant, Hernandez found a small bag of marijuana and an empty gun holster (Hernandez: 284).   Hernandez noted the presence of a video monitor showing the front of the building and the stairs to the second floor (Hernandez: 285; Romero: 416).   Later, the team in the back of the building would notice video cables running from the second-floor apartment to the searched fourth-floor apartment (Hernandez: 301). From the co-defendant himself he recovered a set of keys and $900 dollars (Hernandez: 284).

17

The lock to the second-floor apartment was not vouchered because, according to Romero, the door had been found open (Hernandez: 491).[5] In that apartment, the officers recovered: a wooden box with several bags of cocaine, several plastic baggies, small clear plastic Ziploc bags, $900, a Philly Cigar box – routinely found in New York grocery stores – containing empty plastic bags with the common Red Apple label (Hernandez: 279; Romero: 416). Hernandez testified that he recognized these items as drug paraphernalia commonly used in cocaine packaging (Hernandez: 279-80).

The Fourth-Floor Apartment

While Hernandez and his team were executing the search warrant in the second-floor apartment, the other team broke down the door to the third floor (Hernandez: 299). There, however, instead of finding one apartment, they found four separate locked rooms and one communal bathroom (Hernandez: 299). The team reported hearing a door slam on the fourth floor, leading them to the fourth floor (Hernandez: 301); Romero then went back to the second-floor apartment to get the keys that had been found

---

[5]    Counsel argued to the jury that because the lock to the second-floor apartment had not been recovered he could not test the second-floor key into the second-floor lock (499, 526-30). Counsel argued that the People could not establish a connection between appellant and the second floor without showing that the key fit the lock (506).

18

(Hernandez: 301).    He then tried one of the keys in the fourth-floor apartment door;  it fit (Hernandez: 302).

According to Hernandez, Romero turned the key and opened the door (Hernandez:   303).   The apartment was "pitch dark" (Hernandez: 303). Romero closed the door and went downstairs to get the equipment, flashlight, shields and Kelly tools (Hernandez: 303; Romero 420).  Back on the fourth floor, they opened the door and stormed in yelling police (Hernandez: 303).  Appellant was sitting on the couch, to the right of the entrance, saying nothing (Hernandez: 303).  They turned on the lights; the room was the size of the jury box, to the left was the couch, to the right was a closet cracked open.  The windows had shades and behind the shades, a garbage bag covered the windows (Hernandez: 304).  Appellant was arrested carrying a set of 25 keys, clipped to his belt (Romero: 485, Exh. 29). Among  the 25 keys recovered from appellant, were keys to the fourth and second-floor apartments and a key to the entrance; all the keys, however, were not tested (Hernandez: 290).   Romero testified that he vouchered the keys, the vouchers show that Hernandez vouchered the items (Romero: 497).

19

SR 047

The key, lock, and part of the door to the fourth-floor apartment were introduced into evidence together as Exhibit 4 (Hernandez: 296). In that apartment, they found: several boxes of clear plastic baggies, a bottle of peroxide, baking soda, 10 digital scales, small and big, 3 heat sealers, one in the closet, one under the table and one on the table, small baggies with Red Apple label, pink Philly Cigar boxes, kilo wrappers, two-kilo wrappers in a black garbage bag and what appeared to be cocaine residue on the table (Hernandez: 306). In the closet, they found two locked fire retardant combination safes and drug paraphernalia (Hernandez: 311-12). After they got another warrant, they broke the safes with a sledge hammer and Kelly tools and found in one safe, a baby gift bags with three large chunks of cocaine, and in the other, more Philly Cigar boxes, packages of cocaine and $1000 (Hernandez: 313). The total amount of cocaine from the safes was 375 to 400 grams (Hernandez: 313).

Motions and Summations

At the end of the trial, counsel moved for a trial order of dismissal, arguing that the inconsistencies in the testimony of Romero before the Grand Jury, at the "Darden-type hearing and trial made him unbelievable" (513-

20

**SR 048**

14).  He argued that the testimony was troubling and even just short of an

"outrage" (514).  Counsel noted that the court's finding of no probable cause

at the hearing supported his assessment of the witnesses.  In response the

court noted:

> Perhaps your assessment of my instinct and my reaction is relatively if not largely accurate. I was afraid after the <u>Darden</u> hearing of saying that the entire thing had to be dismissed since I don't get to act, however, on my own personal feelings now or whenever on whim or caprice . . . but I am required to figure out as best I can with my humble mentality what the law is and having been implored and impleaded not to toss the case out of pique or perhaps an assessment of credibility, I didn't think and researched and that's why I had to invoke in my opinion the rule regarding standing.

The court denied the motion (517).

In summation, counsel argued that the evidence was not sufficient to

establish a connection between the activities in the second and fourth-floor

apartments.  The People had not vouchered the second-floor lock so there

had been no evidence to show that the key recovered from appellant actually

fit the lock (526-530).      The credibility of the detectives was seriously

questionable; there were "too many versions" of the events (523).  "They

weren't honest" (531). The Red Apple label bags and Philly boxes were

21

commonly sold in the grocery stores and no inference could be drawn from them (526-30).   There was not sufficient evidence to show that appellant knew what the heat-sealer was for or what the digital scales were for (521-23).   Counsel told the jury "I submit to you that a person involved in drug trafficking may recognize that some of the items can possibly be used" (538).   There was simply nothing to show that appellant knew about the safes in the closet or the drugs in the safes (521).

In response, the prosecutor argued that counsel – by suggesting that appellant had never been involved in drug trafficking -- had opened the door to the introduction of appellant's two prior convictions ruled admissible at the Sandoval hearing (557).   Counsel disagreed and the court told him "I know you do not agree that you opened the door again" (548).   The prior convictions would be established by the court reading appellant's certified copy of the convictions (549).   Counsel objected.   According to the court, counsel had two choices, the court would tell the jury either that appellant had "at least one felony drug conviction" or say "felony drug convictions" (551).   Counsel asked "was there more than one?" (551).   During the following arguments over appellant's record, counsel told the court that

22

telling the jury that appellant had an "arms narcotics trafficking conviction" "will drastically change the case;" Counsel asked "there must be some alternate solution to avoid this draconian result" (554). The court eventually told the jury that appellant had "two convictions related to drug felony charges," "one is for possessing a shotgun in connection with armed narcotics trafficking" and one for an "attempt to commit a drug sale" (561).

In summation, the prosecutor listed all inculpatory evidence against appellant including the digital scales, glass table, heat sealer, large garbage bags, baking soda, half a kilo of cocaine in one safe and the keys to everything in the building (565-66).    In addition, he told the jury, "[appellant] is a <u>convicted felon for possession of a firearm</u> while selling drugs and also for attempting to sell drugs" (567)(emphasis added).  He was not at the wrong place at the wrong time (567). He told the jury, "you know that the defendant, a <u>convicted drug felon</u>, has plenty to hide in that room" (569)(emphasis added).  "He had dominion and control over the room. He had the key to the room.  He had the key to almost everything else in the building including the second floor" (571). The "keys to this case or (sic) at least the icing on the cake" (571). Appellant had the keys to both apartments

23

(580).   The failure to voucher the lock of the second floor was irrelevant since the door to that apartment had been open (581).   The key to the fourth floor was important because that was where the safes were with the drugs (585).   The prosecutor told the jury:   "Only a drug dealer would be there." (588)(emphasis added).

Charge, deliberations, jury notes, and verdict

The court submitted all four counts to the jury: criminal possession of a controlled substance in the first and third degree, and two counts of criminal possession of drug paraphernalia (591-621).   The parties agreed that if the jury requested the exhibits, they could be sent into the jury room.

