

**THE LEGAL AID SOCIETY**

Criminal Appeals Bureau
199 Water Street
New York, NY 10038

Tel: 212-577-3403
www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Steven Banks**
*Attorney–in–Chief*

**Seymour W. James, Jr.**
*Attorney–in–Charge*
*Criminal Practice*

April   20, 2011

The Honorable Jonathan Lippman
Chief Judge
Court of Appeals
Eagle Street
Albany, New York  12207
Attn: Andrew W. Klein

Re:    People v. Edward Green
       Ind. No. 5643/07

Your Honor:

Pursuant to Criminal Procedure Law, Section 460.20, I am submitting this letter as an application for permission to appeal to the Court of Appeals in the above-entitled case.  An application has not been made to a justice of the Appellate Division.  By decision rendered  March 24, 2011, the Appellate Division First Department, affirmed a judgment rendered October 8, 2008, by the Supreme Court New York County, convicting appellant of after trial of criminal possession of a controlled substance in the first and third degree and two counts of criminally using drug paraphernalia and sentencing him to an aggregate term of 15 years.

I am enclosing copies of the briefs filed in the Appellate Division and that Court's order and opinion.  Please advise me of the judge designated to decide this application so that I may send that judge a follow-up letter in support of the application.  We request this Court to consider and review all issues outlined in defendant-appellant's brief.

Respectfully yours,

NATALIE REA
Associate Appellate Counsel
212-577-3403

Encl.
cc:    Hon. Cyrus R. Vance Jr.    **W/O ENCL.**
       N.Y. County District Attorney
       One Hogan Place
       New York, New York 10013
       Attn: Britta Gilmore



 **THE
LEGAL
AID
SOCIETY**

REC
APPEAL
201 MAY 23  P 2 42

NEW YORK CITY

**Criminal Appeals Bureau**
199 Water Street
New York, NY 10038

Tel: 212-577-3403
www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Steven Banks**
*Attorney–in–Chief*

**Seymour W. James, Jr.**
*Attorney–in–Charge*
*Criminal Practice*

May 23, 2011

The Honorable Theodore T. Jones
Court of Appeals
20 Eagle Street
Albany, New York  12207

          Re:    <u>People v. Edward Green</u>
                 Ind. No. 5643/07

Your Honor:

Leave to appeal should be granted in this case to allow the Court to answer two questions:

    1) When parties agree before jury deliberations to send the exhibits into the jury room, are subsequent ambiguous exhibit-related jury notes ministerial and thus exempt from the notice-to- and input-from-counsel requirements of C.P.L. §310.30 and <u>People v. Tabb</u>, 13 N.Y. 3d 852 (2009)?   The Court of Appeals should resolve the conflict between the First and Fourth departments on this issue.

    2) Whether the right to be present at a suppression hearing must be waived by the defendant in person or can be waived by counsel?  Certainly <u>People v. Vargas</u>, 88 N.Y. 2d 363 (1996) suggest that only the defendant can waive such a right.  The First Department disagees.

I.    <u>The Jury Note</u>

    A.    <u>Legal and factual background</u>

Section 310.30 of the Criminal Procedure Law and the Court of Appeals in <u>People v. O'Rama</u>, 78 N.Y. 2d 270 (1991) set forth the meticulous procedures to be followed when a deliberating jury sends a substantive note. <u>People v. Kisoon</u>, 8 N.Y. 3d 129, 134-35 (2007). When the court receives the note, it must be marked as a court exhibit and, before the jury is recalled, it must be read <u>verbatim</u> into the record in the presence of counsel. <u>People v. Tabb</u>, 13 N.Y.3d 852 (2009).   Counsel must then be given a full opportunity to suggest an appropriate response.  The court should inform counsel of the substance of its intended

response so that he or she can request modifications before the jury returns to the courtroom. When the jury returns, the answer must be read in open court. Kisoon, 8 N.Y. 3d at 134-35. In Tabb, the Court added that "[i]n the absence of record proof that the trial court complied with the core responsibilities under C.P.L. §310.30, a mode of proceedings error occurred mandating reversal." Id.

The only exception to the application of these precautions is when the request from the jury is ministerial and a note is ministerial when counsel could have no meaningful input. People v. Snider, 49 A.D. 3d 459 (1st Dept. 2008); People v. Williams, 38 A.D. 3d 429 (1st Dept. 2007)(note was ministerial where the court's communication with the juror was the equivalent to saying "wait").

B.     Conflict between the First and Fourth Departments

Appellant was charged with criminal possession of a controlled substance in the first and third degrees. The central question at trial was whether appellant had dominion and control over the apartment in which drugs were found. Before commencement of deliberations, the court asked what defense counsel wanted to do about the exhibits and the alternate jurors. The defense stated that it had "no objection to the jury examining the evidence" (624). The first note from the jury asked for "polaroids, keys, locks, defense's pictures, + scale(s)." (A copy of the note is enclosed). The lock and key were in Exhibit 4.

In its second note, the jury requested "to try key in lock. Can we open the bag?" (A copy of the note is enclosed). With that request, the jury was asking to embark on a demonstration in the jury room that had never been conducted in the courtroom. The request was equivalent to introducing extra-record information into the jury deliberations, see, People v. Brown, 48 N.Y. 2d 388 (1979), or to the jury asking about unexplained characteristics of an item of evidence, see People v. Betts, 70 N.Y. 2d 289, 295 (1987).   Counsel had to have the opportunity to give the court reasons why the request was substantive.   As in Tabb, "[n]othing in the record indicated that the court informed defense counsel," "about the contents of the note."   The record does not indicate how the note was answered.

Without citing Tabb, the First Department considered the note as nothing more than a request to apply "everyday experiences, perceptions, and common sense."   Given the pre-deliberations agreement to provide the jury with the exhibits, the First Department held that "under the circumstances of this case," the note was ministerial and, under People v. O'Rama, 78 N.Y. 2d 270 (1991), C.P.L. §330.10 did not require notice-to or input-from-counsel.

In a similar situation, the Fourth Department held that notice to, and input from, counsel were necessary before responding to the note. People v. Kalinowski, __ N.Y.S. 2d __, 2011 WL 1733899 (4th Dept. 2011).  In Kalinowski, before the commencement of deliberations, "the attorneys and the court agreed that, if the jury requested certain items of evidence, the court would provide the jury with the evidence without first reassembling the parties in the

courtroom." During deliberations, the jury sent a note asking for further information regarding the path of the bullet "does the autopsy report clarify the exact path of the bullet wound in the decedent's head – if so, can we please hear/see the path of the wound and/or autopsy report." As in the case at bar, there was no evidence on the record that the attorneys were apprised of the note or its content. The Fourth Department held that since the note was ambiguous and did not merely request "the autopsy report or another exhibit," Tabb and CPL §310.30 required notice to, and input from, counsel.

> C.   The question

Leave should be granted to determine whether a pre-deliberation agreement to send the exhibits into the jury room means that subsequent ambiguous exhibit-related jury notes are ministerial and exempt for C.P.L. §310.30 requirements. In the First Department, such exhibit-related notes -- requesting to open, handle, use, and do virtually anything to the exhibits – are ministerial and exempt from the notice to, and input from, counsel requirements. People v. Green, 82 A.D. 3d 593 (1st Dept. 2011). In contrast, the Fourth Department held that an ambiguous exhibit-related note requires the court to notify, and seek input from, counsel before answering and thus, before determining whether or not a note is ministerial. People v. Kalinowski, __ N.Y.S. 2d __, 2011 WL 1733899 (4th Dept. 2011).

II.   Defendant's implicit waiver to be present at the suppression

> A.   Legal Background

When a search warrant is based on facts provided by an informant, the defense can challenge the basis of the warrant at a Darden hearing. People v. Darden, 34 N.Y. 2d 177 (1974). The purpose of the hearing is essentially limited to the  the existence of the informant. To protect the identity of the informant, the defendant does not have a right to be present at such a hearing. Id. The question is whether the evidence elicited in the absence of the defendant at the Darden hearing can be used as a substitute for a suppression hearing without a personal waiver by the defendant of his right to be present at the suppression hearing?

Indeed, in New York, a criminal defendant has a constitutional right to be present at all material stages of the proceedings and a statutory right to be present at ancillary stages when he/she has something to contribute or when his/her presence may affect the ability to defend. U.S. Const., Amends.   VI, XIV; N.Y. Const., Art. I, §6; C.P.L. §260.20; Snyder v. Massachusetts, 291 U.S. 97 (1934); People v. Dokes, 79 N.Y. 2d 656 (1992). A defendant has a right to be present because courts recognize the significant input a defendant has in a case. People v. Dokes, 79 N.Y. 2d 656 (1992).   Critical stages of the proceedings include the right to be present at a suppression hearing. People v. Anderson, 16 N.Y. 2d 282 (1965).

In the context of the defendant's right to be present at sidebars during voire dire, the Court found no waiver where  there is nothing on the record to support any inference that the defendant was advised of his right and waived it.  People v. Vargas, 88 N.Y. 2d 363 (1996). To be valid,  the waiver must be made by the defendant in person, knowingly, voluntarily, and intelligently after he or she has been informed of right to be present, as well as the consequences of not being present . People v. Parker, 57 N.Y. 2d 136, 141 (1982).

### B.   Factual Background

A search warrant was issued in this case for apartments on the second and third floor of a building.  The police entered and searched the second floor apartment pursuant to a search warrant and a fourth floor apartment without a warrant.  Appellant was  in the fourth floor apartment with drug paraphernalia. The police went to get another search warrant for the fourth floor and searched the entire apartment later.  Counsel, describing appellant as the superintendent of the entire building, the manager of the first-floor laundromat, and an invitee in the fourth-floor apartment, moved to controvert the search warrants and to suppress the evidence recovered from the two apartments. The court granted a hearing as to the fourth-floor apartment but summarily denied the motion as to the second-floor apartment for lack of standing.  The motion court specifically ordered a hearing "with regard to the legality of the detectives' initial entry into this fourth-floor apartment as well as their actions once inside." According to the court, the question was "[w]hether the information contained in the affidavit stemmed from unlawful police conduct and tainted the warrant application."

A "Darden-type" hearing was held where, according to the court, the issue would be  "related to what was known and what was the basis for probable cause."  It would be a hearing "at which the basis for the Police entry into the fourth-floor apartment ... would be explored." The confidential informant and the arresting officer, Detective Anthony Romero, testified at the Darden hearing.  Counsel and appellant were not present.

Examined by the court, Detective Anthony Romero described the execution of the two search warrants.  Essentially, one search team found the door to the second-floor  apartment open and entered; the other team rammed down the door to the third floor.  Instead of finding one apartment, however, they found four separate locked rooms with a bathroom and, as a result, they could not execute the third-floor warrant (H: 23, 29-32).  At that point, they went to the fourth floor where they also found separate locked rooms.

When the court asked: "[h]ow was it that you went into the one [apartment] where whats-his-name [i.e. appellant] was found?" Romero said the lieutenant told him that "they [had] heard someone go into an apartment on that floor and slam a door  (H: 29-31, 34, 39).  Romero tried the keys recovered from the jacket in the second-floor apartment (H: 27, 31, 48).  He put one of the keys into the fourth floor apartment door and turned it.  Before opening, he announced "police;" no one answered; he repeated "police" then opened the door; appellant was sitting on the couch (H: 36, 44).  They arrested him, turned on the light, and found drug

paraphernalia in plain view (H: 36-37). The officers later got a warrant to search the rest of the apartment (H: 39-40; T: 313). The court found no probable cause to enter the fourth-floor apartment but did not suppress the evidence, finding that appellant lacked standing (Decision, dated June 30, 2008, at 2).

The prosecution asked the court to limit its findings, in accordance with Darden, to the existence of the confidential informant and the information given by the informant to the officer who gave the information in support of the warrant (H: 58-59). The prosecutor asked that other issues such as the scope of the execution of the warrant be dealt with in an "adversary proceeding" (H: 60). The court agreed that ordinarily those would be the relevant issues but here a "different kind of hearing" had been ordered (H: 59). A hearing had been ordered "to decide about probable cause" (H: 59). Finding that there was no probable cause to search the fourth floor, the court concluded that there was no issue regarding the scope of the warrant (H: 60). The prosecutor commented that "this is a little bit awkward because we do have arguments and law upon which to base our arguments" (H: 64). The court said that its findings were not set in stone and counsel could supplement the record and file more papers. Counsel filed more papers but never asked to reopen the hearing. The court acknowledged that counsel and appellant had been excluded from the Darden-type hearing but it had "invited counsel to reopen the hearing for any reason, including cross-examination of Romero" (Decision, dated June 30, 2008, at 9) and counsel had declined.

On appeal, the People never claimed that appellant had been present at the Darden/Suppression hearing. The People argued that counsel had been given ample opportunity to reopen the hearing. The First Department agreed finding that "[appellant] waived any objection to the procedure by which the court resolved the suppression issues. .

C.    The question

In 1965, the Court of Appeals held that a judgment must be reversed where a defendant is involuntarily excluded from a suppression hearing. People v. Anderson, 16 N.Y. 2d 282 (1965). The question in this case is whether the defendant must waive that right in person or can waive his right to be present through counsel. People v. Parker, 57 N.Y. 2d 136, 141 (1982) and People v. Vargas, 88 N.Y. 2d 363 (1996) suggest that only the defendant can waive the right in person after being told by the court about the right and the consequences of his or her absence .

Page 6

Leave to appeal should be granted to determine (1) whether a person must waive his right to be present at a suppression hearing in person and (2) whether an ambiguous exhibit-related jury note sent after an agreement to send exhibits into the jury room is subject to the notice-to and input-from counsel or is ministerial and exempt from the C.P.L. §310.30 and Tabb requirements.  Should your Honor wish to discuss this matter at a hearing, I would, of course, be most happy to do so at you convenience.

Respectfully submitted,


NATALIE REA
Associate Appellate Counsel
212-577-3403


Encl.
cc:     Hon. Cyrus R. Vance Jr.
        N.Y. County District Attorney
        One Hogan Place
        New York, New York 10013
        Attn: Britta Gilmore

# SUPREME COURT OF THE STATE OF NEW YORK

PART        93                              DATE

JUSTICE     E. McLaughlin                   TIME

We the jury request _polaroids, keys, locks, defendent's defense's pictures, + scale(s)_

JURY FOREPERSON

| COURT EXHIBIT NO. | IV |
|---|---|

# SUPREME COURT OF THE STATE OF NEW YORK

PART          93                    DATE

JUSTICE     E. McLaughlin          TIME

We the jury request _to try key in lock. can we open bag?_

_(signature)_

JURY FOREPERSON

| COURT EXHIBIT NO. | I |
|---|---|

**SR 198**



**DISTRICT ATTORNEY**
OF THE
**COUNTY OF NEW YORK**
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



CYRUS R. VANCE, JR.
DISTRICT ATTORNEY

May 26, 2011

The Honorable Theodore T. Jones
Judge of the Court of Appeals
New York Court of Appeals
20 Eagle Street
Albany, New York 12207 -1095

Re: <u>People</u> v. <u>Edward Green</u>
N.Y. Co. Indictment No. 5643/07

Your Honor:

I submit this letter in opposition to defendant's application for leave to appeal to the Court of Appeals. Defendant stands convicted of Criminal Possession of a Controlled Substance in the First Degree (Penal Law § 220.21[1]), Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16[1]), and two counts of Criminally Using Drug Paraphernalia in the Second Degree (Penal Law §§ 220.50[2], [3]).

On the evening of November 1, 2007, officers from the NYPD's Major Case Unit executed search warrants for the second- and third-floor apartments of an apartment building at 451 Lenox Avenue in Harlem. In the second-floor apartment, officers discovered co-defendant Steven Brown sitting in a makeshift "office" which contained 18 half-gram bags of cocaine packaged for sale, significant quantities of drug packaging materials, a gun holster, and a bag of marijuana. Officers additionally seized $900 and a set of keys from Brown's person.

The second-floor apartment was also equipped with a closed-circuit television surveillance system, whose wiring extended from the second-floor apartment to the rear southwest apartment on the fourth floor, which officers entered using one of the keys seized from Brown. Inside, officers found defendant alone, sitting in the dark, unresponsive to their verbal commands. The apartment itself bore no signs of residential use and was littered with drug paraphernalia, including playing cards coated with cocaine residue, common mixing agents, a digital scale and two heat sealers, and hundreds of plastic baggies. The officers immediately arrested defendant and seized more than $300 and a large set of keys from his person.

After securing defendant, the officers opened a nearby closet in order to confirm that no one was inside. Inside they discovered two combination-lock safes, assorted drug packaging materials, an additional heat sealer, and numerous digital scales. After obtaining a supplemental search warrant, the officers pried open the two locked safes. In one safe, officers discovered

**SR 199**

DISTRICT ATTORNEY   COUNTY OF NEW YORK

Hon. Theodore T. Jones                    2                        May 26, 2011

three large chunks of cocaine which together weighed more than 17 ounces. The other contained approximately $1,100 in cash and additional cocaine, packaged and ready for sale.

Prior to trial, the court received in camera testimony from a confidential informant and Anthony Romero, the police officer who secured the search warrants. At the conclusion of Romero's testimony, the court realized that the warrant for the fourth-floor search was based not on the confidential informant's tip, but rather on developments during the execution of the warrants for the other floors. The court notified counsel for the defendants by letter that the in camera testimony had raised issues about the basis for the police activity on the fourth floor. Accordingly, the court released redacted hearing minutes to both defense counsel, and invited them either to litigate those issues at a conventional suppression hearing or to brief the issues based on the redacted Darden testimony. By email, both counsel declined the offer to proceed with a hearing, and instead submitted written arguments. The trial court subsequently denied the suppression motion, concluding that although the search of the fourth floor was not supported by probable cause, defendant lacked standing to challenge the search.

