and within the constrair  of scientific knowledge.  The Court  ould find that while some

review is conducted in some units, it is inadequate and usually done by a person without the

necessary qualifications.  For most drug cases there is essentially nothing in the file to review.

The laboratory does not meet the ASCLD/LAB essential standard for reviewing the reports to

ensure that the conclusions of its examiners are reasonable and within the constraints of scientific

knowledge.

52.   That the chemist who tested the alleged controlled substance in the defendant's case did

not have the necessary experience/training to commensurate with the examinations and

anticipated testimony would have provided.

53.   The prosecutions burden at trial includes proving beyond a reasonable doubt that the

substance allegedly sold were a controlled substance and the trial testimony provided no proof of

such.  Therefore, a critical issue in this case is whether the laboratory controlled substance

examination was reliable; the answer is "N0".

54.   To be reliable, scientific testimony must be grounded in the scientific method and must

constitute more that a subjective belief or unsupported speculation, Daubert, 125 L.Ed.2d @480-

481.  Among the factors bearing on reliability include: (1) whether the theory can be tested, (2)

whether or not the theory has been subjected to peer review and publication, (3) the known or

potential rate of error, and (4) to some extent, general acceptance in the field, Id. @482-483.

The testimony of the police chemist who quality as experts could have fail to meet this standard

of reliability.  The record is silence as to the four factors as stated above, and had the police

chemist would have testify as experts their testimony would have been based upon a subjective

belief and unsupported speculation.  The four points demonstrate this.

55.   Thus, having failed to meet all of the above criteria, the police chemist opinion should

have still been admitted ii _ :pport the defendants' contentions of ʹ ʻeliable scientific testing, because counsel failed to call any/all police chemist who tested the alleged controlled substance, amounted to Ineffective Assistance of Counsel.

56.    It should be noted that Defense Counsel was unprepared as well as unaware that the only evidence the people offered at trial that showed that Green had a predisposition to commit the crime charged, was uncharged crimes.  Where a defendant may be charged with a crime where the act is unequivocal and where intent can be inferred fro the act, but where a defendant denies having committed the act altogether.   In such a situation, evidence of prior crimes was inadmissible to show intent. See, People v. McKinney, 24 N.Y.2d 180 (1969).

57.    Also, the Court of Appeals also stated in People v. Allweiss, that the admission of uncharged crimes, the People must establish that the defendant was the perpetrator of the crime charged.   However, the fact that the defendant has committed similar crimes in the past is insufficient to do so here an allow such admittance of uncharged crimes, and thus it is an insufficient ground for admission here. 48 N.Y.2d 40 (197).

58.    The Court also stated in People v. Baez, that the use of prior uncharged crimes simply to characterize the defendant has been disallowed. ("Where a defendant is on trial for a drug sale, evidence of prior uncharged crimes was used to show that the defendant was a "big time" drug dealer.  The Court reversed his conviction, stating that the use of the prior crimes in this fashion was unnecessary, 103 A.D.2d 746 (2nd Dept. 1984).  The introduction of this type of evidence is generally excluded for policy reasons because it may induce the jury to render a guilty verdict based on collateral matters. (People v. Lewis, 69 N.Y.2d 321, 325; People v. Till, 201 A.D.2d 43, 46, lv. granted 84 N.Y.2d 874; also see, Richardson, Evidence sec. 4, at 2[Prince 10th Ed].

59.    In short, there was no competent testimony to indicate that Green was in possession of a

11

controlled substance, le  'one, assisted, ordered, or aided Brov⁻⁻ in the purported sale of a narcotic drug.

60.    The Court should decline to give Law of the Case effect to this aspect of the Courts' decision.  In view of no supervening authority that permits the legislature to make a defendant's rights to Effective Assistance of Counsel at trial contingent upon actions by a defendant, where the petitioner is a layperson in the matters of the law and could not have known that the omissions by his trial counsel, attacking the sufficiency of the people's evidence, in that the people had failed to prove every element of the offense charged.  This was a fatal flaw in their pleadings, and the People have not argued to this Court at trial that such authority exists.  Had counsel properly performed his duty to effectively address these issues, Petitioner's conviction would have been reversed,

## MOTION TO RECONSIDER THE INSPECTION OF THE GRAND JURY MINUTES

61.    In the written decision this court ruled that the evidence before the Grand Jury was legally sufficient and procedurally proper.   It is submitted that the decision should be reconsidered.

62.    In the instant matter upon Information and Belief, the Grand Jury was presented with a laboratory report prepared by an employee of the NYPD concerning his or her analysis conducted at the NYPD Crime laboratory.   It is submitted that this evidence should be ruled insufficient to support the instant indictment.

63.    Pursuant to an article which appeared in the New York Daily News (attached) and the New York /times (appearing in the paper thanksgiving weekend) The NYPD laboratory has been denied accreditation by the American Society of Crime Lab Directors.   The denial of accreditation was made pursuant to an inspection by the Society in November 1996 and again in

12

1999. The Society is th___ ody charged with accrediting crime lab~~atories in the State of New York.

64.     According to the article the laboratory was denied accreditation in part because after an inspection the Society found "several serious lapses" at the lab. Included in these lapses was the fact that at least seven of the NYPD chemists could not identify heroin crystals in a drug sample.

65.     Furthermore, according to the article, ROBERT KEATON, a Board member of the Society confirmed that the NYPD lab has not been accredited by the Society. The article also stated that the Society would continue to inspect the lab until the lab passed the inspection and became accredited. The newspaper confirmed that New York State law requires accreditation of all Crime Labs in this State.

66.     It is submitted that the admittance of expert evidence concerning laboratory analysis fro a Crime Lab that is not accredited is in violation of New York State Law, and therefore cannot be considered competent evidence to support an indictment. It is submitted that if the NYPD lab cannot earn full accreditation as required by New York State from the oversight Crime lab Society, the prosecutor cannot introduce as expert testimony the results of tests performed by the flawed laboratory. In effect, the Grand Jury heard evidence from a laboratory that has not been ruled competent to perform tests and, accurately report the results of these laboratory tests. To allow said evidence before the Grand Jury impairs the integrity of that body. It is submitted that an indictment based on such flawed evidence is improper and must be dismissed.

67. .    Furthermore, it is submitted that the failure of the prosecutor to inform the Grand Jury that the NYPD lab had not gained accreditation was improper and tainted the Grand Jury proceeding. The Grand Jury was not given evidence it should have considered in making the determination of whether the expert testimony that would have been given by the laboratory

13

analyst was competent d credible. It is submitted that the Grand Jury should have been informed about the lack of accreditation of the NYPD lab, it would have aided the jurors in determining whether the evidence presented by the expert witness based on tests performed at this lab was correct, sufficient, and worthy of belief. In effect, by failing to so inform the Grand Jury of the failure of the NYPD lab to gain accreditation, the Jurors were denied the tools necessary to evaluate whether, the expert testimony of the witness, based on tests performed at a lab that has not been accredited, should be accepted as sufficient in this case.

68.    In the present matter the fact that a narcotic was sold or possessed is an element of the crime charged. The failure of the prosecutor to supply the Grand Jury with the information that the NYPD lab is not accredited, has deprived the Jurors of any meaningful opportunity to reasonably and rationally consider whether, there has been sufficient proof presented to establish that the items the defendant allegedly sold and/or possessed, were indeed a controlled substance. It is submitted that this failure severely affected the Grand Jury process and impaired the integrity of the Grand Jury.

69.    Therefore, it is submitted that this court should reconsider it's ruling concerning the sufficiency of the Grand Jury and upon reconsideration, dismiss the indictment because: (1) the NYPD laboratory was not accredited and therefore the conclusions based on it's work cannot be submitted to the Grand Jury, and (2) the failure of the prosecutor to so inform the Grand Jury about the lack of accreditation impaired the Grand Jury's deliberation concerning an element of the crime charged. Thus, it is submitted that the indictment should be dismissed.

## MR. GREEN WAS DEPRIVED OF MEANINGLESS REPRESENTATION BY HIS TRIAL COUNSEL, WHEN COUNSEL FAILED TO PREPARE A PROPER DEFENSE OR CALL WITNESSES.

70.    It is elementary that the right to effective assistance of representation includes the right to

14

SR 289

assistance by an attorney _ .o has taken the time to review and pr   re both the law and facts relevant to the defense and who is familiar with and able to employ at trial both the basic principles of criminal law and procedures. The Supreme Court of the United States have long recognized that the right to counsel would be meaningless if it did not require effective assistance and substantial aid, Powell v. Alabama, 287 U.S. 45.

71.     Professionalism demands that counsel must thoroughly review the facts and laws of the case relevant to his clients' defense and exhibit his practice expertly because proper representation involves more than courtroom conduct. It is axiomatic that counsel must investigate all apparently substantial defenses available to a defendant and must assert them in a proper and timely manner. This was not the case in this instance matter, no matter what the apparent degree of a defendant's depravity or the likelihood of his guilt, the right to the constitutional shelter of Effective Assistance of Counsel and a fair trial are to forever remain in violate. Wilson v. Phend, 417 F.2d 1197; Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981); Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.

72.     The Due Process Clause of the Fourteenth Amendment mandates that the State prove the existence of each and every element of the offense charged beyond a reasonable doubt. This was not done since defense counsel failed to investigate and call (all) possible witnesses, present document or to prepare a defense.

73.     Defense Counsel demonstrated a total ignorance of applicable law (United States v. Goodwin, 531 F.2d 347 and the failure to conduct any legal research (Cosey v. Wolff, 562 F.Supp. 140, aff'd 727 F.3d 656, in that he failed to recognized that under New York State law, that before evidence implicating another suspect can be admitted "there must be such proof of connection with the crime, such as a train of facts or circumstances as tending to clearly point out

15

someone besides the a_ _ed as the guilty party". Evidence motive, ability, and the opportunity for a third person or persons to commit the crime is a sufficient foundation for the introduction of other suspect evidence. Such evidence must be "coupled" with other evidence tending to connect such other person with the actual commission of the crime charged. (United States v. Armstrong, 621 F2d. 951, 953; see also, United States v. Perkins, 937 F.2d 1397, 1400(A defendant is entitled to introduce evidence which tends to prove someone else committed the crime); United States v. Brannon, 616 F2d 413, 418(A defendant is entitled to prove his innocence by showing that someone else committed the crime).

74.     Because of defense counsel's unpreparedness, counsel failed to put before the jury evidence that someone else had committed the crime charged. Because of counsel's failure to capitalize on Mr. Steven Brown's ("Brown") sentencing allocution which demonstrated that someone other than the petitioner committed the crime charged. Counsel also failed to demonstrate that someone else had the opportunity, ability, and motive to commit the crime. Most importantly, the excluded evidence showed that the evidence would have supported an alternative theory of how the crime might have been committed

75.     This argument was crucial to the defense because the sale and possession occurred in Brown's apartment, and the petitioner and Brown was the only other persons known to be at the scene of the crime. The jurors would naturally ask themselves that, "if the defendants were in the building, then he probability committed the crime charged.

76.     The introduction of Brown as the true person that committed the crime and was in possession of the controlled substance, would have answered that question, rebutting the inference that Edward Green("Green") must have possessed the drugs, because no one else was in a position to do so. In addition, petitioner's attorney failed to argue that the prosecution's

16

**SR 291**

evidence didn't prove th\_\_petitioner had been in possession of a c\_\_\_olled substance, this is also significant because there was so little direct evidence of what actually happened, and this was far from an admission of guilt.

77.     Because petitioner's counsel was unfamiliar with the case he was barred from introducing the evidence that someone else was in possession of the drugs, nor could he fully argue the police sloppy investigation theory.  Because of counsels being unfamiliar with the case he could not point out what the police hadn't done, nor could he suggest no exculpatory evidence that the police might have found had they conducted a more thorough investigation.  The excluded evidence would have lent support to the petitioner's theory that someone else had possession of the drugs and under mined the prosecutor's claim that a more thorough investigation would have turned up nothing of value.  Rather than being limited to trying to poke holes in the prosecutions case, counsel could have plausibly argued that a more thorough investigation would have produced evidence incrimination only Brown as having possession of the drugs.

78.     Finally, in light that the prosecution had no other eyewitnesses and the rest of its case consisted of weak circumstantial proof, Green should not have been found guilty of the crime of Criminal Possession of a Controlled Substance.

79.     The people failed to present legally sufficient evidence to convict Green of the charge of Criminal Possession of a Controlled Substance, in the First and Third Degree, in violation of Penal Law §§220.21(1), 220.16(1)and

80.     In order to be convicted as an accomplice, a defendant must act with the mental culpability required for the commission of the offense and must request, solicit, command, importune or intentionally aid the principal actor ("Brown") to engage in the commission of the offense. see, Penal Law ("PL") §20.00.Furthermore, there was no evidence that Green and the

17

person (Brown) who poss_.ed and sold the drugs, had any interact'   either before or after the

actual sale by Brown. Clearly, the record shows that Green was engaged in no criminal conduct

of any description when arrested.  Significantly, no contraband or buy money was recovered

from Green after his arrest which supports the conclusion that Green in no was assisted,

requested, solicited, commanded, importuned or intentionally aided Brown to engage in the

commission of possession or the sale of a controlled substance.

81.    Further, the testimony did not show, as would have been necessary to sustain his

conviction as an accomplice for the Criminal Possession with the intent to Sale a Controlled

Substance or that he shared the seller's intent to bring about the drug transaction.

82.    Further, Green, did nothing to possessed, let alone, demand or importune the illicit

possession or sale of a controlled substance.   The necessary conditions for establishing

accomplice liability having been thus left unsatisfied, and there being no other capacity in which

the defendant may be said to have participated in the charged possession and or sale.  The record

is barren of testimony which demonstrated that Green possessed with the intent to sale or ordered

or engaged any person to possess and sale a narcotic drug.  Had Counsel properly perform his

duty to effectively address these issues, Greens conviction would have been reversed.

## DEFENSE COUNSEL FAILURE TO PREPARE A DEFENSE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL

83.    The failure of Green's Counsel to prepare a defense constituted Ineffective Assistance of

Counsel. First, Mr.      decided not to prepare a proper defense for Green solely because he

was confident that at the close of the prosecution's presentation of its evidence, the trial judge

would have granted the defense motion to dismiss or the jury would have found Green not guilty.

Counsel opted not to prepare a defense based entirely on this rational militates strongly in favor

18

**SR 293**

of the conclusion that his representation of Green was Constitutio___ ly deficient. See, Harris v. Reed, 894 F2d 871, 878-879.

84.    [S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable, and strategic choices make after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigations.  Defense counsel had a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. Where ineffective assistance counsel is alledged, a particular investigation must be directly assessed for reasonableness in all circumstances.  As to a "conscious" decision, see Bean v. Calderon , 163 F3d 1073, 1079(noting that a decision cannot be characterized as "strategic" where it was a resulted only from confusion); United States v. Gray, 878 F.2d 702, 712("counsel's behavior was not colorably based on tactical considerations but merely upon a lack of diligence").

85.    As to "reasonably informed" decisions: see, Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000)(noting that a decision based on a legal misunderstanding was not animated by "strategic" calculation); Kimmelman, 477 U.S. at 368, 106 S.Ct. 2574(noting that a decision based on ignorance of relevant facts and mistaken beliefs was not based on "strategic considerations);Smith v. Stewart, 189 F.3d 1004, 1010(holding that an attorney's decision not to pursue certain evidence was not "strategic" where, it was based on a lack of understanding of what constituted such evidence) and Williams, 59 /f.3d at 680(because of his ignorance, counsel was unable to make any strategic decision"); and compare Crisp v. Duckworth, 743 F.2d 580, 587("contrasting an attorney's general polic[y]" of how to defend a case with "strategic decisions," which are "decisions based on the specific facts of a given case").  The Supreme

19

**SR 294**

Court has explained that ⎡[s]trategic choices made after a thorough ⎤estigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052. But "virtually unchallengeable" does not mean wholly unchallengeable, see, Phoenix v. Matesanz, 233 F.3d 77, 82, n.2(1st Cir. 2000), and decisions that are not reasonably informed have emphatically not been "made after a thorough investigation of law and facts."

86.    Green's trial counsel failure to call any witnesses and to rely entirely on the people's evidence in exonerating the defendants was thus "strategic" in the sense that it related to a question of trial strategy which witnesses to call and it was trial "strategy" also in that it was made by counsel to advance a particular goal. That goal, was mainly avoiding work-not, as it should have been, serving Green's interests by providing him with reasonably effective representation.

87.    Counsel's decision was "strategic" in some senses of the word, it was not the sort of conscious, reasonably informed decision made by an attorney with an eye to benefitting his client that the Federal Courts have denominated "strategic" and especially reluctant to disturb.

88.    Accordingly, the hesitation to disturb "strategic" decisions described above has no bearing on this case. There are many ways to properly assist a client, but making important decisions with no regard for a client's interests is not one of them.

89.    Counsel's representation of Green was unprofessional to the point of being constitutionally "deficient" and "flawed". The cumulative weight of these flaws deprived Green of his constitutionally protected Sixth Amendment Right to Effective Assistance of Counsel.

## CONCLUSIONS

20

WHEREFORE, based up___ these and a multitude of other failures, ___en was deprived of meaningful representation. Accordingly, the petitioner's conviction should be reversed and a new trial ordered. In the alternative, a hearing should be held for a finding of facts.

WHEREFORE, your deponent submits that the aforesaid conviction was obtained in violation of Green's rights under the Constitution of the United States, and Green moves this Court in accordance with CPL §330.30(1), 330.40(2)(a), 330.50(1) in vacating the judgment of the Supreme Court and reversing Green's conviction and ordering a new trial based upon the facts that Green was denied Effective Assistance of Counsel. Such grounds, if raised on appeal would require a reversal of conviction as a matter of law, and for such other and further relief as may be just and proper.

Dated: October 2008

MICHELLE FLORENCE GREEN
Commissioner of Deeds
City of New York, No. 3-3559
Certificate Filed in New York County
Commission Expires Oct. 1, 2010

Sworn to before me this
3rd day of October 2008

Respectfully Submitted

Edward Green, Pro-se
Manhattan House of Detention
125 White Street
New York, New York 10013

TO:   CLERK OF THE SUPREME COURT
      100 Centre Street
      New York, New York 10013

      Hon. Robert M. Morgenthau, Esq.,
      District Attorney, County of New York
      One Hogan Place
      New York, New York 10013

      Mr. Arnold P. Keith
      350 Broadway, Suite 1201
      New York, New York 10013

Sworn to before me this
3rd day of October 2008
MICHELLE FLORENCE GREEN
Commissioner of Deeds
City of New York, No. 3-3559
Certificate Filed in New York County
Commission Expires Oct. 1, 2010

21

**SR 296**

POLICE LABORATORY CONTROLLED
SUBSTANCE AND ITS REPORT
PD 521-153 (Rev)

LABORATORY M                    94NO63296A

| INVESTIGATING/ARRESTING OFFICER (Rank) | | TAX REG No. | COMMAND | | SUPL UN No. | PCT | PROP CLK No No |
|---|---|---|---|---|---|---|---|
| ( Name (Rank) PCT, M.U) | | 893697 | 044 PCT | | 19963 | 037 | 5374627 |
| P.O. | | 08/09/94 | | DATE OF REPORT | | | |
| 3471 REQ _____ (mcm) RPT 175 | | | | 08/10/94 | | | |

EVIDENCE PRESENT, AS ITEMIZED ON VOUCHER   X   | YES   | NO (Not Attached)

DEFENDANT(S)

John Doe (Name)   TAH

BUY OPERATION NO(s).   2471

RESULTS OF ANALYSIS

| Heroin | Heroin | Cocaine | Marijuana | Weight/Volume | Other |
|---|---|---|---|---|---|
| [ ] | [ ] | [ X ] | [ ] | 6 GRAINS | |
| J | PLASTIC BAG(S) | | | | |
| [ ] | [ ] | [ ] | [ ] | | |
| [ ] | [ ] | [ ] | [ ] - 1 | #1 | |
| [ ] | [ ] | [ ] | [ ] | | |
| [ ] | [ ] | [ ] | [ ] | | |
| [ ] | [ ] | [ ] | [ . ] | | |

TRANSMITTAL MEMORANDUM
This Laboratory Report consists
of ____ pages. It is hereby certified
that it is a true and unaltered copy
transmitted and certified by:

RECEIPT CERTIFICATE
It is hereby certified that this report
and attached transmittal memorandum
were received and certified by:

SUMMARY OF ITEMS

| Heroin | Heroin | Cocaine | Marijuana | Weight/Volume | Other |
|---|---|---|---|---|---|
| [ ] | [ ] | [ X ] | [ ] | d GR | |
| [ ] | [ ] | [ ] | [ ] | | |
| [ ] | [ ] | [ ] | [ ] | #2 | |

REMARKS
AH

#3

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE ABOVE WAS TESTED BY ME.