The first note from the jury requested the exhibits (Court Exh. IV); the second note stated: "[w]e the jury request to try key in lock. Can we open the bag" (Court Exh. V).   The only record evidence of this note is its inclusion in the list of court exhibits.   The third note and the first to be discussed on the record, requested the "clarification of elements for charge" and "if you have dominion and control over space, that is an apartment, do you automatically have control over everything in the room, locked and unlocked" (626).   The parties agreed that in response to the third note, the

24

court should read back the original charge as to the first part of the question and answer "no" to the second question (626-656). The next note announced that the jury had reached a verdict (Court Exh. VII). Appellant was convicted as charged and later sentenced, as a second felony offender, to a term of 15 years on the top count with five years of post-release supervision (S: 17).

## ARGUMENT

### POINT I

THE COURT COMMITTED A MODE-OF-PROCEEDINGS ERROR AND VIOLATED APPELLANT'S RIGHT TO COUNSEL WHEN IT FAILED TO NOTIFY EITHER APELLANT OR COUNSEL ABOUT, AND NEVER ANSWERED, A JURY NOTE ASKING TO OPEN AN EXHIBIT BAG TO TEST THE KEY AND LOCK CONTAINED THEREIN. U.S. CONST., AMENDS. VI, XIV; N.Y. CONST., ART. I, §6; C.P.L. §310.30.

The Court of Appeals, interpreting C.P.L. §310.30, set forth a detailed description of the steps that must be followed in answering a note submitted by a deliberating jury. These steps include notifying counsel of the note on the record and then, answering. In this case, the deliberating jury sent three notes before its last note announcing the verdict. The second note requested

25

permission to open an evidence bag to test the fourth-floor key and lock contained therein. There is no record of the handling of this note. No record that counsel was informed and no record that the note was discussed or answered. It was logged in as a court exhibit but never discussed. Such a mishandling of a jury note was not only a mode-of-proceedings error mandating reversal but a violation of appellant's "core right to the assistance of counsel." U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6; C.P.L. §310.30.

Section 310.30 of the Criminal Procedure Law and the Court of Appeals in People v. O'Rama, 78 N.Y. 2d 270 (1991) set forth the meticulous procedures to be followed when a deliberating jury sends a substantive note. People v. Kisoon, 8 N.Y. 3d 129, 134-35 (2007). When the court receives the note, it must be marked as a court exhibit and, before the jury is recalled, it must be read verbatim into the record in the presence of counsel. People v. Tabb, 13 N.Y.3d 852 (2009). Counsel must then be given a full opportunity to suggest an appropriate response. The court should inform counsel of the substance of its intended response so that he or she can request modifications before the jury returns to the courtroom. When

26

SR 054

the jury returns, the answer must be read in open court. <u>Kisoon</u>, 8 N.Y. 3d at 134-35. In <u>Tabb</u>, the jury sent a note asking for a legal definition.  There nothing on the record about the note.  The Court held that "[i]n the absence of record proof that the trial court complied with the core responsibilities under 310.30, a mode of proceedings error occurred mandating reversal." <u>Id.</u>

In <u>Martin</u>, the companion case of <u>Kisoon</u>, the jury sent a note asking for a supplemental instruction. Due to a clerical error, the trial court "failed to read or respond" to the note, <u>Id.</u> at 133, C.P.L.§ 310.30.   The Court of Appeals concluded that "defendant was denied his core right to the assistance of counsel." <u>Id.</u> at 135.

The only exception to the application of these precautions is when the request from the jury is ministerial and counsel would have no meaningful input. <u>People v. Snider</u>, 49 A.D. 3d 459 (1st Dept. 2008); <u>People v. Williams</u>, 38 A.D. 3d 429 (1st Dept. 2007)(note was ministerial where the court's communication with the juror was the equivalent to saying "wait"). When counsel can provide meaningful input, the note is not ministerial but substantive. <u>People v. Kelly</u>, 11 A.D. 3d 133 (1st Dept. 2004).  In <u>Kelly</u>, a

27

bayonet had been introduced into evidence and testimony had been elicited about how it had been used. During deliberations, the jurors wanted to remove the bayonet from its sheath but the court officer stopped them. Without informing the court or counsel, the officer agreed to the jurors' request.    After the demonstration, the court officer informed the court, the court informed counsel, and they agreed to a curative instruction.    The request had been substantive and not ministerial, and the court told the jury to disregard the demonstration in the jury room.

The request in this case was similar and equally substantive. The jury was asking to embark on a demonstration in the jury room that had never been conducted in the courtroom. Counsel had to be given a chance to think about the request, discuss it with appellant and ask the court to answer or not. The request was equivalent to introducing extra-record information into the jury deliberations,  see People v. Brown, 48 N.Y. 2d 388 (1979), or to the jury asking about unexplained characteristics of an item of evidence, see People v. Betts, 70 N.Y. 2d 289, 295 (1987).  Therefore, the court had to follow the precautions required by O'Rama and C.P.L. §310.30. The court never did. The only record evidence of this note is its inclusion on the

28

exhibit list.  As in <u>Tabb</u>, "[n]othing in the record indicated that the court informed defense counsel," "about the contents of the note."  As in <u>Martin</u>, notice was not provided to counsel and the note was left unanswered. All the precautions of <u>O'Rama</u> and Section 310.30 were ignored and as a result, appellant's rights to counsel was violated and a mode-of-proceedings error committed, mandating reversal.

### POINT II

THE COURT DEPRIVED APPELLANT OF HIS RIGHTS TO COUNSEL AND TO BE PRESENT AT ALL MATERIAL STAGES OF THE PROCEEDINGS WHEN IT HELD THE SUPPRESSION HEARING IN THE ABSENCE OF BOTH COUNSEL AND APPELLANT, MANDATING REVERSAL.  U.S. CONST., AMENDS. VI, XIV; N.Y. CONST., ART. I, §6; C.P.L. §§260.20.

A defendant has a constitutional right to counsel and both a constitutional and  statutory right to be present at all material stages of the proceedings, including pretrial suppression hearings. In this case, appellant and counsel were excluded from the hearing on the motion to suppress physical evidence, held at the same time as an *in camera* <u>Darden</u> hearing pertaining to the existence of the confidential informant. The People asked

29

**SR 057**

for an adversary proceeding.  The court refused.  While the court later gave the parties the opportunity to recall Detective Romero -- who had testified at the <u>Darden</u> hearing  -- for further cross-examination and to raise new issues, it never ordered a suppression hearing, in the presence of counsel, with the presentation of new witnesses and new evidence on the question at issue, probable cause and its related standing question.  U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6; C.P.L. §260.20.

In New York, a criminal defendant has a constitutional right to be present at all material stages of the proceedings and a statutory right to be present at ancillary stages when he/she has something to contribute or when his/her presence may affect the ability to defend.  U.S. Const., Amends.  VI, XIV; N.Y. Const., Art. I, §6; C.P.L. §260.20; <u>Snyder v. Massachusetts</u>, 291 U.S. 97 (1934); <u>People v. Dokes</u>, 79 N.Y. 2d 656 (1992).  A defendant has a right to be present because courts recognize the significant input a defendant has in a case. <u>People v. Dokes</u>, 79 N.Y. 2d 656 (1992).   Critical stages of the proceedings include the right to be present at a suppression hearing. <u>People v. Anderson</u>, 16 N.Y. 2d 282 (1965). A defendant also has the right to counsel under both the federal and state constitutions at such proceedings.