Just before the jury retired to deliberate, the court suggested that the parties "have a chat [ ] with respect to the evidence" (Proceedings: 624). Defense counsel immediately interjected that he had "no objection to the jury examining the evidence" (Proceedings: 624) (emphasis added). The jury's first note asked for numerous items of physical evidence; although the note was marked as a court exhibit, the parties did not make a record of the note's handling. The second note indicated that the jurors wanted "to try the key in the lock," and asked, "can we open the evidence bag?" The parties did not make a record of the second note's handling. See Respondent's Brief: 20. A third note requested clarification of various legal concepts in the court's main charge. The record reflects that trial judge discussed the third note with the parties, read the note into the record, and delivered the agreed-upon instruction (Proceedings: 625-626).

On appeal to the Appellate Division, First Department, defendant raised several claims through counsel: that he was deprived of his right to be present during the in camera testimony of the confidential informant and police officer; that the court erred in its handling of a jury note and in concluding that his counsel's opening remarks opened the door to previously excluded evidence; and that he was denied effective assistance of counsel when his attorney's closing argument opened the door to evidence regarding defendant's criminal history.[1]

A unanimous panel of the First Department affirmed defendant's convictions in a decision dated March 24, 2011. People v. Green, 2011 N.Y. Slip Op. 2115 (1st Dept. March 24, 2011). As is pertinent here, the First Department concluded that defendant had expressly declined to litigate the suppression issues at a "conventional hearing," and thus had waived any challenge to the procedure by which the court addressed the claims. Green, 2011 N.Y. Slip Op. 2115 at *1. With regard to defendant's complaint about the handling of a jury note asking

---

[1] In a pro se supplemental brief, defendant contended that trial evidence was legally insufficient to support his convictions, and that he received ineffective assistance of counsel.

DISTRICT ATTORNEY COUNTY OF NEW YORK

Hon. Theodore T. Jones                    4                    May 26, 2011

not "an application of everyday experience" and, furthermore, went to a central issue at trial. Id. at 393-394. Such was not the case here, where the jurors asked only to try a key in a lock — an act each juror likely performed several times each day. And here, unlike Brown, the trial did not turn on a single, hotly contested issue: the People had presented ample evidence of defendant's guilt in addition to Romero's direct testimony that the key did, indeed, open the lock. See Respondent's Brief: 26-28.[4]

Defendant also suggests that this Court grant leave to resolve a "conflict" between the First Department's ruling in this case and the Fourth Department's recent decision in People v. Kalinowski, 2011 N.Y. Slip Op. 03771 (4th Dept. May 6, 2011). In Kalinowski, the parties agreed, prior to deliberations, that the jury would receive "certain items of evidence" if they so requested. 2011 N.Y. Slip Op. 03771 at *1. The jury's first note, however, sought more than simple provision of exhibits in evidence. The note explained that, if the autopsy report did not "clarify the exact path of the bullet wound in the [victim's] head," they would like to "hear/see the path of the wound and/or the autopsy report." Id. As the Fourth Department concluded, the note was most reasonably interpreted as a request for readback of portions of the expert witness's "extensive" testimony — a question not contemplated by the stipulation, and whose resolution required additional input from the attorneys. Id. And that is precisely what distinguishes Kalinowski from the instant case: here, because the parties had already agreed that the jury should "examine" the exhibits, the jury's request was "ministerial rather than substantive . . . and there was no need for input from counsel." Green, 2011 N.Y. Slip Op. 2115 at *2. Thus, defendant's case does not "conflict" with Kalinowski; it merely applies the law to a different set of facts.

Defendant also asks this Court to review the propriety of defendant's waiver of a conventional suppression hearing (Application at 3). In defendant's estimation, the express waiver in this case — which even defendant admits counsel timely conveyed to the prosecutor and trial judge — was ineffective because defendant did not communicate it "in person" (Application at 3-4). Defendant's claim cannot withstand scrutiny.

As this Court has recognized, because it is in no way mandatory to seek suppression of seized evidence, a defendant may certainly forgo making such a motion. See People v. Esajerre, 35 N.Y.2d 463, 466 (1974). Accordingly, "[i]f the right can be waived by a failure to take affirmative action, no good reason is shown why a defendant may not elect to waive" the same right. Id.

---

[4] People v. Betts, 70 N.Y.2d 289 (1987), on which defendant also relies (Application at 2), is only further afield. There, the Court of Appeals determined that the trial court erred when, over defense objection, it refused to instruct the jurors not to speculate about an "unexplained" stain on a pair of jeans admitted into evidence in a rape prosecution. Betts, 70 N.Y.2d at 292, 295. It is plain that a jury's request for permission to indulge in baseless speculation about the nature or significance of an unidentified stain on a rape victim's clothing is utterly unlike the request here to simply turn a key in a lock.

DISTRICT ATTORNEY   COUNTY OF NEW YORK

Hon. Theodore T. Jones                    5                          May 26, 2011

Of course, to be valid, defendant's waiver must be knowing, intelligent, and voluntary. Here, absolutely nothing in the record suggests that counsel failed to discuss the waiver with defendant, misrepresented the court's offer to reopen the hearing, or poorly advised his client. And as the People explained below, defendant's decision to waive a conventional suppression hearing and proceed instead on the redacted minutes of the Darden hearing was plainly strategic: Officer Romero's Darden testimony was at times directly contradictory to the information he had provided in support of the warrant. As defendant surely recognized, a conventional suppression hearing would only have afforded the prosecution an opportunity to rehabilitate Romero and repair the defects in his testimony. By proceeding on the redacted Darden minutes and counsel's written submissions, defendant wisely took all possible advantage of those infirmities.

Defendant's insistence that "only [he] can waive the right [to a suppression hearing] in person" (Application at 4, 5), has no support in the case law he cites. People v. Anderson (16 N.Y.2d 282, 287-288 [1965]), for example, certainly recognizes that a defendant may not be involuntarily excluded from a suppression hearing, but it does not articulate a rule by which a defendant must affirmatively waive suppression in person. Nor did this Court announce such a rule in People v. Parker, 57 N.Y.2d 136 (1982). There, the Court concluded that a defendant's mere failure to appear for trial would not necessarily communicate an "implicit waiver" or "automatically" authorize a trial in absentia. Parker, 57 N.Y.2d at 142. The court's decision in Parker hardly "suggests," as defendant contends (Application at 5), that a defendant must affirmatively waive a suppression hearing in person. For one, the case concerned the defendant's presence at trial, not a suppression hearing. And, of course, defense counsel in Parker never communicated his client's waiver of the right to be present at any material stage of the proceedings, as happened here.[5]

In sum, the First Department properly concluded that the jury's second note was ministerial, and, because it required no additional input from counsel, fell outside the purview of CPL 310.30. So, too, the court correctly held that when defendant elected to litigate the suppression issue in written submissions, he affirmatively waived any challenge to those procedures. Moreover, that waiver was no less effective for being communicated by counsel. Accordingly, defendant's application for leave to appeal to the Court of Appeals should be denied.

---

[5] People v. Vargas, 88 N.Y.2d 363 (1996) is similarly inapposite. There, the Court of Appeals actually held that the defendants' Antommarchi waivers were effective even though the trial judges had threatened to refuse sidebar conversations altogether if the defendants declined to waive the right. Vargas, 88 N.Y.2d at 377. Thus, again, defendant's cited authority concerns a different right and a different set of circumstances, and in no way stands for the proposition that counsel may not communicate the waiver of a suppression hearing on his client's behalf.

DISTRICT ATTORNEY   COUNTY OF NEW YORK

Hon. Theodore T. Jones                          6                          May 26, 2011

Respectfully,

Britta Gilmore
Assistant District Attorney
(212) 335-9302


Cc.     Natalie Rea, Esq.
        The Legal Aid Society
        Criminal Appeals Bureau
        199 Water Street
        New York, NY 10038

**SR 203**

# State of New York
# Court of Appeals

*Gilmore*
*Glaser*
*Reed*
*Simchi-Levi*

2011 JUN 30  A 11: 13

BEFORE: HON. THEODORE T. JONES

                          Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK,

                                  Respondent,

         -against-

EDWARD GREEN,

                                   Appellant.

**ORDER DENYING
LEAVE**

*5643/07*

      Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law § 460.20 from an order in the above-captioned case;*

      UPON the papers filed and due deliberation, it is

      ORDERED that the application is denied.

Dated:  August 25, 2011
          White Plains, New York

                                        Associate Judge

**\*Description of Order:** Order of the Appellate Division, First Department, entered March 24, 2011, affirming a judgment of the Supreme Court, New York County, rendered October 8, 2008.

**SR 204**

To be argued by
**EDWARD GREEN**

# NEW YORK STATE SUPREME COURT
# COUNTY OF NEW YORK
# APPELLATE DIVISION-FIRST DEPARTMENT

The People of the State of New York,
                                                Respondent

- Against –

**EDWARD GREEN,**
                                Defendant – Appellant.

## PETITIONER'S MOTION FOR AN WRIT OF ERROR OF
## CORAM NOBIS
## INDICTMENT NO.  5643/07

**EDWARD GREEN, Pro se 08A5510**
**Eastern Correctional Facility**
**P. O. Box 338**
**Napanoch, N.Y. 12458-0338**

September 2011

# TABLE OF CONTENTS

## PAGES

TABLE OF AUTHORITIES................................................1

QUESTIONS PRESENTED................................................3

PROCEDURAL DEFAULT................................................3

STATEMENT OF FACTS................................................5

ARGUMENTS

Point One – The Stipulation...................................10

Point Two – Vacating the Stipulation....................17

Point Three – Ineffective Assistance of Counsel....................29

CONCLUSIONS................................................44

i

# TABLE OF AUTHORITIES

## TABLE OF CASES                                          <u>PAGES</u>

American Bridge Co. v. Acceptance Ins. Co., 51 AD3d 607 [2008]...................................16

Ander's v. California, 386 US 738................................................................................2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)......................................15, 18

Aostalas v. Amalfitano, 305 A.D.2d 202, 204[1st Dept. 2003]....................................31

Baksi v. Wallman, 62 N.Y.S.2d 26 Sup. Ct. N.Y. (1946)............................................24

Barcia v. Barcia, 283 A.D. 726, 127 N.Y.S.2d 443 (2nd Dept. 1954)............................24

Bond v. Bond, 260 A.D. 781, 24 N.Y.S.2d 169 (2nd Dept. 1940)..................................24

Bonnette v. Long Island coll. Hosp., 3 NY3d 281..........................................18, 25, 26

Cabbad v. Melendez, 81 AD2d 626 (2nd Dept. 1981)...............................................14, 17

Campbell v. Bussing, 274 A.D. 893, 82 N.Y.S.2D 616 (2ND Dept. 1948)........................24

Coleman v. Thompson, 501 US 722, 750 [1991]........................................................4

Connecticut v. Johnson, 103 S.Ct. 969....................................................................37

Countryman v. Breen, 241 App. Div. 392 [271 N.Y.S. 744, aff'd, 268 NY 643]..................27

De Gaust v. De Gaust, 237 A.D.2d 862....................................................................16

DeSantolo v. LaPorte, 89 N.Y.S.2d 114 (City Ct. Mt. Vernon (1949)............................24

Donovan v. Twist, 119 App. Div. 734, 104 N.Y.S. 1......................................................23

Evitts v. Lucey, 469 US 387.....................................................................................6

Faretta v. California, 422 US 806/821, 95 S.Ct. 2525, 2534.........................................32

Foote v. Adams, 232 App. Div. 60, 63, 248 NYS 539, 543.............................................19

Frikilman v. 31st Ave. Realty Corp., 39 AD3d 812, 813 [2007].....................................16

Gillray l., 287 A.D.2d 865.......................................................................................29

Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569[2002]..................................16, 25

Hallock v. State of New York, supra, 64 N.Y.2d 224, 230.............................................27

Hallow v. Hallow, 200 A.D. 642, 193 N.Y.S. 460 (1st Dept. 1922)................................24

Hamlin v. Sears, 82 N.Y. 327, 333..........................................................................20

Harris v. Reed, 489 US 255, 262 [1989].....................................................................6

Heiter v. Joline, 135 App. Div. 13, 119 N.Y.S 142......................................................23

Hillock v. NY, 485 NYS2d 510............................................................................15, 28

i

Hinds v. Gulutz, 61 Misc.2d 384 (Sup. Ct. Suffolk 1969)................................24

Hugh O'Kane Electric Co. Inc v. County of Westchester, 54 AD3d 660 [2008]....................16

In re Frutiger's Estate, 29 NY2d 143, 149-150, (1971)....................................17

Jackson v. Bartlett, 8 Johns 361 ..........................................................26

Johnson v. Zerbst, 304 U.S. 458, 464(1938)...............................................29

Kellogg v. Gilbert, 10 Johns 220..........................................................27

Klein v. Mt. Sinai Hosp., 61 N.Y.2d 865, 866 (1984)......................................25

Koss Co. Graphics, Inc v. Cohen, 1990, 166 A.D.2d 649 (2nd Dept.)........................28

Kubat v. Thieret, 807 F.2d. 351, 368 [7th Cir.]........................................2, 9

Leslie v. Van Vranken, 24 A.D.2d 658....................................................27

Lowinger v. Lowinger, 303 A.D.2d 723....................................................30

Magnolia Metal co. v. Pound, 60 App. Div. 318, 70 NYS 230...............................18

Mahon v. New York City Health & Hosps. Corp., 303 A.D.2d 725...........................29

Matter of Dirhim A. A.D.2d 339 [1st Dept. 1991].........................................42

Matter of Evans v. Board of Assessment Review of Town of Catskill, 284 A.D.2d 753, 755....29

Matter of Galasso, 35 N.Y.2d 319, 321 (1971)...........................................26

Matter of Ossing Urban Renew Agency v. Lord, 60 N.Y.2d 845.............................25

Mayo v. Henderson, 13 F3d. 528, 532 [2d. Cir. 1994]..................................3, 9

Mazzella v. American Home Constr. Co. 12 A.D.2d 910....................................27

McCoy v. Feinman, 99 N.Y.2d 295, 302[2002]............................................26

Mutual Life Ins. Co. v. O'Donnell, 146 NY 275.........................................27

Nabisco, Inc. v. Warner-Lambert Co. 220 F.3d 43, 45 (2d Cir. 2000).....................15

Osborn, 861 F.2d. @624.................................................................32

Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004)..........15

Peopel v. Cavalli, 266 A.D.2d 666.....................................................14

People v. Armstrong, 160 A.D.2d 206 [1st Dept. 1990]..................................42

People v. Bacbent, 69 N.Y.2d 593.......................................................5

People v. Bailey – 602 NYS2d 177, 178, 5-7............................................16

People v. Bell, 38 NY2d 116, 120......................................................36

People v. Blyrd, 284 A.D.2d 509.......................................................16

People v. Bouton, 50 NY2d 130, 135....................................................18

ii

People v. Canty, 153 A.D.2d 640, 641 [2d Dept. 1989].................................43

People v. Carter, 86 N.Y.2d 721, 722-723.................................13

People v. Decker, 134 A.D.2d 726.................................3

People v. Dowdell, 88 A.D.2d 239.................................36

People v. Droz, 39 N.Y.2d 457, 462.................................38

People v. Dumars, 68 NY2d 729, 730 [1986].................................42

People v. Gomberg, 38 NY2d 307, 313-314.................................33

People v. Gorden, 71 Misc.2d 540.................................43

People v. Harris, 200 A.D.. 761.................................17

People v. Harris, 61 N.Y.2d 9, 17.................................30

People v. Harris, 74 A.D.2d 879, 880.................................43

People v. Johnson, 89 A.D.2d 506.................................36

People v. Lefkowitz, 276 A.D.2d 598.................................16

People v. Lefrois, 151 A.D.2d 1046.................................3

People v. Letendue 696 NYS2d 583.................................15

People v. Liotta, 79 N.Y.2d 841 (1992).................................39

People v. Lloyd, 51 NY2d 107, 111.................................34

People v. Lomardo, 61 NY2d 97, 102-103.................................33

People v. Macerola, 47 NY2d 257, 264-265.................................33

People v. Mack, 195 AD2d 485.................................17

People v. Manini, 79 NY2d 561, 573 [1992].................................41

People v. Mattison, 67 NY2d @ p. 469.................................34

People v. McDonald, 68 N.Y.2d 1, 8.................................34

People v. Mendes, 3 NY2d 120, 121.................................36

People v. Milazo, 33 A.D.3d 1060, 1061 (2006, lv. Denied 8 N.Y.3d 883(2007).................20, 35

People v. Mills, 45 A.D.3d 892, 895-896 (2007), lv. Denied 9 N.Y.3D 1036 (2008).................20, 35

People v. Pearson, 75 NY2d 1001 [1990].................................42

People v. Quarles, 187 AD2d 200, 203.................................15

People v. Reaman, 29 NY2d 278, 285 [1971].................................42

People v. Robertson, 61 A.D.2d 600 [1st Dept. 1978].................................42