CERTIFICATION - I hereby certify that the foregoing is a true and accurate copy of the original made by me. False statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law.

NASSER, S.

# Exhibit "A"



THE POLICE — COMMISSIONER
CITY OF NEW YORK

November 26, 1996

Mr. Paul A. Crotty
Corporation Counsel
New York City Law Department
100 Church Street
New York, New York  10007

Dear Mr. Crotty:

Pursuant to Section 3-06 of the Procurement Policy Board's Rules and Section 315 of the City Charter, the Police Department respectfully requests that an Emergency Declaration be approved for a construction contract to effect more than $10 million in modifications to the new Police Laboratory facility at 150-14 Jamaica Avenue, Jamaica, New York. An expedited delivery of these modifications is essential to meeting the anticipated imposition of stringent Laboratory accreditation criteria by the New York State Commission on Forensic Science.  Inasmuch as the Commission has indicated to the New York City Police Department that the American Society of Crime Lab Directors (ASCLD) laboratory accreditation standard are <u>extremely</u> likely to be adopted as the Commission's own accreditation standards in January 1, 97 the Police Department anticipates that it will have the burden of satisfying the mandate of Article 49B of the New York State Executive Law which will require that all forensic laboratories in New York State be accredited by the Commission on or before July 1, 1997, unless a 6 month hardship extension, which must be applied for before this date, is approved. Even assuming the approval of the hardship extension, the Police Department will have to meet <u>all</u> accreditation criteria by January 1, 1998.

Construction of this facility under contracts competitively awarded in 1992 is essentially complete as of this date; the very design of the renovated building was, however, recently modified significantly in order to ensure that the facility will comply with the Commission's accreditation criteria. Construction, as dictated by the recommended design changes, must therefore proceed without undue delay in order to meet the Commission's accreditation deadline of July 1, 1997.  It is the legal opinion of the Police Department's attorneys that should the new Police Laboratory/Ballistics

( 2 )

Squad facility not meet the Commission's accreditation dead-
line of July 1, 1997, the NYPD may be precluded by State Law
from operating its Laboratory and thereby be prevented from
analyzing and authoritatively presenting forensic/ballistic
evidence in Court.

Should the Police Department be prevented from operating
its Laboratory facility or permit a condition to exist
wherein the admissibility or reliability of the NYPD
forensic/ballistics examiners' analyses were challenged on
the basis of non-accreditation of the Laboratory facility,
the public safety of the general citizenry would be directly
at risk. This risk to the public safety of our citizens
would be a direct function of the release of arrestees under
provisions of Articles 180.80 and 170.70 of the New York
State Criminal Procedure Law for failure to provide for
timely prosecution due to inability on the part of the Police
Department to provide for analysis of evidentiary matter in
an expeditious manner. The New York City Police Laboratory
and Ballistics Squad are the largest forensic examination
units of their kind in the United States. During 1995, the
Police Laboratory analyzed 66,668 controlled substance
"cases", 820,243 controlled substance "items" and 4,478
non-controlled substance "cases". The Ballistics Squad exam-
ined 14,040 "cases". It is believed that these two units
analyzed more forensic evidence than did all of the other Po-
lice Laboratories in New York State taken cumulatively. It
is the staggering volume of this caseload that makes
out-sourcing of the analyses of the Police Department's fo-
rensic evidentiary matter highly problematic. It is the
Department's belief, having queried reputable local laborato-
ries in the private sector, that no private laboratory or
consortium of such laboratories could deliver the analytical
services necessary to meet the demands of Articles 180.80 and
170.70 of the NYSCPL. It is also the opinion of the Police
Department that significant difficulties are likely to accrue
to defending chain-of-custody requirements for evidentiary
matter that has left the Police Department's custody for
analysis by private entrepreneurs.

The existing Laboratory facility, located at 235 East
20th Street, Manhattan, is inadequate to meet the demands of
both the Police Department and the accreditation criteria of
the Executive Law. Completed in 1964, the existing (old)
laboratory facility pre-dates computerization and the recent
increased hiring of Laboratory personnel. It is undersized
and out-of-date for current NYPD analytical standards. The
size and configuration of workspaces, the double tours for
analysts, and the ever increasing demand for services
throughout the City require immediate action with respect to
producing an ASCI" accreditable New Laboratory.

partment of Design and Construction officials every possible scenario for accommodating the necessary construction modifications to the new Jamaica Laboratory facility.   Under no circumstance is it possible to effect the required modifications to meet ASCLD accreditation criteria with non-emergency procurement protocols. Standard procurement procedures will allow for a marginal accommodation of ASCLD accreditation criteria no earlier than January, 2000.   Acquisition of construction services under emergency protocols will permit execution of construction modifications on or before January 1, 1998.   As stated previously, the New York State Commission on Forensic Science, having been apprised of the NYPD's difficult position in this matter, has indicated that the Police Department may submit a "Special Hardship Application" to the Commission prior to July 1, 1997 in order to postpone the accreditation deadline for six (6) months until January 1, 1998.   To receive this deadline extension, the NYPD must clearly be able to demonstrate its "good faith progress" toward accreditation by the January 1, 1998 extended deadline. Based on the above facts, the Department requests approval to contract on an emergency basis for construction services necessary to modify the Jamaica Laboratory Facility so as to meet the base requirements of the NYS Executive Law and the NYS Commission on Forensic Science with respect to ASCLD accreditation.

Thank you for your assistance in this matter.   Should you require any further information, please contact Deputy Inspector John Colgan at (212) 374-7650.

Sincerely,

Howard Safir
POLICE COMMISSIONER

I hereby acknowledge receipt of this Declaration of Emergency on 11/26/96 and concur that the facts set forth constitute an emergency within the meaning of Section 21b of the New York City Charter.

_____
Acting Corporation Counsel
11/26/96

**SR 300**

8

# NYPD's new crime lab fails major inspection

**By JOHN MARZULLI**
Daily News Staff Writer

The NYPD's new $33 million crime laboratory has flunked a crucial inspection, with seven police chemists unable to identify heroin crystals in a drug sample, The Daily News has learned.

The failure is the latest embarrassment at the Jamaica, Queens, facility, built after the 1995 O.J. Simpson trial put a critical spotlight on the way police handle evidence. A computer system is still not operable a year after the lab opened.

While officials are confident the problems will be fixed, the failure puts the lab at risk of being denied the accreditation required to receive special certification in the state. Failure to receive accreditation would require repeated retesting until the facility passes, officials said.

A team of inspectors from the American Society of Crime Lab Directors visited the gleaming facility in October and found several serious lapses, sources said.

Most serious was the seven police chemists who were unable to identify heroin crystals in a drug sample. There was also deficiencies in recordkeeping, according to a source familiar with the inspection. "A high school chemistry student should be able to identify heroin molecules," the source said.

"There are about 180 chemists at the lab who test drugs and forensic evidence like blood, fibers and body fluids retrieved from crime scenes.

Work continues at the lab despite the poor showing in the audit, and no criminal investigations are subjected to inspections to determine whether the facility meets management, operations, procedures, personnel, security and safety standards.

Robert Keaton, a board member of the lab directors' society, confirmed the NYPD lab does not have accreditation and that

She said the chemists who failed to identify the heroin are off active cases.

The $33 million price tag was supposed to buy a laboratory whose standards could not be challenged the way the Los Angeles Police Department's lab was during the Simpson trial.

After the trial, in which the LAPD lab was slammed for its handling of critical evidence, New York State lawmakers made it mandatory that crime labs here get accredited by the American Society of Crime Lab Directors, a nonprofit group.

Crime labs seeking the stamp of approval are subjected to inspections to determine whether the facility meets management, operations, procedures, personnel, security and safety standards.

to inspectors "visited there to conduct an audit. . . ."

He declined to comment on what inspection found. "What we do is confidential, and we cannot discuss the content of any of our inspections, Keaton said.

Inspector Michael Collins, an NYPD spokesman, said the NYPD received a "draft report from the society that the lab officials will have a chance to respond to. He denied the lab "failed" inspection but refused to comment on the findings.

"Another source said the several-day inspection is "very intense. About 200 crime labs nationwide have passed muster with the society.

"No one truly fails unless they choose not to do anything about the problems," the source said.

The NYPD lab, in a heavily fortified 84,000-square-foot building, also houses the crime scene unit and the ballistics section.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

STEVEN BROWN,
EDWARD GREEN,

Defendants.

PEOPLE'S VOLUNTARY
DISCLOSURE FORM

Indictment No.  05643/2007

---

    The People of the State of New York hereby voluntarily disclose to the defendants the following factual information pertaining to the above-captioned case:

A.    **BILL OF PARTICULARS**

1.    **OCCURRENCE**

| | |
|---|---|
| Date: | November 1, 2007 |
| App. Time: | 5:20pm |
| Place: | 451 Lenox Avenue |

2.    **ARREST**

| | |
|---|---|
| Date: | November 1, 2007 |
| App. Time: | 5:20pm |
| Place: | 451 Lenox Avenue |

B.    **NOTICES**

1.    **STATEMENTS**

☐ If checked, notice is hereby served, pursuant to CPL §710.30(1)(a), that the People intend to offer at trial evidence of a statement made by defendants to a public servant. *(Where a statement has been video taped, counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time for viewing the tape or should provide a blank tape for copying.)*

2.     IDENTIFICATION

☐ If checked, notice is hereby served, pursuant to CPL §710.30(1)(b), that the People intend to offer at trial testimony regarding an observation of defendants either at the time or place of the commission of the offense or upon some other occasion relevant to the indictment, to be given by a witness who has previously identified defendant.

C.     DISCOVERY

1.     ADDITIONAL STATEMENTS

☐ If checked, the People hereby disclose written, oral or recorded statements of a defendant or of a co-defendant to be jointly tried, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him, and which statements are not given in section B(1) above. C.P.L. §240.20(1)(a).

2.     GRAND JURY TESTIMONY

☐ If checked, defendants or a co-defendant to be tried jointly testified before the Grand Jury relating to this criminal action. C.P.L. §240.20(1)(b). *Such testimony is available upon payment of a stenographic fee.*

3.     SCIENTIFIC AND MEDICAL REPORTS

☒ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical or mental examination or scientific test or experiment, relating to this criminal action, which were made by, or at the request or direction of a public servant engaged in law enforcement, or by a person whom the People intend to call as a witness of a trial, or which the People intend to introduce at trial. C.P.L. §240.20(1)(c).

|  | Already Served | Attached | Will Be Provided |
|---|---|---|---|
| Narcotic Lab Report | ☐ | ☒ | ☐ |

4.     PHOTOGRAPHS AND DRAWINGS

☒ If checked, there exists photographs or drawings relating to this criminal action which were made or completed by a public servant engaged in law enforcement, or which were made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. C.P.L. §240.20(1)(d). *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to examine this material.)*

**SR 304**

5.   INSPECTION OF PROPERTY

⊠ If checked, there exist photographs, photocopies or other reproductions made by or at the direction of a police officer, peace officer or prosecutor of property prior to its release pursuant to the provisions of Penal Law Section 450.10, irrespective of whether the People intend to introduce at trial the property or the photograph, photocopy or other reproduction. C.P.L. §240.20(1)(e). *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to examine this property.)*

6.   OTHER PROPERTY

⊠ If checked, there exists other property obtained from the defendants, or a co-defendant to be tried jointly, C.P.L. §240.20(1)(f), or from another source. *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to examine this property.)*

   a.   Please see attached vouchers

7.   TAPES AND ELECTRONIC RECORDINGS

⊠ If checked, there exist tapes or other electronic recordings which the People intend to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction. C.P.L. §240.20(1)(g). *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to listen to the tapes or provide a blank tape for copying.)*

8.   BRADY MATERIAL

☐ If checked, there is material appended which the People are required to turn over pursuant to the United States or the New York State Constitution. The People are aware of their continuing obligation to disclose material exculpatory information to defendants and intend to satisfy that obligation as required by law. C.P.L. §240.20(1)(h).

9.   COMPUTER OFFENSES

☐ If checked, discovery is hereby served pursuant to C.P.L. §240.20(1)(j) of the time, place and manner of notice given pursuant to Penal Law §156.00(6), which governs offenses for Unauthorized Use of a Computer (Penal Law §156.05) and Computer Trespass (Penal Law §156.10).

3

**SR 305**

10.    POLICE O._..CERS INVOLVED

The following are some of the officers who were involved in the arrest or police investigation.

| Name | Shield | Command |
|---|---|---|
| Anthony Romero | 05726 | Narcotics Boro Manhattan North |

11.    SEARCH WARRANTS

☒ If checked, a search warrant was executed during the investigation of this case.

D.    DEMAND FOR NOTICE OF ALIBI

Pursuant to CPL §250.20, the People hereby demand that defendant supply the District Attorney with (a) the place or places where the defendant claims to have been at the time of the commission of the crime(s) and (b) the names, residential addresses, places of employment and addresses thereof of every alibi witness upon whom defendant intends to rely to establish his presence elsewhere than at the scene of the crime at the time of its commission. Within a reasonable time after the receipt of the information specified above, the District Attorney will submit a list of any rebuttal witnesses, their addresses, and employers.

E.    RECIPROCAL DISCOVERY

Pursuant to CPL §240.30(1), the People hereby demand that defendant supply the District Attorney with (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce such report or document at trial, or if defendant has filed a notice of intent to proffer psychiatric evidence and such report or document which relates thereto or if such report or document was made by a person other than defendant, whom defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

4

**SR 306**

NOTE: Any defense _otion or request addressed to the above- _ .ioned case should be directed to the attention of the Assistant District Attorney named below, who is assigned to this case.

Dated:   New York, New York
         November 30, 2007

                                        Robert M. Morgenthau
                                        District Attorney
                                        One Hogan Place
                                        New York, NY 10013

By:      Jason Berland
         Assistant District Attorney
         335-9581

5

**SR 307**

**SUBSTANCE ANALYSIS REPORT**

REPORT CATEGORY: Main

SECTION LABORATORY NO.: 07-CSAS-118031

| INVESTIGATING/ARRESTING OFFICER (print) | | TAX REG. No. | COMMAND | PRECINCT | Prop. Clk. Inv. No. |
|---|---|---|---|---|---|
| Rank | Name (Surname, First, M.I.) | 898422 | 544 | PBMN -NBMN | N932912 |
| DETECTIVE 2ND GRADE | ROMERO, ANTHONY | | | | |

DATE RECEIVED (month / day / year) Nov-02-2007  1:07 am

DATE OF REPORT (month / day / year) Nov-07-2007  12:54 pm

EVIDENCE PRESENT AS ITEMIZED ON VOUCHER   [X] YES   [ ] NO (See Remarks)

DEFENDANT(S)

GREEN, EDWARD

BROWN, STEVEN    Age 38 Years old

BUY OPERATION NO.(S)

RESULTS OF ANALYSIS

| Item(s) # | Quantity | Description | Amount | |
|---|---|---|---|---|
| 1 | 1 | Bag(s) | Purity: 78.0 % Net Weight: 126 gram(s) + 104.0 mg | |
| 2(1) | 1 | Bag(s) | Purity: 64.6 % Net Weight: 125 gram(s) + 40.0 mg | Cocaine |
| 2(2) | 1 | Bag(s) | Purity: 65.1 % Net Weight: 125 gram(s) + 3.0 mg | Cocaine |
| 3 | 1 | Bag(s) | Net Weight: 112 gram(s) + 309.0 mg | Cocaine |
| 4A | 1 | Bag(s) | Net Weight: 13 gram(s) + 584.0 mg | Cocaine |
| 4B | 2 | Bag(s) | Net Weight: 27 gram(s) + 168.0 mg | Not Analyzed |
| 5A | 1 | Bag(s) | Net Weight: 411.0 mg | Cocaine |
| 5B | 39 | Bag(s) | Net Weight: 16 gram(s) + 29.0 mg | Not Analyzed |
| 6A | 1 | Bag(s) | Net Weight: 3 gram(s) + 12.0 mg | Cocaine |
| 6B | 2 | Bag(s) | Net Weight: 6 gram(s) + 24.0 mg | Not Analyzed |
| 7A | 1 | Bag(s) | Net Weight: 690.0 mg | Cocaine |
| 7B | 9 | Bag(s) | Net Weight: 6 gram(s) + 210.0 mg | Not Analyzed |
| 8A | 1 | Bag(s) | Net Weight: 636.0 mg | Cocaine |
| 8B | 9 | Bag(s) | Net Weight: 5 gram(s) + 724.0 mg | Not Analyzed |

CERTIFICATION - I hereby certify that I tested the above described substance(s) and that this report is a true and full copy of the original report made by me. False statements made herein are punishable as a Class "A" misdemeanor pursuant to section 210.45 of the Penal Law.

Chemist Name (Print / Type) AVIVA LIEBERMAN       Signature

Page 1 of 2

NOV-07-2007  13:20   NYPU LAB

**SR 308**

ANALYSIS REPORT

REPORT CATEGORY: Main

SECTION LABORATORY NO.: 

07-CSAS-118031

| ARRESTING OFFICER (rank) | TAX REG. No. | COMMAND | PRECINCT | Prop. Clk. Inv. No. |
|---|---|---|---|---|
| Name (Surname, First, M.I.) ROMERO, ANTHONY | 896422 | 544 | PBMN -NBMN | N932912 |

GRADE

DATE OF REPORT (month / day / year)
Nov-07-2007 12:34 pm

RECEIVED (month / day / year

:07 am

EVIDENCE PRESENT AS ITEMIZED ON VOUCHER          [X] YES          [ ] NC (See Remarks)

DEFENDANT(S)

GREEN, EDWARD
BROWN, STEVEN                                    Age : 38 Years old

BUY OPERATION NO.(S)

RESULTS OF ANALYSIS

| Item(s) # | Quantity | Description | Amount | | Identification |
|---|---|---|---|---|---|

SUMMARY OF ITEMS
Item(s) #

1, 2(1), 2(2), 3, 4A, 5A, 6A, 7   Cocaine          Net Weight: 506 gram(s) + 789.0 mg
A: 8A

REMARKS

28.349 grams ~ 1 ounce.
In Items #1, 2(1), 2(2), 3, 4A, 5A, 6A, 7A, and 8A, the aggregate weight of cocaine is equal to 17.876 ounces.
GC/FID/MS performed by J. Bishara.