30

U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6; Strickland v. Washington, 466 U.S. 668 (1984).

Darden hearings are an exception to a defendant's right to be present and right to counsel, created to protect the identity of a confidential informant.  People v. Darden, 34 N.Y. 2d 177 (1974).  At such a hearing, the court examines the informant, keeping in mind the special need to protect the interest of the absent defendant.  After the hearing, the court issues a summary report as to the existence of the informant and the communications with the officer.  Id.  The purpose of the hearing is very limited.  Only two issues are determined: whether the informant actually existed and whether the informant provided the probable cause information to the officer conducting the search or seeking a search warrant.  Id.  In other circumstances, where a defendant is involuntarily excluded from a suppression hearing, the judgment must be reversed. People v. Anderson, 16 N.Y. 2d 282 (1965). In other circumstances, where counsel is excluded from a hearing, the appeal must be held in abeyance while a suppression hearing is held.  People v. Slaughter, 78 N.Y. 2d 485 (1991); People v. Wardlaw, 6 N.Y. 3d 556 (2006).

31

In this case, no adversarial hearing was ever held on the motion to suppress the evidence recovered from the fourth-floor apartment. The People asked for an adversarial hearing but the court refused. The court conducted a proper <u>Darden</u> hearing but erred in conducting the suppression hearing at the same time. It knew that something was wrong with the process. Indeed, before the suppression part of the hearing, the court commented that it was in "the unfamiliar role of being the defense lawyer." After the court issued its decision, counsel moved to reargue and asked for a hearing on the standing issue; the court granted the motion in part but denied the request for a hearing on the issue of standing. While the court claimed to have "invited counsel to reopen the hearing for <u>any reason, including cross-examination</u> of Romero" (Decision, dated June 30, 2008, at 9)(emphasis added), it never had. It had invited the defense to either "resume the hearing with a further appearance by Det. Romero" or to submit briefs. Though the court noted that it "could be convinced to alter both factual assessments and preliminary identification of the issues," that was not an invitation to reopen for "any reason." It was an acknowledgment that additional evidence from Romero could lead it to alter its findings and that

32

other issues, other than the probable cause and fourth amendment issues, may exist.

In fact, there was no other issue and Romero's testimony would not have added anything. There had been no adversarial suppression hearing and no hearing to "reopen." There had been an *in camera* Darden-type hearing and the court had based its decision to suppress the evidence on the evidence presented at that hearing in the absence of counsel and appellant. Under the circumstances, counsel had no choice but to "brief[ed] the issues," i.e. standing and probable cause, the issues in all suppression hearings, People v. Wesley, 73 N.Y. 2d 351 (1989). Since neither appellant nor counsel were present at the suppression hearing, the judgment must be reversed and a new trial ordered, People v. Anderson, 16 N.Y. 2d 282, 288 (1965), or at the very least, a new hearing ordered while the appeal is held in abeyance. People v. Slaughter, 78 N.Y. 2d 485 (1991); People v. Wardlaw, 6 N.Y. 3d 556 (2006).

33

POINT III

COUNSEL WAS INEFFECTIVE WHEN, IN
SUMMATION, HE TOLD THE JURY THAT
ONLY SOMEONE IN "DRUG TRAFFICKING"
WOULD RECOGNIZE THE DRUG
PARAPHERNALIA, OPENING THE DOOR TO
APPELLANT'S TWO PRIOR DRUG FELONY
CONVICTIONS AND TO THE
PROSECUTOR'S REPEATED STATEMENTS
IN CLOSING THAT APPELLANT WAS A
CONVICTED DRUG DEALER. U.S. CONST.,
AMENDS. VI, XIV; N.Y. CONST., ART. I, §6.

The law in New York is well settled. Defense counsel can open the

door to precluded evidence through incorrect or misleading arguments in

summation. In this case, appellant had a criminal record and at a pretrial

Sandoval hearing, the court had ruled that should appellant take the stand,

the prosecution could impeach him with two of his prior convictions: one

state conviction for attempted sale of a controlled substance in the third

degree and one federal felony conviction for possession of a weapon during

drug trafficking. Given the ruling, appellant did not testify. In summation,

however, counsel told the jury that only someone in the business of "drug

trafficking" would know that the paraphernalia recovered in appellant's

34

presence was used to package drugs. The argument implied that he was not in the drug business and he did not know. In response, the prosecutor introduced appellant's prior drug convictions and, in summation, referred repeatedly to appellant as a "convicted drug dealer." Counsel admitted his mistake. The mistake amounted to ineffective assistance of counsel, mandating reversal. U.S. Const., amends. VI, XIV; N.Y. Const., Art. I, §6.

The right to the effective assistance of counsel is guaranteed by both the federal and state constitutions. U.S. Const. Amend. VI; N.Y. Const. Art. 1 §6. The standards, however, are different. People v. Henry, 95 N.Y. 2d 563, 565 (2000). Under the Federal Constitution, a defendant is denied the effective assistance of counsel when counsel's performance is objectively deficient, and there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668 (1984). Under the New York State Constitution, counsel must provide "meaningful representation." People v. Baldi, 54 N.Y. 2d 137, 147 (1981). Meaningful representation includes "a prejudice component which focuses on the fairness of the process as a whole

35

rather than any particular impact on the outcome of the case.  Henry, 95 N.Y. 2d at 266.

This constitutional requirement is met as long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation reveal that the attorney provided meaningful representation.  People v. Baldi, 54 N.Y. 2d 137 (1981).   The right includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense and who is familiar with, and able to employ at trial the basic principles of criminal law and procedure.  See People v. Trait, 139 A.D. 2d 937, 938 (4th Dept. 1988).  One major mistake in an otherwise satisfactory representation may amount to ineffective assistance if the defendant was deprived of a fair trial.   See People v. Delarosa, 287 A.D. 2d 735 (2d Dept. 2001)("a single, substantial error which seriously compromises a defendant's right to a fair trial will suffice to constitute ineffective representation"); People v. Lauderdale, 295 A.D. 2d 539 (2d Dept. 2002).

In this case, counsel did not take the time to research the law or the facts.  Had he researched the law, he would have found that, in New York,

36

defense counsel may open the door to new evidence by misleading comments in summation.  See People v. De Los Angeles, 270 A.D. 2d 196 (1st Dept. 2000); see also People v. Lora, 210 A.D. 2d 31, 32 (1st Dept. 1994).   In People v. Duplessis, 16 A.D. 3d 846, 847-48 (3rd Dept. 2005), the court had precluded the prosecution from using evidence related to a stash of drug recovered from him during booking.  Counsel, in summation in that case, implied that when the defendant was arrested, he did not possess the plastic bags that officers testified had been seen during the sale.  The court found that the defendant had used the pretrial ruling as a shield during testimony and a sword during summation and allowed, the prosecution to reopen the case and introduce the evidence.

Here, had counsel researched the law, he would have known that his comments would open the door.  Instead, he argued that only someone in drug trafficking would know that the plastic bags and heat sealers and digital scales found in the fourth-floor apartment were drug paraphernalia.  By doing so, he suggested that appellant had never been involved in drug trafficking.  The problem was that appellant had been convicted of attempted sale of a controlled substance and possessing a weapon in drug trafficking.

37

Counsel's inexplicable reference to appellant not being in the drug trafficking business cannot be construed as simply "misguided though reasonably plausible strategy." See People v. Ofunniyin, 114 A.D. 2d 1045, 1047 (2d Dept. 1985).   It amounted to ineffective assistance of counsel.