People v. Rodriguez, 185 A.D.2d 198.................................3

People v. Rodriguez, 250 A.D.2d 478, 479 [1st Dept. 1989]………………………………6

People v. Rodriquez, 50 N.Y.2d 553, 557……………………………………………………29

People v. Rodriquez, 94 A.D.2d 805, 806 [2d Dept. 1983]………………………………9

People v. Roff, 67 A.D.2d 805……………………………………………………………38

People v. Rosado, 192 Misc.2d 184, 286 [Crim. Ct. NY County 2002]…………………42

People v. Rozzell, 20 N.Y.2d 712, 713……………………………………………20, 34

People v. Sandobar, 191 A.D.2d 375 [1st Dept. 1993]…………………………………41

People v. Santana, 156 A.D.2d 736, 737 (1989)…………………………………20, 34

People v. Sarai, 267 A.D.2d 295……………………………………………………14

People v. Sawyer, 55 A.D.3d 9951………………………………………………18, 35

People v. Seminana, 58 A.D.2d 841………………………………………………48

People v. Sullivan, 209 A.D.2d 558-559[1994]………………………………………8

People v. Thompson, 140 AD2d 652, 653(1988)………………………………………29

People v. Tirado, 47 A.D.2d 193 [1st Dept. 1975]………………………………41

People v. Torres, 68 NY2d 677 [1986]………………………………………………41

People v. V142 A.D.2d 698 [2d Dept. 1988]………………………………………41

People v. Vasquez, 141 A.D.2d 698 [2d Dept 1998]………………………………42

People v. Wedra, 56 A.D.2d 903……………………………………………………43

People v. Whitefield, 81 N.Y.2d 904, 906……………………………………………13

People v. Wilkins, 28 NY2d 53, 55……………………………………………………33

Powell v. Alabama, 287 US 45……………………………………………………30

Quality Ceramic Tile & Marble Co. v. Cherry Val. Ltd. Partnership, 259 A.D.2d 607…………29

Ragen v. City of New York, 45 A.D. 2d 1046, 385 N.Y.S.2d 62 (2nd Dept. 1974)……………24

Rainbow v. Swishre, 72 N.Y.2d 106, 109……………………………………………16

Reed v. Ross, 468 US 1, 16; 104 S.Ct. 2901, 2910……………………………………7

Reiss v. Financial Performance Corp., 97 N.Y.2d 195, 199[2001]………………………26

Sacks v. Stewart, 75 A.D.2d 536, 537……………………………………………20

Sandstrom v. Montana, 442 US 510; 99 S.Ct. 2450……………………………………36

Sklerov v. Sklerov, 231 A.D.2d 622……………………………………………29

Slamlow v. Del Col., 79 N.Y.2d 1016, 1018 [1992]……………………………………25

iv

Solack Estates, Inc. v. Goodman, 102 Misc.2d 504 (App. Term, 1st Dept. 1979), Aff'd. 78 AD2d 512 (App. Term, 1st Dept. 1980)............................................................17

Sontag v. Sontag, 1985, 114 A.D.2d 892..........................................................27

Spisto v. Thompson, 39 A.D.2d 598.................................................................27

Stockfield, 131 AD2d 834.............................................................................15

Thermalectric, Inc v. Still-Man Mfg. Corp., 43 A.D.2d 734...............................24

U.S. v. Ladd, 885 F.2d. 954..........................................................................37

United States Ex Rel Williams v. Brown, 721 F2d. 115, 1119, 1121 [7th Cir. 1983]...............3

United States v. Molt, 631 F.2d. 258, 262 (3rd Cir. 1980)................................39

United States v. Tucker, 716 F.2d. 576, 579-586' 595 [1983]...........................8

Van Nuys v. Titsworth, 57 Hun 5, 10 NYS 507................................................17

Wallace v. 600 Partners Co., 86 NY2d 543 [1995]............................................16

Woodman v. WWOR-TV, Inc. 411 F3d 69, 86 (2n Cir. 2005)...........................19

Yonkers Fur Dressing Co. v. Royal Ins., 247 NY 435, 445.................................18

v

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
THE PEOPLE OF THE STATE OF NEW YORK
                                        Respondent,

                                                    **NOTICE OF MOTION FOR**
                                                    **A WRIT OF ERROR**
                    - AGAINST -                      **CORAM NOBIS**

                                                    **Indictment No. 5643/07**

EDWARD GREEN
                        Petitioner,

TO THE STATE SUPREME COURT
OF THE COUNTY OF NEW YORK

**PLEASE TAKE NOTICE,** that upon the annexed affidavit of Edward Green, the

defendant herein, sworn to this _20_ day of September 2011, and upon all the proceedings

theretofore had herein, the undersigned will move this Court at a term thereof to be held on the

24th day of October 2011, at the Courthouse located at 27 Madison Ave. at 25th Street, New

York, New York 10010, pursuant to section 460.15 (1) of the Criminal Procedure Law, of the

State of New York  for an order granting leave to appeal to this Court from an order of the

Appellate Division-First Department [hereto attached as exhibit "A"] for the crimes of Criminal

Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law,

§§220.21(1), 220.16(1), rendered by a jury and before the Honorable McLaughlin, J.P., on the 15

day of September 2008, upon the grounds that:

> **"Did Petitioner receive Ineffective Assistance of Trial and**
> **Appellate Counsel wherein both Trial and Appellate Counsel**
> **should have known as well as understood but fail to advance the**
> **argument that an Attorney cannot help create evidence that will**
> **be used to convict his or her client at trial, without creating a**
> **conflict of Interest between the client and the Attorney, thereby**
> **rendering Ineffective Assistance of Representation to his or her**
> **client".**

Such grounds, if it was raised on appeal would require a reversal of conviction as a matter of law,

**SR 212**

and for such other and further relief as may be just and proper.

Dated: September 2011

                        Respectfully Submitted

                        Edward Green, Pro-se
                        Eastern Correctional Facility
                        P.O. Box 338
                        Napanoch, NY 12458-0338

TO:    **CLERK OF THE SUPREME COURT**
        **APPELLAT DIVISION-FRIST DEPARTMENT**
        27 Madison Ave. at 25th Street
        New York, New York 10010

        **Hon. Robert M. Morgenthau, Esq.,**
        District Attorney, County of New York
        One Hogan Place
        New York, New York 10013

        **STEVEN BANKS - NATALIE REA of Counsel**
        Attorney for Defendant-Appellant
        THE LEGAL AID SOCIETY
        Criminal Appeals Bureau
        199 Water Street – 5th Floor
        New York, New York 10038

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
THE PEOPLE OF THE STATE OF NEW YORK

                                    Respondent,

                                                    **AFFIDAVIT IN SUPPORT
                                                    OF MOTION FOR
                                                    WRIT OF ERROR
                                                    CORAM NOBIS**

EDWARD GREEN                                        **Indictment No. 5643/07**

                    Petitioner,

TO THE STATE SUPREME COURT
OF THE COUNTY OF NEW YORK

    **PLEASE TAKE NOTICE that** upon the annexed affidavit of the above named

petitioner, this petitioner makes this affidavit in support of Notice of Motion to Appeal to the

Appellate Division-First Department for a certificate to Appeal pursuant to sections 460.15 (1) of

the Criminal Procedure law of the State of New York, certifying that this case involves a

question of Law that should be reviewed by the Appellate Division, and granting leave to appeal

to the Appellate Division-First Department from a decision and order of the Appellate Division-

first Department of the State of New York, County of New York, dated March 24, 2011 ('Luis A.

Gonzalez, P. J.') hereto attached as exhibit "A".

    The case under indictment number 5643/07 was appealed to the Appellate Division-First

Department was heard at the Appellate Division-First Department on November 3, 2010. The

Appellate Division-First Department affirmed the conviction from an Order of the Supreme

Court of the State of New York, County of New York, by the Honorable Edward J. McLaughlin,

J.P., upon a jury verdict, convicting Mr. Edward Green of the crimes of Criminal Possession of a

Controlled Substance, a class A felony in the First and a class B felony in the Third Degree, in

violation of Penal Law, §§220.21(1), 220.16(1), on the 15 day of   September 2008 and

sentencing him to a term of 15 years.

**SR 214**

This petitioner was lead to believe that his Appellate Counsel was going to make an application to the New York State Court of Appeals after receiving the Appellate Division-First Department's decision affirming his conviction on March 24, 2011.  It should be noted that Appellant Appellate Counsel had never made an application to the New York State Court of Appeals on behalf of her client.  Because of Appellate counsel's failure to promptly mail a copy of the Appellate Division determination affirming Mr. Edward Green's ("Mr. Green") conviction to her client and because of the late date by which Mr. Green received the Court's decision affirming his conviction, it was beyond the thirty days allowed to make an a application to or request an extension of time to file an appeal to the New York State Court of Appeals.

Bail pending appeal is not statutory authorized.  Since the defendant is presently incarcerated and serving his prison sentence, any delay occasioned by ordinary motion practice would be extremely prejudicial.  This petitioner will move this Court for an order allowing for an expedited appeal in the event that a certificate were to be ordered granting permission to allow this petitioner to appeal.

In accordance with the requirements of Section 670.10.3(g) of the Rules of the Court, the following information is supplied:

(a)     The applicant is Edward Green, Pro-se, Din: 08A5510, facility address is: Eastern Correctional Facility, P.O. Box 338, Napancoh, New York 12458-0338.

(b)     The People are represented by the District Attorney of the County of New York, 1 Hogan Place, New York 10013

(c)     The New York County Indictment Number is 5643/07

(d)     The question of Law or Fact which ought to be viewed by this Court is whether at trial, did Mr. Edward Green ("Green") received Ineffective Assistance of Appellate Counsel,

2

**SR 215**

wherein trial Counsel "Mr. Arnold Keith" admitted ignorant of the applicable Criminal Procedure Law, as well as admitted to providing Mr. Green with Ineffective Assistance of Counsel during the course of Mr. Green's sentencing allusion and thus could not have given Mr. Green effective advice and where counsel was not prepared for trial and was generally unfamiliar with procedures in a Criminal trial, in clear violation of Mr. Green's Constitutional Rights to the Right to Effective representation which includes the right to assistance by an attorney who is familiar with, and able to employ at trial the basic principles of Criminal Law and Procedures.

As the Court stated in Ander's, nominal representation on appeal is like no representation and is constitutionally inadequate (Ander's v. California, 386 US 738).

Also, because Appellate Counsel, Ms. Natalie Rea ("Rea") had never informed her client that her services had therefore ended and that she was no longer obligated to represent him in any matter, as well as she failed to inform Mr. Green just what the next process step in the process would be for continuing his appeal, if he so chooses to do so.

Mr. Green no longer had legal representation as of October 3, 2010, where Appellate Counsel made grossly substandard, rambling and incoherent legal arguments before the Appellate Division-First Department on behalf of her client and only on the issues that she filed on appeal and totally disregarded arguments raised in her client's pro se supplemental brief. It should be noted that the legal arguments that Appellate Counsel argued on October 3, 2010, was grossly substandard, Rambling and incoherent and she failed to produce the statutory required mitigating evidence in support of her arguments, (Kubat v. Thieret, 807 F.2d. 351, 368).

The failure to introduce evidence supporting defendants contentions that the crime could not have occurred under the circumstances alleged rendered Appellate Counsel Ineffective (United States Ex Rel Williams v. Brown, 721 F2d. 115, 1119, 1121 [7th Cir. 1983]).

3

**SR 216**

It is well settled that the unexplained failure of Appellate Counsel to rise issues which, if raised would have rendered a reversal or modification likely, (People v. Rodriguez, 185 A.D.2d 198; People v. Decker, 134 A.D.2d 726; People v. Lefrois, 151 A.D.2d 1046); the failure to present significant and obvious issues on appeal (Mayo v. Henderson, 13 F3d. 528, 532 [2d. Cir. 1994]) choosing to argue particularly weak appellate issues that had little chance of success @536. Constitutes a sufficient ground upon which to predicate a finding of Ineffective Assistance of Appellate Counsel.

Appellate Counsel Ms. Natalie Rea should have known that an attorney cannot assist in creating evidence that will be used at trial to convict his or her client without creating a Conflict of Interest between the client and the attorney, thereby rending Ineffective Assistance of Representation to his client.

## QUESTIONS PRESENTED

**Did the Supreme Court of the County of New York Error in Denying the Merits of Petitioner's Motion to Vacate Judgment based upon the claim of Ineffective Assistance of Counsel and Restoring Case back to the Trial Calendar, acknowledged on its face that it was in Direct Conflict with Decisions of the Appellate Division, First, Second, Third, and Fourth Department, the New York State Court of Appeals, the Second Circuit Court of Appeals and other Federal Decisions in New York.**
**ANSWER: <u>YES</u>**

The question presented here is whether a defendant's lawyer has the authority to consent to stipulate that a unknown substance was in fact cocaine without unquestionable documental proof to support a stipulation knowing that his client was never in possession of any controlled substances [see police laboratory analysis report No. N932912 (PGS. 1 & 2); N932910], at the time the stipulation was enter in to between appointed counsel, Mr. Arnold Keith and the

4

**SR 217**

prosecutor on behalf of his client, Mr. Green without the knowledge or express consent of the appellant or the court, and not in the present of the appellant or the court and without appellant or the court being consulted, so waived appellant's right to challenge the authenticity of the evidence.

Appellate Counsel, Rea should have known and understood that when Appointed Counsel "Mr. Arnold Keith" was appointed to represent the defendant and to service as an advocate for the defendant, an appointed counsel cannot assist either in the course of pre-trial proceedings or even in a less argumentative trial context assist the Prosecutor in creating evidence that will be used at trial to convict his client without creating a Conflict of Interest between the client and the attorney, thereby rending Ineffective Assistance of Representation to his client.

## PROCEDURAL DEFAULT

Hereto, although, I am a layperson in the matters of law and I am familiar with all the statements and facts herein submitted.  This is the first such affidavit filed Pro-se in this Court and it is in this substantially uncharted area permitting the usage of intellectual judicial discretion that I now find myself, and I respectfully seek this Court indulgence for errors, omissions, defects and irregularities pursuant to the Civil Practice Law and Rules §§2001 and 2101(F).

Petitioner chooses to bring this application via motion rather than by plenary action as it is the most expedient method for Ineffective Assistance of Appellate Counsel.

A complaint of Ineffective Assistance of Appellate Counsel should be made in the Appellate Division through a motion for Rearguement, Reconsideration or by way of Writ of Error Coram Nobis.

A Writ of Error Coram Nobis is brought by motion rather than appeal and should be brought in the Appellate Division. (People v. Bacbent, 69 N.Y.2d 593).   The right to Effective

5

SR 218

Assistance of Counsel on Appeal is well settled under both State and Federal Constitutions. (Evitts v. Lucey, 469 US 387).

In a case of procedural default, this court may reach the merits of petitioner's petition where the petitioner had filed a Pro se Post Conviction, Criminal Procedural Law ("CPL") §330 motion (see, Ex. "B") where as the lower courts reliance on CPL, §440.10 (2) (a); (2) (c); (3) (c), which states that if there is sufficient facts on the record to have permitted the claims to be raised on appeal or an earlier CPL §440 motion, yet petitioner failed to raise them. Therefore, petitioner's motion is denied in accordance with the above referenced statutes. Any reliance upon the above statutes is unavailing.

Petitioner offers [two] explanations in an attempt to demonstrate cause.

First, the Appellate Division-First Department (see Appellate Decision hereto attached as Exhibit "A") never ruled that appellant's claims were "unpreserved for appellate review as a matter of law". Because of the failure to object at trial and the trial court had never declined to reach its merits. (People v. Rodriguez, 250 A.D.2d 478, 479 [1st Dept. 1989].

This court must reject any claim by the people denying appellant's motion on State procedural grounds, holding that it had been procedurally defaulted. This ground is not an independent and adequate State procedural ground which would preclude relief in this Court, in light of the fact that appellant's moving papers showing of Cause and Prejudice or a Fundamental Miscarriage of Justice. (Coleman v. Thompson, 501 US 722, 750 [1991]; Harris v. Reed, 489 US 255, 262 [1989].

The Court should note that while appellant moving papers are supported by facts or factual allegations sufficient to support the grounds alleged. The prosecutors failure to file affirmation in opposition or by failing to provide the court with transcripts indicating a resolution of this matter raised on petitioner's post conviction motion, thus if this court refusal to hear this motion, this error in denying appellant's motion for a new trial as procedurally barred could not be considered a harmless error.

Second, if the rights of self representation were not to be honored on this record it is unlikely that either ever would. An examination of this record fails to suggest that any further action or submission by the defendant that he might have taken or made in support of his right or intentions to exercise his Constitutional privileges. The inference may be drawn that unquestionably in the furtherance of what it perceived to be the defendant's best interests was

6

determined to deny the defendants application no matter what he wrote, said or what the record otherwise showed.

In doing so, the Court arrogated to itself and denied to this petitioner the exercise of rights constitutionally guaranteed to him.

Therefore, this petitioner is a layperson in the matters of law. This Court should militate against any claims of this petitioner not exercising due diligence where petitioner's trial and Appellant Advocates did not properly perform their duties to effectively address petitioner's issues. It cannot be said that petitioner has not exercised due diligence. Petitioner as a layperson was not of the ability to detect these errors on his own and where Trial and Appellate Counsel had filed to do so, the petitioner was actually without the knowledge of these errors until brought to petitioner's attention by another.

As the Court is well aware, the issues of Ineffective Assistance of Counsel are one of the primary points by which this petitioner has proceeded in all motion practice.

State and Federal Courts have long held that a claim that is so novel that its legal basis is not reasonably available to a layperson may constitute cause for a procedural default. (Reed v. Ross, 468 US 1, 16; 104 S.Ct. 2901, 2910).

Under New York State law, this Court should conclude that under the circumstances of this case a hearing is required to determine the validity of petitioner's allegations surrounding petitioner's claim of Ineffective Assistance of Counsel.

## STATEMENT OF FACTS

A person cannot be convicted of a crime based upon evidence that was never produced at the Grand Jury or at Trial.