LIST OF VOUCHERS (if multiple)

N/A

Attn: Richard
ELECTRONIC TRANSMITTAL MEMORANDUM
This Laboratory Report consists
of ___ pages. It is hereby certified
that it is a true and unaltered copy.
Transmitted and Certified by:
_____ 11/7/07
RECEIPT VERIFICATION
It is hereby certified that this report
and electronic transmittal memorandum
were received and certified by: _____

R. B. Ingliam

CERTIFICATION - I hereby certify that I tested the above described substance(s) and that this report is a true and full copy of the original report made by me. False
statements made herein are punishable as a Class "A" misdemeanor pursuant to section 210.45 of the Penal Law

Chemist Name (Print / Type) AVIVA LIEBERMAN                          Signature

Page 2 of 2

**SR 309**



| | | | REPORT CATEGORY: | Main |
|---|---|---|---|---|
| | | | SECTION LABORATOR ___ O.: | |

07-CSAS-118901

| INVESTIGATING/ARRESTING OFFICER (print) | | TAX REG. No. | COMMAND | PRECINCT | Prop. Clk. Inv. No. |
|---|---|---|---|---|---|
| Rank | Name (Surname, First, M.I.) | | | | |
| DETECTIVE 2ND GRADE | ROMERO, ANTHONY | 898422 | 544 | PBMN -NBMN | N932910 |
| DATE RECEIVED (month / day / year) | | | DATE OF REPORT (month / day / year) | | |
| Nov-03-2007  3:43 am | | | Nov-03-2007  5:32 pm | | |

EVIDENCE PRESENT AS ITEMIZED ON VOUCHER          [X] YES          [ ] NO (See Remarks)

DEFENDANT(S)

BROWN, STEVEN                           Age : 38 Years old

GREEN, EDWARD

BUY OPERATION NO.(S)

RESULTS OF ANALYSIS

| Item(s) # | Quantity | Description | Amount | Identification |
|---|---|---|---|---|
| 1 | 1 | Bag(s) | Net Weight: 696.0 mg | Cocaine |
| 2A | 1 | Bag(s) | Net Weight: 707.0 mg | Cocaine |
| 2B | 8 | Bag(s) | Net Weight: 5 gram(s) + 656.0 mg | Not Analyzed |
| 4A | 1 | Bag(s) | Net Weight: 372.0 mg | Cocaine |
| 4B | 5 | Bag(s) | Net Weight: 1 gram(s) + 860.0 mg | Not Analyzed |
| 5 | 1 | Bag(s) | Net Weight: 2 gram(s) + 957.0 mg | Cocaine |
| 6 | 1 | Bag(s) | Net Weight: 2 gram(s) + 717.0 mg | Marihuana |

SUMMARY OF ITEMS

| Item(s) # | | | |
|---|---|---|---|
| 1, 2A, 4A, 5 | Cocaine | Net Weight: 4 gram(s) + 732.0 mg | |
| 6 | Marihuana | Net Weight: 2 gram(s) + 717.0 mg | |

REMARKS

28.349 grams is equal to 1 ounce.

In Item #1,2A,4A,5   the aggregate weight of cocaine  is equal to  0.166  ounces. (Greater than 1/8 ounce)

In Item #6,   the aggregate weight of Marihuana  is equal to 0.095  ounces.

LIST OF VOUCHERS (if multiple)

N/A

AR
GJ 11/5/07

CERTIFICATION - I hereby certify that I tested the above described substance(s) and that this report is a true and full copy of the original report made by me.  False statements made herein are punishable as a Class "A" misdemeanor pursuant to section 210.45 of the Penal Law.

Chemist Name (Print / Type)  GAJENDRA JOSHI                          |  Signature

Page 1 of 1

**SR 310**

Check only one of the below categories.                 N932909

☐ ARREST EVIDENCE        ☐ DECEDENT'S PROPERTY        ☐ FOUND PROPERTY

☐ INVESTIGATORY          ☐ PEDDLER PROPERTY           ☒ OTHER Forfeiture

DATE PREPARED:  11/01/2007                    YR  2007   PCT NBMN

| Arresting/Assigned Officer | | Rank | Shield No. | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| Romero, T | | Det | 5726 | 898422 | NBMN |

| Prisoner's Last Name | First | Age | Address (Include City, State, Zip Code, Apt.) | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|
| Brown, Steven | | 38 | 75 West End Ave, NY, NY 10037 | 1 | |

| Date of Arrest | Arrest No. | Charge/Offense Under Investigation | Fel. | Misd. | J.D. | Viol. | Complaint No. |
|---|---|---|---|---|---|---|---|
| 11/01/07 | M07694764H | CPCS | XX ☐ | ☐ | ☐ | ☐ | 070359 |

A/O

| Finder of Property | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| See Deft | | |

| Owner's Name (See Instructions) | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| | | |

| Complainant's Name | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| PSNY | | |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | | (For Property Clerk's Use Only) DISPOSITION    AND DATE |
|---|---|---|---|---|---|
| 1 2 | 5 | One hundred dollar bill | 500 | 00 | |
| 2 | 18 | Twenty dollar bill | 360 | 00 | |
| 3 | 5 | Ten dollar bill | 50 | 00 | |
| 4 | 8 | Five dollar bill | 40 | 00 | |
| 5 | 15 | One dollar bill | 15 | 00 | |
| xxxxxxxxxxxxxxxxx | xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx | | xxxxxxxxxx | xx | xxxxxxxxxxxxxxxxxxxxxxxx |
| | | The above is a complete list of property to be vouchered. | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | TOTAL | $965 | 00 | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes  ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).*
The above property is to be vouchered for forfeiture.  Property was recovered from inside 2nd floor search warrant location inside a wooden box with narco. Bank bag # 6139948

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|
| Sgt | 915132 | | |

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932909

DISTRIBUTION: WHITE - Prop. Clk. File    SECOND WHITE - Inventory Unit Copy    YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy    GREEN - Evidence Release/Investigation Copy    PINK - Prisoner/Finder Receipt Copy

Check only one of the below categories.          N932910

| | | |
|---|---|---|
| xx ☒ ARREST EVIDENCE | ☐ DECENDENT'S PROPERTY | ☐ FOUND PROPERTY |
| ☐ INVESTIGATORY | ☐ PEDDLER PROPERTY | ☐ OTHER _____ |

DATE PREPARED: NOVEMBER 01        YR 01    PCT. NBMN/MCU

| Arresting/Assigned Officer | Rank | Shield No. | Tax Reg. No. | Command |
|---|---|---|---|---|
| ROMERO, A. | DET | 5726 | 898422 | NBMN/MCU |

| Prisoner's Last Name | First | Age | Address (Include City, State, Zip Code, Apt.) | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|
| BROWNM, STEEEN | | 38 | 75 WEST END AVE NY NY #C10N | | |

| Date of Arrest | Arrest No. | Charge/Offense Under Investigation | Fel. | Misd. | J.D. | Viol. | Complaint No. |
|---|---|---|---|---|---|---|---|
| 01/01/07 | Mo769476AH | CPCS CPM | X☒ | ☐ | ☐ | ☐ | |

| Finder of Property | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| A/R DET SALVADOR | | |

| Owner's Name (See Instructions) | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| DEFT | | |

| Complainant's Name | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| PSNY | | |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | (For Property Clerk's Use Only) DISPOSITION | AND DATE |
|---|---|---|---|---|---|
| 01 | 02 | CLEAR HEAT SEALED PLASTIC BAG CONT COCAINE F/T=POS | | | |
| 02 | 09 | clear heat sealed bags of cocaine | | | |
| 01 | 01 | large clear plastic bag which contained items 1,2 | | | |
| 04 | 06 | clear heat sealed plastic bags containing cocaine in ziplock bag | | | |
| 05 | 01 | heat sealed ziplock bag containing to large peices of cocaine | | | |
| 06 | 01 | ziplock bags containing marijuana f/t=pos | | | |

THE ABOVE IS A COMPLETE LISTING OF ALL PROPERTY VOUCHERED          TOTAL

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes ☐ Refused

| R.T.O. | Owner's/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).
THE ABOVE NARCOTICS WERE RECOVERED FROM APT #1 AT 451 LENOX AVENUE. ITEMS 1,2,3,4,5 RECOVERED FROM BROWN WOODEN BOX IN KITCHEN AREA. ITEM #6 RECOVERED FROM TABLE NEXT TO KITCHEN. H512651   E754871
DEFT #2 GREEN, EDWARD M07694771J

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|
| [signature] | 7/5/32 | [signature] | |

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932910

DISTRIBUTION: WHITE - Prop. Clk. File     SECOND WHITE - Inventory Unit Copy     YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy     GREEN - Evidence Release/Investigation Copy     PINK - Prisoner/Finder Receipt Copy

SR 313

Check only one of the below categories.  **N932911**

☐ ARREST EVIDENCE   ☐ DECEDENT'S PROPERTY   ☐ FOUND PROPERTY
☐ INVESTIGATORY   ☐ PEDDLER PROPERTY   ☐ OTHER _____

DATE PREPARED: 11/01/07   YR 2007   PCT nbmn

| Arresting/Assigned Officer | Rank | Shield No. | Tax Reg. No. | Command |
|---|---|---|---|---|
| ROMERO   ANTHONY | DET | 5726 | 898422 | NBMN |

| Prisoner's Last Name | First | Age | Address | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|
| BROWN   STEVEN | | 38 | 75 WEST END AVE NEW YORK NY C10N | 1 | |

| Date of Arrest | Arrest No. | Charge/Offense Under Investigation | Fel. | Misd. | J.D. | Viol. | Complaint No. |
|---|---|---|---|---|---|---|---|
| 11/01/07 | M07694764 | 220.06 CPCS 5TH INTENT TO SELL | ☒ | ☐ | ☐ | ☐ | |

| Finder of Property | Address | Telephone No. |
|---|---|---|
| A/O | N/A | N/A |

| Owner's Name | Address | Telephone No. |
|---|---|---|
| BROWN   STEVEN | 75 WEST END AVE NEW YORK NY C10N | N/A |

| Complainant's Name | Address | Telephone No. |
|---|---|---|
| P.S.N.Y. | N/A | N/A |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE | DISPOSITION AND DATE |
|---|---|---|---|---|
| 1 | 2 | WOODEN BOXES | | |
| 2 | 1 | BLACK SHOLDER HOLSTER FOR FIREARM | | |
| 3 | 3 | PACKAGES CONTAINING NARCOTICS PARAPHERNALIA "RED APPLE 12510" | | |
| XXXXXXXXXXXXXXX | | ABOVE IS A COMPLETE LIST OF PROPERTY TO BE VOUCHERED. | | |

TOTAL

**R.T.O.**   Owner/Claimant's Signature   Date   Time   Property Clerk Storage Location

REMARKS: ABOVE ITEMS WERE RECOVERED FROM 451 LENOX AVE APT 1 UNDER SEARCH WARRANT 491. SEC ENV# C418051

Tax No. 715172

**N932911**

DISTRIBUTION: WHITE - Prop. Clk. File   SECOND WHITE - Inventory Unit Copy   YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy   GREEN - Evidence Release/Investigation Copy   PINK - Prisoner/Finder Receipt Copy

**SR 314**

N932912

Check only one of the below categories.

☒ ARREST EVIDENCE          ☐ DECEDENT'S PROPERTY          ☐ FOUND PROPERTY
☐ INVESTIGATORY            ☐ PEDDLER PROPERTY             ☐ OTHER _____

DATE PREPARED: **11/01**   YR **2007**   PCT. **NBMN**

| Arresting/Assigned Officer | | Rank | Shield No. | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| Romero, Anthony | | Det. | 898426 | 898422 | NBMN |

| Prisoner's Last Name | First | Age | Address (Include City, State, Zip Code, Apt.) | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|
| Brown, Steven + 1 | | 38 | 75 West End Avenue #C10N NYC, NY | 2 | |

| Date of Arrest | Arrest No. | Charge/Offense Under Investigation | Fel. | Misd. | J.D. | Viol. | Complaint No. |
|---|---|---|---|---|---|---|---|
| 11/01/2007 | M07694764 | C.P.C.S. 1* | XXX | ☐ | ☐ | ☐ | 070359 |

| Finder of Property | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| Det. Hernandez, Alfred   NBMN | | |

| Owner's Name (See instructions) | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| Brown, Steven + 1 | | |

| Complainant's Name | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| P.S.N.Y. | | |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | (For Property Clerk's Use Only) DISPOSITION AND DATE |
|---|---|---|---|---|
| 1 | 1 | Clear plastic bag containing cocaine (Field Tested Positive) | | |
| 2 | 2 | Clear plastic bags containing alleged cocaine | | |
| 3 | 1 | Clear plastic bag containing alleged cocaine | | |
| 4 | 1 | Clear plastic bag containing 3 clear plastic bags cont. alleged cocaine | | |
| 5 | 4 | Clear ziplock bags each containing 10 small sealed clear plastic bags cont. alleged cocaine | | |
| 6 | 1 | Clear plastic bag containing 3 ziplock bags containing alleged cocaine | | |
| 7 | 1 | Clear plastic bag containing 10 small sealed clear plastic bags cont. alleged cocaine | | |
| 8 | 1 | Clear plastic bag containing 10 small sealed CPB's cont. alleged cocaine | | |

ABOVE IS A COMPLETE LIST OF VOUCHERED PROPERTY

TOTAL

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes   ☐ Refused

| **R.T.O.** | Owner's/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).*

Items # 1 & #2 were recovered from a white baby gift bag which was recovered in a grey safe in the 4th fl apt. Items# 3 - #8 were recovered from a cigar box in a white safe in the 4th floor apartment. Field Tested # 4115. SE#N872455.....
C-Deft - Edward Green - #M07694771

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Bore Storage No. |
|---|---|---|---|
| 91 175 52 | | | |

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932912

DISTRIBUTION: WHITE - Prop. Clk. File        SECOND WHITE - Inventory Unit Copy        YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy        GREEN - Evidence Release/Investigation Copy        PINK - Prisoner/Finder Receipt Copy

N932913

Check only one of the below categories.

☒ ARREST EVIDENCE        ☐ DECEDENT'S PROPERTY         ☐ FOUND PROPERTY
☐ INVESTIGATORY          ☐ PEDDLER PROPERTY            ☐ OTHER _____

DATE PREPARED:   11/1/07   YR 2007   PCT. MNND

| Arresting/Assigned Officer ROMERO, ANTHONY | Rank DET | Shield No. 5726 | Tax Reg. No. 898422 | Command NBMN |
|---|---|---|---|---|

| Prisoner's Last Name BROWN | First STEVEN | Age 18 | Address (Include City, State, Zip Code, Apt.) 75 WEST END AVE NY, NY 10037 | No. of Prisoners 2 | Acc./Aided # |
|---|---|---|---|---|---|

| Date of Arrest 11/1/07 | Arrest No. N07684764 | Charge/Offense Under Investigation CPCS A1 | Fel. ☒ | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. 070359 |
|---|---|---|---|---|---|---|---|

| Finder of Property DET HERNANDEZ | Address (Include City, State, Zip Code, Apt.) N/A | Telephone No. |
|---|---|---|

| Owner's Name (See Instructions) STEVEN BROWN | Address (Include City, State, Zip Code, Apt.) 75 WEST END ave   NY, NY 10037 | Telephone No. |
|---|---|---|

| Complainant's Name PSNY | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | (For Property Clerk's Use Only) DISPOSITION | AND DATE |
|---|---|---|---|---|---|
| 1 | 2 | LOCK | | | |
| 2 | 1 | KEY RING WITH NINE KEYS | | | |
| XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | | |
| | | | | | |
| | | ABOVE IS A COMPLETE LIST OF ITEMS VOUCHERED. | | | |
| | | SEC ENV # e754869 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL. | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued  ☐ Yes  ☐ Refused

| R.T.O. | Owner's/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: Briefly explain why the property was taken into custody (see instructions on BACK of BLUE COPY).

ABOVE LOCK REMOVED FROM THE DOOR OF THE S7W APT. AAT 451 LENOX AVE 4th FL
DURING EXECUTION OF SEARCH WARRANT.  ALSO ARRESTED EDWARD GREEN.

| Rank and Signature of Desk Officer | Tax No. 715132 | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932913

DISTRIBUTION: WHITE - Prop. Clk. File    SECOND WHITE - Inventory Unit Copy    YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy    GREEN - Evidence Release/Investigation Copy    PINK - Prisoner/Finder Receipt Copy

SR 316

N932914

Check only one of the below categories.

☐ ARREST EVIDENCE   ☐ DECEDENT'S PROPERTY   ☐ FOUND PROPERTY
☐ INVESTIGATORY   ☐ PEDDLER PROPERTY   xx☐ OTHER Forfeiture

DATE PREPARED: 11/01   YR 2007   PCT NBMN

| Arresting/Assigned Officer Romero, T | | Rank Det | Shield No. 5726 | Tax Reg. No. 898422 | Command NBMN |
|---|---|---|---|---|---|

| Prisoner's Last Name Green, Edward | First | Age 58 | Address (Include City, State, Zip Code, Apt.) 1133 Ogden Ave, Bx, NY 14652 | No. of Prisoners 1 | Acc./Aided # |
|---|---|---|---|---|---|

| Date of Arrest 11/01/07 | Arrest No. M07694771J | Charge/Offense Under Investigation CPCS | Fel. ☒ | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. 070359 |
|---|---|---|---|---|---|---|---|

| Finder of Property Det. Hernandez | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|

| Owner's Name (See Instructions) See Deft. | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|

| Complainant's Name PSNY | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|
| 1 | 1 | One hundred dollar bill | 200 00 | |
| 2 | 38 | Twenty dollar bill | 760 00 | |
| 3 | 11 | Ten dollar bill | 110 00 | |
| 4 | 9 | Five dollar bill | 45 00 | |
| 5 | 2 | Two dollar bill | 4 00 | |
| 6 | 14 | One dollar bill | 14 00 | |
| xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx | | | | |
| | | The above is a complete list of property to be vouchered. | | |
| | | | | |
| | | | | |
| | | | | |
| | | TOTAL | $1133 00 | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

| | Pink Receipt Copy of Voucher Issued ☐ Yes ☐ Refused |
|---|---|
| R.T.O. | Owner's/Claimant's Signature   Date   Time | Property Clerk Storage Location |

REMARKS: Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).
The above property is to be vouchered for forfeiture. Property was recovered f:
from inside 4th floor search warrant location inside a white safe with narco.
Bank bag # 6139947. Asset forfeiture #

| Rank and Signature of Desk Officer | Tax No. 915132 | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932914

DISTRIBUTION: WHITE - Prop. Clk. File   SECOND WHITE - Inventory Unit Copy   YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy   GREEN - Evidence Release/Investigation Copy   PINK - Prisoner/Finder Receipt Copy

SR 317

Check only one of the below categories.