* * *

Counsel's argument opened the door to appellant's criminal past and the result was devastating.   Counsel knew it would be.   He tried to get the court to use a less "draconian" remedy to his mistake.   The court refused and the prosecutor was able to refer to appellant repeatedly as a "convicted drug dealer." The evidence against appellant was far from overwhelming. The case rested on the testimony of two officers' whose credibility the court seriously questioned.   The court rejected part of their hearing testimony and found no probable cause to enter the fourth floor apartment.   When counsel noted the court's skepticism about the officers' testimony, the court said: "[p]erhaps your assessment of my instinct and my reaction is relatively if not largely accurate."   The officers questionable testimony placed appellant in a drug den.   Even then, however, his connection to the drugs in the locked safes in the closed closet and to the drug activity on the second floor was

38

tenuous.   When appellant was arrested, there was cocaine residue on the table and drug paraphernalia. The residue could have been simple dust. Appellant's prior convictions provided the connection between the paraphernalia and the drugs recovered. Had counsel not opened the door to appellant's criminal record, the jury may have reached a very different conclusion. Under the circumstances, the judgment must be reversed and a new trial ordered.

<u>POINT IV</u>

THE COURT ERRED IN FINDING THAT COUNSEL'S RHETORICAL COMMENTS IN OPENING "OPENED THE DOOR" TO THE INTRODUCTION OF THE ILLEGALLY RECOVERED AND PREVIOUSLY SUPPRESSED KEYS. U.S. CONST., AMENDS. IV, XIV; N.Y. CONST., ART. I, §6.

Defense counsel may, by offering evidence or making an argument, "open the door" to previously precluded, as well as previously suppressed, evidence.   Incorrect or misleading statements may open the door to precluded evidence. Only extreme defense tactics seeking to benefit from an illegal search will open the door to suppressed evidence.   In this case, counsel's comments in opening were neither incorrect nor misleading and

39

did not amount to extreme defense tactics.  Therefore, they could not open the door to <u>precluded</u> evidence, let alone to the <u>suppressed</u> evidence of the keys. Nevertheless, the court found that counsel had opened the door and the suppressed keys became the crucial evidence of the People's case. In summation, the prosecutor, listing the inculpatory evidence, mentioned the keys.  He told the jury that appellant "had dominion and control over the room.  He had the key to the room." The keys and "the keys to this case or (sic) at least the icing o the cake." Since the suppressed keys were the most important piece of evidence linking appellant to the apartments,  the erroneous ruling that counsel had opened the door to the suppressed keys, cannot be deemed harmless and the judgment must be reversed. U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6.

Generally, counsel opens the door to precluded evidence if he or she presents evidence or makes an argument that is <u>incomplete and misleading</u>. <u>People v. Massie</u>, 2 N.Y. 3d 179, 184 (2004).   Therefore, a statement by counsel that the defendant had never sold drugs before opened the door to an inquiry into his previously precluded conviction for criminal facilitation of a drug sale.  <u>People v. Bonaventure</u>, 251 A.D. 2d 422 (2d Dept. 1998).   To

40

open the door to previously suppressed evidence, more is required. <u>See</u>
<u>People v. Mullins</u>, 179 A.D. 2d 48, 51 (3d Dept. 1992), <u>leave denied</u>, 80
N.Y. 2d 835 (1992). In <u>Mullins</u>, the victim died of axe wounds. Two axes
had been recovered, one in the defendant's house during an unlawful search
and one from a friend's house during a consensual search. The defense
wanted to call a police officer to testify about the second axe. Before doing
so, counsel asked if this would open the door to the suppressed other axe.
The trial court held that it would and the appellate court reversed. In doing
so, it articulated a stricter threshold to open the door to constitutionally
suppressed evidence. The court held that a defendant can open the door to
suppressed evidence only in:

> Those extreme defense tactics which seek to
> benefit from an illegal search or favorable
> evidence obtained therein while at the same time
> asserting the right to exclusion of inculpatory
> evidence.

In this case, counsel's comments in opening were neither false nor
misleading and would not have opened the door to precluded evidence, let
alone suppressed evidence. Counsel told the jury that the judge would give
them instructions on whether "Mr. Green had dominion and control." "Was

41

it his home?" Counsel suggested the answer would be "No." "Was it his apartment? Was it his hotel room?" "[H]is business establishment?" Again, counsel suggested that the answer would be "No." "Did he have the power and authority to do with it as he pleased?" He told the jury "the judge will instruct you along the lines." Counsel continued "what we will learn from the evidence is that this apartment is not owned or leased [by appellant]." "This is a place where clearly others had access."

These comments correctly informed the jury of the nature of the instruction the court would be giving. It was the only opening counsel could give. Appellant had been arrested in an apartment with drugs. The only defense was "lack of dominion and control" and for that, counsel had to argue that appellant was not the only one with access to the apartment and therefore, had no dominion and control. Announcing the defense could not open the door to the suppressed keys. If it did, then the suppression ruling was meaningless.

Even if, somehow, these comments were misleading, they certainly did not satisfy the higher threshold needed to open the door to suppressed evidence. Under Mullins, to open the door to suppressed evidence, counsel

42

**SR 070**

would have to resort to "those extreme defense tactics which seek to benefit from an illegal search or favorable evidence obtained therein while at the same time asserting the right to exclusion of inculpatory evidence." Here, the statement was correct. Others had access to the apartment and therefore, appellant did not have exclusive possession. There was nothing extreme about the comments. In fact, the court agreed that that statement was "within the legal use of the suppression hearing." It was counsel's comment "that not even a New York City Police Officer could get in the apartment without somebody else's keys" that "twisted the suppression ruling by arguing that the defendant had no connection to the apartment and had no means of getting into it other than by someone else's keys."[6] The comment did not suggest that appellant had no connection to the apartment. He was in the apartment. He had gotten into the apartment. Someone had let him into the apartment. The court was concerned that the jury would wonder how appellant had got in and the jury should know the answer. The keys would

---

[6]     Should this Court find that counsel opened the door in his opening statement, such an error when considered in combination with the devastating opening of the door in summation, see Point III, would amount to a violation of appellant's right to counsel. Strickland v. Washington, 466 U.S. 668 (1984). Under the New York State Constitution, counsel must provide "meaningful representation." People v. Baldi, 54 N.Y. 2d 137, 147 (1981).

43

answer that question. While the keys would indeed answer the question, the key had been suppressed and the People had to find a way to establish appellant's dominion and control without the keys.    Under the court's theory, there really was nothing counsel could say that would not open the door to the suppressed keys since appellant was in the apartment. While the jury may, indeed, want to know, it was up to the People to prove how he entered through admissible evidence.

* * *

The error was not harmless.  Indeed, as the trial developed, the keys became a major piece of evidence.  They were the main evidence connecting appellant to the second floor and the only evidence suggesting that appellant was in the fourth floor apartment more than in passing. In his summation, the prosecutor stressed the importance of the keys.  In listing the inculpatory evidence, he listed the keys.    "[Appellant] had dominion and control over the room.  He had the key to the room.  He had the key to almost everything else in the building including the second floor."   The keys and "the keys to this case or at least the icing o the cake."  Appellant had the keys to both apartments.    The  keys  should  never  have  been  admitted  and  their

44

**SR 072**

introduction into evidence seriously prejudiced appellant, mandating reversal.

CONCLUSION

FOR THE REASONS STATED ABOVE THE JUDGMENT SHOULD BE REVERSED AND A NEW TRIAL OR AT THE VERY LEAST, THE APPEAL HELD IN ABEYANCE WHILE A SUPPRESSION HEARING IS HELD IN THE PRESENCE OF COUNSEL AND APPELLANT.