Prior to trial, the defendant's counsel stipulated that the alleged unknown substances found during a search on November 1, 2007 at 451 Lenox Avenue, New York City, and taken from a lock safe, in a lock closet, in a fourth floor apartment, was in fact cocaine[1], absent unquestionable documental proof to support that claim, even thro there was no unquestionable

---

[1] See, Trial Transcript, Pg. 36 Voir Dire – Court Proceedings [marked as exhibit "F"]

7

**SR 220**

evidence introduced at the Grand Jury or at Trial that demonstrated that the unknown substances was in fact cocaine or the fact that there was no proof that this petitioner was in possession of any controlled substances[2] as well as the people failed to present legally sufficient evidence to convict Green of the charge of Criminal Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law §§220.21(1), 220.16(1).

Neither Defense nor Appellate Counsel(s) by their failure to review the record or their failure to conduct any legal research (People v. Sullivan, 209 A.D.2d 558-559[1994]) and Counsel's inadequate preparation for an Appellate hearing, including counsel's failure to sufficiently counsel with her client prior to the filing of her Appellate brief or before the Appellate hearing, constituted Ineffective Assistance of Appellate Counsel (United States v. Tucker, 716 F.2d. 576, 579-586' 595 [1983]) and her failure to argue the point that in order to be convicted as an accomplice, a defendant must act with the mental culpability required for the commission of the offense of Criminal Sale and Possession of a Controlled Substance and must acted with the culpability to have requested, solicited, commanded, importune or intentionally aided the principal actor Steven Brown ("Brown") to engage in the commission of the offense. see, Penal Law ("PL") §20.00.  Furthermore, there was no evidence that Green and the person ("Brown") who possessed and sold the drugs had any interaction either before or after the actual sale by Brown.  Clearly, the record shows that Green was engaged in no criminal conduct of any description when arrested.  Significantly, no contraband or buy money was recovered from Green after his arrest which supports the conclusion that Green in no way assisted, requested, solicited, commanded, importuned or intentionally aided Brown to engage in the commission of

---

[2] See People's Voluntary Disclosure Form, hereto attached as exhibit "C".
See section: Police Laboratory Controlled Substance Analysis Report, voucher number(s), N932912 [Pg. 1 & 2], dated 11/07/07 and N932910, dated 11/03/07, respectfully.

8

possession or the sale of a controlled substance.

Further, the testimony did not show, as would have been necessary to sustain his conviction as an accomplice for the Criminal Possession with the intent to Sale a Controlled Substance or that he shared the seller's intent to bring about the drug transaction.

Further, Green, did nothing to possessed, let alone, demand or importune the illicit possession or sale of a controlled substance.  The necessary conditions for establishing accomplice liability having been thus left unsatisfied, and there being no other capacity in which the defendant may be said to have participated in the charged possession and or sale.  The record is barren of testimony which demonstrated that Green possessed with the intent to sale or ordered or engaged any person to possess and sale a narcotic drug.  Had Defense or Appellate Counsel(s) properly perform their duty to effectively address these issues, we would not be here now?

Because of the failure of Appellate Counsel to present significant and obvious issues on appeal, (Mayo v. Henderson, 13 F.3d. 528, 532 [2d Cir. 1994]), choosing to argue particularly weak appellate issues that had little chance of success @ 536, and where Appellate Counsel gave Grossly Substandard, Rambling and Incoherent arguments and fail to produce statutory required mitigating evidence (Kubat v. Thieret, 807 F.2d. 351, 368 [7th Cir.]), Greens conviction would have been reversed.

Finally, in light of the fact that both Defense and Appellate Counsel(s) should have known that the proffered expert evidence would have been incompetent. (People v. Rodriquez, 94 A.D.2d 805, 806 [2d Dept. 1983]) and the fact that the prosecution had no other eyewitnesses and the rest of its case consisted of weak circumstantial proof, Green should not have been found guilty of the crime of Criminal Possession of a Controlled Substance.

Defense counsel, "Mr. Arnold Keith" ("Mr. Keith") realized at petitioner's Post

9

**SR 222**

Conviction Motion hearing that he had mistakenly entered into a binding agreement with the prosecutor when he stipulated that an unknown substance, had tested positive as being cocaine, and his client's possession thereof.

Where there was no evidence that said evidence was ever tested by any police chemist who had a duty to report and wherein Mr. Keith stipulated that the unknown substance was cocaine, and his client's possession thereof, without the express consent or authorization of his client, even thro he should have known that his client was never in possession of a controlled substance, this would have been evident had Trial Counsel reviewed the record.

Defense and Appellate Counsel should have known as well as understood that any and all laboratory substance analysis report surrounding their client could only be classified as an uncertified laboratory substance analysis report.  An uncertified report of drug testing as well as all issues concerning the chain of custody of the evidence performed amounted to hearsay evidence, because the People failed to produce witnesses to lay a proper foundation for the introduction and/or admission of such evidence.

In light of the fact that Mr. Green was never in possession of a controlled substance, and there was never any kind of controlled substance analysis report produced that showed that the alleged unknown substance that the People alleged that was allegedly in Mr. Green's possession was in fact cocaine amounted to hearsay and all references to the unknown substance as being cocaine should not have been admitted into evidence at trial.

It should be noted that defense counsel stated to the Trial court prior to sentencing and after reviewing petitioner's post conviction CPL §330 motion that he had rendered **"Ineffective Assistance"** to his client based upon a mistaken belief that the unknown substance was cocaine.

This petitioner filed a pro se Post Conviction CPL 330 motion to vacate judgment of

10

conviction prior to sentencing, and the Trial Court below did not address Petitioner's issues. The questions presented here on this motion are:

1. Where the record is silent as to a non-appearing party [the Police Chemist], wherein no binding agreement was ever entered into between this petitioner and the prosecutor, but was orally inserted by defense counsel to mislead the Court into believing that petitioner was originally in agreement with the stipulation.

2. This appeal seeks to annul the Determination by the State Supreme Court that orally inserted a non-appearing party [The police chemist opinions] into the stipulation without the express authorization or consent of this petitioner.

3. The Sate Supreme Court of the County of New York Error in Denying the Merits of Petitioner's Post Conviction, CPL 330 Motion to Vacate verdict, thereby acknowledging on its face that it was in Direct Conflict with Decisions of the Appellate Division, First, Second, Third, and Fourth Department(s), the New York State Court of Appeals, the Second Circuit Court of Appeals and other Federal Decisions in New York:

| | |
|---|---|
| 1   BRIEF DESCRIPTION OF<br>        NATURE OF CASE: | The Trial Court orally alter<br>the stipulation to include the<br>Chain of Custody of the<br>Evidence. |
| ISSUES PROPOSED TO BE<br>RAISED ON APPEAL: | Abuse of discretion and error of law<br>in declining to vacate conviction<br>And to restore action the trial<br>calendar. |

The grounds for reversal are that:

(a)   It is evident from the record that the fair notice provision provided by defense counsel

11

**SR 224**

or the district attorney as woefully inadequate, the totality of omissions and commissions is such that the conclusions is inescapable based upon the absence of a fair notice, the lack of a true meeting of the minds where defense counsel lacked the authority to enter into a binding agreement between this petitioner and the District Attorney without the express consent or authorization of his client. Had Appellate Counsel done her job property by property evaluating the trial record and filing the proper Appellate brief, the Appellate Court conclusions would have resulted in the stipulation being dismissed and the case being re-entered back on the Trial Court calendar, based upon the fact that the determinations made by the defense counsel rested on an impermissible basis.

(b)    The determination made by the Court to include the chain of custody of the evidence within the original stipulation of was made in error based on the facts and law of this case, in that the petitioner's Attorney, Mr. Keith and the District Attorney, was not authorize to enter into a binding agreement on behalf this Petitioner and the District Attorney to orally stipulate that an unknown substance tested positive as being cocaine absent and without the express consent or authorization of this petitioner.

(c)    This petitioner is requesting that the Appellate Court review the evidence on the issue of whether the stipulation was orally change or orally reconstructed to include the chain of custody of the evidence, which was a fatal error of law.

(d)    The determination, based on the facts of this case is contrary to Respondent's and the Trial Court's own reply to petitioner's post conviction motion in which they failed to give this petitioner fair notice that the chain of custody of the evidence was to be included within the stipulation during petitioner's post conviction hearing prior to sentencing.

(e)    The determination, based on the facts of this case is that any recommendations or

12

**SR 225**

determinations made to the Court by defense counsel result in a conflict of interest, based upon the fact that defense counsel represented the sole interest of petitioner and because of Appellate Counsel's refusal to entertain evidence on the issue of whether the stipulation was orally change or orally reconstructed to include the chain of custody of the evidence, thereby demonstrating to the Court that Defense and or Appellate Counsel had a vested interest to insure that the outcome of all proceedings remain in place and in favor of the State.

## THE STIPULATION

Where the record is silent as to a non-appearing party [the Police Chemist], wherein no binding agreement was ever entered into between this petitioner and the prosecutor, but was orally inserted by defense counsel to mislead the Court into believing that petitioner was originally in agreement with the stipulation.

The fundamental legal precedents necessary to decide this case are not in dispute. Given the failure of defense counsel to dispute standings in a timely manner, this petitioner bore no further burden to establish his standings. (People v. Carter, 86 N.Y.2d 721, 722-723 [631-116, 16]; People v. Whitefield, 81 N.Y.2d 904, 906 [597-641]).

It should be noted that since Mr. Keith was not the drafter of the original stipulation in hole or in the first part the stipulation. Mr. Keith, the attorney for Mr. Green and the prosecutor had a duty to insure that there were no ambiguities within the true meaning of the oral stipulation. Mr. Keith and the People failed to insure that all material terms of the oral stipulation was brought to light, and because of their failure to do so, the prosecutor cannot now claim that the "chain of custody of the evidence" was to be included within the stipulation.

If the chain of custody of the evidence was to be included within the stipulation, then the stipulation should have included a third party charge (testimony from the police chemist whom

13

performed the test).  The third party charge should have included but fail to state that the stipulation would finally settle and resolve, among other things, any and all claims asserted or which could have been asserted by this petitioner concerning the chain of custody of the evidence thereby releasing and discharging the People from any and all claims, both known and unknown.    Because the language within the stipulation fail to state the above, the Court must assume one of two things, first, that chain of custody of the evidence was never to be included within the stipulation and because the stipulation as well as the record is barren of any reference as to chain of custody, the Court must find that chain of custody never intended to made apart of the original stipulation, secondly, that the Court should follow the determination that was make by the Melendez Court.  The Court reversed and set aside a stipulation where the record showed that the pro se litigant had misunderstood the true essence of the agreement, (Cabbad v. Melendez, 81 AD2d 626 (2nd Dept. 1981)).

Because of all the claims that could now be asserted by the prosecutor to include the chain of custody of the evidence, and that chain of custody of the evidence was meant to be include within the stipulation.  Mr. Keith by his actions has demonstrated that there could not been a true meeting of the mind which required the chain of custody of the evidence to be binding upon this petitioner.

The Court should find that the putative agreement which was not written was not enforceable by means of an action sounding only in tort based upon the fact that the pleading made no reference to chain of custody of the evidence in the alleged oral agreement.

The Court should note that the failure by Mr. Keith to exercise the standard of care that a reasonably prudent attorney would have exercised in a similar situation cannot be disregarded, and any conduct that falls below the legal standard established to protect others against

14

unreasonable risk of harm, can only be seen as conduct that is intentionally, wantonly, and/or willfully disregardful of others' rights and can only be seen as conduct associated with culpable carelessness or actionable negligence.

This petitioner believes that a dispute is not genuine unless the evidence is such that a reasonable jury could not return a verdict of guilty absent and without the chain of custody of the evidence. (Nabisco, Inc. v. Warner-Lambert Co. 220 F.3d 43, 45 (2d Cir. 2000)); (quoting Anderson v. Liberty Lobby, Inc:, 477 U.S. 242, 248 (1986)). Therefore a fact is material for these purposes if it might affect the outcome of an action under the governing law. Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 248.)

Nevertheless, it should be noted that the parties never agreed to the withdrawal of objections concerning the chain of custody of the evidence, therefore, it cannot be said that a final agreement was ever reached incorporating the chain of custody into it, nor was here any circumstance or language offered which would suggest, let alone show, that there was an intention to be bound by this petitioner to include the chain of custody of the evidence, even thro the agreement was never reduced to writing.

After duly considering all of the facts and circumstances together, it is imperative to note that [v]iewed singly, the[y] may not be persuasive, yet when viewed together the puzzle may fit and probable cause may be found, (People v. Quarles, 187 AD2d 200, 203; People v. Letendue 696 NYS2d 583), that would allow this Court to vacate the stipulation made by defense counsel and the prosecutor, in light of the fact that the record is barren of any reference as to the chain of custody. It should be noted that based upon the fact that the undisclosed information was of

15

SR 228

such consequence, that had it been disclosed, this petitioner would never have executed such an agreement. Stockfield, 131 AD2d 834.

It should be noted that when a stipulation is made on the assumption of the existence of a state of facts, it may be rescinded if that state of facts does not presently exist, as has been presented here in the case at bar. (see, People v. Bailey – 602 NYS2d 177, 178, 5-7, see also, Hillock v. NY, 485 NYS2d 510).

Furthermore, the respondent's conclusory allegations are belied by the transcript of the stipulation. (People v. Blyrd, 284 A.D.2d 509; People v. Lefkowitz, 276 A.D.2d 598; People v. Sarai, 267 A.D.2d 295; Peopel v. Cavalli, 266 A.D.2d 666).

A stipulation is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language used. (Wallace v. 600 Partners Co., 86 NY2d 543 [1995]). Where the terms are unambiguous, the parties 'intent must be gleaned from the plain meaning' of the words used by the parties. (American Bridge Co. v. Acceptance Ins. Co., 51 AD3d 607 [2008]; Frikilman v. 31st Ave. Realty Corp., 39 AD3d 812, 813 [2007]). (see, Greenfield v. Philles Records Inc., 98 NY2d 562 [2002]; and Hugh O'Kane Electric Co. Inc v. County of Westchester, 54 AD3d 660 [2008]).

The plain meaning of the quoted stipulation is subject to contract interpretation, De Gaust v. De Gaust, 237 A.D.2d 862. Thus, requiring a Court, when the language is clear and unambiguous, to ascertain the intent of the parties from within the four corners of the instrument, and not from extrinsic evidence. (Rainbow v. Swishre, 72 N.Y.2d 106, 109).

Once the moving party has met its burden, the evidence must support the stipulation, must be come forward with specific facts showing that there is a genuine issue to be tried, an issue is genuine only if a reasonable jury could not return a guilty verdict absent the chain of

16

**SR 229**

custody of the evidence... however, if reasonable minds, cannot differ as to the import of the evidence, then Summary Judgment is proper.  The prosecutor failed to provide this Court with evidence from which a reasonable jury could find that this petitioner did truly understand the true essence of the stipulation concerning the chain of custody of the evidence.

However, courts may vacate stipulations where good cause is shown, such as where it appears that a party, to his prejudice, has inadvertently, inadvisably, or improvidently entered into an agreement which will take the case out of the due and ordinary course of [the] proceeding. (In re Frutiger's Estate, 29 NY2d 143, 149-150, (1971)).  In Cabbad v. Melendez, 81 AD2d 626, (1981), the court vacated a stipulation where the record showed that the pro se litigant had misunderstood the true essence of the agreement, i.e., the tenant believed that the stipulation allowed her tenancy to continue after she paid her rent in full, when, in fact, the stipulation provided that she would move out.

The court should act if it appears that the stipulation is unduly harsh or unjust and the parties may be returned to their former status....It is well settled that the court has the power to relieve a party from a stipulation in situations which is unjust or harsh even when fully understood and authorized. (Solack Estates, Inc. v. Goodman, 102 Misc.2d 504 (App. Term, 1st Dept. 1979), Aff'd. 78 AD2d 512 (App. Term, 1st Dept. 1980)); see also Melendez, supra.

Thus the court has the power to set aside and relieve the parties from the stipulations to prevent injustice upon a showing of good cause, "Matter of Frutiger, supra".  The court may vacate a stipulation "if it appears that either part has inadvertently, inadvisably, or improvidently entered into an agreement which. may work to his prejudice. "Id. At 150.

This petitioner contention that the stipulation made was unworthy of belief and should be discarded (People v. Harris, 200AD 761; People v. Mack, 195 AD2d 485).  In other words, the

17

**SR 230**

Court must be presented with facts, not assurances and or summary statements that the conclusion that was reached was in fact proper, and merely stating that sufficient cause existed will not do. (People v. Bouton, 50 NY2d 130, 135). The record shows that only the latter were offered to the Court in this case.

No evidence was ever submitted by the People to support the chain of custody of the evidence for that branch of the stipulation in support of a motion in opposition to petitioner's Post Conviction Motion which was, in effect, was for leave to enter and vacate judgment of conviction pursuant to CPL 330 based upon a purported mistaken agreement of this action even thro the People did not include a signed writing incorporating all material terms of the purported agreement (see CPLR 2104); (Bonnette v. Long Island coll. Hosp., 3 NY3d 281). Accordingly, the trial Court erred in granting that branch of the respondent's motion and authorizing the entry of a judgment at that juncture.

In order to defeat a Summary Judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by the statute, CPLR 3211 (A)(1). The opposing party is required to come forward with material that is envisioned by the statute, CPLR 3211 (A)(1), setting forth specific facts showing that there is a genuine issue of material fact to be tried. They cannot defeat the motion by relying on the allegations in their pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. The motion will not be defeated merely...on the basis of conjecture or surmise, as was done by the Trial Court during Petitioner's Post Conviction CPL 330. hearing prior to sentencing.