N932915

- ☐ ARREST EVIDENCE
- ☐ INVESTIGATORY
- ☐ DECEDENT'S PROPERTY
- ☐ PEDDLER PROPERTY
- ☐ FOUND PROPERTY
- ☐ OTHER _____

DATE PREPARED: _____   YR ___   PCT. ___

| Arresting/Assigned Officer ROMERO, A. | | Rank DET | Shield No. 5726 | Tax Reg. No. 898422 | Command NB2N |
|---|---|---|---|---|---|

| Prisoner's Last Name BROWN, STEVEN | First | Age 39 | Address (Include City, State, Zip Code, Apt.) 75 west end ave.nyc apt C10N 10023 | No. of Prisoners 02 | Acc./Aided # N/A |
|---|---|---|---|---|---|

| Date of Arrest 11/1/07 | Arrest No. m07694764 | Charge/Standard Order PL220.06 Investigation | Fel. ☒ | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. 07359/AH |
|---|---|---|---|---|---|---|---|

| Finder of Property DET.ROMERO, A. | Address (Include City, State, Zip Code, Apt.) N.Y.P.D. | Telephone No. N/A |
|---|---|---|

| Owner's Name (See Instructions) BROWN, STEVEN | Address (Include City, State, Zip Code, Apt.) 75 W.End Av.NYC Ap#C10N 10023 | Telephone No. N/A |
|---|---|---|

| Complainant's Name PSNY | Address (Include City, State, Zip Code, Apt.) PSNY | Telephone No. N/A |
|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|
| 01 | 01 | IMPULSE SEALERS MODEL#PFS-100 | PSE# | C418048 |
| 02 | 01 | IMPULSE SEALER MODEL# KF-100H | PSE# | C418048 |
| 03 | 01 | IMPULSE SEALER MODEL#WO-220H | PSE# | C418048 |
| 04 | 01 | SCALE MODEL:DIGIWEIGH (DIGITAL) LIGHT GRAY COLOR | | |
| 05 | 01 | SCALE MODEL:DIGIWEIGH(DW500BS) SILVER IN COLOR | | |
| 06 | 01 | SCALE MODEL: TANITA (1140) DARK BLUE IN COLOR | | |
| 07 | 01 | SCALE TYPE BRAND: OHAUS MODEL:CS2000 W/BOX PACKAGING DARK GREY IN COLOR | | |
| 08 | 01 | POCKET SCALE BRAND TYPE: DIGIWEIGH MODE DW-500BC W/BLACK CARRY CASE AND BOX PACKAGING (BLACK IN COLOR | | |
| 09 | 02 | DIGITAL SCALES PROFESSIONAL MINI MODEL:1479V W/BOX PACKAGING BLACK IN COLOR | | |
| 10 | 01 | DIGITAL SCALE BRAND TYPE : AMPUT MODEL: APTP446 BLACK IN COLOR. | | |
| | | XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX THE ABOVE IS A COMPLETED LIST OF ALL ITEMS VOUCHERED | | |
| | | TOTAL | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).*
THE ABOVE WAS RECOVERED FROM A NEW S/W EXECUTION @ 451 Lenox ave.NY,NY
THE ITEMS 04 thur 10 WERE PLACE IN PSE#C418047

| Rank and Signature of Desk Officer | Tax No. 715132 | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932915

DISTRIBUTION: WHITE - Prop. Clk. File    SECOND WHITE - Inventory Unit Copy    YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy    GREEN - Evidence Release/Investigation Copy    PINK - Prisoner/Finder Receipt Copy

N932916

*Check only one of the below categories.*

☒ ARREST EVIDENCE    ☐ DECEDENT'S PROPERTY    ☐ FOUND PROPERTY

☐ INVESTIGATORY    ☐ PEDDLER PROPERTY    ☐ OTHER _____ NBMN

DATE PREPARED: 11/01    YR 2007   PCT.

| Arresting/Assigned Officer ROMERO   ANTHONY | Rank DET | Shield No. 5726 | Tax Reg No. 898422 | Command NBMN |
|---|---|---|---|---|

| Prisoner's Last Name GREEN   First EDWARD | Age 58 | Address (Include City, State, Zip Code, Apt.) 1133 OGDEN AVE BRONX NY APT 22R | No. of Prisoners 1 | Acc./Aided # |
|---|---|---|---|---|

| Date of Arrest 11/01/07 | Arrest No. M07694771 | Charge/Offense Under Investigation P.L. 220.16 CPCS NARCO | Fel. X | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. 070359 |
|---|---|---|---|---|---|---|---|

| Finder of Property ROMERO   ANTHONY   Det. Hernandez.A | Address (Include City, State, Zip Code, Apt.) N733 | Telephone No. N/A |
|---|---|---|

| Owner's Name (See Instructions) GREEN   EDWARDS | Address (Include City, State, Zip Code, Apt.) 1133 OGDEN AVE BRONX NY APT 22A | Telephone No. N/A |
|---|---|---|

| Complainant's Name P.S.N.Y. | Address (Include City, State, Zip Code, Apt.) N/A | Telephone No. N/A |
|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|
| 1 | 3 | ZIPLOCK CONTAINING   SMALLER ZIP LOCK BAGS LABELED "RED APPLE. | | |
| 2 | 5 | LARGE ZIP LOCK BAGS STAMPED 100 BAGS 2X3 BLUE LETTERING. | | |
| 3 | 3 | BOXES WITH SANDWICH BAGS | | |
| 4 | 2 | ROLLS OF SANDWICH BAGS | | |
| 5 | 3 | BROWN BOXES WITH PLASTIC BAGGIES | | |
| 6 | 1 | PLASTIC BAG WITH ASSORTED ZIP LOCK BAGS | | |
| 7 | 2 | PHILLIES CIGAR BOX/ Dutch Masters Box | | |
| 8 | 1 | BLACK BAG WITH YELLOW LETTERING | | |
| 9 | 1 | PAPER BAG WITH HANDLE | | |
| XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | | |
| | | ABOVE   ITEMS ARE A COMPLETE LIST OF PROPERTY TO BE VOUCHERED. | | |
| | | | TOTAL | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

| | | | Pink   Receipt   Copy   of   Voucher Issued ☐ Yes ☐ Refused |
|---|---|---|---|
| R.T.O. | Owner/Claimant's   Signature   Date   Time | | Property Clerk Storage Location |

REMARKS: *Briefly explain why this property is taken into custody (see instructions on BACK of BLUE COPY).*
ABOVE ITEMS WERE RECOVERED FROM FROM WITHIN THE ABOVE APARTMENT. ABOVE PARAPHERNALIA
IS USED IN THE USES AND DISTRIBUTION OF NARCOTICS

CODEFENDANT/ STEVEN BROWN ARREST- M07694764-H

| Rank and Signature of Desk Officer | Tax No. 115132 | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932916

DISTRIBUTION: WHITE - Prop. Clk. File    SECOND WHITE - Inventory Unit Copy    YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy    GREEN - Evidence Release/Investigation Copy    PINK - Prisoner/Finder Receipt Copy

N932919

*Check only one of the below categories.*

☒ ARREST EVIDENCE  ☐ DECEDENT'S PROPERTY  ☐ FOUND PROPERTY
☐ INVESTIGATORY  ☐ PEDDLER PROPERTY  ☐ OTHER _____

DATE PREPARED: NOVEMBER 01   YR 07   PCT. NBMN/MCU

| Arresting/Assigned Officer ROMERO, A | | | Rank det | Shield No. 5726 | Tax Reg. No. 894422 | | Command NBMN/MCU |
|---|---|---|---|---|---|---|---|
| Prisoner's Last Name BROWN, STEVEN | First | Age 38 | Address (Include City, State, Zip Code, Apt.) 75 WEST END AVENUE NY C10N | | | No. of Prisoners | Acc./Aided # |

| Date of Arrest 11/01/07 | Arrest No. M07694764H | Charge/Offense Under Investigation CPCS | Address | Fel. X | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. |

Finder of Property DET HERNANDEZ, A
Owner's Name (See Instructions) DEFT
Complainant's Name PSNY

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION | AND DATE |
|---|---|---|---|---|---|
| 01 | 01 | black digital scale w/residue | | | |
| 02 | 02 | kilo raps with residue | | | |
| 03 | 04 | plastic bags w/residue | | | |
| 04 | 01 | large ziplock w/ residue | | | |
| 05 | 02 | white spoons w/ residue | | | |
| 06 | 02 | cut playing cards w/ residue | | | |
| 07 | 02 | pieces of gray plastic w/ residue | | | |
| 08 | 08 | small plastic bags w/ residue | | | |
| 09 | 01 | cigar box w/ residue | | | |

THE ABOVE IS A COMPLETE LISTING OF ALL PROPERTY VOUCHERED

TOTAL

R.T.O.

REMARKS: THE ABOVE ITEMS WERE RECOVERED FROM 451 LENOX AVENUE APT 5N 4th FLOOR C418046 . Co- Deft - Edward Green - M07694771J....

N932919

Check only one of the below categories.          N932926

☐ ARREST EVIDENCE        ☐ DECEDENT'S PROPERTY        ☐ FOUND PROPERTY
☐ INVESTIGATORY          ☐ PEDDLER PROPERTY   11/2    XX FORFIETURE
                                                      ☐ OTHER   NBMN
DATE PREPARED:                                   YR  2007      PCT.

| Arresting/Assigned Officer | ROMERO, ANTHONY | Rank DET | Shield No. 5728 | Tax No. 895422 | Command |
|---|---|---|---|---|---|

| Prisoner's Last Name BROWN | First STEVEN | Age 38 | Address (Include City, State, Zip Code, Apt.) 75 WEST END AVE NY, NY 10037 | No. of Prisoners 1 | Acc./Aided # |

| Date of Arrest 11/1/07 | Arrest No. M07894764 | Charge/Offense Under Investigation CPCS AI | Fel. XX | Misd. ☐ | J.D. ☐ | Viol. ☐ | Command 070059 |

| Finder of Property DET MCLOUGHLIN | Address (Include City, State, Zip Code, Apt.) | Telephone No. |

| Owner's Name (See Instructions) BROWN, STEVEN | Address (Include City, State, Zip Code, Apt.) S/A/A | Telephone No. |

| Complainant's Name PSNY | Address (Include City, State, Zip Code, Apt.) | Telephone No. |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | | DISPOSITION (For Property Clerk's Use Only) | AND DATE |
|---|---|---|---|---|---|---|
| 1 | 45 | TWENTY DOLLAR BILL USC | 850 | 00 | | |
| 2 | 6 | TEN DOLLAR BILL USC | 60 | 00 | | |
| 3 | 4 | FIVE DOLLAR BILL USC | 20 | 00 | | |
| 4 | 12 | ONE DOLLAR BILL USC | 12 | 00 | | |
| XXXXXXX | XXXXXX | XXXXXXXXXXXXXXXXXXXXXXXXX | XXXXXX | XX | XXXXXXXXXXXXXXXXXXXXX | |
| | | ABOVE IS A COMPLETE LIST OF ITEMS VOUCHERED. | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | TOTAL | 942 | 00 | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: Briefly explain why the property was taken into custody (see instructions on BACK of BLUE COPY).
THE ABOVE PROPERTY IS TO BE VOUCHERED FOT FORFIETUE. PROPERTY RECOVERED
FROM DEFT AT TIME OF ARREST.  BANK BAG # 7080387

| Rank and Signature of Desk Officer | Tax No. 915132 | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932926

DISTRIBUTION: WHITE - Prop. Clk. File     SECOND WHITE - Inventory Unit Copy     YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy     GREEN - Evidence Release/Investigation Copy     PINK - Prisoner/Finder Receipt Copy

Check only one of the below categories.

N932930

☐ ARREST EVIDENCE    ☐ DECEDENT'S PROPERTY    ☐ FOUND PROPERTY
☐ INVESTIGATORY    ☐ PEDDLER PROPERTY    ☒ XXX FORFEITURE

DATE PREPARED: 11/2

| Arresting/Assigned Officer | ROMERO, ANTHONY | Rank DET | Shield No. 5726 | Tax Reg. No. 898422 | Command NBMN |
|---|---|---|---|---|---|

YR 2007    PCT. NBMN

| Prisoner's Last Name | GREEN | First EDWARD | Age | Address (Include City, State, Zip Code, Apt.) 1135 OGDEN AVE BRONX, NY 14652 | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|---|

| Date of Arrest P1/2/07 | Arrest No. N07694771 | Charge/Offense Under Investigation GTCS A 1 | Fel. XX | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. 070359 |

| Finder of Property | DET McLOUGHLIN | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|---|

| Owner's Name (See Instructions) | GREEN, EDWARD | Address (Include City, State, Zip Code, Apt.) S/A/A | Telephone No. |
|---|---|---|---|

| Complainant's Name | PSNY | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | | DISPOSITION (For Property Clerk's Use Only) | AND DATE |
|---|---|---|---|---|---|---|
| 1 | 2 | ONE HUNDRED DOLLAR BILL USC | 200 | 00 | | |
| 2 | 4 | TWENTY DOLLAR BILL USC | 80 | 00 | | |
| 3 | 3 | TEN DOLLAR BILL USC | 30 | 00 | | |
| 4 | 4 | FIVE DOLLAR BILL USC | 20 | 00 | | |
| 5 | 3 | ONE DOLLAR BILL | 3 | 00 | | |
| XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX | | | XXXXXXX | | XXXXXXXXXXXXXXXXXXXX | |
| | | ABOVE IS A COMPLETE LIST OF ITEMS VOUCHERED. | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | TOTAL | $ 333 | 00 | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes  ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).

THE ABOVE IS TO BE VOUCHERED FOR FORFEITURE. PROPERTY WAS RECOVERED FROM DEFT AT TIME OF ARREST. BANK BAG #6139952

| Rank and Signature of Desk Officer | Cty. No. 113132 | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

N932930

DISTRIBUTION: WHITE - Prop. Clk. File    SECOND WHITE - Inventory Unit Copy    YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy    GREEN - Evidence Release/Investigation Copy    PINK - Prisoner/Finder Receipt Copy

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION-FIRST DEPARTMENT
PEOPLE OF THE STATE OF NEW YORK
                       'Respondent,

                  -V-

EDWARD GREEN
             Petitioner

**AFFIDAVIT IN SUPPORT
FOR AN ORDER TO SHOW
CAUSE FOR SUMMARY
JUDGMENT PURSUANT TO
SECTION 5530 OF THE CIVIL
PRATICE LAW AND RULES**

     **Indictment No. 5643/07**

**Honorable Luis A. Gonzalez, J, P.**

TO THE STATE SUPREME COURT
OF THE COUNTY OF NEW YORK

      **PLEASE TAKE NOTICE that** upon the annexed affidavit of the above named petitioner, this petitioner makes this affidavit in support of Notice of Motion to Appeal to the Appellate Division for a Certificate to Appeal pursuant to sections 460.20 of the Civil Practice Law and Rules of the State of New York, certifying that this case involves a question of Law and facts that should be reviewed by the Appellate Division, and granting leave to appeal to the Appellate Division-First Department.

      Let the New York County District Attorney's Office show cause before this Court at the Chambers of the Honorable Judge Luis A. Gonzalez, P., J. of the New York State Supreme Court, Appellate Division – First Department of the County of New York, located at 27 Madison Avenue, at 25th Street, New York 10010, Appellate Court House in the City of New York, NY on the 25 day of November 2011, why an Order should not be made and entered based upon the following grounds:

1. Granting this Petitioner request for a Certificate to Appeal pursuant to section 460.20 of the Civil Practice Law and Rules of the State of New York.

2. Vacating the Stipulation based upon the fact that: The Trial Court orally altered the stipulation to include the Chain of Custody of the Evidence.

1

**SR 323**

3.   Vacating the Judgment of Conviction entered against this Petitioner on the 15th day of September 2008.

This affidavit is submitted in support of the application of the plaintiff, Edward Green, demanding that the Office of District Attorney of the State of New York show cause: why an order should not be entered vacating the stipulation and why the plaintiffs should not be granted such other and further relief that this Court deems just and proper.

The plaintiff's pro-se petition and memorandum of law, with exhibits A - F was file with the clerk of the State Supreme Court and served upon the Respondents on or about September 22 2011.

This affirmation is executed upon the information and belief, the sources of which are the files and records maintained by Mr. Edward Green ("Mr. Green"), Pro se, Plaintiff, pertaining to petitioner's petition for a Writ of Error Coram Nobis, pursuant to section 5530(a) of the Civil Practice Law and Rules which challenges the failure of the District Attorney's Office to submit a timely reply to petitioner's petition for a Writ of Error Coram Nobis. (CPLR - C5530:1).

Petitioner's petition was filed and served upon the District Attorney's Office on September 22, 2011 as well as all persons of interest and made returnable pursuant to CPLR §2214 (b) and § 2103 (b)(2).

To date, there has been no response from the respondents nor has any stipulation been entered into to enlarge the time period to file a response to Petitioner's Writ of Error Coram Nobis. The Petitioner has not as of yet received answering papers from the District Attorney's Office as well as all persons of interest pursuant to CPLR §2214.8, 9(B).

This petitioner would be prejudiced if this Court grant's the respondents an adjournment.   Any continued delay would deny this petitioner the opportunity to have his

2

judgment reviewed in lieu of the willful attempts by the respondent's to delay responding to the rules of the Court's, CPLR §2214.8, 9(B), for as long as possible. Absent any reasonable excuse or a timely explanation of reasons for their failure to reply to Petitioner's Writ of Error Coram Nobis, renders all of the People's oppositions to the issues before this Court moot.

No hearing is required on this petition "unless" the papers submitted raise a factual dispute on a material point which must be resolved before the Court can decide the legal issue (People v. Gruden, 42 N.Y.2d 214, 215.

In the case at bar, the respondents made no substantive written response to plaintiff's Petition for a Writ of Error Coram Nobis.   Since more than 45 days have elapsed since the commencement of these proceedings, it would be incumbent upon the respondents to respond to this petition at this point.

Accordingly, if an opposing party does not file ( i ) an answer to a parties charges (ii) a petition attaching the validity of the charges (iii) a petition for an extension of time, the plaintiff has a right to request a default judgment (see, CPLR §3215, McKinney's (1992), also if a party does not reply to one or more factual allegations the court must conclude that they had admitted that the Petitioner's allegations are true (State Rules regarding a party's failure to deny allegations CPLR §3018(a), McKinney's (1991). As noted, a default judgment assumes that the petitioner's allegations are considered true, because the opposing party did not respond to them.

By failing to contest the allegations made by the Petitioner in his petition, the sworn allegations of facts essential to support petitioner's petition seeking summary judgment pursuant to a Writ of Error Coram Nobis were conceded by the People when they failed to submit opposition papers contesting these allegations, (Post v. Lyford, (1954) 285 A.D.2d 101; People v. Gruden, 42 N.Y.2d 214; People v. Gonzales, 116 A.D.2d 735). If responsive pleading fails to

deny material allegations of complaint, said to refute is equivalent to an admission (Realty co. v. Ford, (1983) 121 Misc.2d 834).    Any material allegations of petition not controverted by objections or answers are deemed admitted (In Walker's Will (1961) 32 Misc.2d 794).

Sense, the defendant's failure to respond as directed by the rules of the Court's pursuant to CPLR §2214(b), that permits the moving party to insist on answering affidavits at least seven days before the return date, as long as the petition has been returnable at least seventeen days .

It has been held at the Appellate level that a failure to respond even when there has been a short notice can produce a grant of the petition, see, Capaccia v. Brognano, 132 A.D.2d 833, which involved the provisions of CPLR §2214(b).

Under the circumstances, when a respondent fails to implement service as directed by the rules of the Courts, the Court is required by statute to grant plaintiff's petition pursuant to CPLR §2214 (b).

Section CPL §210.45(4)(c) outlines the procedures to be followed in presenting and deposing of petitions.  Section CPL §210.45 (4)(c) outlines the procedures that should have been followed in deposing of petitioner's petition.

The Court must grant the petition without conducting a hearing if:

(a)    The moving papers alleged a ground constituting a legal basis for the petition.

(b)    Such ground if based upon the existence or occurrence of facts, is supported by sworn allegations of all facts essential to support the petition.

(c)    The sworn allegation of facts essential to support the petition is either conceded by the defendants to be true or is conclusively substantiated by unquestionable documentary proof (emphasis supplied).   Under the express terms of CPL §210.45(4)(c), as well as under case law, such failure to respond is indisputably where the defendant's offered no valid excuse for not responding.

Finally, as required under CPL §210.45(4)(c) above, the sworn allegations of facts were

4

conceded by the People to be true when they failed to respond to Petitioner's petition seeking summary judgment pursuant to a Writ of Error Coram Nobis.   Where the defendants failed to dispute petitioner's allegations of fact, they are deemed to be admitted, by failing to respond to the Petitioner's petition seeking summary judgment pursuant to a Writ of Error Coram Nobis.

In short, as required, petitioner has met his burden of establishing that petitioner's moving papers met each of these three conjunctive conditions, and the defendants having failed to respond to petitioner's claim at the proper time before the proper forum, the defendant's cannot now ask for an opportunity to show why their delay in not responding to Motion for Summary Judgment was reasonable.  Allowing the defendant's a hearing at this point, would be rewarding the defendant's for their inactions and would be a "procedural Luxury of the purest sort", People v. Gruden, Supra.