Respectfully submitted,

STEVEN BANKS
Attorney for Defendant-Appellant
The Legal Aid Society
Criminal Appeals Bureau
199 Water Street – 5th Floor
New York, New York 10038
(212) 577-3403

Natalie Rea
 Of Counsel
February 2010

45

ADDENDUM

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:   FIRST DEPARTMENT

-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,          :

                        Respondent,          :

                     -against-          :

EDWARD GREEN,          :

                  Defendant-Appellant.          :

-------------------------------------------------------------------X

STATEMENT PURSUANT TO RULE 5531

1.   The indictment number in the court below was 5643/07.

2.   The full names of the original parties were The People of the State of New York against Edward Green.   There has been no change of parties on appeal.

3.   The action was commenced in New York County Supreme Court.

4.   The action was commenced by the filing of an indictment.

5.   This is an appeal from a judgment of the Supreme Court, New York County, rendered October 8, 2008, convicting appellant after a jury trial, of criminal possession of a controlled substance in the first and third degree  (P.L. §§220.21(1) and 220.16(1)), criminal use of drug paraphernalia in the second degree (P.L. §220.50(2) and (3)), and sentencing him to a determinate term of imprisonment of fifteen years

1A

**SR 074**

with five years of post-release supervision on the top count and lesser concurrent offenses (McLaughlin J., at hearing, trial, and sentence).

6.    Appellant has been granted to appeal as a poor person on the original record.  The appendix method is not being used.

2A

## PRINTING SPECIFICATION STATEMENT

The word count for this brief is 9,675, excluding the Table of Contents, the Table of Authorities, and the Rule 5531 Statement. The word processing system used to prepare the brief and calculate the word count was Microsoft Word 2003. The brief is printed in Times New Roman, a verified, proportionally spaced typeface. The type size is 14 points in the text and headings, and 12 points in the footnotes. The line spacing is two.

To be argued by
**EDWARD GREEN**

# NEW YORK SUPREME COURT

## APPELLATE DIVISION – FIRST DEPARTMENT

**The People of the State of New York,**
Respondent

- Against –

**EDWARD GREEN,**
Defendant – Appellant.

## PRO SE BRIEF FOR DEFENDANT-APPELLANT
## INDICTMENT NO. 5643/07

**EDWARD GREEN 08A5510**
**Clinton Correctional Facility, Annex**
**P. O. Box 2002**
**Dannemora, N.Y. 12929**

March 2010

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES……………………………………………………………...1

INTRODUCTION……………………………………………………………………..1

QUESTIONS PRESENTED……………………………………………………….…..2

DISCUSSION………………………………………………………………………..2

## ARGUMENTS

**POINT ONE:**   MR. EDWARD GREEN WAS DEPRIVED OF MEANINGFUL
REPRESENTATION BY HIS TRIIAL COUNSEL WHEN COUNSEL FAILED TO
WITNESSES………………………………………………………………………..8

**POINT TWO:**   DEFENSE COUNSEL FAILURE TO PREPARE A PROPER
DEFENSE CONSITUTED INEFFECTIVE ASSISTANCE OF COUNSEL…………16

CONCLUSION……………………………………………………………………..18

**SR 078**

# TABLE OF AUTHORITIES

## Table of Cases                                    Pages

Andre's v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399 (1967)......................10

Apprendi v. New Jersey, 530 U.S. 466 (2000).................................................2

Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981).........................................9

Bean v. Calderon , 163 F3d 1073, 1079.....................................................13

Cosey v. Wolff, 562 F.Supp. 140, aff'd 727 F.3d 656.......................................13

Crisp v. Duckworth, 743 F.2d 580, 587.....................................................17

Evitts v. Lucey, 469 U.S. 378, 394, 105 S.Ct. @835........................................12

Harris v. Reed, 894 F2d 871, 878-879......................................................16

Kimmelman, 477 U.S. @ 368, 368 S.Ct. 2574.................................................17

Laffin v. Ryan, 4 AD2d 21, 25-26..........................................................8

McQueen v. Swenson, 498 F.2d 207..........................................................9

Osborn v. Shillinger, 861 F.2d @624.......................................................12

Ouaglio v. Tomasslli, 99 AD2d 487, 488....................................................7

People v. Alexander, 136 AD2d 332.........................................................7

People v. Atlas, 183 Appp. Div. 595, 600..................................................8

People v. Dinkle, 302 A.D.2d 1014.........................................................12

People v. Droz, 39 N.Y.2d 457.............................................................9,10

People v. Dumars, 68 N.Y.2d 729, 506 N.Y.S.2d 319.........................................8

People v. Dvorzank, 127 AD2d 785..........................................................8

People v. Echavarria, 167 A.D.2d 138)(1ª Dept. 1990)......................................11

People v. Hobot, 84 N.Y.2d 1021, 1022.....................................................12

People v. Martin, 32 N.Y.2d 123...........................................................3

People v. McCarthy, 14 N.Y.2d 206.........................................................3

People v. Moore, 17 AD2d 57, 59...........................................................18

People v. Pearson, 75 N.Y.2d 1001 (1990)..................................................13

People v. Powell, 153 A.S.2d 54...........................................................12

People v. Reisman, 29 N.Y.2d 278, 285-287 (1971)..........................................13

People v. Rodríguez, 94 AD.2d 805.........................................................5

I

People v. Smith, 161 A.D.2d 1160; cf. People v. Roberts, 72 N.Y.2d 489, 498...........12

People v. Sowizdral, Jr., 275 A.D.2d 473)(3ed Dept. 2000)................................11

People v. Termitto, 155 A.D.2d 965......................................................12

People v. Williams, 73 N.Y.2d 84.........................................................3

Phoenix v. Matesanz, 233 F.3d 77, 82, n.2(1st Cir. 2000).............................17

Powell v. Alabama, 287 U.S. 45......................................................9, 10

Smith v. Stewart, 189 F.3d 1004, 1010...............................................17

Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991........................10

Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.......................9, 10, 17

Toomey v. Brnnell, 898 F.2d @744 (9th Cir.), cert denied, 111 S.Ct. 390.................10

U.S. v. Ladd, 885 F.2d 954............................................................6

United States v. Armstrong, 621 F2d. 951, 953......................................13

United States v. Brannon, 616 F2d 413, 418...........................................13

United States v. Cronic, 466 U.S.648, 104 S.Ct. 2039 (1984).....................10, 11

United States v. Goodwin, 531 F.2d 347............................................13

United States v. Gray, 878 F.2d 702, 712...........................................16

United States v. Howard-Arias, supra, 697 F.2d @366...............................4

United States v. Perkins, 937 F.2d 1397, 1400.....................................13

Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000)...........................16

Williams, 59 F.3d at 680.............................................................17

Wilson v. Phend, 417 F.2d 1197........................................................9

## **Table of Statutes**                                      **Pages**

CPL section(s) 100.15(1), subd. 4(A), 100.20.......................................3

Criminal Procedure Laws §§ 100.15(3) and 100.40(4)(b)............................6

Penal Law §§220.21(1); 220.16(1)...............................................I, 15

Rules of the Court, Sec. 670.16(e)..................................................10

The Constitution of the State of New York, Article 1, Section 6..................10

-SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
THE PEOPLE OF THE STATE OF NEW YORK

                               Respondent

                  - Against -

EDWARD MR. GREEN

                 Defendant

**AFFIDAVIT IN SUPPORT OF
PRO SE MOTION FOR
EDWARD GREEN**

**Indictment No. 5643/07**

TO THE SUPREME COURT  )
                          ss:
COUNTY OF NEW YORK  )

     **PLEASE TAKE NOTICE** that upon the annexed affidavit of Edward Green, being duly sworn, deposes and says:

     I am the defendant in the above-entitled proceeding.  I make this affidavit in letter-brief form in support of an application, pursuant to section(s) 450.15 and 460.15 of the Criminal Procedure Law ("CPL") and section 670.12 (b) of the Rules of the Court, for a certificate granting permission to appeal to this Court from an Order of the Supreme Court of the State of New York, County of New York, by the Honorable Edward J. McLaughlin, J.P., upon a jury verdict, convicting Mr. Edward Green ("Green") of the crimes of Criminal Possession of a Controlled Substance, a class A felony in the First and a class B felony in the Third Degree, in violation of Penal Law, §§220.21(1), 220.16(1), on the 15 day of  September 2008 and sentencing him to a term of 15 years.