Merely, posing these questions was an insufficient means of defending against Summary Judgment. "As the Supreme Court emphasized in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) the Court discredited testimony that is [normally] considered a sufficient basis for

18

**SR 231**

drawing a contrary conclusion. Instead, the People must present affirmative evidence in-order to defeat a properly supported motion for Summary Judgment. (Woodman v. WWOR-TV, Inc. 411 F3d 69, 86 (2n Cir. 2005)), Citations and quotations omitted.

Considering, that the failure to consent made following or simultaneously with an appearance in the proceeding, is essentially a stipulation and to be treated accordingly. The rule has been succinctly stated thus: "The court has control over stipulations and power to relieve parties from the terms thereof when the parties can be placed in status quo. (That the principle is not this limited was recognized in Foote v. Adams, 232 App. Div. 60, 63, 248 NYS 539, 543, in which relief was granted from the Attorney-General's unilateral mistake or misunderstanding; and the court cited respectable authority in holding: " 'It is sufficient if it appear that either party has inadvertently, Inadvisably, or improvidently entered into an agreement which will take the case out of the due and ordinary course of proceeding in the action, and in so doing may work to his prejudice." (Van Nuys v. Titsworth, 57 Hun 5, 10 NYS 507). 'Where both parties can be restored to substantially their former position, the court, as a general rule, can exercise such power if it appears that the stipulation was entered into unadvisedly, or that it would be inequitable to hold the parties to it.' (Magnolia Metal co. v. Pound, 60 App. Div. 318, 70 NYS 230.) The circumstances in this case 'reveal that the stipulation should not be held, in order to promote justice and prevent wrong. (Yonkers Fur Dressing Co. v. Royal Ins., 247 NY 435, 445).

It is well settle that the Supreme Court has the power, after an appeal to the Court of Appeals has been taken and prior to its submission "to authorize an amendment of its record in order that the same may be made to speak the truth of all the facts appearing before it. However, in the instant case, by permitting the stipulation concerning the chain of custody of the evidence to be included in the record, the trial court was not correcting or reforming an old record in order

19

to indicate the true facts appearing before it at the time of the original determination but the trial court was in fact making an entirely new record in light of the fact that the trial court had no credible evidence before it to support its determination.

To allow this type of amendment at that stage of the proceeding "would be setting a precedent which would lead to great embarrassment to the court's practice and an injustice to this petitioner". (Hamlin v. Sears, 82 N.Y. 327, 333, see, Sacks v. Stewart, 75 A.D.2d 536, 537).

It is well settled that a defendant's right to counsel [is] adversely affected when his attorney, either voluntarily or at the Courts urging, [becomes] a witness against his client. (People v. Santana, 156 A.D.2d 736, 737 (1989); People v. Rozzell, 20 N.Y.2d 712, 713; People v. Sawyer, 55 A.D.3d 9951; People v. Mills, 45 A.D.3d 892, 895-896 (2007), lv. Denied 9 N.Y.3D 1036 (2008); People v. Milazo, 33 A.D.3d 1060, 1061 (2006, lv. Denied 8 N.Y.3d 883(2007)). Once counsel took a position adverse to his client, the Trial Court should have proceeded to determine whether the petitioner was in agreement with the stipulation agreed to by defense counsel and the prosecutor.

## VACATING THE STIPULATION

It should be noted that any out-of-court alteration or the restructuring of the original oral stipulation was never presented to this petitioner in open court or otherwise at a court conference before Judge Edward J. McLaughlin, in which the stipulation was made, nor would this petitioner would have never enter into any stipulation that would concern the Chain of Custody of the Evidence, without unquestionable documental proof. Based upon the fact that the stipulation was altered or restructured by the Court from the original oral stipulation without the full consent or authorization by this party, and because of such overreaching conduct by the Trial Court. Mr. Keith should have objected to the insertion of the Chain of Custody of the Evidence

20

SR 233

into the stipulation which would have voided any and all parts, of the stipulation by the Court's overreaching conduct. This petitioner would be at a distinct disadvantage if the stipulation was to be enforced and that it would be inequitable to do so. The stipulation must in the interest of justice be vacated based upon these and the foregoing arguments below:

The decision reached by defense counsel and the prosecutor which resulted in a stipulation between the prosecutor and Mr. Keith, was not reached in full compliance with all statutory and regulatory requirements of State law, as such, the stipulation cannot be sustained by the Court.

Mr. Keith, did not give due consideration to all of the factors required by Statute, including giving sufficient notice of any pending changes to the instant stipulation. Based upon those factors, and the reasons as stated by this petitioner in reply to any reasons that maybe advance or argued by the Prosecutor as to why a non-appearing party [the police chemist opinions] should be included in the record, wherein the record is silent as to any opinions by that party. The advancement of any arguments by the People, on why a non-appearing party should be included within the stipulation, is insufficient and without merit, wherein, all claims such as the Chain of Custody of the Evidence were totally left out of the original oral stipulation and any decisions otherwise by the People can only be properly characterized as being arbitrary, capricious and irrational bordering on impropriety.

All the evidence points towards the decisions made by Mr. Keith and the prosecutor concerning the Chain of Custody should be seen as being pre-determined and therefore, the decisions made by the Honorable Edward J. McLaughlin, J.P., amounted to a restructuring of the stipulation without the consent or authorization of the parties.

New York State Law instructs that the Notice provisions of CPLR 2104 place upon the

21

SR 234

party the obligation of providing "Actual" rather than "technical" notice of a pending court proceeding to any party who has been served with timely and appropriate notice. The Statute contemplates "actual" rather than "technical" notice and at the very least, the notice provided by Mr. Keith and the prosecutor must be reasonably calculated to apprise a party or the court of any pending proceedings so as to permit that party the right to exercise their right to appear or not to appear.

In the case at bar, there is no evidence in the record which demonstrates that this petitioner received "actual" notice of the intentions by the Trial Court to restructure the stipulation, as would be contemplated by the provisions of CPLR 2104. Even a literal compliance with the clear objections of the notice provisions of CPLR 2104, which is that a party receives "meaningful and timely" notices of pending proceedings to the restructuring of the original oral stipulation.

Based on all of the above, this Court should find that apparently due to a combination of inadvertent actions and omissions, more particularly, the miscommunication and the failure of communication on the part of Mr. Keith and the People that this petitioner was hereby denied actual notice that would have permitted this petitioner the opportunity to exercise his asserted right to object to the original stipulation, as well as to any changes within the original oral stipulation as contemplated by the provisions of CPLR 2104 and all relevant case law. To find otherwise would be to ignore a defense counsel's duty of fair dealing to this petitioner, as well as the obligation of the Court to ensure the fairness in all proceedings as well as governing the fairness by providing notice to all parties of all changes in any action(s), proceeding(s) or petition(s) that are required for submissions thereto upon proper notice.

As the Court of Appeals instructed, a party's right to fair notice must be scrupulously

22

protected.  The Court further instructs that the notice provision of CPLR 2104, must adequately apprise the opposing party of a claim. Therefore, to be in compliance with CPLR 2104 the notice provision must be drafted so that an opposing party of reasonable competence would be able to ascertain the true nature and the basic issues of the controversy.   It is in this petitioner's view that in this particular circumstance herein, the fair notice provision provided by Mr. Keith and the People was the functional equivalent of placing the notice in a bottle, corking the bottle, and tossing the bottle in the ocean.

Based upon the absence of a "Fair Notice" the Court must conclude that there was no true meeting of the mind.  Accordingly, the motion to vacate this stipulation with prejudice and restoring the case back to the court calendar should be granted based upon the provisions for the failure to provide a fair notice of an intent to change the conditions of any pending litigation which as a result, as in the case at bar, resulted in the restructuring of the original oral stipulation to include the chain of custody of the evidence without the express consent or authorization of this petitioner which make's it impossible for the parties to truly effectuate a true meeting of the minds.

It should be noted that this Court is not without the power to relieve a party from the effects of a stipulation in given cases where it is shown that an agreement was the result of fraud or overreaching conduct, or that there was a mistake, either mutual or unilateral, Heiter v. Joline, 135 App. Div. 13, 119 N.Y.S 142, or circumstances are such that a party who seeks to be relieved would be at a distinct disadvantage if the stipulation was to be enforced and that it would be inequitable to do so.  The Court is authorized to intervene on behalf of that party. Donovan v. Twist, 119 App. Div. 734, 104 N.Y.S. 1.

Any arguments by the People that the parties cannot be restored to the same positions

23

they were in prior to entering into the stipulation is without merit. Assuming agruendo, that had

plaintiff entered into the restructured stipulation, the Court would still have the power to relieve

this petitioner of the stipulation since both sides could be restored to "substantially" to their

former positions (see, Thermalectric, Inc v. Still-Man Mfg. Corp., 43 A.D.2d 734.

      Accordingly, the court has control over stipulations and the power to relieve the parties

from the terms thereof if both parties can be restored to their status quo ante, Hinds v. Gulutz, 61

Misc.2d 384 (Sup. Ct. Suffolk 1969); Barcia v. Barcia, 283 A.D. 726, 127 N.Y.S.2d 443 (2nd

Dept. 1954); Campbell v. Bussing, 274 A.D. 893, 82 N.Y.S.2D 616 (2ND Dept. 1948); Bond v.

Bond, 260 A.D. 781, 24 N.Y.S.2d 169 (2nd Dept. 1940). A party, however, must be adduced to

persuade the court to relieve a party from a stipulation. Such cause would be fraud, collusion,

accident, and mistake; although the mistake need not be mutual or when holding the parties to

the terms of the stipulation would produce results that are either unjust or harsh. Ragen v. City

of New York, 45 A.D. 2d 1046, 385 N.Y.S.2d 62 (2nd Dept. 1974); Hinds v. Gulutz, supra;

DeSantolo v. LaPorte, 89 N.Y.S.2d 114 (City Ct. Mt. Vermon (1949); Baksi v. Wallman, 62

N.Y.S.2d 26 Sup. Ct. N.Y. (1946); Hallow v. Hallow, 200 A.D. 642, 193 N.Y.S. 460 (1st Dept.

1922).

      Where the parties exchange does not conform to the requirements of CPLR 2104 for a

stipulation to be capable of enforcement as to the chain of custody of the evidence, based upon

the fact that it was never written out and signed by the parties, i.e., Mr. Green and the prosecutor

before the Court. (See 21

      CPLR 2104 provides: "An agreement" between parties or their attorneys relating to any

matter in an action other than the one made between counsel in open court, is not binding upon a

party unless it is in a writing subscribed by both parties or reduced to the form of an order and

24

**SR 237**

entered into the Courts minutes.

Under the circumstances presented, any exchange between this petitioner and Mr. Keith, did not constitute an enforceable stipulation between Mr. Green and the prosecutor, that falls within the requirements or contemplation of CPLR 2104 (Id. Bonnette v. Long Island College Hospital, 3 N.Y.3d 281, 286 (2004)(to be enforceable under CPLR 2104 an out –of-court settlement must be adequately described in a signed writing); McCoy v. Feinman, 99 N.Y.2d 295, 302[2002][to be binding, a stipulation must be reduced to a properly subscribed writing or entered orally on the record in open court];[Klein v. Mt. Sinai Hosp., 61 N.Y.2d 865, 866 (1984)(a stipulation is not binding "unless it is made in open court between counsels, contained in a writing subscribed by the parties or their attorneys or reduced to the form of an order and entered in the courts minutes).

Contrary to any contention by the People, the Court should find that based on this set of fact, that a binding stipulation between Mr. Green and the People, was not created by virtue of the stipulation made between Mr. Keith and the People.

In this case, the elements of intent and acceptance, concerning the chain of custody of the evidence, have been removed from this case by way of the stipulation between Mr. Keith and the People (see Matter of Ossing Urban Renew Agency v. Lord, 60 N.Y.2d 845. The absence of an endorsement on behalf of this petitioner and Mr. Keith constitutes strong evidence of the lack of intent and acceptance as to any agreement this case between Mr. Green and the People.

Indeed, the best evidence of what the parties to a oral agreement intends is what they say in Court. (Slamlow v. Del Col., 79 N.Y.2d 1016, 1018 [1992], thus, extrinsic evidence of the parties intent may be considered only if the Court finds the agreement to be ambiguous. (Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569[2002]. "Courts may not by

25

**SR 238**

construction add or excise terms nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the oral statement (Reiss v. Financial Performance Corp., 97 N.Y.2d 195, 199[2001].

First, the oral stipulation agreement by Mr. Keith did not constitute a sufficient basis to bring the agreement within the scope of CPLR 2104. The stipulation, although acknowledging the existence of an agreement, did not incorporate all the material terms of the agreement (see Matter of Galasso, 35 N.Y.2d 319, 321 (1971) (refusing to enforce a settlement that although proposed at a court conference, did not reflect a complete agreement as to all material terms).

The plain language of the statute directs that the agreement, itself must be in writing, signed by all parties to be bound (CPLR 2104), because the purported stipulation of this action did not include a signed writing incorporating all material terms of the purported agreement between this petitioner and the People, thus the purported stipulation failed to demonstrate that the parties entered into a binding agreement (see CPLR 2104; Bonnette v. Long Island Coll. Hosp., 3 N.Y.3d 281.

The Court should take notice, that if an agreement, once entered into are to be enforced with the rigor and without a searching examination into their substance, it becomes all the more important that the stipulation be clear, final and the product of mutual accord. For all of these reasons, to hold that to be enforceable under CPLR 2104, an out-of-court settlement must be adequately described in a signed writing. Mr. Keith's agreement with the People does not meet this requirement, see Bonnette, supra, McCoy v. Feinman, 99 N.Y.2d 295, 302[2002].

It should be noted that [w]hen there is no dispute between the parties as to the terms of a oral agreement, that's made during a pending litigation, the courts will refuse to permit the use of the statute (CPLR 2104) against a party who has been misled or deceived by the agreement to

26

his detriment or who has relied upon that agreement, which is not the case in the case at bar. Nevertheless, as the Court of Appeals stated in Mutual Life Ins. Co. v. O'Donnell, 146 NY 275, that an oral stipulation "will not permit a party to be misled, deceived, or defrauded by means thereof, and in some instances where it has been acted upon by the party making it they will not be permitted to retract and take advantage of the acts or omissions of his adversary thereby induced." Nevertheless, a stipulation is a contract, and like any contract it can be invalidated on such grounds as fraud, collusion, mistake, accident or overreaching conduct. Hallock v. State of New York, supra, 64 N.Y.2d 224, 230; see also, Sontag v. Sontag, 1985, 114 A.D.2d 892.

Where parties are represented by counsel, only attorneys fully familiar with the facts or actions are authorized to enter into a binding stipulation or is accompanied by a person empowered to act on behalf of the non-appearing party being represented, will be permitted to appear in support of that party at a Court hearings and/or at pre-trial conferences,

Because of the default filing and the failure of the People to file a reply to this petitioners pro se Post Conviction motion to vacate Judgment of conviction, as well as the non-appearance by the police chemist at any stage of the proceedings, their absence could not have cause or created the impression that the People had the authority and or was authorized to enter into a binding stipulation between this petitioner and the People, by Mr. Keith.

Equally rooted in the law is the principle that without a grant of authority from the client, an attorney cannot compromise or settle a claim.(see, Kellogg v. Gilbert, 10 Johns 220; Jackson v. Bartlett, 8 Johns 361), and settlements negotiated by attorneys without authority from their clients have not been binding (see, Countryman v. Breen, 241 App. Div. 392 [271 N.Y.S. 744, aff'd, 268 NY 643]; Spisto v. Thompson, 39 A.D.2d 598; Leslie v. Van Vranken, 24 A.D.2d 658; Mazzella v. American Home Constr. Co. 12 A.D.2d 910.

Under New York State law a finding of apparent authority is dependent upon "words or conduct" of the principal [the People] and communicated to a third party [Mr. Green], that would have given rise to the appearance and belief that Mr. Keith possessed the authority to enter into a transaction [stipulation], Id. 64 N.Y.2d @ 231. This standard as stated and supported in Hallock v. State of New York, supra, was never satisfied, which in and of itself amounted to a non-representation of a given party, which demonstrated that Mr. Keith did not have nor had he ever had the authority to enter into a binding stipulation on behalf of this petitioner and the prosecutor.

The Court should take notice that it is a fundamental precept in law, as well as legal ethics, that an attorney may not consent to any agreement on behalf of his client without the express authorization or consent of his client. The fundamental precept is right on point, as the results was reached in Koss Co. Graphics, Inc v. Cohen, 1990, 166 A.D.2d 649 (2nd Dept.). The Appellate Division stress that the acts of the attorney alone are insufficient to create apparent...authority. The Court noted that the attorney in Koss, was representing a closely held corporation that was the subject of a dissolution proceeding. The conference which gave rise to the settlement was conducted at a relatively early stage of the litigation in connection with the corporations attempt to vacate a temporary restraining order. No representative of the corporation was in attendance other than the attorney, the corporation had been actively defending the proceedings up to that point, and no prior settlement negotiations had been conducted on these facts, the court was unable to identify any conduct by the corporate client which gave the attorney the trappings of apparent authority to settle, which is right on point with the case at bar.

Secondly, "A stipulation particularly one made in open court, is to be strictly enforced, and a party will not be relieved from the consequences of a stipulation unless it establishes cause

28

**SR 241**

sufficient to invalidate a contract, such as fraud, collusion, mistake, or accident" (Quality Ceramic Tile & Marble Co. v. Cherry Val. Ltd. Partnership, 259 A.D.2d 607). A mutual mistake sufficient to warrant vacating a stipulation requires proof that the mistake existed at the time of the stipulation and that it was so substantial that the stipulation does not represent a true meeting of the minds (Mahon v. New York City Health & Hosps. Corp., 303 A.D.2d 725; Gillray 1., 287 A.D.2d 865 [mutual mistake not established where in hindsight the terms of the settlement are difficult to effectuate]).