Sense, the defendant's did not raise timely objections to petitioner's petition and sworn allegations requirement, e.g., the defendants have waived their right to rely upon that error as a ground for reversing any Order of the Courts to Amend, that now before this Court.

For lack of prosecution, absent any reasonable excuse constitutes sufficient reason to grant petitioner's petition and the relief therein requested.

# INEFFECTIVE ASSISTANCE OF APPELLATE AND TRIAL COUNSEL

It is elementary that the right to effective assistance of representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and facts relevant to the defense and who is familiar with and able to employ at trial both the basic principles of criminal law and procedures.  The Supreme Court of the United States have long recognized that the right to counsel would be meaningless if it did not require effective assistance and substantial aid, Powell v. Alabama, 287 U.S. 45.

5

**SR 327**

Professionalism demands that both Appellate and Trial counsel must thoroughly review the facts and laws of the case relevant to their clients' defense and exhibit their practice expertly because proper representation involves more than courtroom conduct.  It is axiomatic that both Appellate and Trial counsel must investigate all apparently substantial defenses available to a defendant and must assert them in a proper and timely manner.  This was not the case in this instance matter, no matter what the apparent degree of a defendant's depravity or the likelihood of his guilt, the right to the constitutional shelter of Effective Assistance of Counsel and a fair trial are to forever remain in violate.  Wilson v. Phend, 417 F.2d 1197; Barnes v. Jones, 665 F.2d 427, 432 (2d. Cir. 1981); Strickland v. Washington, 466 U.S. @682, 104 S.Ct. @2061.

This petitioner was lead to believe that his Appellate Counsel was going to make an application to the New York State Court of Appeals after receiving the Appellate Division-First Department's decision affirming his conviction on March 24, 2011.  It should be noted that Appellant Appellate Counsel had never made an application to the New York State Court of Appeals on behalf of her client.  Because of Appellate counsel's failure to promptly mail a copy of the Appellate Division determination affirming Mr. Edward Green's ("Mr. Green") conviction to her client and because of the late date by which Mr. Green received the Court's decision affirming his conviction, it was beyond the thirty days allowed to make an a application to or request an extension of time to file an appeal to the New York State Court of Appeals, thereby causing Mr. Green to become time bared.

Because of Appellate Counsel's failure to file notice of appeal to the New York State Court of Appeals in a timely fashion, before the proper forum.  Ms. Rea, filed her notice on April 25, 2011 some 32 days after the time to file had expired, her late notice should be viewed with skepticism as a pretentious attempt to weave a completely fabricated waiver to give it the

6

SR 328

appearance of credibility, it is the worst form of an abuse of discretion by an Attorney. Because of counsel's failure file a timely notice of Appeal or request an extension of time to file her notice to appeal on behalf of Mr. Green, Mr. Green received Ineffective Assistance of Counsel at a critical stage of a criminal proceedings. [see, exhibit "A"]

Both Appellate and Trial counsel demonstrated Ineffective Assistance where they should have known that the proffered expert evidence was incompetent, People v. Rodriguez, 94 AD2d 805, 806 (2d Dept. 1983) without the testimony of all those whom had performed the test.

Appellate Counsel should have known that defense counsel's failure to impeach the questionable evidence constituted ineffectiveness, even thro counsel afforded his client an otherwise vigorous defense. People v. Zay's, 61 AD2d @598, and not withstanding. Counsel's competence in other phases of the proceedings, People v. Long, 81 AD2d 521, 522(1st Dept. 1986).

Both Appellate and Trial counsel should have known but failed to understand that the validity of an arrest depends upon the existence of probable cause at the time of the arrest and cannot be based on evidence obtained as the results of an ensuring search, (People v. McCarthy, 14 NY2d 206; People v. Lorid 19 NY2d 368), as was done here.

It is well settled, of course, that issues of credibility are primarily for the trial court and its determination is entitled to great weight (People v. Atlers, 183 App. Div. 595, 600). However, reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interest of justice necessitate their nullification.

This Court should take note that the Trial Court's vouching for the Chain of Custody of the Evidence without unquestionable documental proof of the Chain of Custody should be viewed with skepticism based upon the fact findings of the trial court which were manifestly

7

erroneous and so plainly unjustified by the evidence that the interest of justice necessitate its nullification.  In the instant case, by permitting the ADA to submit the stipulation and the Court's acknowledgement vouching for the Chain of Custody to be included in the record, the Trial Court was not correcting or reforming an old record in order to indicate the true facts appearing before it at the time of its original determination, but it was, in fact, making an entirely new record.

The ADA requested that the court take judicial notice of certain…records, which would establish that the stipulation surrounding the Chain of Custody was actually commenced earlier and timely, all of which, was never made part of either record.  The propounded stipulation surrounding the Chain of Custody was never filed with the clerk of the court or the court for that matter, in any event, the stipulation never came to the attention of this Petitioner until the Petitioner filed his CPL §330.30 Post conviction Motion, in which portions of Petitioner's Post Conviction Motion was addressed at petitioner's sentencing [see, Ex "B", Pgs. 2-6], as well as the People's reply to petitioner's Pro se Supplemental Appellate Brief.

The Trial Court was without authorities to go beyond the submitted record save in limited instances, none of which pertains here.  To allow this type of amendment at this stage of the proceeding would be setting a precedent which would lead to great embarrassment in the legal practice of law and injustice to parties. (Hamlin v. Sears, 82 NY 327, 333, See, Sacks v. Stewart, 75 AD2d 536, 537), any additions to the record should be denied.

Appellate Counsel should have perceived the arguable existence of conflicting loyalties on the part of defense counsel in which the Trial Court should have conducted a hearing. Though the trial judge erred in failing to do so, that error mandates reversal only if petitioner has demonstrated that a "conflict of interest" or at least the significant possibility, thereof, did exist.

8

**SR 330**

The conflict must, however, be one which bears a substantial relation to the conduct of the defense, as was demonstrated here. It should be noted that at this petitioner's sentencing hearing on October 8, 2008, petitioner's counsel understood that his errors had created a conflict of interest that resulted in counsel's joining in and adopting petitioner's motion to vacate judgment based upon petitioner's Ineffective Assistance claims. [see, sentencing minutes hereto attached as exhibit "B", Pgs. 2-6].

## REPLY IN SUPPORT OF WRIT OF ERROR CORAM NOBIS

When the People filed their Appellate brief in opposition, they addressed the Chain of Custody of the Evidence, I did not know just what this meant when defense counsel stated that he had stipulated that a substance tested positive for cocaine, because I was not present, nor did I participate in or agree to any agreement, nor did I have any idea that a hearing or conference concerning this matter, was going on, the incorporating and then orally restructuring the agreement to include the Chain of Custody of the Evidence. At no time did this petitioner ever consent to any agreement between myself and the People, nor was I never consulted about any alteration to orally restructuring the stipulation by the Trial Court. Because the Court was not aware of the specific actions by Mr. Keith and the People. I feel that the Court have error in its decision making process, thereby making itself an unsworn witness by vouching for the Chain of

Custody of the Evidence[1], in absence of any express consent or authorization on the part of this petitioner. The Court overlooked certain facts that were not included or intentionally left out of the original agreement.

---

[1] The Court should be aware that since the People had never raised any issues concerning the Chain of Custody of the Evidence within or surrounding the oral stipulation, before, the Honorable Edward J. McLaughlin, of the New York State Supreme Court, County of New York, any Appellate complaints that may be raised in this regard are unpreserved for Appellate review.

9

**SR 331**

After being intentionally misadvised by the Trial Court, this petitioner was lead to believe that he had no viable legal grounds for making objections or claims in opposition concerning the Evidence, and that all actions that resulted in the State Supreme Court [Post Conviction CPL 330 Motion], the State Supreme Court stated that the filing of the CPL 330 motion was time bared, which was not true.   In the case that's now before this court, the terms of the stipulation that is the bases of this application was orally altered or restructured by the overreaching conduct of the Trial Court to include the Chain of Custody of the Evidence within the oral stipulation.  At no point in any proceedings were there any discussions bearing on any matters pertaining to the Chain of Custody of the Evidence, based upon the fact that the People was in default and the motion seeking Summary Judgment pursuant to CPL 330 of Petitioner's Post Conviction Petition of Objections.   At no time doing the course of this or any other proceeding was the motion for Summary Judgment ever withdrawn.

It is well settled that a stipulation of agreement made in open court and on the record in accordance with CPLR §2104 is to be strictly enforced.  The only way a party may be relieved from the consequences of such a stipulation is to establish cause and provide proof sufficient to invalidate a contract, such as fraud, collusion, mistake or accident.

Furthermore, this is true even when the attorney for a party exceeds his authority to settle an action.  This was the issue before the Court of Appeals in Hallock v. State of New York, 64 N.Y.2d 224 (1984).   The Court ultimately held that an attorney can bind his client to a agreement in excess of his authority.  In reaching this conclusion, a stipulations that was made in open court was discussed, as follows:

> "Stipulations of agreements are favored by the courts and not lightly cast aside (see, Matter of Galasso, 35 N.Y.2d 319, 321; 361 N.Y.S.2d 871; N.E.2d 618).  This is all the more so in the case of "open court" stipulations (Matter of Dolgin Eldert Corp., 31 N.Y.2d 1, 10; 334

N.Y.S.2d 833) within CPLR §2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and the integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation (Matter of Frutiger, 29 N.Y.2d 143, 149-150;  324 N.Y.S.2d 36).

64 N.Y.2d at 229, 230; 485 N.Y.S.2d at 512 (emphasis added).  See also, HCE Associates, v. 3000 Watermill Lane Realty Corp., 131 A.D.2d 543; 516 N.Y.S.2d 269 (2d Dept. 1987).

## FRAUD

It is well settled that the essential elements of a fraud claim are misrepresentation of a material fact, falsity, scienter, deception, and injury, see, Barclay Arms Inc., v. Barclay Arms Associates, 74 N.Y.2d 644, 646-647; 542 N.Y.S.2d 512, 514 (1989); see also, 2 NY PJI 2d 83, 84 (Supp.).

Furthermore, it is also well settled that the burden of proof to show fraud is on the proponent of that claim, and the standard is by clear and convincing evidence.  See, Geroge Backer Management Corp., v. Acme Quilting Co., 46 N.Y.2d 211, 219-220; 413 N.Y.S.2d 135, 139 (1978); 473 N.Y.S.2d 31, 33(3rd Dept. 1984); 2 NY PJI 2d 888; 2 NY PJI 2D 285, 286(Supp.)

**The Stipulation should be**
**Vacated as Induced by Fraud**
**Or as a Product of a Mistake**

It is true, of course, that "[s]tipulations are favored by the courts and not lightly cast aside, "Hallock v. State of New York, 64 N.Y. 2d 224, 229(1984)", but it is also recognized that an Appellate Court has discretionary power to relieve parties from the consequences of a stipulation entered into during litigation * * * for good cause shown, such as Fraud, collusion, mistake or other factors as would undo a contract." Where, as here, specific facts can be alleged demonstrating the presence of fraud or mistake, that discretionary power should be exercised in

11

**SR 333**

favor of the aggrieved party, Matinzi v. Joy, 96 A.D.2d 780 (1st Dept. 1983), aff'd, 60 N.Y.2d 935 (1983).

The elements of actionable fraud are familiar.  [I]t is well settled, said the Second Department in Pappas v. Harrow Stores, Inc., 140 A.D.2d 501(1988), that in order to succeed on a cause of action grounded in fraud, a plaintiff must demonstrate that the defendant made a false representation which was either known to be untrue or made with reckless disregard of its truth and which was made with the intent to deceive and to induce the petitioner to part with or refrain from obtaining something of value, thereby causing injure [citations].  Each element can be established by this petitioner in the present case.

As discussed in greater detail below, the Respondent, Mr. Keith swore to matters which they knew to be false, with the sole intent of deceiving the petitioner and attempting in inducing the petitioner to settle his case based upon the threat of severe penalizes being imposed upon this petitioner and his family.  Mr. Keith also instructed that the Trial Court would do this, as was demonstrated at the sentencing hearing, where the Trial Court imposed the most severe sentence possible based upon the fact that no viable evidence was never proven at Trial.

There can be no question here that Mr. Keith and the People knowingly made false representations.  It is apparent, based upon the statements contained in the trial record  that the Trial Court believed that this petitioner would attempt to set aside this conviction on appeal on the basis of fraud, had he been aware of the stipulation, which is one of the grounds noted in the Hallock decision, supra.  A detailed explanation as to the different types of fraud sufficient to render a contract void or voidable us contained in the decision of Mix v. Neff, 90 A.D.2d 180, 473 N.Y.S.2d 31 (3rd Dept. 1984).  The court discussed the two types of fraud, namely, fraud in the factum and fraud in the inducement.  The Court in Mix, described the former as follows:

12

**SR 334**

> "Fraud in the factum generally connotes an attack upon the very existence of a contract from its beginning, in effect alleging that there was no legal contract and that the instrument never had had a valid inception. The attack is upon certain facts which occurred at the time of the alleged execution of the agreement, upon which facts the validity of the agreement depends."

473 N.Y.S.2d at 33. The Court described the latter type of fraud as:

> "To be distinguished is the claim where an opponent of a contract asserts the defense of fraud in the inducement, which, if proven, renders the contract voidable (see, Adams v. Gillig, 199 N.Y. 314, 317, 92 N.E. 670). This form of fraud is usually based on facts occurring prior or subsequent to the execution of a contract which tend to demonstrate that an agreement, valid on its face and properly executed, is to be limited or avoided (see, Mangini v. McClurg, 24 N.Y.2d 556, 563, 301 N.Y.S.2d 508, 249 NE 2d 386). When an opponent of a contract alleges fraud in the inducement, whether as an affirmative defense or by way of a counterclaim seeking rescission, he must sustain the burden of persuasion (Steinberg v. New York Life Ins. Co., 238 app. Div. 206, 210; 264 N.Y.S. 399 revd. Other grounds, 263 N.Y 45, 188 NE 152; see also, D'Angelo v. Bob Hastings Automobile, Inc., 89 A.D.2d 785, 455 N.Y.S.2d 763, 442 N.E.2d 60). That burden of proving fraud in the inducement, or a cause of action seeking rescission on that ground, requires that the proof be by most satisfactory evidence, (Adams v. Gillig at 323, Supra.), which may be interpret to be by clear and convincing evidence rather than only a fair preponderance of the credible evidence.

413 NYS2d at 33. (emphasis added). See also, George Backer Management Corp., v. Acme Quilting Co., 46 N.Y.2d 211, 413 N.Y.S.2d 135(1978); 2 NY PJI 2D 888; 2 NY PJI2D 239, 240 (Supp.).

The instant stipulation of agreement, made in the course of a Court Conference, with the parties present, after several conferences, must be given a presumption of regularity in its execution. See, Fleming v. Ponzizni, 24 N.Y.2d 105, 111, 299 N.Y.S.2d 134, 140(1969). As litigating, (Carnee v. Habrouck, 267 N.Y. 57 (1935)), but this is a case where Mr. Keith did more than just keep information to himself, he repeatedly made boldfaced misrepresentations. The United States Supreme Court has had occasion to explain the distinction:

13

**SR 335**

> At common law, misrepresentation made for the purposes of inducing reliance upon a false statement is fraudulent. But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is induce a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.

Chiarella v. United States, 445 U.S. 222, 227-228 (1980).

On the question of reliance, it is not open to Mr. Keith to argue that the petitioner should not have reposed any confidence in the truthfulness of his representations to the Court and to this petitioner. The petitioner acted reasonably in ascribing value to statements made under oath, particularly since those statements reflected matters exclusively within Mr. Keith's knowledge. Difilippo v. Hidden Ponds Associates, 146 A.D.2d 737 (2nd Dept. 1989). Litigation is a means of resolving the parties differing but honestly held contentions. Falsehoods and perjury are not a permissible part of the process. Mr. Keith and the People, knowing far more than did the petitioner, apparently had something else in mind. The cautious choice of language, to be sure, is further evidence of Mr. Keith's and the Prosecutor's wrongdoing.

In any event, even if Mr. Keith had no intentions of deceiving his client in this matter, it nevertheless remains a fact that Mr. Keith settled the action on a misapprehension. A mistake of that significance, without more, is a sufficient basis to revoke a agreement in the interest of justice.

**The Unchallenged Evidence of
People's Material Misrepresentations**

There is no apparent way to reconcile the activities performed by the People and Mr. Keith months following the agreement with their sworn statement that The Chain of Custody of the Evidence was to included within the stipulation. Significantly, Respondent made no attempt to do what presumable cannot credibly be done – that is, harmonize their post-agreement conduct

14

with their pre-agreement conduct and assertions.  The People proffered no affidavits of their own in opposition to this petitioner's charge of misrepresentation, no explanation was ever offered for not including The Chain of Custody of the Evidence in the original stipulation.  Not even did counsel seek to convince the Court that the material on which the reply petition rest was true to what the Prosecutor claimed.

Furthermore, it makes no difference whether the People's misrepresentations were conceived and communicated as part of a deliberate effort for failing to put in writing an unfair stipulation with the Mr. Keith, or whether, as it seems far less likely that they were only the effusive outpourings of a Respondent who, in unbridled zeal for their own cause, managed to delude themselves as well as deceive the petitioner and the Court.  In either event, the agreement cannot stand:

> In a law action for deceit it is incumbent on one seeking damages for fraud to prove, among other things, that false statements were made with knowledge of their falsity, or with the reckless disregard of their truth or falsity.  But an action may be maintained in equity to rescind a transaction which has been consummated through misrepresentation of a material fact not amounting to fraud.  Unlike an action at law for damages, intentional misstatements need not be proved.

Matter of Clerk, 233 App. Div. 489 (4th Dept. 1931) (citation omitted), see also, D'Angelo v. Bob Hastings Oldsmobile, Inc., 89 A.D.2d 785 (4th Dept. 1982) ("even an innocent misrepresentation is sufficient ground for rescission).

In sum, then, it was an abuse of discretion to deny the petitioner's motion with the observation, "[w]hat seems to have happened here is simply that favorable evidence came into [its] possession when it was too late.  More than merely favorable evidence, the evidence exposed Mr. Keith and the People's campaign to grossly distort the true nature of their intentions, so as to extract unconscionably excessive punishment from the Court to this petitioner.  Such

15

**SR 337**

conduct certainly warrants vacatur of the agreement, just as it would warrant setting aside a judgment. see, e.g., Swarzina v. knight & Timoney, Inc., 265 App. Div. 33(1st Dept. 1942); Curran v. Hargreaves, 253 App. Div. 121 (4th Dept. 1937); Mevius v. Tiffin Products, Inc., 198 App. Div. 812(2d Dept. 1921).

## The Court has the Power to
## Vacate an Unjust Stipulation

In the normal course of events, an agreement signals a final resolution of the parties controversy and should not be converted into a starting point for renewed litigation, Mangini v. McClurg, 24 N.Y.2d 556, 563 (1969). Where it appears, however, that an agreement is a product of "fraud, collusion, mistake or accident," it may be vacated. Hallock v. State of New York, 64 N.Y.2d 224, 230 (1984). Such relief usually may be sought, at the option of the parties, by motion interposed in the underlying action or by a plenary action grounded upon the stipulation," Teitalbaum Holdings, Ltd., v. Gold, 48 N.Y.2d 51, 55 (1979).

Of course, if the submissions in support of and in opposition to vacatur of an agreement are inconclusive or conflicting, and thus warrant further development, an evidentiary hearing should be ordered. See, Mauro v. Mauro, 148 A.D.2d 684 (2d Dept. 1989); Berger v. Berger, 81 A.D.2d 650 (2d Dept. 1981).