     Under the provisions of CPL §460.50 (1), bail pending appeal is not statutory authorized. since the defendant is presently incarcerated and serving his prison sentence, any delay occasioned by ordinary motion practice would be extremely prejudicial.  In the event that a certificate were to be ordered granting permission to allow this petitioner, pursuant to CPL §460.15, to file a pro-se supplemental brief.  This petitioner will move this Court for an order

allowing for an expedited appeal.

In accordance with the requirements of Section 670.10.3(g) of the Rules of the Court, the following information is supplied:

(a)     The applicant is Edward Green, Pro-se, Din: 08A5510, facility address is: Clinton Correctional Facility Annex, P.O. Box 2002, Dannemora, N.Y. 12929.

(b)     The People are represented by the District Attorney of the County of New York, 1 Hogan Place, New York 10013

(c)     The New York County Indictment Number is 5643/07

(d)     The question of Law or Fact which ought to be viewed by this Court is whether at trial, did Mr. Edward Green received Ineffective Assistance of Counsel where trial Counsel "Mr. Arnold Keith" admitted ignorant of the applicable Criminal Procedure Law, as well as admitted to providing Mr. Green with Ineffective Assistance of Counsel at sentencing and thus could not have given Mr. Green effective advice or where counsel was not prepared for trial and was generally unfamiliar with procedures in a Criminal trial, in clear violation of Mr. Green's Constitutional Rights to the Right to Effective representation which includes the right to assistance by an attorney who is familiar with, and able to employ at trial the basic principles of Criminal Law and Procedures.

## QUESTION PRESENTED

**The Evidence Adducted at Trial was Legally Insufficient
to Support Petitioner's Conviction under Penal Law
§§220.41 (1) and 220.16 (1), for Criminal Possession of a
Controlled Substance in the First and Third Degree**

ANSWER: <u>YES</u>

The indictment was invalid as a matter of law, in that the police laboratory controlled substance analysis report upon which the indictment is based did not charge and the trial Court did not find specified amounts of drugs...a fact that runs afoul of the U.S. Supreme Courts decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Court ruled that any fact that increases the penalty for a crime beyond the statutory maximum, it must be submitted to a jury and proved beyond a reasonable doubt. In light of the fact that the evidence was not only

2

material to the charges against the defendant, it was the only evidence linking him to the unlawful possession of drugs.  The defendant's presence at the scene of the arrest, standing alone would not support the indictment.  People v. Martin, 32 N.Y. 123, 343 N.S.Y.2d 343.  The indictment was fatally defective because the grand jury had no evidence before it worthy of belief that the defendant had committed the crime charged by possessing a controlled substance

The validity of an arrest depends upon existence of probable cause at the time of the arrest and cannot be based upon evidence obtained as the result of an ensuring search (People v. McCarthy, 14 N.Y.2d 206; People v. Loria, 10 N.Y.2d 368, as was done here.

The police laboratory controlled substance analysis reports pursuant to CPL section(s) 100.15(1), subd. 4(A), and 100.20 was neither verified nor conforms to the requirements of CPLR section(s) 4540 (a), 4543 could not have commenced an action or provided a basis for a criminal prosecution.

Therefore, it became an error of such a degree that the integrity of the Grand Jury was Impaired and Prejudice to the defendant thus resulted. (People v. Williams, 73 N.Y.2d 84.

As a condition precedent to admissibility, a showing by a preponderance of the evidence, that the evidence offered is what its proponent claims it to be.  In other words, if the person seeks to introduce a bag of drugs into evidence, it must first establish that the bag is what the people assert it to be.  The bag found at the scene of the crime.  One way to establish that fact is to show the chain of custody of the bag that is where the evidence has been from the moment it was seized until the moment it is offered into evidence.

The requirements of authentication or identification as a condition precedent to admissibility is satisfied by the evidence sufficient to support a findings that the matter in question is what it proponent claims

3

The people's failure to establish a chain of custody is important.  In order to be admissible, the testimony of a live witness must be relevant, that is it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

It should be noted that in order for Detective Alfred Hernandez ("Hernandez") or Detective Anthony Romero ("Romero") testimony to be relevant, there must be some likelihood that the substance tested by them was the substance seized from the safe on the Fourth Floor that was in a locked closet.  The authentication testimony of a witness must be that person with knowledge who tested the substance and there must be testimony that a matter is what it claims to be.  The People's failure to establish a chain of custody of authentication, from the time the substance was allegedly possessed to the time it was subjected to laboratory analysis makes this less likely, and thus casts doubt on the admissibility of a Hernandez or Romero's testimony.

The ultimate question is whether the authentication testimony is sufficiently complete so as to convince the Court of the improbability that the original item had not been exchanged with another or otherwise tampered with (see, United States v. Howard-Arias, supra, 697 F.2d @366.

Accordingly, establishing a chain of custody is one form of proof sufficient to support a finding that the matter in question is what its proponent claims to be.

An expert's opinion must be based upon his comparison of the results of various test made on the substances possessed by Mr. Green with the results of the same tests performed on a standard sample known to be his comparison of the results of the mass spectrometer test conducted on the standard sample with data contained by three recognized authorities in the field of chemistry.  The chemist's notes and records pertaining to the test were never made available to Mr. Green or his Attorney for use at trial, which in fact became a "Brady" violation.  The three

4

sources of the data the expert used for comparison with the results of the test on the sample were never identified by anyone or by name, and it is not contended that these were recognized authorities of the sort that ordinarily were accepted by experts in the field and its dossiers, the sources of which have not been independently established, scrutinized nor authenticated.

Contrary to any arguments that might be made, the trial record demonstrates that the people never satisfactorily authenticated the evidence that was sent to the police lab for analysis by conclusively establishing a chain of custody that began with the seizure and ended with the police laboratory.

There is no place found in the record where the testimony of forensic chemist's J. Bishara or Aviva Lieberman had demonstrated that the substance allegedly found in the safe was cocaine or the tests in which the substance allegedly possessed by Mr. Green was compared to substances known to be cocaine, but because the expert failed to testify, there was no proof that the substance that the chemist relied upon for comparative test was in fact tested by him and there was no proof in the record of any nature that established the accuracy of the standard as reliable norm, because of the failure of the chemist to testify, the Court must assume that the proffered expert testimony would have been incompetent to support the fact that the alleged substances was in fact cocaine. (People v. Rodriguez, 94 AD.2d 805, [462 N.Y.S.2d 914]).

Perhaps, most puzzling, is that the prosecution made no effort to clear up this discrepancy. They chose not to present the testimony of the chemist that analyzed the evidence or the lab staffer who logged it in, or the police officer who released the evidence to the lab.