A Courts may not rewrite an agreement between the parties (Matter of Evans v. Board of Assessment Review of Town of Catskill, 284 A.D.2d 753, 755) and "a court should not under the guise of interpretation, make a new contract for the parties" (Sklerov v. Sklerov, 231 A.D.2d 622).

Accordingly, consent and authorization can not in and of itself be abridge from a silent record. Consent and authorization can not in and of itself be made binding on a party where the record is silent concerning that party and all terms associated with and supporting the stipulation of a silent and non-appearing party is barren and unsupported by the record.

Any arguments by the People, that this petitioner waived his right to argue this point at this time before this Court, are without merit.

The law is well established and supported by both State and Federal Law and its supporting case law that a record that is silent will not overcome the presumption against a waiver by a party of constitutionally guaranteed protections, (People v. Rodriquez, 50 N.Y.2d 553, 557); (People v. Thompson, 140 AD2d 652, 653(1988)), the record must show an intentional relinquishment or abandonment of a known right or privilege, "Johnson v. Zerbst, 304 U.S. 458, 464(1938)".

29

Where there is a silent record concerning all terms of a given stipulation in which the parties are to be bound, a party cannot give rise to a waiver of a known right by waiving that right based upon a silent record. A silent record is the same as no record at all, which makes it impossible to waive a given right based upon something that doesn't exist. Therefore, presuming a waiver from a silent record is impermissible (see, People v. Harris, 61 N.Y.2d 9, 17).

The assertion made by this petitioner of mutual mistake is supported and not belied by the record, exhibits and the papers presented before this Court on this application (see, Lowinger v. Lowinger, 303 A.D.2d 723). The record does not belie plaintiff's claim that Mr. Keith failed to understand the true nature of the stipulation, or that Mr. Keith knew that he was committing fraud upon and thereby deceiving this petitioner, by knowingly, allowing the Court to change, alter or restructurer the oral stipulation, thereby invalidating the stipulation because the oral stipulation that is now asserted before this Court is based upon a totally different set of facts.

This petitioner respectfully request that the stipulation be vacated on the grounds of mutual mistake because the parties negotiated the agreement on an incorrect promise, that is, that all claims arising from Chain of Custody was never made part of the original oral stipulation agreement. Where the record is completely silent as to the chain of custody of the evidence during the course of any Court Conferences' as well as at all Court proceedings, which demonstrated that Mr. Keith lacked all authority to enter into a binding agreement on behalf of this petitioner and the People. Thus there was no true meeting of the minds, which makes it totally impossible to effectuate a binding agreement between this petitioner and the People.

Based upon the foregoing, Mr. Keith was in violation of Judiciary Law §487(1). A claim pursuant to Judiciary Law §487(1), must fail if the alleged "deceit or collusion" is not directed at a court and did not take place during the course of a pending judicial proceeding.

30

SR 243

(Aostalas v. Amalfitano, 305 A.D.2d 202, 204[1st Dept. 2003].   However, this petitioner contends that Mr. Keith deceived the Court in a proceeding when he represented that he was "fully authorized" to "draft, negotiate and execute" a stipulation on behalf of this Petitioner, when he in fact was not, which should demonstrate to the Court that Mr. Keith fully intended to deceived this petitioner as well as the Court, by allowing the Trial Court to alter or change the condition of the alleged agreement by asserting that the stipulation was intended to fully cover all claims by the prosecutor concerning the chain of custody of the evidence, all of which is not supported by the record in this matter.

        It is evident from the record that the fair notice provision provided by Mr. Keith and the prosecutor was woefully inadequate, the totality of omissions and commissions is such that the conclusions is inescapable based upon the absence of a fair notice, the lack of a true meeting of the minds and where the Mr. Keith lacked the authority to enter into a binding agreement between this petitioner and the People.   The Court conclusions must result in the stipulation being dismissed and the case being re-entered back on the Trial's Court calendar, based upon the fact that the determinations made by the State Supreme rests on an impermissible basis, therefore, a failure to entertain this application, this petitioner would no doubt suffer a miscarriage of justice of a given right that this petitioner is constitutionally entitled too.

## INEFFECTIVE ASSISTANCE OF COUNSEL

        The Supreme Court of the United States has long recognized that the right of counsel would be meaningless if it did not require effective assistance and substantial aid (see Powell v. Alabama, 287 US 45).   Appointed counsel of record had never informed petitioner of any pertinent motions or affirmations submitted to the court, address to the District Attorney assigned, as well as had not conducted any fact finding investigations necessary to the proper preparation

31

**SR 244**

of appellant's defense, all of which collectively renders if quite impossible  to effectuate an adequate defense.

The denial of the opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the constitutional requirements that an accused be given assistance of counsel.

The trial court had a duty to question appellant as to whether he was in complete agreement with his appointed counsel's actions surrounding counsel's stipulating to questionable evidence.  The trial court's failure to conduct a hearing could not be considered a harmless error.

In Osborn, 861 F.2d. @624, the tenth circuit commented as follows:  A defense attorney, who abandons his duty of loyalty to his client and effectively joins the state in an effort to obtain a conviction, suffers from an obvious conflict of interest.   Such and attorney like unwanted counsel "represent the petitioner only through a tenuous and unacceptable legal fiction". Faretta v. California, 422 US 806/821, 95 S.Ct. 2525, 2534.  In fact, an attorney who is burdened by a conflict between his client's interest and his own sympathies to the prosecutors position id considerably worse than an attorney with loyalty to other defendants, because the interest of the state and his client are in opposition.

Based upon the facts and laws of this case, that contrary to this court's conclusions, there was no allegations of essential facts and laws that were relied upon to deny this petitioner's Post Conviction Motion or his Pro se Supplemental Appellate brief.  In light of the fact that there was never any rule of law to conclusively refute or rebut this petitioner's allegations that was raised in his pro se Post Conviction Motion or his Pro se Supplemental Appellate brief by the use of unquestionable documentary proof.

32

A number of standards were endorsed by the American Bar Association of Projects on Standards for Criminal Justice and in the above relevant, in measuring the standards for inadequacy of representation reluctantly offered by Defense Counsel Mr. Arnold Keith and Appellate Counsel Natalie Rea. Chief among them are:

| | |
|---|---|
| Section 3.1(A) | A lawyer must establish a relationship of trust with his client. |
| Section 3.8 | A lawyer has a duty to keep his client informed of the developments in the case and the progress of preparing the defense. |
| Section 6.0(A) | The commentary notes, states that a lawyer is to determine for the knowledge of all the facts, whether the client is guilty in law and not in some moral sense and a lawyer must employ ingenuity to locate witnesses. |

The Constitutional right of counsel is based upon the premise that counsel will effectively assist an accused accordingly.

The failure of counsel to render adequate assistance constitutes a denial of the petitioner's rights and requires a reversal of his conviction.

The Sixth Amendment of the United States Constitution has guarantees indigent defendants the right of counsel.

A defendant is denied the right to effective assistance of counsel as guaranteed by the Sixth Amendment when, absent inquiry, by the Court and the informed consent of a defendant, defense Counsel represents interests which are actually in conflict with those of a defendant. (People v. Mattison, 67 NY2d 462, 469-479); (People v. Lomardo, 61 NY2d 97, 102-103); (People v. Macerola, 47 NY2d 257, 264-265) ;(People v. Gomberg, 38 NY2d 307, 313-314); (People v. Wilkins, 28 NY2d 53, 55). Initially it is defense counsel's burden to recognize the

33

**SR 246**

existence of a potential conflict of interest, to alert both the client and the Court to the potential

risks involved, and to obtain the clients informed consent for counsel's continued representation

despite those risks. (People v. Lloyd, 51 NY2d 107, 111)(see Code of Professional

Responsibility EC 5-16, 5-19; DR 5-105(c); ABA Standards for Criminal Justice, Defense

function §3.5 (A)(1971). Further, the prosecutor is also obliged to alert the Court when he or she

possesses knowledge of facts from which apparent conflict can be inferred (People v. Mattison,

67 NY2d @ p. 469), also the Trial Judge owes a duty independent of Counsel "to protest the

right of an accused to effective assistance of counsel" (Mattison, supra, cf People v. McDonald,

68 NY2d 1).

 The very core of this Amendment is based upon the reality that assistance be both

adequate and effective.  Upon comparing the levels of representation that was provided by both

Trial and Appellate Counsel, with the American bar Association's Standards, it becomes self

evident that said representation by both counsel(s) does not measure up to the constitutionally

required levels.

 `A defendant is entitled to the protection of the due process clause of the Fourteenth

Amendment throughout his entire criminal proceedings.  Each case presents its own facts and

rest on its own issues.  Factors such as inadequate preparations, incomplete investigations,

refusal to call witnesses, the failure to submit proper motions and the refusal to interpose a

proper defense will necessary be viewed in light of the effects of these shortcomings has on the

fairness of a defendant's trial and at sentencing.

 It is well settled that a defendant's right to counsel [is] adversely affected when his

attorney, either voluntarily or at the Courts urging, [becomes] a witness against his client.

People v. Santana, 156 A.D.2d 736, 737 (1989); People v. Rozzell, 20 N.Y.2d 712, 713; People v.

34

**SR 247**

Sawyer, 55 A.D.3d 9951; People v. Mills, 45 A.D.3d 892, 895-896 (2007), Iv. Denied 9 N.Y.3D 1036 (2008); People v. Milazo, 33 A.D.3d 1060, 1061 (2006, Iv. Denied 8 N.Y.3d 883(2007). Once counsel took a position adverse to his client, the Trial Court should have proceeded to determine whether the petitioner was in agreement with the stipulation agreed to by defense counsel and the prosecutor.

Here, defense counsel never advised the Trial Court that he was unable to represent his client with respect to any contentions of Ineffective Assistance of Counsel, in fact defense counsel made a statement in open court and on the record and since defense counsel took the position that he agreed with his client that he had rendered his client ineffective assistance of counsel and did not take a position adverse to his client's pro se Post conviction Motion to set aside the verdict.

Due consideration should be given to all factors required by statute, including the instant stipulation. Based upon the record, no reason was ever stated by the trial court in reply to petitioner's Post Conviction Motion for the reasons to include a non – appearing party's opinion within the terms of the stipulation. The decision by the trial court could not be properly characterized as a harmless error.

The evidence in the trial record points towards the trial court's decision being pre-determined and that decision amounted to a restructioning of the stipulation without the express consent or authorization of all parties.

Defense Counsel should have understood that the Trial Court's vouching for the chain of custody of the evidence without any testimony from all persons whom had handled the evidence only demonstrated that the trial court was making itself an unsworn witness. It is a fundamental rule that a court must not carry out its functions "in language and manner" from which a jury will

35

SR 248

gain the impression of the existence of an opinion on the part of the court as to the merits of any

issues in the case.

> The Court Stated:   When I gave you the preliminary instruction, I said there were three ways to get evidence.   I said that via stipulation.   There are two stipulations here with respect to the material that was seized, supposedly being narcotics, and there are stipulations with respect to two different voucher numbers, the voucher numbers the ones ending in 21910 and 21912.
>
> With regard to 21912, a chemist received this intact condition, in an envelope, sealed. He or she opened it, weighed it, analyzed it.   The weight was 17.87 ounces, the chemist determined that it was cocaine and the chemist resealed it and sent it back and it is what is introduced into the trial here.
>
> The other voucher, 2910, is also cocaine.   The chemist received it sealed, analyzed it. The weight is .16 ounces or 4.7 grams and then the chemist sealed it, sent it back and the thing admitted in the trial also.   You can see the exhibits.   I reiterate, you do not have to memorize the details.   Please pass the things among each other. (see, DEFENSE – CROSS – ROMERO, Pg. 464, Trial Transcripts, see, Ex. "F").

This petitioner was deprived of a fair trial because of the cumulative impact of the

following errors. (People v. Johnson, 89 A.D.2d 506); (People v. Dowdell, 88 A.D.2d 239). The

trial Court twice advised the jury that sufficient evidence had been presented for them to reach a

verdict, based upon a questionable stipulation and where the trial judge so vouched for the Chain

of Custody of the Evidence, thus creating the possibility that the stated opinion of the trial court

or even the suggestion of an opinion by the trial court might be seized upon by the jury and

eventually prove decisive (People v. Mendes, 3 NY2d 120, 121) (People v. Bell, 38 NY2d 116,

120).   Most prejudicial, however, was the court's inclusion of a Sandstrom charge (see,

Sandstrom v. Montana, 442 US 510; 99 S.Ct. 2450).

In the Trial Court's initial instruction on the definition of intent, the Court categorically

stated that a person intends the natural and probable consequences of his act. The Sandstrom

instruction was clearly no a harmless error (Connecticut v. Johnson, 103 S.Ct. 969), in as much as it created a conclusive presumption of intent. The cumulative impact of error deprived this petitioner of a fair trial, requires reversal. U.S.C.A. Const. Amend. 6.

The Court should take judicial notice, perhaps, most puzzling, is the prosecution and the trial court made no effort to clear up the discrepancy, they chose not to present the testimony from the laboratory staffers who logged it in or the police officer who release the evidence to the laboratory. Similarity, nor the prosecutor or the trial court offered no evidence to show whether the miswritten evidence voucher number(s) [21910] and [21912] was assigned to some other evidence still in house or to account for the designation for the laboratory analysis voucher number(s) [N932910] and [N932912].

Contrary to any arguments that might be made, the trial record demonstrated that the People had never satisfactory authenticated the evidence send to the police laboratory for analysis by conclusively establishing a chain of custody that begin with the seizure and ending with the police laboratory prior to the prosecutor and defense counsel entering into a questionable stipulation that was not supported by unquestionable documentary proof.

In light of the unexplained discrepancies between the voucher Numbers [21910] and [21912], and the voucher numbers received by the police laboratory [N932910] and [N932912], the chain of custody was broken and the laboratory analysis report as well as the laboratory analysis results should not have been admitted,[3] (U.S. v. Ladd, 885 F.2d. 954). Even thro this petitioner raised this issue in his pro se Post Conviction CPL 330 motion. The Court below did not address this question.

---

[3] See PEOPLE'S VOLUNTARY DISCLOSURE FORM, hereto attached as exhibit "C". See section: Police Laboratory Controlled Substance Analysis Report, voucher number(s), N932912 [Pg. 1 & 2], dated 11/07/07 and N932910, dated 11/03/07, respectfully.

In short, there was no competent proof to indicate that the evidence taken from the scene of the crime was the same evidence that the police chemist tested.  This important step in custodial pavane was omitted.  The conclusions here are inescapable, as to the stipulation and the police chemist findings, the link was not merely rusty-it had been parted.  Due to the missing link, the stipulation and the police chemist test results as well as the alleged unknown substances should not have been admitted into evidence.

Clearly, no one can say in this closely balanced case, that no juror was not influenced by the though that people who possesses illicit drugs deserves punishment for whatever ensures.  Truly, defense counsel's failure to object to questionable evidence only demonstrates counsel's failure to preserve strong issues for appeal.  It is evident from the record that the representation afforded appellant was woefully inadequate.

The totality of omissions and commissions is such that the conclusion is inescapable in that petitioner was deprived of effective assistance of counsel and thereby a fair trial, a right to which petitioner is constitutionally entitled.  Clearly, in the instant case, the propriety of the defense counsel entering into a questionable stipulation and the trial court vouching for the chain of custody of the evidence, was a central issue to the defense, and on that issue, the case stood or felled, and the failure of petitioner's appointed counsel to address these issues promptly was a fatal deficiency.

This court must consider the inadequacy of counsel's performance to the degree which counsel's errors impacted the basic points essential to the defense. Strickland, supra, also see, People v. Droz, 39 N.Y.2d 457, 462; People v. Roff, 67 A.D.2d 805.

Under State and Federal law, the requirements that the district attorney make's a complete record so that an appellate court may review its decision is a solid one, People v. Liotta, 79 N.Y.2d 841 (1992); United States v. Molt, 631 F.2d. 258, 262 (3rd Cir. 1980)

Under New York law, if the people fails to make a complete record of the stipulation and the Court's ruling no where states the basis for the stipulation, the Court's ruling denying petitioner's Post Conviction Motion charging a chain of custody violation and an ineffective assistance claim was done in error.

The Trial Court's denial of petitioners Post Conviction Motion for such relief was an abuse of discretion under the circumstances. It impermissibly charged petitioner with the untoward consequences emanating from trial counsel's inadequate and ineffective representation. One cannot help but see that defense counsel's performance during pre-trial proceedings and at trial miserably failed the standards set by Strickland. This court should find that defense counsel's performance at pre-trial proceedings and at trial was inadequate. Counsel further demonstrated ineffective representation to his client when counsel failed to object to evidence that was inadmissible and damaging.

Trial Counsel should have understood that the Trial Court may not either in the course of closing arguments or even in a less argumentative trial context, express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence. Trial Counsel's failure to object to the Trial Court making itself an unsworn witness was a fatal error.

Both Appellate and Trial Counsel's should have known that under New York State and Federal law, for testimony surrounding controlled substances, to be reliable, scientific testimony must be grounded in some scientific method and must constitute more than a subjective belief or unsupported speculation. Because the record is silence as to how the evidence was tested or how

39

SR 252

it was sent to the laboratory for analysis, or just who handled the evidence and where no records were created explaining the method of testing used or provide testimony in support of the chain of custody of the evidence and without such testimony, only demonstrated that the trial courts vouching for the chain of custody of the evidence without any testimony from the two police chemist, the Trial Court thereby became an unsworn witness and where defense counsel fail to object to the Courts becoming an unsworn witness, defense counsel abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecutor in its efforts to convict his client.