## The Agreement Was A Product
## Of Unilateral Mistake

Quite apart from the question of whether the Respondent pursued a scheme to deceive the petitioner, it is undisputed on this record that the petitioner never entered into an agreement.

It should be noted that equity may be invoked to prevent the enforcement of an unjust agreement induced by a unilateral mistake of fact. Rosenblum v. Manufacturer Trust Co., 270 N.Y.79, 85 (1936). Such an application is addressed to the conscience of the Court, Feldman v.

16

Metropolitan Life Insurance Co., 259 app. Div. 123 (1st Dept. 1940), and should be granted upon a showing that [t]he parties may be restored to the status quo ante without prejudice  *  *  * Seidman v. New York Life Insurance Co., 162 Misc. 560, 562 (Supreme Ct., New York Co., 1937). These principles apply with equal force to a stipulation entered into in open court. See, e.g., Carrion v. Metropolitan Transportation Authority, 92 A.D.2d 907 (2d Dept. 1983).

The rescission of the stipulation upon the grounds of unilateral mistake should be granted here. There can be no doubt that the People grave misapprehension of the true severity of their claim at the pre-trial proceeding, it was not an insignificant or incidental factor in the decision to the stipulation of this case, but goes to the foundation of the agreement. DaSilva v. Musso, 57 N.Y.2d 543, 552 (1981). Moreover, since the petitioner moved expeditiously upon the discovery of the error, petitioner can be restored to the position he occupied before the stipulation. The parties should not be deprived of their opportunity to present their claims fully and fairly to the Court, but merely divested of an advantage which in good conscience and the law [they] are not entitled to retain. Seidman v. New York Life Insurance Co., Supra, 162 Misc., at 562.

It need only be added that Mr. Keith's mistake was not a miscalculation as to the future course of consequences that this petitioner's claims concerning the Chain of Custody of the Evidence, but a substantial mistake concerning the nature of the true terms of the oral stipulation as it existed at the time that the stipulation was entered into. Therefore, when the agreement is made on the assumption of the existence of a state of facts it may be rescinded if that state of facts does not presently exist. Mack v. Albee Press, Inc., 263 App. Div. 275, 277 (1st Dept. 1942); see also, Pokora v. Albergo, 130 A.D.2d 473 (2d Dept. 1987).

It should be noted that any out-of-court oral alteration or the orally restructuring of the

17

**SR 339**

original oral stipulation was never provided to this petitioner or presented in open Court or at the last Court pre-trial proceeding before The Court, in which the trial record reflected the stipulation, nor does the record demonstrate when the stipulation was made, nor would this petitioner ever enter into any stipulation that would concern the Chain of Custody of the Evidence. Based upon the fact that the stipulation was orally altered or restructured from the original oral stipulation without the full consent or authorization by this party, thereby violating the strict terms of the stipulation, and because of such overreaching conduct by Court, the Court thereby voided any and all parts, terms of the stipulation by it's overreaching conduct. This petitioner would be at a distinct disadvantage if the stipulation was to be enforced and that it would be inequitable to do so. The stipulation must in the interest of justice be vacated based upon these and the foregoing arguments below.

The Court should be guided by the "familiar and eminently sensible proposition of the law that when parties set down their agreement in a clear, complete written document, their writing should...be enforced according to its terms. (Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co. 1 N.Y.3d 470, 475[2004], quoting, W.W.W. Aisa v. Giancontieri, 77 N.Y.2d 157, 162[1990]; TAG 380, LLC v. ComMet 380 Inc., 10 N.Y.3d 507, 512-513[2008]).

First, the stipulation was never reduced to written document by Mr. Keith or the People, and did not constitute a sufficient writing to bring the agreement within the scope of Civil Practice Law and Rules ("CPLR") §2104. The oral stipulation, although acknowledging the existence of an agreement, did not incorporate all the material terms of the agreement (see Matter of Galasso, 35 N.Y.2d 319, 321 (1971) (refusing to enforce a agreement that although proposed at a court conference, did not reflect a complete agreement as to all material terms).

The plain language of the statute directs that the agreement, itself must be in writing,

18

**SR 340**

signed by all parties to be bound (CPLR 2104), because the purported stipulation of this action did not include a signed writing incorporating all material terms of the purported agreement between this petitioner and the People, thus the purported stipulation failed to demonstrate that the parties entered into a binding agreement (see CPLR 2104; Bonnette v. Long Island Coll. Hosp., 3 N.Y.3d 281).

Accordingly, there can be no discontinuance until there has been a complete compliance with all the terms of the stipulation.  To be binding a stipulation "must either be reduced to a properly subscribed writing or entered orally on the record in open court.

It should be noted that [w]hen there is no dispute between the parties as to the terms of a oral agreement, that's made during a pending litigation, the courts will refuse to permit the use of the statute (CPLR 2104) against a party who has been misled or deceived by the agreement to his detriment or who has relied upon that agreement, Conlon v. Concord Pools, LTD., 170 A.D.2d @754, which is not the case in the case at bar.  Nevertheless, as the Court of Appeals stated in Mutual Life Ins. Co. v. O'Donnell, 146 NY 275, that an oral stipulation "will not permit a party to be misled, deceived, or defrauded by means thereof, and in some instances where it has been acted upon by the party making it they will not be permitted to retract and take advantage of the acts or omissions of his adversary thereby induced."  Nevertheless, a stipulation is a contract, and like any contract it can be invalidated on such grounds as fraud, collusion, mistake, accident or overreaching conduct.  Hallock v. State of New York, supra, 64 N.Y.2d 224, 230; see also, Sontag v. Sontag, 1985, 114 A.D.2d 892.

Because of the default filing and the failure of the People to file a reply to this petitioners Post Conviction CPL 330 motion for Summary Judgment for the failure to file a timely reply to petitioners petition of Objections concerning the Chain of Custody, as well as

19

**SR 341**

their non-appearance by the Police Chemist at any stage of the proceedings, their absence could not have cause or created the impression that Mr. Keith had the authority and/or was authorized to enter into a binding stipulation between this petitioner and the People, by Mr. Keith.

Equally rooted in the law is the principle that without a grant of authority from the client, an attorney cannot compromise or settle a claim.(see, Kellogg v. Gilbert, 10 Johns 220; Jackson v. Bartlett, 8 Johns 361), and agreements negotiated by attorneys without authority from their clients have not been binding (see, Countryman v. Breen, 241 App. Div. 392 [271 N.Y.S. 744, aff'd, 268 NY 643]; Spisto v. Thompson, 39 A.D.2d 598; Leslie v. Van Vranken, 24 A.D.2d 658; Mazzella v. American Home Constr. Co. 12 A.D.2d 910.

Under New York State law a finding of apparent authority is dependent upon "words or conduct" of the principal [The People] and communicated to a third party [Green], that would have given rise to the appearance and belief that Keith possessed the authority to enter into a transaction [stipulation], Id. 64 N.Y.2d @ 231. This standard as stated and supported in Hallock v. State of New York, supra, was never satisfied because Mr. Keith had never, argued the Chain of Custody of the Evidence throughout the course of this litigation, and had never engaged in any prior negotiations concerning the Chain of Custody of the Evidence, and had never appeared at any court proceedings, i.e., in State Supreme Court to argue the Chain of Custody of the Evidence which in and of itself amounted to a non-representation of a given party, which demonstrated that Mr. Keith did not have nor had he ever had the authority to enter into a binding stipulation on behalf of this petitioner concerning the Chain of Custody of the Evidence, see, Uniform Civil Rules for the Supreme Court and the County §202.26(e).

Secondly, a mutual mistake sufficient to warrant vacating a stipulation requires proof that the mistake existed at the time of the stipulation and that it was so substantial that the

stipulation did not represent a true meeting of the minds (Mahon v. New York City Health & Hosps. Corp., 303 A.D.2d 725; Gillray I., 287 A.D.2d 865 [mutual mistake not established where in hindsight the terms of the agreement are difficult to effectuate]).

The assertion made by this petitioner of mutual mistake is not belied by the record of the Court and the papers before the Court on this application (see, Lowinger v. Lowinger, 303 A.D.2d 723). The record does not belie plaintiff's claim that Mr. Keith failed to understand the true nature of the stipulation, or that Mr. Keith knew that he was committing fraud upon and thereby deceiving the Court and this petitioner, by knowingly allowing the Trial Court to orally change, altering or restructure the terms of the stipulation, thereby invalidating the stipulation, because the oral stipulation that the People is now asserting is based upon a totally different set of facts.

This petitioner respectfully request that the stipulation be vacated on the grounds of fraud or mutual mistake because the parties negotiated the agreement on an incorrect promise, that is, that all claims concerning the Chain of Custody of the Evidence was never made part of the original oral stipulation. Where the record is completely silent as to the Chain of Custody of the Evidence during the course of the Court Conferences' as well as at all Court pre-trial proceedings, which only demonstrated that Mr. Keith lacked all authority to enter into a binding stipulation on behalf of this petitioner and the People. Thus there was no true meeting of the minds, which makes it totally impossible to effectuate a binding agreement between this petitioner and the People.

It should be noted that a Courts may not rewrite an agreement between the parties (Matter of Evans v. Board of Assessment Review of Town of Catskill, 284 A.D.2d 753, 755) as well as "a court should not under the guise of interpretation, make a new contract for the parties"

21

**SR 343**

(Sklerov v. Sklerov, 231 A.D.2d 622).

Accordingly, consent and authorization can not in and of itself be abridge from a silent record. Consent and authorization can not in and of itself be made binding on a party where the record is silent concerning that party and all terms associated with and supporting the terms of the stipulation of a silent and non-appearing party is barren and unsupported by the record.

The law is well established and supported by both State and Federal Law and its supporting case law that a record that is silent will not overcome the presumption against a waiver by a party of constitutionally guaranteed protections, (People v. Rodriquez, 50 N.Y.2d 553, 557); (People v. Thompson, 140 AD2d 652, 653(1988), the record must show an intentional relinquishment or abandonment of a known right or privilege, "Johnson v. Zerbst, 304 U.S. 458, 464(1938).

Where there is a silent record concerning all terms of a given stipulation in which the parties are to be bound, a party cannot give rise to a waiver of a known right by waiving that right based upon a silent record. A silent record is the same as no record at all, which makes it impossible to waive a given right based upon something that doesn't exist. Therefore, presuming a waiver from a silent record is impermissible (see, People v. Harris, 61 N.Y.2d 9, 17).

It is evident from the record that the fair notice provision provided by Mr. Keith and the People was woefully inadequate, and the totality of omissions and commissions is such that the conclusions is inescapable based upon the absence of fair notice, the lack of a true meeting of the minds and where the People's lacked the authority to enter into a binding agreement between this petitioner and The Chain of Custody of the Evidence.   The Court conclusions must result in the stipulation being dismissed and the case being re-entered back on the Court

The Court should take note that as long as the appearance of impropriety is there, and it

22

**SR 344**

is, as have been demonstrated in the case at bar, the Court should be very uncomfortable with any recommendations made by the People. Such recommendations should have been viewed by the Court with total skepticism.

Therefore, because of the Court's failure to entertain this application on the merits, this petitioner no doubt suffer a miscarriage of justice of a given right that this petitioner is constitutionally entitled too.

No previous application has ever been made for the relief requested by these papers.

**WHEREFORE,** I respectfully request that the attached memorandum of law and the relief requested therein be granted and upon a determination after a hearing, the respondent's should be precluded from filing a petition in opposition, or an answering affidavit/cross petition and that the petitioner's petition be granted in its entirely and for such other and further relief as the Court may deem just and proper.

**WHEREFORE,** this petitioner respectfully request that this Honorable Court issue an order vacating and setting aside the order of stipulation with prejudice, and restore this action back to the trial calendar of the State Supreme Court for the earliest possible date and for such other and further relief as this Court may deems just and proper.

## CONCLUSIONS

**THE ORDER APPEAL FROM SHOULD BE REVERSED, THE STIPULATION OF AGREEMENT VACATED, AND THE ACTION RESTORED BACK TO THE COURT'S CALENDAR.**

Dated, November 7, 2011

23

**SR 345**

Respectfully Submitted

*Edward Green*

Edward Green, Pro-se,
Eastern Correctional Facility Annex
P.O. Box 338
Napanoch, NY 12458-0338

Sworn to before me this
7 day of **November** 2011

cc:   **The Supreme Court of the State of New York**
      Appellate Division-First Department
      27 Madison Avenue
      New York, New York 10010

**Office of the District Attorney**          **Mr. Arnold P. Keith**
Appeals Unit                                 350 Broadway, Suite 1201
One Hogan Place                              New York, New York 10013
New York, New York 10013

**STEVEN BANKS - NATALIE REA of Counsel**
Attorney for Defendant-Appellant
THE LEGAL AID SOCIETY
Criminal Appeals Bureau
199 Water Street – 5th Floor
New York, New York 10038

Edward Green, Pro se

*Edward Green*

Sworn to before me this
7 day of **November** 2011

24

**SR 346**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

                                    Respondent,

                    -against-

EDWARD GREEN,

                            Defendant-Appellant.

AFFIRMATION IN OPPOSITION
TO DEFENDANT'S APPLICATION
FOR A WRIT OF ERROR <u>CORAM</u>
<u>NOBIS</u>

N.Y. Co. Ind. No. 5643/07

Cal. Date: 10/4/2012

Britta Gilmore, an attorney duly admitted to practice before the courts of this state,
affirms that:

1.      I am an Assistant District Attorney, of counsel to CYRUS R. VANCE, JR.,
District Attorney of New York County, and I submit this affirmation in opposition to defendant's
fourth application for a writ of error <u>coram nobis</u>. In that application, defendant contends that
appellate counsel failed to provide him with effective representation in this Court.

2.      By an October 8, 2008 judgment of the Supreme Court, New York County
(Edward McLaughlin, J.), defendant was convicted, after a jury trial, of Criminal Possession of a
Controlled Substance in the First Degree (Penal Law § 220.21[1]), Criminal Possession of a
Controlled Substance in the Third Degree (Penal Law § 220.16[1]), and two counts of Criminally
Using Drug Paraphernalia in the Second Degree (Penal Law §§ 220.50[2], [3]). Defendant was
sentenced, as a second felony drug offender, to an aggregate prison term of 15 years, to be

followed by 5 years of post-release supervision.[1] He is currently incarcerated pursuant to that judgment.

     3.      On the evening of November 1, 2007, officers from the New York City Police Department's Major Case Unit executed search warrants for the second- and third-floor apartments of an apartment building at 451 Lenox Avenue in Harlem.  In the second-floor apartment, officers discovered a makeshift "office"; inside, officers apprehended Steven Brown. A search incident to Brown's arrest revealed more than $900 on his person and a set of keys in his jacket pocket.  The apartment itself contained 18 half-gram bags of cocaine packaged for sale, significant quantities of drug packaging materials, a gun holster, and a bag of marijuana. The main room was also equipped with a closed-circuit television ("CCTV") monitor whose split screen displayed real-time images of the building's front door as well as the entrance to the apartment.  The CCTV wiring extended from the second-floor apartment to the rear southwest apartment on the fourth floor.

     4.      On the fourth floor, officers located the rear southwest apartment and used one of the keys seized from Brown to open the door.  Inside, officers found defendant alone, sitting in the dark, unresponsive to their verbal commands.  The apartment itself bore no signs of residential use: it contained no clothing, personal effects, or typical furniture, and the outside windows had been covered with black garbage bags.  The apartment's main room was littered with drug paraphernalia, including playing cards coated with cocaine residue, common mixing agents, a digital scale and two heat sealers, and hundreds of plastic baggies.  The officers

---

[1] Specifically, defendant received a fifteen-year sentence on the first-degree possession count, to be followed by 5 years of post-release supervision.  That term was to run concurrently with a twelve-year sentence on the third-degree possession count, to be followed by 3 years of post-release supervision.  On the misdemeanor counts of criminally using drug paraphernalia, defendant received two 1-year prison terms, which merged with his felony sentences. Penal Law § 70.25(2).

immediately arrested defendant, and seized more than $300 and a large set of keys from his person.

     5.     After securing defendant, the officers opened a nearby closet in order to confirm that no one was inside. Inside they discovered two combination-lock safes, assorted drug packaging materials, an additional heat sealer, and numerous digital scales. After obtaining a supplemental search warrant, the officers pried open the two locked safes. Inside one was a white "baby gift bag" containing three large chunks of cocaine which together weighed more than 17 ounces. The smaller safe contained two cigar boxes which contained approximately $1,100 in cash and additional cocaine, packaged and ready for sale.

     6.     By New York County Indictment No. 5643/07, filed on November 11, 2007, defendant and Brown were jointly charged with first- and third-degree criminal possession of a controlled substance, and two counts of second-degree criminally using drug paraphernalia. On April 9, 2008, the Honorable Edward J. McLaughlin held an ex parte hearing at which a confidential informant and a police officer testified. On June 30, 2008, after reviewing the parties' written submissions, the court denied defendant's motion to suppress a set of keys seized from his person and the contraband recovered from the fourth floor apartment, finding defendant lacked standing. Defendant moved to reargue the motion, and on August 11, 2008, Justice McLaughlin modified his initial ruling by suppressing the keys seized from defendant. On September 8, 2008, defendant proceeded to trial before Justice McLaughlin and a jury.[2] On September 15, 2008, the jury convicted defendant as charged.

     7.     By papers dated October 3, 2008, defendant moved, *pro se*, to vacate the judgment against him pursuant to CPL 330.30. In his motion, defendant raised several claims:

---

[2] On September 9, 2008, co-defendant Brown pled guilty to a single count of Criminal Possession of a Controlled Substance in the Third Degree. He was sentenced, on October 7, 2008, to a determinate prison term of five years.

that he received ineffective assistance from his trial counsel; that the grand jury proceedings were defective and the indictment not supported by sufficient evidence; that the lab reports admitted at trial lacked an "Electronic Transmittal Memorandum" as required by CPL 190.30(2-a); and that the lab results were faulty for numerous reasons. In support of his allegations about the lab results, defendant appended to his motion a November 29, 1999 Daily News article citing the NYPD crime lab's failure of a national inspection. On October 8, 2008, defendant was sentenced as set forth above, and his *pro se* motion to vacate the judgment was denied.

<u>Defendant's Appeal</u>

8.      The Legal Aid Society was appointed to pursue defendant's appeal, and Natalie Rea filed a brief on defendant's behalf.     In that brief, Rea first argued that defendant's conviction should be reversed because the trial court's handling of a jury note constituted a fatal "mode of proceedings" error. Next, Rea challenged the procedure followed by the court in resolving defendant's suppression motion. Finally, Rea advanced two challenges based on counsel's "opening the door" to previously precluded evidence. First, Rea contended that trial counsel was ineffective for opening the door to limited testimony about two of defendant's prior convictions. Further, Rea argued that the trial court abused its discretion in finding that trial counsel's opening statement opened the door to the admission of a set of keys seized from defendant at the time of his arrest.

9.      In a *pro se* supplemental brief filed with this Court's permission, defendant raised several additional claims. First, defendant asserted that the jury's verdict was supported by insufficient evidence, and that the evidence presented at trial was, in any event, "weak." In addition, defendant raised numerous challenges to trial counsel's performance, nearly all of which recycled claims previously advanced in his motion pursuant to CPL 330.30: that counsel

"pursued no defense at trial"; that counsel "failed to prepare" and "failed to investigate"; and that counsel failed to press the theory that co-defendant Brown was alone guilty of the charged crimes.