In short, there was no competent proof to indicate that the evidence taken from the scene of the crime was the same one the police chemist tested. This important step in custodial pavane was omitted. As to the police chemist findings, the link was not merely rusty – it had been

parted. U.S. v. Ladd, 885 F.2d 954.

It should be noted, that drug field test, is a preliminary screening test, is insufficient to form a basis for prosecution on drug possession charges.  The Court in Fasanaro, held that, regarding field test, where a police officer is testifying concerning the results of the field test in place of a chemist, and where he testified that the substance is in fact cocaine, the Court stated that generalized, unquantified and unspecified allegations of training and experience regarding narcotics were insufficient allegations of expertise to allege facts of an evidentiary nature showing a basis for the conclusion as to the identification of the alleged substance, and, without more, must result in a drug possession charge that is facially deficient[1], 134 Misc.2d 141; 502 N.Y.S.2d 713; CPL §§ 100.15 (B), 100.40 (4)(B).

The petitioner contends that the evidence should have been kept from the jury based upon (1) slipshod storage and handling of the evidence at the State laboratory and (2) a discrepancy in the evidence in identifying the chain of custody that binds the evidence, was so seriously flawed as to leave no reliable foundation for admission of the evidence.

The tests conducted by the police laboratory was flawed because (1) the police chemist did not testify and his failure to testify or to provide evidence that would have demonstrated that the laboratory's usual custom and praxis were followed and (2) there was no testimony by the laboratory chemist to support a findings that the evidence, once delivered, were stored in a locked evidence-locker and (3) nor was there testimony relating to whether the evidence was numbered and or labeled properly, (4) when or where the evidence were removed for internal testing and eventually replaced and (5) whether or not the laboratory procedures were followed

---

[1] **It should be noted that there was no testimony before the Grand Jury or at Trial that either Detective Alfred Hernandez or Detective Anthony Romero had field tested the contents that came from the safe on the Fourth Floor.**

6

**SR 086**

on these occasions.  The evidence taken together is sufficient to sanction inadmissibility of the State laboratory reports where the chemist failed to testify concerning the reliably of their results.

This caveat is especially meaningful in drug cases in which a great percentage of the cases result in laboratory reports showing no controlled substances present and in which the accused are often indigent's defendants unable to afford a private attorney or to make the most minimal bail.

There's only one conclusion to be drawn from the record above and that is that the testimony of Hernandez and Romero concerning the alleged controlled substance was based upon a subjective belief and unsupported speculation, and Thus, having failed to meet all of the criteria above, all of the evidence were inadmissible should not have been admitted into evidence at trial.

It should be noted that an officers testimony is hearsay where their personal knowledge is based upon computerized sources or reports from an unknown third parties.  Since there was no evidence before the Grand Jury or at Trial that the reports was made by one under the duty to report. People v. Alexander, 136 AD2d 332, Ouaglio v. Tomasslli, 99 AD2d 487, 488.

Therefore, the sole reason for questioning Hernandez and Romero in place of the chemist was to replace the testimony of the chemist with that of both officers, and to allow Hernandez and Romero to bolster their own testimony in identifying the contents taken from the safe as that being cocaine, thereby explaining that their version of event is more believable in place of the chemist.  The police officer testimony was the equivalent to an opinion that Mr. Green was guilty of the possession of a controlled substance and the receipt of such testimony should not be condoned. (418 N.Y.S.2d 371).

The law does not permit a person to avoid taking the witness stand and to avoid being

7

cross-examed by allowing his story to be presented through the hearsay testimony of another witness. People v. Dvorzank, 127 AD2d 785, 512 N.Y.S.2d 180.

It is well settled of cause, that issues of credibility are primarily for the trial court and its determination is entitled to great weight (People v. Atlas, 183 App. Div. 595, 600). However, reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interest of justice necessitate their nullification (Book, 5A, CJS, Appeal and Error. §1656(3)). The Court should refuse to credit testimony which has all of the appearances of having been patently tailored to nullify Constitutional objections.

For all the reasons set forth above, this petitioner holds that generalized, unquantified and unspecified allegations of police training and experience regarding narcotics are insufficient allegations of expertise to be used in place of a live police chemist under People v. Dumars, 68 N.Y.2d 729, 931, 506 N.Y.S.2d 319 (1986), and without more, should have rendered the drug possession charge facially deficient and where the people had control of the witness and their availability was not questioned, the trial court should have assumed that the laboratory technician's J. Boshara or Aviva Lieberman, testimony would have been unfavorable to the people. People·v. Moore, 17 AD2d 57, 59; Laffin v. Ryan, 4 AD2d 21, 25-26.

Therefore, based upon the foregoing, Mr. Green's conviction should be reversed and the sentence vacated and the Indictment dismissed

## MR. GREEN WAS DEPRIVED OF MEANINGLESS REPRESENTATION BY HIS TRIAL COUNSEL, WHEN COUNSEL FAILED TO PREPARE A PROPER DEFENSE OR CALL WITNESSES.

It is elementary that the right to effective assistance of representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and facts

8

relevant to the defense and who is familiar with and able to employ at trial both the basic principles of criminal law and procedures. The Supreme Court of the United States have long recognized that the right to counsel would be meaningless if it did not require effective assistance and substantial aid, Powell v. Alabama, 287 U.S. 45.

Professionalism demands that counsel must thoroughly review the facts and laws of the case relevant to his clients' defense and exhibit his practice expertly because proper representation involves more than courtroom conduct. It is axiomatic that counsel must investigate all apparently substantial defenses available to his client and must assert them in a proper and timely manner. This was not the case in this instance matter, no matter what the apparent degree of his client's depravity or the likelihood of his guilt, the right to the Constitutional shelter of Effective Assistance of Counsel and a fair trial are to forever remain in violate. Wilson v. Phend, 417 F.2d 1197; Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981); Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.

The Due Process Clause of the Fourteenth Amendment mandates that the State prove the existence of each and every element of the offense charged beyond a reasonable doubt. This was not done since defense counsel failed to investigate and call (all) possible witnesses, present document or to prepare a defense.

Mr. Mr. Green is entitled to the protection of the Due Process Clause of the Fourteenth Amendment throughout his entire criminal proceedings. Each case presents its own facts and rest on its own issues. Factors such as inadequate preparations, incomplete investigations, refusal to call witnesses, the failure to interpose a proper defense will necessary be viewed in light of the effects these shortcomings have on the fairness of a his client's trial (McQueen v. Swenson, 498 F.2d 207; People v. Droz, 39 N.Y.2d 457).

9

The Constitutional Right to Counsel is based upon the promise that counsel will effectively assist his client accordingly, due to the failure of defense counsel "Mr. Arnold Keith" ("Mr. Keith") as guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution.   Mr. Green was denied the right to Effective Assistance of Counsel at all stages of the criminal proceedings.   The Constitution of the State of New York, Article 1, Section 6, the Bill of Rights, Section 12, Article 2, (Powell v. Alabama, 287 U.S. 45, People v. Droz, 39 N.Y.2d 457; Strickland v. Washington, 466 U.S. @686, 104 S.Ct. @2063.   The failure of counsel to confer adequate assistance constitutes a denial of a defendant's rights to due process and requires a reversal of his conviction.

In Strickland, the court held that a defendant is required to show (1) A deficient performance by counsel, and (2) prejudice to the defense, Id. @687, 104 S.Ct. 2064.  In United States v. Cronic, 466 U.S.648, 104 S.Ct. 2039 (1984), decided on the same day as Strickland, the Supreme Court created an exception to the Strickland standard for Ineffective Assistance of Counsel and acknowledged that certain circumstances are so egregiously prejudicial that Ineffective Assistance of Counsel will be presumed (Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (en banc) (citing Cronic, 104 S.Ct.@2064).  Cronic presumes where there has been an actual breakdown in the adversarial process at pre-trial proceedings or at trial, see, Toomey v. Brnnell, 898 F.2d @744 (9th Cir.), cert denied, 111 S.Ct. 390.