Because defense counsel's abandonment of his duty of loyalty to his client by assisting the prosecutor in obtaining a conviction of his client, also created a conflict of interest.

Accordingly, it should be noted that the prosecutor and appointed counsel were under a mandatory affirmation obligation to recognize the existence of a potential conflict of interest concerning the stipulation that was entered into by defense counsel and the prosecutor, in which defense counsel vouched for an unknown substance as being cocaine without unquestionable documentary proof that demonstrated that the unknown substance was in fact cocaine.

Here, both appointed counsel and the prosecutor were aware that a conflict of interested existed surrounding the stipulation and their failure to bring the facts to this petitioner's or the court's attention was inexcusable.

Because counsel was completely ignorant of the applicable laws and procedures governing controlled substances and where counsel failed to prepare on the essentials of the defense, failed to file the proper motions challenging questionable evidence and where counsel failed to make the proper objects at the proper time thereby allowing the trial court to become an unsworn witness by vouching for the chain of custody of the evidence where the record was

40

silent to that fact and where defense counsel failed to consult with his client concerning the stipulation and the potential conflict of interest that resulted there from.

Had Defense or Appellate Counsel made this argument, the outcome would have been different. Defense and Appellate Counsel should have known that the trial testimony failed to establish his client's was in possession of a controlled substance, i.e., cocaine and drug paraphernalia that was seized from the apartment by non-hearsay factual evidence. Specifically, Mr. Green contends that the deponent police officer's assertion that the apartment where those items were found was the defendant's apartment is an uncorroborated hearsay allegation.

In order to support a charge that the defendant was in constructive possession of tangible property, the People must show that the defendant exercised dominion and control over the property by demonstrating that he had a sufficient level of control over the area in which the contraband was found or over the persons from whom it was seized (see, People v. Manini, 79 NY2d 561, 573 [1992]. Constructive possession is established where, a defendant has been found in proximity to contraband recovered from the premises under the defendant's control (see, People v. Tirado, 47 A.D.2d 193 [1st Dept. 1975].

A defendant has been found to have control over premises which he provides as a home address to city agencies (People v. V142 A.D.2d 698 [2d Dept. 1988]; over premises where he is named as a tenant on the lease (People v. Torres, 68 NY2d 677 [1986]; and over premises to which he possesses a key[4] (see, People v. Torres, 68 NY2d 677 [1986]; People v. Sandobar, 191

---

[4] The Trial Court recognized that the People had no case with the keys from Green being suppressed, so the Trial Court had found a way to unsuppressed the keys to insure that the People maintain a tactical advance of the outcome of the case, in violation of Mr. Green's Constitutional Right under the Due Process Clause of the United States Constitution. [see, TRIAL TRANSCRIPT, PROCEEDING – COURT Pg. 30, L. 8 -to- 22, Ex. "F"].  Also, the record before this Court and at the Appellate Hearing on October 3, 2011, supported a finding that the keys that were possessed by Mr. Green fitted no locked door on either the First, Second, Third or

41

A.D.2d 375 [1ˢᵗ Dept. 1993]; Matter of Dirhim A. A.D.2d 339 [1ˢᵗ Dept. 1991]; People v. Armstrong, 160 A.D.2d 206 [1ˢᵗ Dept. 1990]; People v. Robertson, 61 A.D.2d 600 [1ˢᵗ Dept. 1978]; People v. Vasquez, 141 A.D.2d 698 [2d Dept 1998].

Here, the defendant is accused of knowingly and unlawfully possessing a quantity of cocaine and purported drug paraphernalia which were allegedly recovered from "the defendant's apartment".   Possession suffices to permit the inference that the possessor knows what he possesses, especially if its in his hand, on his person, in his vehicle or on his premises (People v. Reaman, 29 NY2d 278, 285 [1971]).

Apart from the deponent officer's assertion that the apartment was the defendant's, however, there are no evidentiary facts alleged to support the inference that the defendant owned or occupied the apartment, for example, there is no allegation that the officer observed the defendants name on a lease to the apartment or that he observed mail addressed to the defendant at the apartment; or even that the defendant admitted to the officers that he lived in the apartment.

Hence, the officer's statement that the apartment was the defendant is completely conclusory (see, People v. Dumars, 68 NY2d 729, 730 [1986]; People v. Rosado, 192 Misc.2d 184, 286 [Crim. Ct. NY County 2002].   Without evidentiary facts to demonstrate that the defendant exercised dominion and control over the premises, the sole allegation that the items were recovered from "the defendant's apartment" is insufficient to provide reasonable cause to believe that the defendant knowingly possessed the alleged cocaine and drug paraphernalia recovered from the apartment this case. Indeed, although constructive may not be inferred from a defendant's mere presence in premises where contraband is found (People v. Pearson, 75 NY2d 1001 [1990]).

the Fourth floors to the building at 451 Lenox Avenue, NYC.

Furthermore, the officer's assertion that the apartment was the defendant's is deficient because the officer cannot attest to the defendant's ownership of the apartment as a matter of his personal knowledge (see, People v. Canty, 153 A.D.2d 640, 641 [2d Dept. 1989]). No supporting deposition verifying the defendant's ownership or occupancy of the apartment has ever been filed in this case. As such, this allegation is rank hearsay which remains uncorroborated.

Moreover, because there was never any unquestionable documental proof presented at the Grand Jury or at Trial to support a finding that the alleged unknown substance was in fact cocaine which pertains to the alleged bag recovered from a lock safe within the apartment of which this petitioner never owned, leased or had controlled over. The evidence was insufficient to support a guilty verdict on behalf of Mr. Green for the Criminal Possession of a Controlled Substance in the 1st and 3d degree.

Accordingly, without the evidentiary facts demonstrating that the defendant had dominion and control over the premises or corroborated of his ownership of the apartment and without corroboration that this petitioner possessed knowledge of the content within the lock safe, for which this petitioner did not have access to. The Counts within the indictment were facially insufficient and consequently must be dismissed. Had defense counsel or Appellate Counsel made these arguments we would not be here now?

Accordingly, there was no evidence presented at trial to demonstrate that the petitioner had a present ability to transfer to any one, any drugs. The testimony before the Grand Jury and at trial indicated that no drugs were given to anyone by Mr. Green. Indeed, it appears that Mr. Green never obtained any controlled chemical substances and had no controlled chemical substances on or in his possession. The threats of such sever and inflexible punishment should

43

**SR 256**

no be applied to mere uncorroborated hearsay conversation concerning the uncorroborated reference by the police officer as to the undocumented and uncorroborated ownership of an apartment. To subject this speech alone to a criminal penalty of 15 years imprisonment, would be grossly disproportionate as to constitute cruel and unusual punishment in violation of the Constitutional Limitations. It is well established that the penal statutes must be strictly and narrowly construal (People v. Gorden, 71 Misc.2d 540) and applied fairly to all.

Based upon the circumstances of petitioner's allegations, the Court should find that a violation of petitioner's rights has occurred and based upon the circumstances of this case a hearing is required to determine the validity of this petitioner's allegations. (People v. Harris, 74 A.D.2d 879, 880; People v. Seminana, 58 A.D.2d 841; People v. Wedra, 56 A.D.2d 903).

Therefore, a failure to entertain this application, this petitioner would no doubt suffer a Miscarriage of Justice of a given Right that this petitioner is constitutionally entitled too.

This Court should find that this petitioner has demonstrated a violation of his rights under the Due Process Clause of the Fourteen Amendment of the United States Constitution.

## CONLUSIONS

**WHEREFORE,** this petitioner respectfully request that this Honorable Court issue an order for Reconsideration of Petitioner's petition for a Writ of Error Coram Nobis for Ineffective Assistance of Appellate and Trial Counsel thereby vacating and setting aside the order of stipulation with prejudice, and restoring this action back to the calendar of this Court for the earliest possible date or in the Alternative, assign another Appellate Attorney to properly perfect Petitioner's Appeal and for such other and further relief as to this Court may deem just and proper.

No prior application has been made for the relief sough herein

44

**SR 257**

**PLEASE TAKE NOTICE** that pursuant to NY CPLR Rule 2214(b) answering affidavits and all papers in opposition to this petition, if any, is required to be served upon the undersigned at least seven (7) days prior to the return date of this petition.

Dated: September 2011

Respectfully Submitted

Edward Green, Pro-se,
Eastern Correctional Facility Annex
P.O. Box 338
Napanoch, NY 12458-0338

45

**SR 258**

## PRINTING SPECIFICATIONS STATEMENT

The word count for this brief is 13,923 excluding the table of Contents, the Table of Authorities, and the Rule 5531. The word processing system used to prepare the brief and calculate the word count was Microsoft Word 2003. The brief is printed in Times New Roman, a verified, proportionally spaced typeface. The type size is 12 points in the text and headings, and 12 points in the footnotes. The line spacing is two.

# VERIFICATION

I, Edward Green, being duly sworn according to the law of the State of New York, deposes and says that I am the plaintiff in the within action and that the facts set forth in the foregoing answer are true and correct to the best of my knowledge, information and belief, except as to matters therein to be alleged upon information and belief and as to those matters I believe it to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are based upon my review of defendant's petitions in the within matter.

Dated:
September 2011

Respectfully Submitted

*Edward Green*

Edward Green, Pro-se 08A5510
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458-0338

Sworn to before me this
20TH day of September 2011

Notary Public State of New York
Thomas J. Briggs
ID# 01BR6137871 Ulster County
My Commission Expires 20_()

**SR 260**

# AFFIDAVIT OF SERVICE

I Edward Green, being duly sworn, depose and says:

I Edward Green` make and serve A true copy of the following papers: Petitioner's Notice of Motion and Affidavit in Support of Motion for Petitioner's Pro se Writ of Error Coram Nobis, plus Exhibits A - G to the Appellate Division-First Department, located at 27 Madison Ave. @ 25th Street, NY, NY 10010 by mailing the same in a sealed envelope on the____day of September Two Thousand Eleven, with postage prepaid thereon in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee as indicated below:

cc:   **Office of the District Attorney**
     Appeals Unit
     One Hogan Place
     New York, New York 10013

     **Mr. Arnold P. Keith**
     350 Broadway, Suite 1201
     New York, New York 10013

     **STEVEN BANKS - NATALIE REA of Counsel**
     Attorney for Defendant-Appellant
     THE LEGAL AID SOCIETY
     Criminal Appeals Bureau
     199 Water Street – 5th Floor
     New York, New York 10038

Dated:
September 2011

Respectfully Submitted
*Edward Green*
Edward Green, Pro se 08A5510
Eastern Correctional facility
P.O. Box 338
Napanoch, New York 12458-0338

Sworn to before me this
20th day of September 2011

Notary Public State of New York
Thomas J. Briggs
ID# 01BR6137871 Ulster County
My Commission Expires 20 13

# SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK
## APPELLATE DIVISION-FIRST DEPARTMENT

People of the State of New York
Respondent

- Against -

EDWARD GREEN, Pro se
Petitioner

# EXHIBITS
## Indictment Number 5643/07

RECEIVED
APPEALS BUREAU
2012 SEP -6 P 4: 46
DISTRICT ATTORNEY
NEW YORK COUNTY

Prepared by:

Edward Green, Pro-se
Eastern Correctional Facility
P.O. Box 338
Napancoh, New York 12458-0338

Dated:
September 2011

# TABLE OF EXHIBITS

## PAGES

A – THE APPELLATE DIVISION-FIRST DEPARTMENT DECISION............................1


B - Criminal Procedure Law §330, Post Conviction Motion..........................................3


C - PEOPLE'S VOLUNTARY DISCLOSURE FORM

    1. **Police Laboratory Controlled Substance Analysis Report**........................6

       • N932912 [pgs. 1 & 2] STEVEN BROWN...38 Years Old............6, 35

       • N932910   STEVEN BROWN......38 Years Old.......................6, 35


D - PROPERTY CLERK'S INVOICE

    1. N932909 Steven Brown...............................................................

    2. N932910 Steven Brown.........................................................34

    3. N932911 Steven Brown..............................................................

    4. N932912 Steven Brown..............................................................

    5. N932913 Steven Brown..............................................................

    6. N932914 Edward Green.............................................................

    7. N932915 Steven Brown..............................................................

    8. N932916 Edward Green.............................................................

    9. N932921 Steven Brown..............................................................

    10. N932926 Steven Brown..............................................................

    11. N932927 Steven Brown..............................................................

    12. N932930 Steven Brown..............................................................

    13. 21910...........................................................33, 34, 35

    14. 2910....................................................................34

i

**E - PETITIONER'S PRO SE SUPPLEMENTAL BRIEF**

**F – PEOPLE'S BRIEF IN OPPOSITION**

**G – TRIAL TRANSCRIPTS**                                                    <u>**PAGES**</u>

        Pages: 29..........................................................................................

                 30...................................................................................**39**

                 31..........................................................................................

                 32..........................................................................................

                 33..........................................................................................

                 34..........................................................................................

                 35..........................................................................................

                 36............................................................................**5, 10**

                464.........................................................................**34**



**THE
LEGAL
AID
SOCIETY**

Criminal Appeals Bureau
199 Water Street
New York, NY 10038

Tel: 212-577-3403
www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Steven Banks**
*Attorney–in–Chief*

**Seymour W. James, Jr.**
*Attorney–in–Charge*
*Criminal Practice*

March 30, 2011

Mr. Edward Green
08-A-5510
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929

Dear Mr. Green:

I am sorry to have to tell you that the Appellate Division affirmed your conviction and rejected all our arguments. Your family was at the oral argument and noted that the judges were not very receptive to our position. I am enclosing a copy of the opinion. We will now ask the Court of Appeals in Albany, the highest court in the State to review your case. The Court of Appeals accepts very few cases every year so our chances of getting the court to grant leave and review to decision are small. However, I believe your case present a fairly good issue for the court.

I will keep you post. Again, let me tell you how sorry I am that we could not obtain a favorable ruling. Take care of yourself.

Sincerely,

Natalie Rea
Associate Appellate Counsel

Encl.

**SR 266**

Gonzalez, P.J., Catterson, Richter, Abdus-Salaam, Roman, JJ.

4603       The People of the State of New York,          Ind. 5643/07
                              Respondent,

                      -against-

           Edward Green,
                  Defendant-Appellant.

---

Steven Banks, The Legal Aid Society, New York (Natalie Rea of counsel), for appellant.

Cyrus R. Vance, Jr., District Attorney, New York (Britta Gilmore of counsel), for respondent.

---

Judgment, Supreme Court, New York County (Edward J. McLaughlin, J.), rendered October 8, 2008, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the first and third degrees and two counts of criminally using drug paraphernalia in the second degree, and sentencing him, as a second felony drug offender, to an aggregate term of 15 years, unanimously affirmed.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence. Moreover, the evidence overwhelmingly established that defendant was a participant in a drug-selling operation and a possessor of contraband found in two apartments being used as drug factories.

Defendant has not established a violation of the principles of *People v O'Rama* (78 NY2d 270 [1991]) in connection with a note

10

**SR 267**

from the deliberating jury.  Before deliberations began, defense
counsel expressly agreed to permit the jury to examine the
exhibits in evidence.  In the note in question on appeal, the
jury requested permission to open an evidence bag and try a key
in a lock.  Under the circumstances of the case, this was not a
request to perform an experiment or demonstration, but was
essentially a request to apply "everyday experiences,
perceptions, and common sense" (*People v Gomez*, 273 AD2d 160, 161
[2000], *lv denied* 95 NY2d 890 [2000]) in handling the exhibit.
Accordingly, the request was ministerial rather than substantive
(cf. *People v Kelly*, 5 NY3d 116, 120 [2005]), and there was no
need for input from counsel.

The court properly conducted an in camera, ex parte hearing
concerning an informant's existence and his communications to the
police, in accordance with *People v Darden* (34 NY2d 177 [1974]).
Defendant incorrectly asserts that this hearing also constituted
a general suppression hearing at which he had a right to be
present.  After the hearing, the court informed the parties that
the hearing testimony raised issues that might warrant an
adversarial suppression hearing, and released pertinent portions
of that testimony.  The court made no determinations regarding
those issues at that time, and offered defendant the opportunity
to litigate them at a conventional hearing.  Defense counsel

11

**SR 268**

declined the offer of a hearing, and chose to rely on written
submissions and the *Darden* hearing minutes.  Accordingly,
defendant waived any objection to the procedure by which the
court resolved the suppression issues (*cf. People v Jenkins*, 38
AD3d 230 [2007], *lv denied* 8 NY3d 986 [2007]).

Defendant received effective assistance of counsel under the
state and federal standards (*see People v Benevento*, 91 NY2d 708,
713-714 [1998]; *see also Strickland v Washington*, 466 US 668
[1984]).  Defendant has not shown a reasonable probability that
counsel's isolated error in opening the door to the introduction
of two of defendant's prior convictions affected the outcome of
the trial, given the overwhelming evidence of guilt.  The
additional ineffective assistance arguments raised in defendant's
pro se supplemental brief are unreviewable on direct appeal
because they involve matters outside the record (*see People v
Rivera*, 71 NY2d 705, 709 [1988]; *People v Love*, 57 NY2d 998
[1982]).

The court properly exercised its discretion in determining
that defense counsel's opening statement opened the door to
admission of an item of physical evidence that the court had
suppressed (*see People v Massie*, 2 NY3d 179, 183-185 [2004]).  In

12

**SR 269**

any event, any error in admitting this evidence was harmless (*see*

*People v Crimmins*, 36 NY2d 230 [1975]).

     THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

     ENTERED:  MARCH 24, 2011

                      CLERK

13

**SR 270**

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK
## TERM PART: 93

### EDWARD GREEN
Defendant

## NOTICE OF MOTION TO VACATE JUDGMENT
### Indictment No. 5643/07

Prepared by:

Edward Green, Pro-se
125 White Street
New York, New York 10013

Dated:
October 3rd, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM PART: 93
THE PEOPLE OF THE STATE OF NEW YORK

                      Respondent

           - Against -

EDWARD GREEN

               Defendant

---

**NOTICE OF MOTION TO SET
ASIDE VERDICT PURSUANT
TO SECTION 330.30(1) OF THE
CRIMINAL PROCEDURE LAW**

Indictment No. 5643/07

Honorable McLaughlin, J, P.

---

TO THE SUPREME COURT
OF THE COUNTY OF NEW YORK

      **PLEASE TAKE NOTICE,** that upon the annexed affidavit of Edward Green, the defendant herein, sworn to this 3rd day of October 2008, and upon all the proceedings theretofore had herein, the undersigned will move this Court at a term thereof to be held on the 9th day of October 2008, at the Courthouse located at 100 Centre Street, New York, New York 10013, pursuant to section(s) 330.30(1); 330.40(2)(a) and 330.50(1) of the Criminal Procedure Law, for an order setting aside the verdict of guilty against the defendant stated herein, for the crimes of Criminal Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law, §§220.21(1), 220.16(1), rendered by a jury and before the Honorable McLaughlin, J,P., on the 15 day of September 2008, upon the grounds that:

1) Ineffective Assistance of Counsel.
2) Police laboratory Controlled Substance Analysis Report were defective on the grounds that it doesn't conform to the requirements of C.P.L. §190.30(2-a)(a)(b)(c).
3) Counsel failed to obtain any and all documents, i.e. reviews, reports, evaluations and other materials that are maintained by the Crime Laboratory.

Such grounds, if raised on appeal would require a reversal of conviction as a matter of

law, and for such other and further relief as may be just and proper.

Dated: October 2008

Respectfully Submitted

Edward Green, Pro-se
Manhattan House of Detention
125 White Street
New York, New York 10013

TO:   CLERK OF THE SUPREME COURT
      100 Centre Street
      New York, New York 10013

      Hon. Robert M. Morgenthau, Esq.,
      District Attorney, County of New York
      One Hogan Place
      New York, New York 10013

      Mr. Arnold P. Keith
      350 Broadway, Suite 1201
      New York 10013

2

**SR 274**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YO.___: CRIMINAL TERM PART: 93
THE PEOPLE OF THE STATE OF NEW YORK
                                        Respondent

                        - Against -

EDWARD GREEN
                        Defendant

**AFFIDAVIT IN SUPPORT OF
NOTICE OF MOTION TO SET
ASIDE VERDICT PURSUANT
TO SECTION 330.30(1) OF THE
CRIMINAL PROCEDURE LAW**
Indictment No. 5643/07

Honorable McLaughlin, J.P.

TO THE SUPREME COURT            )
OF THE COUNTY OF NEW YORK )

        I, Edward Green, being duly sworn, depose and says:

1.      I am the defendant in the above-entitled matter and I make this affidavit in support of a motion to set aside Verdict and Order a new trial pursuant to section(s) 330.30(1), 330.40(2)(a), 330.50(1) of the Criminal Procedure Law ("C.P.L.").

2.      Hereto, although I am familiar with all of the statements and facts herein submitted, I am a layperson in the matters of the law and I seek this Court's indulgence for errors, omissions, defects and any irregularity pursuant to section 2001 and 2101(F) of the Civil Practice Law and Rules of the State of New York.

3.      I was indicted by the grand jury in the County of New York, on the 12 day of September 2007, and charged with the offences of Criminal Possession of a Controlled Substance in the First and Third Degree in violation of Penal Law §§220.21(1), 220.16(1), respectfully under Indictment No.5643/07

4.      The case was tried before the Honorable McLaughlin, J.P., of the State Supreme Court, on the 8th day of September 2008.  The outcome of the case was the finding of the defendant guilty of Criminal Possession of a Controlled Substance in the First and third degree, in violation of Penal Law, §§220.21(1), 220.16(1), respectfully.

**SR 275**

5.   The defendant moves in this instant motion for an order setting aside the verdict of guilty on the aforestated charges and ordering a new trial upon the following grounds:

      a)   Ineffective Assistance of Counsel.
      b)   Police laboratory Controlled Substance Analysis Report were defective on the grounds that it doesn't conform to the requirements of C.P.L. §190.30(2-a)(a)(b)(c).
      c)   Counsel failed to obtain any and all documents, i.e. reviews, reports, evaluations and other materials that are maintained by the Crime Laboratory.

6.   The defendant was denied the Effective Assistance of Counsel with regards to the top count of the indictment, charging Criminal Possession of a Controlled Substance, in the 1st Degree. Counsel pursued no defense at trial with respect to that charge, counsel did not challenge the strength of the prosecution's case on that count through cross-examination, and counsel effectively acknowledged that the paraphernalia of drug sales was found in the possession of the Green. There was no testimony regarding this point. This was not a matter of an alternative, but an unsuccessful, trial strategy. By contending that counsel provided no defense to the top count, Green, did not concede that counsel provided meaningful representation on the other charges, People v. Hobot, 84 N.Y.2d 1021, 1022, reported from People v. Dinkle, 302 A.D.2d 1014. Defense counsel was ineffective throughout the course of pre-trial proceedings as well as the entire trial.

7.   There is a reasonable cause to believe that the evidence that was before the Grand Jury was insufficient to support the charges in the Indictment under the provisions of C.P.L. §§220.39(1), 220.41(1) in that the proceedings were defective and failed to conform to the requirements of C.P.L. §§190.30(2-a), 190.65(1)(3), 70.10(1), 210.20, see also, People v. Deegan, 516 NYS2d 651, 652.

8.   It is the defendant's belief that a review of the Grand Jury minutes will conclusively

2

show that the essential elements of the alleged crime was not proven to a "moral certainty" as applied to a case involving wholly circumstantial evidence, this standard limits the reviewing Court's inquiry to determining whether the facts and the inferences that logically flow from the facts that supply proof of every element of the offense charged. [See, C.P.L. §§210.20(1)(b), 190.50(1)(b)].

9.     It is the defendant argument that proof of intent, where the requisite knowledge was completely lacking in the evidence presented to the Grand Jury and that the said evidence was insufficient to establish even a "prima facie" case against the defendant. (See, C.P.L. §§210.20(1)(B), 190.65(1)(B)).

10.     In the case at bar, the defendant argues that the laboratory report(s) and or field test report does not contain the Electronic Transmittal Memorandum and the Grand Jury foreman stamp conforming to the requirements of C.P.L. §190.30(2-a)[1], nevertheless, it was still entered as evidence by the prosecution under indictment No.5643/07, for a defendant to be further prosecuted at trial in violation of the defendant's Constitutional rights to Due Process and Equal Protection (see, People v. River, 612 NYS2d 782; Dougbert v. Milliken, 163 NY 527, 533. Since the failure to file the certified report or a certified copy of the report herein entered can not be considered as a harmless error, since it was a plain error of such a degree that the integrity of the Grand Jury was impaired and Prejudiced resulted in a guilty verdict.

11.     There was insufficient evidence to establish that the defendant had sold a controlled substance or possessed a controlled substance. Furthermore, the evidence was not sufficient, credible or worthy to warrant a prosecution in this case, see, People v. Tomaino, 670 NYS2d 938,

---

[1] Exhibit A is being submitted for the limited purposes of demonstrating to the Court just what a proper laboratory report with all of the above requirements of C.P.L. §190.30(2-a) in place

3

953-954, the defendant do   not believe that a true bill was entered by the Grand Jury's foreman [see, People v. Martin, 419 NYS2d 724, People v. Neidhart, 71 NYS2d 591]

12.   To determine whether the prosecution gave legal instructions to the Grand Jury on the Public Health Laws Article 33, section(s) 3306, 3371, 3374, which establishes the schedules of groups of controlled substances (see, C.P.L. §715.50(1)(2)(3).

13.   To determine whether the prosecution refused to answer or improperly answered questions or inquiries' made by members of the Grand Jury, constituting prejudicial error and rendering the indictment null and void (see, People v. Montalvo, 449 NYS2d 377).

14.   To determine whether the prosecution gave legal instruction as to the weight of the Controlled Substances-to wit-aggregated and/or pure weight in that the defendant knowingly and unlawfully sold and/or possessed a narcotic drug.

15.   Counsel was ineffective due to the fact that counsel did not bring up the issue about the Electronic Transmittal Memorandum in accordance with Criminal Procedure Law §190.30(2-a), also the three statutory safeguards as set forth in clauses (a)(b)(c).

16.   Counsel failed to conduct an investigation into the matter of this action on behalf of his client, see, Powell v. Alabama, (1932) 287 U.S. 45, is not understandable.

17.   The right to Counsel would be meaningless if it did not require effective assistance and substantial aid, id. 287 U.S. 45.

18.   Counsel must conduct an appropriate investigation both factual and legal to determine if matters of defense can be developed and to allow himself enough time for reflection and preparation for trial.

19.   Counsel should have acquired the following documents to assist in preparing for trial and/or a defense.   Counsel should have obtain any and all reviews, reports, evaluations or other

4

documents provided by the New York City Police Department Crime Laboratory, Laboratory reports by any forensic consultants or forensic inspector regarding controlled substance examination conducted by the Laboratory.

20.    Counsel should have acquired any an all documents, reports or other material maintained by the Laboratory containing information about the Laboratory's controlled substance examinations. The documents reports or other materials shall include but not limited to:

21.    A. The protocol used in testing the alleged controlled substance in the above captioned case.

22.    B.    Any and all materials describing or documenting the cleanliness or lack of cleanliness and the good housekeeping or lack of good housekeeping of the laboratory.

23.    C.    Any and all documents showing or tending to show that the alleged controlled substance in the above captioned case was contaminated or subjected to other deleterious change.

24.    D.   The laboratory's schedule for testing the reagents used in color and crystal tests by laboratory personnel in conducting controlled substance examinations.

25.    E.    The results of any testing of the reagents used in testing the alleged controlled substance in the above captioned case (or the batch of reagents from which the reagents used in the above captioned case were obtained), including but not limited to any bench notes and raw data, as well an any conclusions regarding the reagents.

26.    F.    Any documents reflecting the chain of custody (or lack of same) for alleged controlled substance in the above captioned case.

27.    G.    Any documents reflecting that the laboratory is not physically secure permitting tampering with and/or contamination of the alleged controlled substance in the above captioned case.

5

**SR 279**

28.   H.   The maint~ ~nce logs for any equipment and/or instruments used in testing the alleged controlled substance in the above captioned case.

29.   I.   Any documents reflecting that any equipment or instruments which laboratory personnel used in testing the alleged controlled substance in the above captioned case was not properly maintained and/or calibrated.

30.   J.   The personal records for laboratory personnel who tested the alleged controlled substance in the above captioned case.

31.   K.   The proficiency examination results for the laboratory personnel who tested the alleged controlled substance in the above captioned case.

32.   L.   The curriculum vitae for the laboratory personnel who tested the alleged controlled substance in the above captioned case. If the curriculum vitae do not exist, a statement detailing the personnel's relevant education, training and any and all publications produced or published by the Chemist.

33.   M.   The laboratory's application for exemption from the New York State Forensic Laboratory Accreditation and any supporting documents submitted to the New York State Commission on Forensic Science.

34.   N.   Any and all documents submitted to the New York State commission on Forensic Science relating to the laboratory's application referenced in the last paragraph.

35.   Defense Counsel failed to request the documents described in the above paragraphs which were needed in order to adequately prepare a proper defense, it was necessary to have obtained copies of the requested materials or call the police chemist as witnesses for the following reasons:

36.   In order to meet its burden in the instant case, the prosecution must prove beyond a

6

**SR 280**

reasonable doubt that the alleged controlled substances were Cocaine.

37.     Had counsel obtained the numerous documents (laboratory reports) which, at a minimum would have strongly suggested that the New York City Police Department Crime Laboratory controlled substance examination were unreliable.   The laboratory documents would have included an evaluation of the laboratory forensic inspector with the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCD/LAB") inspectors in evaluating the laboratory.

38.     The evaluation, entitled Recommendations to the New York City Police Department regarding an Accreditation Inspection are based partly on an inspection of the laboratory conducted between November 1996[2] and October 1999 to the present, and there is still no proof of accreditation to date.

39.     At a minimum, the recommendation would have strongly suggested that a conviction based on laboratory's controlled substance examination in this case is not "a verdict worthy of confidence", kyles v. Whitely, 514 U.S. 419, 131 L.Ed.2d 490, 506(1995).

40.     The recommendation would have strongly suggested, among other things that:  (a) the procedures used in testing the alleged controlled substance in the defendant's case are not generally accepted in the forensic field.   The recommendations would have found a reasonable expectation that the procedures currently used would not be considered as generally accepted in the field by an ASCLD/LAB inspection team.   The laboratory does not meet the ASCLD/LAB standard for using procedures generally accepted in the field or supported by data gathered and recorded in a scientific manner.

41.     That the alleged controlled substance in the defendant's case was contaminated of

---

[2] See, exhibit "B"

7

reasonable doubt that the alleged controlled substances were Cocaine.

37.    Had counsel obtained the numerous documents (laboratory reports) which, at a minimum would have strongly suggested that the New York City Police Department Crime Laboratory controlled substance examination were unreliable.   The laboratory documents would have included an evaluation of the laboratory forensic inspector with the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCD/LAB") inspectors in evaluating the laboratory.

38.    The evaluation, entitled Recommendations to the New York City Police Department regarding an Accreditation Inspection are based partly on an inspection of the laboratory conducted between November 1996[2] and October 1999 to the present, and there is still no proof of accreditation to date.

39.    At a minimum, the recommendation would have strongly suggested that a conviction based on laboratory's controlled substance examination in this case is not "a verdict worthy of confidence", kyles v. Whitely, 5 14 U.S. 419, 131 L.Ed.2d 490, 506(1995).

40.    The recommendation would have strongly suggested, among other things that:   (a) the procedures used in testing the alleged controlled substance in the defendant's case are not generally accepted in the forensic field.   The recommendations would have found a reasonable expectation that the procedures currently used would not be considered as generally accepted in the field by an ASCLD/LAB inspection team.   The laboratory does not meet the ASCLD/LAB standard for using procedures generally accepted in the field or supported by data gathered and recorded in a scientific manner.

41.    That the alleged controlled substance in the defendant's case was contaminated of

---

[2] See, exhibit "B"

7

cleanliness and good housekeeping at the laboratory.  The recommendations describe the cleanliness and apparent good housekeeping in the laboratory as "deplorable.  The laboratory general cleanliness and apparent good housekeeping does not meet the ASCLD/LAB standard for protecting evidence from loss, cross transfer, contamination and/or deleterious change.

42.     That the laboratory does not routinely check the reliability of the reagents used in testing controlled substances in the defendants' case.  The recommendation would have found that for controlled substance determinations, the reagents for color and crystal tests are only checked at after the time of the initial preparation but not before.  The laboratory does not meet the ASCLD/LAB standard for routinely checking the reliability of its reagents.

43.     That the chain of custody regarding the alleged controlled substance in the defendants' case were not intact.  The recommendations would have found that although signatures are required at points in the process, e.g. from the borough to the vault and to the chemist, this was not followed in all cases.  The recommendations found that the laboratory's handling and preserving the integrity of the evidence did not meet ASCLD/LAB standards.

44.     That the laboratory was not secure, permitting tampering with and/or the contamination of the alleged controlled substance in the defendants case.  The recommendation found that the laboratories security did not meet ASCLD/LAB standards.

45.     That any equipment and/or instruments used in testing the alleged controlled substance in the defendants case was not properly maintained and/or calibrated.  The recommendations found that the laboratory did not meet the ASCLD/LAB standards for maintenance and calibration of the equipment and instruments.

46.     That the chemist who tested the alleged controlled substance in the defendant's case was fatigued while testing the alleged controlled substance in the defendant's case and/or while

8

**SR 283**

evaluating the test results. The recommendations found that most staff appears to have a second

job to make ends meet, for some, it appears that the laboratory is the second job.

47.     That the chain of custody records with all the necessary data was not maintained

regarding the alleged controlled substance in the defendants' case. The laboratory is required to

maintain chain of custody records, however, it has been noted that the chain of custody records

were being half completed, and the newly developed procedure does not require all aspect of a

completed chain of custody documentation to be covered.

48.     The laboratory does not meet the ASCLD/LAD standards for having records on file

demonstrating a complete chain of custody with all the necessary data.

49.     That the appropriate controls and standards were not specified in the procedures

employed in the laboratory testing that was conducted in the defendants case and that the

controls and standards were not used to ensure that the validity of the examination of the results

in the defendants case. The Court should find that no standards or controls were used to ensure

that the color and crystal tests were working properly. Because no further tests were performed

after the initial validation of the reagents, the laboratory did not meet the ASCLD/LAB standards

for having appropriate controls and standards specified in the procedures and used to ensure that

the validity of the examination results.

50.     That any testing of the alleged controlled substance in the defendant's case might have

included the use of a non-functioning micro-spectrophotometer. The laboratory did not meet the

ASCLD/LAB standards for instruments/equipment being in proper working order with a non-

functioning micro-spectrophotometer.

51.     That the reports of the chemist who tested the alleged controlled substance in the

defendant's case were not reviewed by another to ensure that their conclusions are reasonable

9

**SR 284**