10.     On March 24, 2011, this Court unanimously affirmed defendant's conviction. The Court first held that the verdict was supported by legally sufficient evidence and was not against the weight of the evidence, which "overwhelmingly established that defendant was a participant in a drug-selling operation and a possessor of contraband." Further, this Court held that the trial court's response to a note from the deliberating jury did not violate the principles of *People v. O'Rama*, 78 N.Y.2d 270 (1991), because the note concerned a purely "ministerial" matter. Next, the Court concluded that trial counsel expressly declined the trial judge's offer to hold a suppression hearing, and instead chose to litigate the suppression issues by written submissions; accordingly, defendant had waived any objection to those procedures. The Court likewise rejected both of defendant's door-opening challenges. Finally, this Court rejected defendant's *pro se* claims of ineffective assistance of counsel, noting that they were "unreviewable on direct appeal" because they concerned matters outside the appellate record. *People v. Green*, 82 A.D.3d 593 (1st Dept. 2011). By Rea's letters of April 20, 2011 and May 23, 2011 (Exhibits A and B, appended hereto), defendant sought leave to appeal to the Court of Appeals; on August 25, 2011, the Honorable Theodore T. Jones denied that application (Exhibit C).

<u>Defendant's Application for a Writ of Error Coram Nobis</u>

11.     By papers dated September 20, 2012, defendant filed the instant petition for a writ of error <u>coram nobis</u>.   In the instant petition, defendant raises a litany of claims in three main categories.  First, defendant challenges the trial judge's denial of his post-judgment motion (Petition at 11).  Next, defendant advances a laundry list of complaints about the performance of

5

**SR 351**

his appellate attorney, Natalie Rea of the Legal Aid Society: that she failed to introduce evidence, review the trial record, or conduct adequate legal research; that she performed inadequately in oral argument before this Court; that she failed to seek leave to appeal to the Court of Appeals this Court's March 24, 2011 denial of defendant's direct appeal; and that she failed to vigorously challenge the sufficiency of the trial evidence (Petition at 3, 8, 9). Finally, defendant alleges that his appellate attorney was ineffective for failing to challenge various aspects of trial counsel's performance. At the center of this last category of allegations is a series of complaints about trial counsel's stipulation to the laboratory analysis of the cocaine seized at the time of defendant's arrest. As demonstrated below, defendant was unquestionably afforded the effective assistance of counsel on appeal.

## MEMORANDUM OF LAW

Defendant's current claims should be denied. Many are simply not cognizable in an action seeking a writ of error *coram nobis*, and those that are properly raised are either factually incorrect or legally untenable.

There is no question that defendant was entitled to be represented on appeal by an attorney who functioned as an active, single-minded advocate on his behalf, made a conscientious examination of the record and the applicable law, and marshaled arguments effectively in his defense. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *People v. Stultz*, 2 N.Y.3d 277, 285 (2004); *People v. Casiano*, 67 N.Y.2d 906, 907 (1986); *People v. De La Hoz*, 131 A.D.2d 154 (1st Dept. 1987), *app. dismissed*, 70 N.Y.2d 1005 (1988). What constitutes effective representation cannot be fixed with yardstick precision, and varies with the circumstances of each case. *See Strickland v. Washington*, 466 U.S. 668, 669-690 (1984); *Stultz*, 2 N.Y.3d at 285; *People v. Baldi*, 54 N.Y.2d 137 (1981). Notably, this Court "strongly presumes" that appellate

counsel has measured up to this standard by rendering adequate assistance and making all significant decisions in the exercise of reasonable professional judgment, and defendant shoulders a "significant burden" in attempting to overcome that presumption. *De La Hoz*, 131 A.D.2d at 157-158; *see Strickland v. Washington*, 466 U.S. at 689-690.

Defendant cannot meet that burden simply by pointing out the existence of another issue that might have been raised, but was not. After all, effective appellate advocacy involves "winnowing out weaker arguments" and focusing on a few promising issues. *Jones v. Barnes*, 463 U.S. 745, 751-754 (1983). And reasonable professional judgment by appellate attorneys as to what are the most appeal-worthy issues should not be second-guessed. *People v. Ramos*, 108 A.D.2d 209, 213 (2d Dept. 1985). Certainly, it is not ineffective assistance to forgo a meritless claim on appeal. *Mitchell v. Scully*, 746 F.2d 951, 955 (2d Cir. 1984), *cert. denied*, 470 U.S. 1056 (1985); *People v. Bachert*, 133 A.D.2d 482 (3d Dept. 1987). In fact, an attorney may properly choose not to argue issues, even if the defendant himself has suggested them, and "even if hindsight shows that one of these issues would have been meritorious on appeal." *People v. White*, 73 N.Y.2d 468, 478, *cert. denied*, 493 U.S. 859 (1989); *see also Stultz*, 2 N.Y.3d at 285. Moreover, as a matter of federal constitutional law, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. And, under State constitutional principles, whether the result would have been more favorable to defendant but for counsel's performance is a "significant" factor that should be considered by the courts. *Stultz*, 2 N.Y.3d at 284; *People v. Benevento*, 91 N.Y.2d 708, 714 (1998).

Applying these standards, defendant's application must fail, for Rea provided defendant with vigorous and thorough appellate representation. First, she filed a 45-page brief on

7

**SR 353**

defendant's behalf that thoroughly reviewed the trial proceedings and presented the facts in a manner favorable to defendant, with careful citation to the trial record. The substantive arguments Rea presented in this brief were carefully researched and intelligently presented. Rea aggressively argued that the trial court had committed a fatal error in deviating from *O'Rama* procedures in handling a jury note. Further, Rea lucidly unpacked the complex litigation of defendant's suppression motion and advanced a cogent argument that those proceedings violated defendant's right to be present at a critical stage of the trial proceedings.

Similarly, Rea tenaciously argued that the trial court abused its discretion in finding that trial counsel's opening remarks opened the door to admission of a set of keys that the court had determined were improperly seized by the police and, accordingly, had suppressed. In pressing that claim, Rea effectively summoned supporting legal authority and sought to distinguish the facts of defendant's case from unfavorable precedents. She pointed out the evidence's prejudicial potential, and further attacked the People's proof in arguing that the keys' admission, if error, could not have been harmless. Rea advanced similarly well-versed and well-researched arguments concerning trial counsel's summation comments, which the trial court held opened the door to evidence of defendant's criminal history. She sternly attacked trial counsel's error and urged this Court to find it not only harmful error, but also fundamentally flawed representation.

None of these claims could be advanced by an appellate advocate who — as defendant now asserts — failed to review the trial record or conduct necessary legal research (Petition at 8). Indeed, defendant only cursorily criticizes the arguments Rea pressed on his behalf, and instead faults her primarily for what she did not do. But the claims defendant now insists would have carried the day lack any basis in fact or law.

8

**SR 354**

First, defendant argues the trial court erred when it denied his *pro se* motion, pursuant to CPL 330.30, to vacate the judgment against him (Petition at 11). That claim, however, cannot be raised in an application for a writ of error *coram nobis*, because it concerns the trial court's exercise of discretion, not the effective performance of appellate counsel. Put another way, defendant cannot fault appellate counsel for grievances that concern a stage of the litigation in which she was not involved. In any event, the claims defendant advanced in his *pro se* motion were properly aired before the trial court, and defendant was free to pursue a direct appeal of that decision to this Court, which he did not do, despite filing a *pro se* supplemental brief on his own behalf.

Next, defendant directs a barrage of attacks at appellate counsel's performance. First, defendant complains that his appellate attorney "fail[ed] to produce statutory [sic] required mitigating evidence" supporting "defendant's contentions that the crime could not have occurred under the circumstances alleged" (Petitioner at 3, 9). But it is beyond cavil that the Appellate Division's review is "limited by the record on appeal" (*Block v. Nelson*, 71 A.D.2d 509, 511 [1st Dept. 1979]). Accordingly, appellate counsel could not have "produced" mitigating evidence not presented at trial even if it could be shown that such evidence existed; such a claim may be raised only in a collateral proceeding.

Defendant also faults his appellate attorney for presenting "grossly substandard, rambling and incoherent" oral argument before this Court on October 3, 2010 (Petition at 3, 9). It is unclear on what basis defendant makes this allegation, as he has been continuously incarcerated since his conviction and could not have been present at arguments before this Court on October 3, 2010. Certainly nothing beyond defendant's own self-serving statement establishes that appellate counsel's argument was defective in any way, let alone "rambling" or "incoherent." In

9

**SR 355**

any event, this Court's rules do not require oral argument of an appeal.  *See* N.Y.C.R.R. § 600.11(f)(1) ("Counsel for the parties shall consult and determine whether they wish to argue or submit").[3]  Given that counsel was not required to present any argument at all, defendant is hard-pressed to claim that the argument she did present somehow constituted ineffective assistance of appellate counsel.

Defendant likewise complains that his appellate attorney misled him by promising to seek leave to appeal his conviction to the Court of Appeals, and then failing to make good on that promise.  But as the record here makes absolutely clear, Rea not only sought leave to appeal defendant's conviction to the Court of Appeals, but also supported her application with a 6-page supplemental letter explaining, in detail, why the Court should grant her application.  *See* Exhibits A, B.  Put simply, defendant's claim that Rea failed to seek leave to appeal to the Court of Appeals is flat-out wrong.

Defendant next faults his appellate attorney for electing not to challenge the legal sufficiency of the evidence supporting his conviction (Petition at 8).  But appellate counsel actually made a wise choice, given the quality and quantity of the evidence establishing defendant's guilt.  Defendant was apprehended by the police after he fled to a dark room which contained no furnishings, clothing, or personal items, but was littered with drug paraphernalia: plastic baggies, wrappers, cutting agents, multiple digital scales, and a heat sealer.  The police additionally recovered three large chunks of cocaine from a safe in the room's closet, along with $1100 in cash and some additional cocaine already packaged for sale.  Moreover, a second-floor apartment wired to the same CCTV surveillance system as the fourth-floor apartment was

---

[3] The authority to which defendant turns for support — the Seventh Circuit's decision in *Kubat v. Thieret*, 867 F.2d 351, 368 (7th Cir. 1989) concerned *trial counsel's* "rambling and incoherent" closing argument, which the District Court concluded "may actually have strengthened the jury's resolve to impose a death sentence" in that case.  That is a far cry from defendant's current complaint that appellate counsel's oral advocacy did not carry the day.

10

similarly stocked with drug packaging materials; defendant and Brown possessed keys to both apartments. Appellate counsel likely declined to challenge that evidence for the obvious and apparent reason that it was not only sufficient, but crushing.

In any event, although appellate counsel chose not to challenge the trial evidence, defendant certainly did so in his *pro se* supplemental brief, alleging that the evidence supporting his conviction was "weak," that the police testimony presented at trial was unworthy of belief, and that the People had failed to establish a proper chain of custody for the drug evidence admitted at trial. Accordingly, the First Department had full opportunity to review the sufficiency claims appellate counsel was ineffective in forgoing, and found them lacking. As this Court noted, the People's trial evidence "overwhelmingly established that defendant was a participant in a drug-selling operation and a possessor of contraband found in two apartments used as drug factories." *Green*, 82 A.D.3d at 593. Thus, appellate counsel's decision not to challenge the legal sufficiency of the evidence supporting defendant's conviction reflected a reasoned view of the trial record, and simply cannot have been ineffective, since a "defendant is not denied effective assistance of [ ] counsel merely because counsel does not make a motion or argument that has little or no chance of success." *People v. Stultz*, 2 N.Y.3d 277, 287 (2004). Indeed, this Court's assessment of the evidence makes it impossible for defendant to now argue that the outcome of his appeal would have been different, and more favorable, had counsel also raised a sufficiency challenge. Stultz, 2 N.Y.3d at 284; Benevento, 91 N.Y.2d at 714.

Defendant's remaining claims allege that his appellate counsel was ineffective for failing to challenge on direct appeal certain aspects of trial counsel's performance. But again, defendant himself raised numerous complaints about his trial attorney in his *pro se* supplemental brief. Many of the complaints defendant now lodges about his trial representation (*see* Petition at 40)

merely reprise those same arguments: namely, that his trial attorney was ignorant of the law and unprepared; that he failed to mount any cogent defense; and that he affirmatively aided the prosecution. *See* Petition at 40, 43. As a threshold matter, this Court determined that defendant's *pro se* claims of ineffective assistance were "unreviewable on direct appeal because they involve matters outside the record" (*Green*, 82 A.D.3d at 594) and should be raised not on direct appeal, but in a motion to vacate the conviction pursuant to CPL 440.10. *See People v. Rivera*, 71 N.Y.2d 705, 709 (1988); *People v. Love*, 57 N.Y.2d 998, 1000 (1982). Of course, appellate counsel cannot be faulted for recognizing just that, and raising instead an ineffectiveness challenge that was reviewable on the existing record.

Defendant's central complaints about his trial representation now focus on counsel's stipulation to the contents of the laboratory reports confirming that the white substance seized from the two apartments was, indeed, cocaine. In the main, defendant urges that he did not agree to the full scope of information included in the stipulation (Petition at 10, 12, 14, 31), and that the entry of the stipulation thus demonstrated a "conflict of interest" between defendant and his trial attorney because counsel effectively "created" evidence unfavorable to defendant (Petitioner at 4, 5, 13, 20, 30-31, 40). But the trial record concerning the stipulation is simple and clear. Trial counsel notified the court that the defense "agreed to stipulate that the white powdery substance [was] cocaine" (Petition, Exhibit G at 36). Defendant voiced no objection. Defendant likewise remained silent when the trial judge orally summarized the written stipulations for the jury (Trial: 464; Exhibits D, E). Thus, the existing record in no way supports defendant's current claims that his trial attorney, in collusion with the trial court, entered stipulations to which defendant had not agreed. And to the extent defendant bases that claim on information not

reflected in the record, once again he may raise such a claim only by way of a motion pursuant to CPL 440.10. *See supra.*

In any event, defendant is hard-pressed to maintain that his appellate counsel should have challenged trial counsel's thoroughly sensible decision to stipulate to the laboratory evidence. Nothing in the record suggests that either trial counsel or defendant had reason to suspect that the substance seized was not cocaine, or that the laboratory reports confirming the identification of the substance were somehow defective.[4]   Under those circumstances, trial counsel made the entirely sensible decision to stipulate to the contents of the chemists' reports and concentrate instead on challenging the People's proof that defendant possessed the drugs.   And, of course, the quantity of cocaine seized in this case — just over 18 ounces — was considerable; prolonged testimony about the laboratory analysis would have served only to focus the jury on that damning evidence. *See, e.g., People v. Vega*, 268 A.D.2d 257, 257 (1st Dept. 2000) (stipulation appropriate where "[t]here was no reason to doubt the accuracy of a routine laboratory report . . . and counsel properly chose not to distract the jury"); *People v. Brown*, 175 A.D.2d 210, 211 (2d Dept. 1991) ("The tactic of stipulating . . . was a prudent strategy, reasonably designed to avoid lengthy testimony by the police chemist which might have emphasized in the mind of the trier-of-fact the quantity and quality of the contraband recovered"); *People v. Lane*, 83 A.D.3d 1118, 1119 (3d Dept. 2011) (stipulation to physical injury strategically avoided lengthy testimony emphasizing the severity of the victim's injuries).   And, of course, because defendant's trial attorney cannot be faulted for adopting a sound trial strategy, defendant's appellate attorney can scarcely be ineffective for failing to challenge that decision on appeal.

---

[4] To be sure, defendant's 330.30 motion sought to gain traction on a variation on this claim by pointing to a newspaper account of problems in the NYPD crime lab.  But nothing in that article pertained to defendant's case, and the allegations defendant fashioned on that basis were sheer speculation.

13

Defendant's remaining complaints about the trial stipulations may be dispensed with quickly. First, although defendant protests repeatedly that the stipulations were procedurally defective because they were not reduced to writing, the written stipulations appended to the instant response give the lie to that claim. *See* Exhibits D, E. The written stipulations likewise dispose of defendant's claim that the prosecutor and defense counsel entered into the stipulations without giving "fair notice" to defendant of the content of that agreement (*see* Petition at 22-23, 31). Section 2104 of the Civil Practice Law and Rules, on which defendant bases his claim, states that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." To the extent that CPLR § 2104 even applies to the entry of stipulations in criminal matters, its demands would appear to have been met here: the attorneys agreed to the stipulation in open court *and* reduced the agreement to writing. Accordingly, defendant's contentions that the stipulation was procedurally defective are baseless under any analysis.

Next, defendant — apparently unaware of the written stipulations (Petition at 14) — argues that the trial court modified the core agreement of the stipulation by "includ[ing] chain of custody of the evidence" in his recital (Petition at 12, 21, 22). But as the stipulations and the trial record make plain, the "chain of custody evidence" which defendant now protests was part of the written agreement the judge summarized for the jury (see Exhibits D, E; Trial at 464). Accordingly, the judge was not acting as an "unsworn witness" or expressing a "personal belief" as to the "truth or falsity" of the evidence: he was simply reading aloud the salient details of the stipulation (Petition at 39).

Finally, defendant protests that a stipulation between defense counsel and the People is not the equivalent of a binding stipulation between the People and defendant himself (Petition at 31). But it is well-established law that, by accepting an attorney's representation, a defendant "relegates control of much of the case to the lawyer except as to certain fundamental decisions." *People v. Ferguson*, 67 N.Y.2d 383, 390 (1986). Thus, a defendant retains the authority to decide such issues as "whether to plead guilty, whether to waive a jury, whether to testify at trial, and whether to take an appeal" (*Id.*), while his attorney is "entrusted with sifting out weak arguments, charting strategy and making day-to-day decisions over the course of the proceedings." *People v. Rodriguez*, 95 N.Y.2d 497, 502 (2000). The decision to enter into a strategically advantageous stipulation undoubtedly falls into the latter category of concerns. Accordingly, defense counsel had the authority to enter into the stipulation on defendant's behalf, and defense counsel's exercise of that authority here cannot be seen, defendant's insistence notwithstanding, as "deceit" perpetrated against either defendant or the court (Petition at 30-31). And, again, appellate counsel cannot be adjudged ineffective for failing to challenge a strategic decision that was both within trial counsel's authority and discretion and almost unquestionably wise.

*    *    *    *

In short, the issues defendant maintains appellate counsel should have raised simply have no merit, and defendant has failed to show that he was not ably represented by counsel on appeal. Accordingly, defendant's application for a writ of error <u>coram nobis</u> should be denied.

Appended hereto are the following exhibits:

Exhibit A      Appellate Counsel's April 20, 2011 Application for Leave to Appeal to the Court of Appeals

Exhibit B      Appellate Counsel's May 23, 2011 Supplemental Leave Application

15

**SR 361**

Exhibit C      August 25, 2011 Order Denying Leave to Appeal to the Court of Appeals

Exhibit D      Court Exhibit 1, Stipulation

Exhibit E      Court Exhibit 2, Stipulation

Dated: New York, New York
       October 1, 2012

Britta Gilmore
Assistant District Attorney
(212) 335-9302

cc:   Mr. Edward Green
      08-A-5510
      Eastern Correctional Facility
      P.O. Box 338
      Napanoch, NY 12458-0338

16

**SR 362**

STATE OF NEW YORK        )        The People of the State of New York
                         ) ss.:                     against
COUNTY OF NEW YORK )                Edward Green, Ind. No. 5643/07

Steven Marcus, being duly sworn, deposes and says that I am not a party to the within

action, and I am over 18 years of age.

On October 2, 2012, I served 1 copy/copies of this Opposition to Defendant's

Application for a Writ of Error <u>Coram</u> <u>Nobis</u> on the parties and persons below at the

address(es) below designated by him/her/them for that purpose:


[ x ]    by mailing the copy/copies to the said person at the address designated for that
         purpose by depositing the same with the United States Postal Service in a first-class,
         properly-addressed, postage-paid wrapper.