In Cronic, the Supreme Court stated: [T]he adversarial process is protected by the Sixth Amendment, Requires that the accused have "Counsel Acting in the Role of an Advocate", Andre's v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399 (1967).  The right to Effective assistance of Counsel is thus the right of the accused to require that the prosecution's case survive the crucible of meaningful adversarial testing when a true adversarial criminal trial has

10

**SR 090**

been conducted, even if defense counsel may have made demonstrable errors, the kind of testing envisioned by the Sixth Amendment has occurred if the process loses its character as a confrontation guarantee is violated.   The court held that "a defendant need not affirmatively prove prejudice under the second prong of the Strickland test in order to establish a Sixth Amendment violation based on the lack of defense counsel's assistance at a critical stage of a criminal proceeding", Cronic, Id. @2067 (Actual or Constructive denial of Assistance of Counsel altogether is legally presumed to result in prejudice").

Mr. Green respectfully request that this Court take notice that under New York State Law, it is important to recognized that New York State has not specifically adopted the "Strickland" test for determining Ineffective Assistance of Counsel claims (People v. Sowizdral, Jr., 275 A.D.2d 473)(3rd Dept. 2000).   New York State actually continues to apply a more flexible standard to analyze claims based upon a deprivation of the right to effective assistance of counsel under the New York Constitution. Id.   This standard is whether a defendant received "meaningful" representation, under the totality of the evidence, the law, and the circumstances (People v. Echavarria, 167 A.D.2d 138)(1st Dept. 1990).

Turning to the facts of this case, one cannot help but see that defense counsel's performance miserably failed the standards set by Strickland.

The circumstances presented in this matter, demonstrates that constructive absence of an attorney dedicated to the protection of his client's rights under our adversarial system of justice. Instead of serving as his client's advocate during the course of pre-trial proceeding's and trial, defense counsel Mr. Keith abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecution in its efforts to prosecute Mr. Green.   Mr. Green's defense counsel Mr. Keith abandoned his duty of loyalty to his client when he failed to prepare a proper

11

**SR 091**

defense in support of his client without proper preparations. An effective attorney must play the role of an active advocate rather than mere friend of the court, Osborn v. Shillinger, 861 F.2d @624, quoting, Evitts v. Lucey, 469 U.S. 378, 394, 105 S.Ct. @835.

Mr. Edward Green was denied the Effective Assistance of Counsel by Mr. Arnold Keith, Attorney at Law. With regards to the top count of the indictment, charging Criminal Possession of a Controlled Substance, in the 1st Degree. Mr. Keith pursued no defense at trial with respect to that charge, counsel did not challenge the strength of the prosecution's case on that count or count two of the Indictment, Criminal Possession in the Third Degree, through cross-examination, and Mr. Keith effectively acknowledged that the paraphernalia of drug sales was found in the possession of Mr. Green even through there was no testimony regarding this point, this was not a matter of an alternative, but an unsuccessful trial strategy. By contending that Mr. Keith provided no defense to the top two counts, Mr. Green, did not concede that Mr. Keith provided meaningful representation on the other charges, People v. Hobot, 84 N.Y.2d 1021, 1022, reported from People v. Dinkle, 302 A.D.2d 1014. Defense counsel was ineffective throughout the course of pre-trial proceedings as well as the entire trial.

The Court should take notice that where the allegations in an indictment is limited to a particular theory of the prosecution, Mr. Green is entitled to rely on that theory and the people are bound to prove it, (People v. Smith, 161 A.D.2d 1160; cf. People v. Roberts, 72 N.Y.2d 489, 498; People v. Powell, 153 A.S.2d 54; People v. Termitto, 155 A.D.2d 965). Where the people failed to proved a specific intent, as is required in count two of the indictment, Criminal Possession of a Controlled Substance with the "**INTENT**" to sell which was never proven beyond a reasonable doubt, then it follows that the intent to commit a specific crime, being an element of the offense was against the weight of the evidence. A Due Process problem might

12

exist if the specific crime is not particularized.

Therefore, to hold that a specific not a general intent is required, but allow the specific intent to be proved by inferring it from the same evidence, that would prove a general intent is simply to indulge in circular reasoning and has violated Mr. Green's Constitutional Rights to Due Process of Law.

Defense Counsel "Mr. Keith" demonstrated a total ignorance of applicable law (United States v. Goodwin, 531 F.2d 347) and the failure to conduct any legal research (Cosey v. Wolff, 562 F.Supp. 140, aff'd 727 F.3d 656, in that he failed to recognized that under New York State law, that control over an area will not in and of itself, give raise to a conclusive presumption that a defendant also knew that contraband was present (People v. Reisman, 29 N.Y.2d 278, 285 (1971) or that merely having access to contraband or the area where contraband is found without knowledge of the contraband's existence is insufficient in and of itself to establish constructive possession (People v. Pearson, 75 N.Y.2d 1001 (1990)).

Mr. Keith also demonstrated total ignorance of applicable law (Id. United States v. Goodwin, and the failure to conduct any legal research (Id.Cosey v. Wolff, in that he failed to recognized that under New York State law, that before evidence implicating another suspect can be admitted "there must be such proof of a connection with the crime, such as a train of facts or circumstances as tending to clearly point out someone else besides the accused as the guilty party". Evidence of motive, ability, and the opportunity for a third person or persons to commit the crime is a sufficient foundation for the introduction of other suspect evidence. Such evidence must be "coupled" with other evidence tending to connect such other person with the actual commission of the crime charged. (United States v. Armstrong, 621 F2d. 951, 953; see also, United States v. Perkins, 937 F.2d 1397, 1400 (A defendant is entitled to introduce evidence

13

**SR 093**

which tends to prove someone else committed the crime); United States v. Brannon, 616 F2d 413, 418 (A defendant is entitled to prove his innocence by showing that someone else committed the crime).

Because of defense counsel's unpreparedness, Mr. Keith, failed to put before the jury evidence that someone else had committed the crime charged. Because of counsel's failure to capitalize on Mr. Green's co-defendant, Mr. Steven Brown's ("Mr. Brown) sentencing allocution wherein Mr. Brown admitted that he was the person who sold and possessed the controlled substance, as well as was the person to whom the police had identified as the person who had committed the crimes that Mr. Green was thereinafter charged with.  Mr. Brown also stated at his sentencing allocution that he was the only one selling and possessing drugs at that location, and that he had no knowledge that Mr. Green had ever sold or possessed a controlled substance at that location or any place else, which demonstrated that someone other than the Mr. Green had committed the crime(s) charged.  Mr. Keith also failed to demonstrate to the jury that someone else had the opportunity, ability, and motive to commit the crime in-spite of the surmounting evidence which states otherwise, and clearly demonstrates that another person had the present ability, opportunity and/or motive to commit the crime(s) that Mr. Green was charged with. Most importantly, the excluded evidence showed that the evidence would have supported an alternative theory of how the crime might have been committed

This argument was crucial to the defense because the sale and possession occurred in Brown's apartment, and because Mr. Green and Mr. Brown were the only other persons known to be at the scene of the crime.  The jurors would naturally ask themselves that, "If the defendants were in the building, then they probability committed the crime charged.

The introduction of Mr. Brown as the true person that committed the crime and was the

14

**SR 094**