**MR. EDWARD GREEN**
**08-A-5510**
**Eastern Correctional Facility**
**P.O. Box 338**
**Napanoch, NY 12458-0338**


Sworn to before me this ___2___
day of ___Oct.___, 20 _12_

_____
          Notary Public

NICOLE ANGELA COVIELLO
Notary Public - State of New York
NO. 02C06226162
Qualified in New York County
My Commission Expires 5/2/14

**SR 363**

# EXHIBIT A



*actios*

**Criminal Appeals Bureau**
199 Water Street
New York, NY 10038

Tel: 212-577-3403
www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Steven Banks**
*Attorney–in–Chief*

**Seymour W. James, Jr.**
*Attorney–in–Charge*
*Criminal Practice*

*Gilmore*
*Glaser*

April  20, 2011

The Honorable Jonathan Lippman
Chief Judge
Court of Appeals
Eagle Street
Albany, New York  12207
Attn: Andrew W. Klein

Re:   <u>People v. Edward Green</u>
Ind. No. 5643/07

Your Honor:

Pursuant to Criminal Procedure Law, Section 460.20, I am submitting this letter as an application for permission to appeal to the Court of Appeals in the above-entitled case.  An application has not been made to a justice of the Appellate Division.  By decision rendered  March 24, 2011, the Appellate Division First Department, affirmed a judgment rendered October 8, 2008, by the Supreme Court New York County, convicting appellant of after trial of criminal possession of a controlled substance in the first and third degree and two counts of criminally using drug paraphernalia and sentencing him to an aggregate term of 15 years.

I am enclosing copies of the briefs filed in the Appellate Division and that Court's order and opinion. Please advise me of the judge designated to decide this application so that I may send that judge a follow-up letter in support of the application.  We request this Court to consider and review all issues outlined in defendant-appellant's brief.

Respectfully yours,

NATALIE REA
Associate Appellate Counsel
212-577-3403

Encl.
cc:    Hon. Cyrus R. Vance Jr.   *w/o ENCL.*
       N.Y. County District Attorney
       One Hogan Place
       New York, New York 10013
       Attn: Britta Gilmore

# EXHIBIT B



**THE LEGAL AID SOCIETY**

*Active*

**Criminal Appeals Bureau**
199 Water Street
New York, NY 10038

Tel: 212-577-3403
www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Steven Banks**
*Attorney–in–Chief*

**Seymour W. James, Jr.**
*Attorney–in–Charge*
*Criminal Practice*

REC
APPEAL

2011 MAY 25   P  2: 42

DISTRICT
NEW YO.    NTY

*Gilmore*
*Glaser*

May 23, 2011

The Honorable Theodore T. Jones
Court of Appeals
20 Eagle Street
Albany, New York  12207

> Re:   Re:   People v. Edward Green
>            Ind. No. 5643/07

Your Honor:

Leave to appeal should be granted in this case to allow the Court to answer two questions:

1) When parties agree before jury deliberations to send the exhibits into the jury room, are subsequent ambiguous exhibit-related jury notes ministerial and thus exempt from the notice-to- and input-from-counsel requirements of C.P.L. §310.30 and People v. Tabb, 13 N.Y. 3d 852 (2009)?  The Court of Appeals should resolve the conflict between the First and Fourth departments on this issue.

2) Whether the right to be present at a suppression hearing must be waived by the defendant in person or can be waived by counsel?  Certainly People v. Vargas, 88 N.Y. 2d 363 (1996) suggest that only the defendant can waive such a right.  The First Department disagees.

I.      The Jury Note

        A.      Legal and factual background

Section 310.30 of the Criminal Procedure Law and the Court of Appeals in People v. O'Rama, 78 N.Y. 2d 270 (1991) set forth the meticulous procedures to be followed when a deliberating jury sends a substantive note. People v. Kisoon, 8 N.Y. 3d 129, 134-35 (2007). When the court receives the note, it must be marked as a court exhibit and, before the jury is recalled, it must be read verbatim into the record in the presence of counsel. People v. Tabb, 13 N.Y.3d 852 (2009).  Counsel must then be given a full opportunity to suggest an appropriate response.  The court should inform counsel of the substance of its intended

response so that he or she can request modifications before the jury returns to the courtroom. When the jury returns, the answer must be read in open court. Kisoon, 8 N.Y. 3d at 134-35. In Tabb, the Court added that "[i]n the absence of record proof that the trial court complied with the core responsibilities under C.P.L. §310.30, a mode of proceedings error occurred mandating reversal." Id.

The only exception to the application of these precautions is when the request from the jury is ministerial and a note is ministerial when counsel could have no meaningful input. People v. Snider, 49 A.D. 3d 459 (1st Dept. 2008); People v. Williams, 38 A.D. 3d 429 (1st Dept. 2007)(note was ministerial where the court's communication with the juror was the equivalent of saying "wait").

B.      Conflict between the First and Fourth Departments

Appellant was charged with criminal possession of a controlled substance in the first and third degrees. The central question at trial was whether appellant had dominion and control over the apartment in which drugs were found. Before commencement of deliberations, the court asked what defense counsel wanted to do about the exhibits and the alternate jurors. The defense stated that it had "no objection to the jury examining the evidence" (624). The first note from the jury asked for "polaroids, keys, locks, defense's pictures, + scale(s)." (A copy of the note is enclosed). The lock and key were in Exhibit 4.

In its second note, the jury requested "to try key in lock. Can we open the bag?" (A copy of the note is enclosed). With that request, the jury was asking to embark on a demonstration in the jury room that had never been conducted in the courtroom. The request was equivalent to introducing extra-record information into the jury deliberations, see, People v. Brown, 48 N.Y. 2d 388 (1979), or to the jury asking about unexplained characteristics of an item of evidence, see People v. Betts, 70 N.Y. 2d 289, 295 (1987). Counsel had to have the opportunity to give the court reasons why the request was substantive. As in Tabb, "[n]othing in the record indicated that the court informed defense counsel," "about the contents of the note." The record does not indicate how the note was answered.

Without citing Tabb, the First Department considered the note as nothing more than a request to apply "everyday experiences, perceptions, and common sense." Given the pre-deliberations agreement to provide the jury with the exhibits, the First Department held that "under the circumstances of this case," the note was ministerial and, under People v. O'Rama, 78 N.Y. 2d 270 (1991), C.P.L. §330.10 did not require notice-to or input-from-counsel.

In a similar situation, the Fourth Department held that notice to, and input from, counsel were necessary before responding to the note. People v. Kalinowski, __ N.Y.S. 2d __, 2011 WL 1733899 (4th Dept. 2011). In Kalinowski, before the commencement of deliberations, "the attorneys and the court agreed that, if the jury requested certain items of evidence, the court would provide the jury with the evidence without first reassembling the parties in the

courtroom." During deliberations, the jury sent a note asking for further information regarding the path of the bullet "does the autopsy report clarify the exact path of the bullet wound in the decedent's head – if so, can we please hear/see the path of the wound and/or autopsy report." As in the case at bar, there was no evidence on the record that the attorneys were apprised of the note or its content. The Fourth Department held that since the note was ambiguous and did not merely request "the autopsy report or another exhibit," <u>Tabb</u> and CPL §310.30 required notice to, and input from, counsel.

     C.    <u>The question</u>

Leave should be granted to determine whether a pre-deliberation agreement to send the exhibits into the jury room means that subsequent ambiguous exhibit-related jury notes are ministerial and exempt for C.P.L. §310.30 requirements. In the First Department, such exhibit-related notes -- requesting to open, handle, use, and do virtually anything to the exhibits – are ministerial and exempt from the notice to, and input from, counsel requirements. <u>People v. Green</u>, 82 A.D. 3d 593 (1st Dept. 2011). In contrast, the Fourth Department held that an ambiguous exhibit-related note requires the court to notify, and seek input from, counsel before answering and thus, before determining whether or not a note is ministerial. <u>People v. Kalinowski</u>, __ N.Y.S. 2d __, 2011 WL 1733899 (4th Dept. 2011).

II.    <u>Defendant's implicit waiver to be present at the suppression</u>

     A.    <u>Legal Background</u>

When a search warrant is based on facts provided by an informant, the defense can challenge the basis of the warrant at a <u>Darden</u> hearing. <u>People v. Darden</u>, 34 N.Y. 2d 177 (1974). The purpose of the hearing is essentially limited to the the existence of the informant. To protect the identity of the informant, the defendant does not have a right to be present at such a hearing. <u>Id.</u> The question is whether the evidence elicited in the absence of the defendant at the <u>Darden</u> hearing can be used as a substitute for a suppression hearing without a personal waiver by the defendant of his right to be present at the suppression hearing?

Indeed, in New York, a criminal defendant has a constitutional right to be present at all material stages of the proceedings and a statutory right to be present at ancillary stages when he/she has something to contribute or when his/her presence may affect the ability to defend. U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6; C.P.L. §260.20; <u>Snyder v. Massachusetts</u>, 291 U.S. 97 (1934); <u>People v. Dokes</u>, 79 N.Y. 2d 656 (1992). A defendant has a right to be present because courts recognize the significant input a defendant has in a case. <u>People v. Dokes</u>, 79 N.Y. 2d 656 (1992). Critical stages of the proceedings include the right to be present at a suppression hearing. <u>People v. Anderson</u>, 16 N.Y. 2d 282 (1965).

In the context of the defendant's right to be present at sidebars during voire dire, the Court found no waiver where there is nothing on the record to support any inference that the defendant was advised of his right and waived it. People v. Vargas, 88 N.Y. 2d 363 (1996). To be valid, the waiver must be made by the defendant in person, knowingly, voluntarily, and intelligently after he or she has been informed of right to be present, as well as the consequences of not being present . People v. Parker, 57 N.Y. 2d 136, 141 (1982).

B.      Factual Background

A search warrant was issued in this case for apartments on the second and third floor of a building. The police entered and searched the second floor apartment pursuant to a search warrant and a fourth floor apartment without a warrant. Appellant was in the fourth floor apartment with drug paraphernalia. The police went to get another search warrant for the fourth floor and searched the entire apartment later. Counsel, describing appellant as the superintendent of the entire building, the manager of the first-floor laundromat, and an invitee in the fourth-floor apartment, moved to controvert the search warrants and to suppress the evidence recovered from the two apartments. The court granted a hearing as to the fourth-floor apartment but summarily denied the motion as to the second-floor apartment for lack of standing. The motion court specifically ordered a hearing "with regard to the legality of the detectives' initial entry into this fourth-floor apartment as well as their actions once inside." According to the court, the question was "[w]hether the information contained in the affidavit stemmed from unlawful police conduct and tainted the warrant application."

A "Darden-type" hearing was held where, according to the court, the issue would be "related to what was known and what was the basis for probable cause." It would be a hearing "at which the basis for the Police entry into the fourth-floor apartment ... would be explored." The confidential informant and the arresting officer, Detective Anthony Romero, testified at the Darden hearing. Counsel and appellant were not present.

Examined by the court, Detective Anthony Romero described the execution of the two search warrants. Essentially, one search team found the door to the second-floor apartment open and entered; the other team rammed down the door to the third floor. Instead of finding one apartment, however, they found four separate locked rooms with a bathroom and, as a result, they could not execute the third-floor warrant (H: 23, 29-32). At that point, they went to the fourth floor where they also found separate locked rooms.

When the court asked: "[h]ow was it that you went into the one [apartment] where whats-his-name [i.e. appellant] was found?" Romero said the lieutenant told him that "they [had] heard someone go into an apartment on that floor and slam a door (H: 29-31, 34, 39). Romero tried the keys recovered from the jacket in the second-floor apartment (H: 27, 31, 48). He put one of the keys into the fourth floor apartment door and turned it. Before opening, he announced "police;" no one answered; he repeated "police" then opened the door; appellant was sitting on the couch (H: 36, 44). They arrested him, turned on the light, and found drug

paraphernalia in plain view (H: 36-37). The officers later got a warrant to search the rest of the apartment (H: 39-40; T: 313). The court found no probable cause to enter the fourth-floor apartment but did not suppress the evidence, finding that appellant lacked standing (Decision, dated June 30, 2008, at 2).

The prosecution asked the court to limit its findings, in accordance with Darden, to the existence of the confidential informant and the information given by the informant to the officer who gave the information in support of the warrant (H: 58-59). The prosecutor asked that other issues such as the scope of the execution of the warrant be dealt with in an "adversary proceeding" (H: 60). The court agreed that ordinarily those would be the relevant issues but here a "different kind of hearing" had been ordered (H: 59). A hearing had been ordered "to decide about probable cause" (H: 59). Finding that there was no probable cause to search the fourth floor, the court concluded that there was no issue regarding the scope of the warrant (H: 60). The prosecutor commented that "this is a little bit awkward because we do have arguments and law upon which to base our arguments" (H: 64). The court said that its findings were not set in stone and counsel could supplement the record and file more papers. Counsel filed more papers but never asked to reopen the hearing. The court acknowledged that counsel and appellant had been excluded from the Darden-type hearing but it had "invited counsel to reopen the hearing for any reason, including cross-examination of Romero" (Decision, dated June 30, 2008, at 9) and counsel had declined.

On appeal, the People never claimed that appellant had been present at the Darden/Suppression hearing. The People argued that counsel had been given ample opportunity to reopen the hearing. The First Department agreed finding that "[appellant] waived any objection to the procedure by which the court resolved the suppression issues. .

C.    The question

In 1965, the Court of Appeals held that a judgment must be reversed where a defendant is involuntarily excluded from a suppression hearing. People v. Anderson, 16 N.Y. 2d 282 (1965). The question in this case is whether the defendant must waive that right in person or can waive his right to be present through counsel. People v. Parker, 57 N.Y. 2d 136, 141 (1982) and People v. Vargas, 88 N.Y. 2d 363 (1996) suggest that only the defendant can waive the right in person after being told by the court about the right and the consequences of his or her absence .

Leave to appeal should be granted to determine (1) whether a person must waive his right to be present at a suppression hearing in person and (2) whether an ambiguous exhibit-related jury note sent after an agreement to send exhibits into the jury room is subject to the notice-to and input-from counsel or is ministerial and exempt from the C.P.L. §310.30 and <u>Tabb</u> requirements.  Should your Honor wish to discuss this matter at a hearing, I would, of course, be most happy to do so at you convenience.

Respectfully submitted,


NATALIE REA
Associate Appellate Counsel
212-577-3403


Encl.
cc:      Hon. Cyrus R. Vance Jr.
         N.Y. County District Attorney
         One Hogan Place
         New York, New York 10013
         Attn: Britta Gilmore

# EXHIBIT C

# State of New York
# Court of Appeals

*Gilmore*
*Glaser*
*Reed*
*Simchi-Levi*

BEFORE: HON. THEODORE T. JONES

                         Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                              Respondent,

        -against-

EDWARD GREEN,

                               Appellant.

---

**ORDER DENYING
LEAVE**

5643/07

      Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law § 460.20 from an order in the above-captioned case;*

      UPON the papers filed and due deliberation, it is

      ORDERED that the application is denied.

Dated:  August 25, 2011
         White Plains, New York

                                      Associate Judge

***Description of Order:** Order of the Appellate Division, First Department, entered March 24, 2011, affirming a judgment of the Supreme Court, New York County, rendered October 8, 2008.

SR 374

# EXHIBIT D

CT. #/

VT. 93 SEP 1 1 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 93

THE PEOPLE OF THE STATE OF NEW YORK                    Indictment No.  5643/2007

-against-

EDWARD GREEN

Defendant.

It is hereby stipulated and agreed by the Assistant District Attorney Jason
Berland and counsel for the defendant, Arnold Keith, that if Gajendra Joshi were called to
testify at this trial, his testimony would be as follows:

1.  I am a chemist employed by the New York City Police Department
Crime Laboratory.

2.  I have had a formal education, and received intensive training at the
police laboratory in the field of chemical and microscopic analysis.  My duties include
performing analysis of various substances to determine whether narcotic drugs or controlled
substances are present.

3.  In accordance with the regular practice of the Crime Laboratory, I was
assigned to examine and analyze the contents of a Police Department property envelope
bearing precinct Voucher Number N932910.  The envelope was sealed and the seal was
intact.  The envelope was sealed by both gum seal and metal clasp.

4.  I opened the envelope by cutting open one side of it without disturbing
the sealed flap and removed cocaine from inside the envelope.

5.  I weighed the substance contained in the bag and found the total weight to
be .16 ounces, or 4.7 grams of cocaine.

6.  I performed chemical and microscopic tests upon the substance contained
in the bag.  I found that the substance contained in the bag was cocaine.

7.  When I finished my examination of the evidence, I placed the cocaine
back in the bag and placed the bag along with the property clerk's envelope and a report of
my findings in a large plastic envelope and then sealed said envelope.

8.  This envelope was assigned Police Laboratory Number 07-CSAS-118901
and returned to the safe at the Police Laboratory.

9.  Subsequently, and in accordance with the regular course of business of
the New York City Crime Laboratory, the plastic bag bearing Laboratory Number 07-
CSAS-118901 was taken to the Police Department Property Clerk for safekeeping.

SO STIPULATED:

Jason Berland
Assistant District Attorney

Arnold Keith
Counsel for Edward Green

Dated: New York, New York
          September 11, 2008

# EXHIBIT E

CT 2

PT.93 SEP 1 1 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 93

THE PEOPLE OF THE STATE OF NEW YORK

                          -against-

EDWARD GREEN

                                          Defendant.

Indictment No. 5643/2007

It is hereby stipulated and agreed by the Assistant District Attorney Jason Berland and counsel for the defendant, Arnold Keith, that if Aviva Lieberman were called to testify at this trial, her testimony would be as follows:

1.  I am a chemist employed by the New York City Police Department Crime Laboratory.

2.  I have had a formal education, and received intensive training at the police laboratory in the field of chemical and microscopic analysis.  My duties include performing analysis of various substances to determine whether narcotic drugs or controlled substances are present.

3.  In accordance with the regular practice of the Crime Laboratory, I was assigned to examine and analyze the contents of a Police Department property envelope bearing precinct Voucher Number N932912.  The envelope was sealed and the seal was intact.  The envelope was sealed by both gum seal and metal clasp.

4.  I opened the envelope by cutting open one side of it without disturbing the sealed flap and removed cocaine from inside the envelope.

5.  I weighed the substance contained in the bag and found the total weight to be 17.87 ounces of cocaine.

6.  I performed chemical and microscopic tests upon the substance contained in the bag.  I found that the substance contained in the bag was cocaine.

7.  When I finished my examination of the evidence, I placed the cocaine back in the bag and placed the bag along with the property clerk's envelope and a report of my findings in a large plastic envelope and then sealed said envelope.

8.  This envelope was assigned Police Laboratory Number 07-CSAS-118031 and returned to the safe at the Police Laboratory.

9.  Subsequently, and in accordance with the regular course of business of the New York City Crime Laboratory, the plastic bag bearing Laboratory Number 07-CSAS-118031 was taken to the Police Department Property Clerk for safekeeping.

SO STIPULATED:

Jason Berland
Assistant District Attorney

Arnold Keith
Counsel for Edward Green

Dated:  New York, New York
        September 11, 2008

**SR 378**

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on January 8, 2013.

Present:   Hon. Luis A. Gonzalez,                    Presiding Justice,
                Rosalyn H. Richter
                Sheila Abdus-Salaam
                Nelson S. Román,                      Justices.

------------------------------------X
The People of the State of New York,
                Respondent,

           -against-                           **M-4062**
                                          Ind. No. 5643/07
Edward Green,
        Defendant-Appellant.
------------------------------------X


        A decision and order of this Court having been entered
on March 24, 2011 (Appeal No. 4603), unanimously affirming the
judgment of the Supreme Court, New York County (McLaughlin, J.),
rendered on October 8, 2008,

        And defendant-appellant having moved, in the nature
of a writ of error coram nobis, for a review of his claim of
ineffective assistance of appellate counsel, and for related
relief,

        Now, upon reading and filing the papers with respect to
the motion, and due deliberation having been had thereon,

        It is ordered that said application is denied.


                    ENTER:



                                _____
                                         CLERK


**SR 379**