PROCEEDINGS

1        (A discussion was held off the record.)

2        THE COURT:  You can opt not to answer the

3   question.  You can say I am an idiot.  You have

4   two choices, in my view.  I can say at least one

5   felony drug conviction or I can say felony drug

6   convictions.

7        MR. KEITH:  Was there more than one?

8        THE COURT:  There is the Federal business

9   about the shotgun and a drug felony that he talked

10  about here.

11       MR. KEITH:  Right, but the plea in that

12  case was to a gun.

13       THE COURT:  We're talking about facts.

14  What you allege are facts about only a drug deal,

15  the significance of a scale.

16       MR. KEITH:  So the facts are that he pled

17  to a shotgun.  I don't think there was sufficient

18  evidence to connect him to the drug conspiracy.

19  In the Federal system, based on my experience and

20  understanding, if there is an indictment, they

21  usually go for the top count.  It must have been

22  clear and convincing evidence that he was not

23  guilty in order to let him plead to the gun.  They

24  do not plea bargain.

25       THE COURT:  I remember that from the

======PROCEEDINGS======

1    Sandoval discussions.  Anything you want to say

2    about the number of convictions.

3         MR. BERLAND:  The Federal conviction was

4    for possession of a firearm in the course of drug

5    trafficking.  I think he pled guilty to the gun in

6    drug trafficking.  However Counsel wants Your

7    Honor to phrase it.

8         THE COURT:  I will say "at least one drug

9    felony conviction."

10        MR. KEITH:  Specify the year.  It was in

11   1994.

12        THE COURT:  Do you want me to tell them

13   the sentence?  Do you know when he was released

14   from parole?

15        MR. BERLAND:  I do.

16        MR. KEITH:  I don't want to make it sound

17   like this happened yesterday.

18        THE COURT:  That's a valid point.  When

19   was he released?

20        MR. BERLAND:  I think I was from '96

21   to '01.

22        THE COURT:  Sure.

23        MR. BERLAND:  Can I take a one-minute

24   break.  I would fall asleep if I were them, too.

25   It is the only intelligent thing to do.

======YVETTE PACHECO  SENIOR COURT REPORTER======

PROCEEDINGS

1          (Whereupon, the sidebar conference

2     concluded and the proceedings continued in open court

3     as follows:)

4          THE COURT:  All right, I yield.  We'll

5     take a short break and then we'll come back and

6     we'll move this until it's over.  Keep an open

7     mind.  Do not discuss the case.  Further

8     developments will occur.

9          (Whereupon, a brief recess was taken,

10    after which the following proceedings were had:)

11         THE COURT:  Anything else anybody wants

12    to say?

13         MR. BERLAND:  He was incarcerated from

14    February 8, 1996 to February 13, 2001.

15         THE COURT:  According to the NYSID sheet

16    he was on Federal probation until

17    February of 2003.

18         MR. KEITH:  Your Honor.

19         THE COURT:  Yes.

20         MR. KEITH:  I think we should take a look

21    at exactly what Mr. Green was incarcerated for.  I

22    know the prosecutor had said that this weapons

23    conviction has something to do with the narcotics

24    trafficking.  I think at the very least that

25    specific crime should be brought forth.

YVETTE PACHECO  SENIOR COURT REPORTER

PROCEEDINGS

1    THE COURT:  When you say "brought
2    fought," what do you have in mind?
3    MR. KEITH:  I believe he pled to a
4    weapons charge.  I don't believe there is language
5    about narcotics trafficking.
6    THE COURT:  Do you have anything about
7    the besides the NYSID sheet?
8    MR. BERLAND:  Count two of the
9    indictment, Your Honor.
10   THE COURT:  On the NYSID sheet, count two
11   is listed as arms narcotics trafficking.  We're
12   about to do this.
13   MR. KEITH:  Below that it says, Charged
14   possession of weapon.  Plea sentence 60 months.
15   Clearly what's about to happen will drastically
16   change the case and deprive Mr. Green of a fair
17   trial.  There must be some alternate solution to
18   avoid this draconian result that's about to
19   happen.
20   THE COURT:  Like what?  You can use all
21   the adverbs you want, but you put us here.  What
22   is your next snappy solution to this conundrum?
23   Anything else?
24   MR. KEITH:  Yes, Your Honor.  As it
25   appears, Your Honor has come to the conclusion

YVETTE PACHECO  SENIOR COURT REPORTER

PROCEEDINGS

1    that the jury should be advised of some

2    information with regard to Mr. Green.  Maybe we

3    should reopen the trial and let me Mr. Green

4    testify.

5            THE COURT:  About what?

6            MR. KEITH:  About the case, about the

7    evidence.

8            THE COURT:  I'm here until 2002 and then

9    ten more years.  Do you want to be heard about

10   whether to put him on?

11           MR. BERLAND:  I don't see how the

12   procedure in any way would dictate allowing the

13   case to be reopened now because of a mistake, if

14   you will, or a door opening made by the defendant

15   that he should be entitled to put the client now

16   at this juncture because something he chose to do

17   didn't go as planned.  I would object.

18           THE COURT:  Are we bound by the same

19   Sandoval ruling?  I suppose we are; otherwise, the

20   application wouldn't have been made under those

21   circumstances.  Bring them out --

22           MR. BERLAND:  Your Honor, I ask that we

23   issue the Sandoval ruling.  I know there is the

24   kidnapping charge which Your Honor stated would

25   not be admissible.

==PROCEEDINGS==

1      THE COURT:  What would be the valid basis

2   on which to let the jurors know, in fact, it's not

3   only a drug charge going back a couple of decades,

4   but related to a kidnapping?  Things are supposed

5   to take a normal progression and that was valid at

6   the time it was made.  I don't know what has

7   happened, as annoying and stressing and

8   disappointing as it is, would cause that part of

9   ruling to alter.  If it was fair then, it strikes

10   me as fair now.  What's your argument?

11      MR. BERLAND:  Goes back to my original

12   argument a crime of dishonesty and deception, and

13   therefore should be admissible for the arguments I

14   made last week.

15      THE COURT:  Well, again, I will not

16   reopen it and change it notwithstanding.  If I had

17   known what was going to happen, perhaps, but not

18   now.

19      MR. KEITH:  Your Honor, he's not

20   testifying.

21      THE COURT:  Can you give me a little more

22   guidance about that?  This is starting to appear

23   on the record as if it's some sort of toying and

24   charade with regard to what the option is.  Now I

25   understand that defense attorneys feel like

==YVETTE PACHECO  SENIOR COURT REPORTER==

PROCEEDINGS

1    they're almost in a Hobson's Choice and a

2    Catch 22, when they're presented with horrible

3    alternative situation, but as a trial judge I've

4    gotten schooled into and have often heeded the

5    advice of giving the defense one last chance to

6    propose some alternative.  And so we were almost

7    ready to announce a portion of Mr. Green's

8    criminal history, when I said, Is there something

9    else you wanted to do.  You said, He'll testify.

10   I said, About what?  You told me that about seven

11   minutes ago, and now that's been altered.

12        Bring in the jury, and I'll tell them

13   about the criminal history as re--

14        MR. KEITH:  Before the jury is brought in

15   what are you about to tell the jury?

16        THE COURT:  Just what I told you.  You

17   suggested to me that you wanted it specific about

18   what the weapon conviction was.  The prosecutor

19   has got the second count of the weapon conviction

20   which says armed narcotics trafficking.  I plan to

21   say he was convicted of possessing a shotgun in

22   connection with an armed narcotics trafficking and

23   then I plan to say convicted of attempt to commit

24   a drug sale.  If they have to ask questions about

25   what does that mean "attempt," I will wait for a

YVETTE PACHECO  SENIOR COURT REPORTER

1     note if the deliberations ever begin, and since

2     you asked me to make it clear that he wasn't just

3     convicted or just released, I was going to tell

4     them that --

5          MR. KEITH:  I didn't say anything about

6     being released.

7          THE COURT:  No, but you did say you

8     wanted it clear that he wasn't just convicted.

9     The appropriate judicial response in my humble

10    opinion is to let the jury think that in 1996,

11    fairy dust were dropped on him and became a

12    felony, that was the end of the experience.  He is

13    in jail, not circulating, until 2000, of which

14    he's released from state prison, on parole until

15    October 7, 2002, and I believe on Federal

16    probation until February of 2003.  At that point,

17    he begins to get credit for five years or

18    four years of drug free and during, but not back

19    to '96.

20         MR. KEITH:  Would you consider, as an

21    alternative, that you instruct the jury simply

22    that with regard to an incident that occurred on

23    July 1, 1994, Mr. Green plead guilty to Attempted

24    Criminal Sale of a Controlled Substance?

25         THE COURT:  How about I say, "In

PROCEEDINGS

1    connection with an event in which he was an active

2    participant he was convicted in 1996."

3              MR. KEITH:  Right, in the incident

4    in '94, the conviction in '96.

5              THE COURT:  I will not use the word

6    "incident."

7              MR. KEITH:  That's when it happened.

8              THE COURT:  I'll make it a little more

9    accurate as opposed to passive.

10             MR. KEITH:  How are you going to say it?

11             THE COURT:  In relation to a drug sale in

12   he participated in in 1994, in 1996 he was

13   convicted of something known as an attempt to

14   commit criminal sale of a controlled substance.

15             MR. KEITH:  And to further comprise that,

16   being that we're going down this road, I don't

17   believe that the document that the assistant

18   district attorney has with regard to the Federal

19   case is the actual statute.  If we had the actual

20   statute, I would still not want it in.  I just

21   think that it's too overwhelmingly prejudicial and

22   would have a problem with giving Mr. Green a free

23   trial.

24             THE COURT:  I'm going to bring in the

25   jury and then we'll hear what I have to say --

══════ PROCEEDINGS ══════

1      MR. KEITH:  Of course, Your Honor, I

2  think because of all of this, all of the rulings

3  that were previously made in the case, there

4  should be a mistrial.

5      THE COURT:  Denied.  If there is a

6  conviction, I can fairly wait the two years until

7  the Appellate courts decide whether I was wrong or

8  right.

9      Bring in the citizens.

10      COURT OFFICER:  Jury entering.

11      THE COURT:  Sorry for the delay.  As I

12  said Friday, sometimes there is information that

13  becomes admissible or is admissible at on point

14  and not admissible at another point.

15      You're not to speculate about why you are

16  given certain information.  I emphasize that each

17  individual case has to be decided on its own

18  merits, but with respect to the analysis presented

19  so far, you should know that the defendant,

20  Mr. Green, has two convictions related to drug

21  felony charges.

22      One is for possessing a shotgun in

23  connection with armed narcotics trafficking.  That

24  was the Federal offense.  The event I believe was

25  from 1996, October, and that he was released from

═══ YVETTE PACHECO  SENIOR COURT REPORTER ═══

1   jail and that he was ultimately on Federal

2   probation until February 2003.

3         Also, in connection with a 1994 sale of a

4   controlled substance, in 1996, Mr. Green plead

5   guilty to a crime known as an attempt to commit a

6   drug sale.  He received a state prison sentence

7   and he was released from prison in October of 2000

8   and released from parole in October of 2002.

9         We'll hear the People's summation.

10         MR. BERLAND:  Ladies and gentlemen, this

11   is a straightforward and simple case.  I want to

12   make one thing absolutely clear to you right now

13   despite what defense counsel said during the

14   closing arguments, this is not my case, I don't

15   know have a personal stake in the outcome of this

16   case.  See, I represent you, the People of the

17   State of New York.  This is a case against

18   Edward Green.

19         This straightforward case is also a very

20   important case.  The defendant is charged with

21   possessing mass quantities of cocaine recovered

22   from the both the second and fourth floor

23   apartment at 451 Lenox Avenue and the defendant is

24   also charged with possessing an obscene amount of

25   paraphernalia from the two rooms.

SUMMATIONS - PEOPLE

1    This isn't a case about someone spitting

2    on the sidewalk.  This isn't a case about someone

3    blocking pedestrian traffic.  This is a case about

4    heavy-duty drug possession.  Because it is an

5    important case, doesn't make it a difficult case.

6    You, the jury, have heard all the

7    evidence.  It's been a very good trial.  Lasted

8    less than one week.  Soon, sometime today, you

9    will have to make some decisions.  I submit to you

10   in life there are easy decisions and difficult

11   decisions.  There are important decisions and

12   there are some decisions that just aren't so

13   important.

14   Just because something is important

15   doesn't make it difficult.  For example, this

16   morning when I work up and got dressed to come to

17   court, I had to put on a tie.  I opened the closet

18   door, looked at the ties, five to ten to choose

19   from.  It took some time.  It was a difficult

20   decision, but it didn't mean anything.  It wasn't

21   important in any way.

22   An easy decision will be like crossing

23   the street, getting from point A to point B.

24   Nothing hard about that.  But is an important

25   decision.  When you cross the street, if you are

YVETTE PACHECO  SENIOR COURT REPORTER

SUMMATIONS - PEOPLE

1  not paying attention, you don't look both ways,

2  you can get hit by a car, truck, bicyclist

3  catastrophic.

4       My point is you can have an important

5  decision which is really easy to make such as

6  crossing the street.  And I submit to you, ladies

7  and gentlemen of the jury, that when you go back

8  out to the jury room to deliberate, to decide this

9  very important case, it will be as easy as

10  crossing the street.

11       Now, there is nothing in the Judge's

12  charge, nothing that says you, the jury, need to

13  take a long time in reaching a verdict.  All that

14  is required of you is that you discuss the

15  evidence, listen to each other's views and follow

16  the law.

17       Each and every one of you were selected

18  for this jury because of your life experience and

19  your common sense.  When you go back to the jury

20  room to deliberate, don't check all that at the

21  door.

22       I'm confident that when you look at all

23  the evidence in its totality, you will not be left

24  sitting in the dark.  It will be clear as day that

25  the defendant was part of a drug team and that he

SUMMATIONS - PEOPLE

knew a pound of cocaine was stashed in the closet
in the fourth floor room.  I want to go over this
evidence with you now.  The evidence that will
help you in reaching a swift and just verdict.

Last night, I was compiling a list of all
the overwhelming facts proving the defendant's
guilt.  There are 20 overwhelming facts that I can
think of.

One, the defendant ran into the fourth
floor room.  He chose to go there.

Two, the defendant was sitting in the
dark when the police arrived.  The lights were
out.

Three, the defendant was frozen on the
couch and completely silent.  He refused to
acknowledge the police when they knocked on the
door and when they entered the apartment.

Four, there were black plastic bags --

MR. KEITH:  Objection to the last remark.

THE COURT:  Overruled.  You had your say.

I will explain what the law is.  I will.

Go ahead.

MR. BERLAND:  Four, there were black
plastic bags over the windows, over the window,
one window.  The black bags were placed there to

YVETTE PACHECO  SENIOR COURT REPORTER

1  prevent anyone from seeing in.

2      Five, there was a video surveillance

3  system set up in a single occupancy room that

4  doesn't even have a bathroom.

5      Six, a glass table for cutting and

6  processing cocaine was in the room and this table

7  was covered in cocaine residue.

8      Seven, there was a heat sealer in plain

9  view on the floor.  Ladies and gentlemen, a heat

10 sealer is not a common object that you buy at

11 Staples.

12     Eight, there was a digital scale with

13 cocaine residue on top of an exposed T.V. stand.

14 This scale, this stand were in plain view.

15     Nine, there was a large garbage bag

16 filled with kilogram wrappers on the ground in the

17 front room.  Most people, I submit to you, don't

18 have kilogram wrappers in their garbage.

19     Ten, there was Baking Soda and Peroxide

20 out up on the mantel.  These items were not in a

21 closet where you would expect them to be.

22     Eleven, there was another digital scale

23 on an end table, a heat sealer.  A digital scale

24 is not a common household item.

25     Twelve, there were cigar boxes out in the

1    open.  These boxes also contained cocaine residue.

2           Thirteen, there were Baggies labeled Red

3    Apple.  You heard that labeling bags are routine

4    in the drug trade.

5           Fourteen, there were playing cards with

6    cocaine residue throughout the apartment, cards

7    used to cut cocaine when it's being processed.

8           Fifteen, there were seven additional

9    digital scales and two additional heat sealers and

10   over 1,100 wads of cash in the closet.

11          Sixteen, one of the safes contained

12   cocaine that was prepackaged for distribution.

13   The cocaine was stashed away and ready to be sold.

14          Seventeen, another safe, the second safe

15   had large chunks of cocaine.  Over half a kilogram

16   was recovered from this safe.

17          Eighteen, the street value of all the

18   ones cut and put into the half-gram bags was worth

19   over $20,000.

20          Nineteen, everything in this tiny room,

21   smaller than the jury box, was within 15 feet of

22   the defendant's fingertips.

23          Twenty, the defendant had the key to the

24   room and keys for everything else in the building,

25   too.

SUMMATIONS - PEOPLE

1    Actually, there are 21 overwhelming

2    facts.  Twenty-one, the defendant is a convicted

3    felon for possession of a firearm while selling

4    drugs and also for attempting to sell drugs.

5    Defense counsel wants you to believe that

6    the defendant was merely in the wrong place at the

7    wrong time.  I admit this is ridiculous.

8    If you are depositing money in a bank and

9    a man comes in with a mask and gun and holds up

10   the bank, that's being in the wrong place at the

11   wrong time.  If you are sitting in the car and

12   another car rear-ends you at a red light, that's

13   being in the wrong place at the wrong time.  These

14   are random events.  These are events that can

15   happen to anybody, anybody.

16   There was nothing random in this case,

17   the case that you are deciding.  The defendant

18   made a conscious decision to go to the fourth

19   floor drug stash room.  The defendant made a

20   choice to flee from the police when he became

21   aware they were coming his way.  If the defendant

22   were innocent, he would have stayed in the

23   hallway.  After all, why flee --

24   MR. KEITH:  Objection, Your Honor.

25   THE COURT:  Overruled.

YVETTE PACHECO  SENIOR COURT REPORTER

SUMMATIONS - PEOPLE

1    MR. BERLAND:  I admit that people flee

2    from the police when they have done something they

3    should not have done.  How many times have any of

4    you or a friend been somewhere when the police

5    have shown up.  This is New York, roughly 40,000

6    police officers, there is a huge police presence.

7    So it happens occasionally when the police show

8    up.

9         I submit to you when you go back into the

10   jury room, if you take a poll, not one of you have

11   taken off running if the police have come your

12   way.  You do not take off running when you don't

13   have anything to hide.

14   MR. KEITH:  Objection, Your Honor.

15   THE COURT:  He is allowed to make that

16   argument.  The jury can use their common sense and

17   life experience.  On the matter of the rule, I

18   will instruct them specifically.

19   MR. BERLAND:  Also, ladies and gentlemen,

20   if the police knock on your door, and then open

21   your door, I submit to you you wouldn't sit there

22   silently as the defendant did.  You would say

23   wrong place, wrong time, or you would say I was

24   just resting or I was just working, but you would

25   acknowledge the police.

SUMMATIONS - PEOPLE

1       Defense counsel says to you you would sit

2   there quietly or silently like a statue just as

3   the defendant did.  He said he would sit there

4   quietly and silently as the defendant did.

5       MR. KEITH:  Objection.

6       THE COURT:  Keep Mr. Keith out of it.  He

7   shouldn't be in it. Overruled with that caution.

8       MR. BERLAND:  I submit that you would

9   open the door. Someone with nothing to hide would

10  open the door and acknowledge the police, but you

11  know that the defendant, a convicted drug felon,

12  had plenty to hide with that room.

13      Now, the defendant knew he couldn't leave

14  the building, the police were coming up the

15  stairs.  He didn't choose to go to a room on the

16  third floor.  He didn't choose the three

17  additional rooms up on the fourth floor.  He chose

18  the fourth floor stash room, the drug den. He

19  didn't fall from the sky in the room handcuffed

20  and blindfolded. He chose to go to the room. In

21  fact, he ran past all of the third floor rooms to

22  get up to the fourth floor stash room. This means

23  that he already knew where the stash room was and

24  that he knew he could get in and hide from the

25  police.

=SUMMATIONS - PEOPLE=

1    I submit to you that there are only three
2    ways that the defendant could get into the fourth
3    floor room. The first is that somebody let him
4    into the room. You know that's not the case
5    because he was all alone in the room when the
6    police got there and there was nobody in the
7    hallway next to the room. Nobody let him in.
8        The second way he could have gotten into
9    the room is if the door was left wide open.  I
10   submit to you that there's absolutely no way this
11   happened. Nobody will leave a room open that has
12   $20,000 worth of cocaine inside of it.  Nobody. It
13   absolutely defies logic.
14       Moreover, ladies and gentlemen, nobody in
15   their right mind would leave the door open to a
16   room that is sprinkled, and that is exactly what
17   the evidence shows, that was sprinkled with
18   residue, scales, heat sealers, bags and cutting
19   agents.  Nobody would do that.  He chose the door.
20   The defendant chose the stash room.
21       What do you know about the building based
22   on the testimony of Detective Hernandez and
23   Detective Romero?  You know the ground level door
24   had a lock. You know the main third floor door had
25   a lock.  You know the floor fourth floor stash

=YVETTE PACHECO  SENIOR COURT REPORTER=

SUMMATIONS - PEOPLE

1    room where the defendant was arrested had a lock.

2    That means that the defendant had to somehow get

3    through three locked doors to get into the fourth

4    floor stash room.

5         You know how he got into the room.  He

6    had the keys to the room clipped to his belt.  He

7    had dominion and control over the room. He had the

8    key to the room. He had the key to almost

9    everything else in the building, including the

10   second floor apartment where the actual sales were

11   taking place.

12        The defendant's keys, ladies and

13   gentlemen, are the keys to this case or at least

14   the icing on the cake. Use your common sense.

15   That's why you were selected for this case.

16        I submit to you that the reason the

17   defendant chose the stash room was because of

18   connection to the room, because he and this man,

19   this gentleman, Steven Brown, because he and

20   Steven Brown were acting together in this massive

21   drug information.

22        When he got to the room, he locked the

23   door and sat stone cold in silence, praying,

24   hoping that the police wouldn't find him, but

25   unfortunately for Edward Green they did.

SUMMATIONS - PEOPLE

1      Now, I want to take this one step further

2   for a minute.  I submit to you that that's not

3   unreasonable to come to the conclusion the

4   defendant actually placed cocaine in the safe when

5   he became aware that the police were coming his

6   way, when they were coming to the fourth floor.

7      Assume that the defendant had been

8   cutting and packaging cocaine before the police

9   arrived.  After all, there was heat sealer under

10  the table, cutting agents and bags within reaching

11  distance of the defendant and residue on the glass

12  table, on the working table.

13      MR. KEITH:  Objection, Your Honor.

14      THE COURT:  Mischaracterizing the

15  evidence.  There is a fine line between

16  speculating and arguing what might be decided to

17  be logical inferences, so I will tell them what

18  inferences are and I'll tell them what speculation

19  is. You are allowed to infer.  You cannot

20  speculate.

21      MR. BERLAND:  What I'm trying to say in a

22  nutshell, once the defendant realized the police

23  were on that way up the stairs, I cannot ask you

24  to speculate, you can never quite reasonably

25  believe that he took the cocaine and locked it in

SUMMATIONS - PEOPLE

1    the safe.  Do not get caught up on the fact there

2    is no direct evidence that the defendant knew the

3    combination of these two safes.

4          Remember, when I asked Detective

5    Hernandez last week when they entered the room, if

6    the defendant had the combination to the safes on

7    his hand, written across his forehead, a few of

8    you laughed.  I was trying to make a point.

9          There is absolutely no way to read a

10   person's mind.  No special device put on the

11   defendant's head to determine what he or she

12   knows. All we can do to determine what the

13   defendant might or might not know is to look at

14   the surrounding circumstances and determine what

15   makes sense.

16         Obviously, drugs will be kept in a safe,

17   especially when the drugs are worth well

18   over $20,000. Obviously, a safe with that kind of

19   product, the $20,000 worth of cocaine is going to

20   be locked.  Now, the majority of safes have

21   combinations to open them.

22         To say that there is no way that the

23   defendant had dominion and control over the safes

24   because they were locked in a closet, and that's

25   essentially what the defense wants you to do, to

=SUMMATIONS - PEOPLE=

1  believe, would mean that any large quantity of

2  drug cases, there would be no way to prove --

3          MR. KEITH:  Objection, Your Honor.

4          THE COURT:  Sustained as to what the

5  defense wants the jury to believe. Argue what the

6  facts support.

7          MR. BERLAND:  The drugs here were in a

8  locked safe.  In any large quantity drug case,

9  that's exactly where they'll be, locked up in a

10 safe, especially when it is worth as much money as

11 the cocaine was worth in this case.

12         You have to look at the big picture.  You

13 have to look at the surrounding circumstances and

14 that brings me full circle back to the 21

15 overwhelming facts; heat sealer, digital scale,

16 baggies, residue and the defendant had keys to the

17 room.

18         Getting back to this idea of wrong place,

19 wrong time.  The defense has not contested most of

20 the facts established by the experienced

21 detectives who testified before you.

22         Yes, he tried to attack the credibility

23 of Detective Romero because of some minor

24 inconsistencies at prior proceedings,

25 inconsistencies which were easily explained by the

1    detective on the witness stand.  I submit to you

2    this is all smoke and mirrors.

3         Stay focused.  Don't be fooled.  The

4    facts speak for themselves. Defense counsel

5    suggested that Detective Romero, who has been on

6    the force for 17 years somehow dropped the ball

7    because he didn't test the drugs or the keys or

8    anything for fingerprints or DNA. This wasn't a

9    who-done-it. This wasn't like a gunpoint robbery

10   where you have a gun but no suspect. Of course you

11   will test the gun for DNA or fingerprints. That's

12   not the case here.

13        The defendant was sitting in a room with

14   paraphernalia everywhere, everything within the

15   fingertips, the drugs in the safe and he had the

16   keys. This wasn't like a gunpoint robbery a gun

17   and no suspect. Again, stay focused because the

18   facts really are overwhelming.

19        All right, the defense in this case does

20   not contest that half a kilogram of cocaine was,

21   in fact, recovered from the fourth floor stash

22   room or paraphernalia in that room for that matter

23   because the defense accepts that which they cannot

24   deny.  It's hard to argue that they were not

25   really plastic Baggies lying around the room,

1    although they wanted to minimize, or there was not

2    a white powdery substance on the table, although

3    they want you to believe it was Mylanta or

4    lactate, even though none of those were recovered

5    from the room.

6         See, what the defense does deny, ladies

7    and gentlemen, is that in spite of all of the

8    overwhelming paraphernalia and residue in the tiny

9    room and the fact that the defendant had the key

10   to the room, defendant had no knowledge that drugs

11   were being stored in the safe, that he had no

12   access to the drugs, no dominion and control, as

13   the law puts it.

14        Suppose you and I were at a bar and I

15   showed you these pictures. They are not the best

16   pictures.  Suppose I showed you the pictures and

17   told you there was a guy caught sitting in the

18   dark on the couch in a tiny room with

19   paraphernalia everywhere, half a kilogram of

20   cocaine in the closet and keys to the building and

21   everything else, and, by the way, a convicted drug

22   felon and he knew nothing about the drugs.  You

23   would laugh.  You would say, Come on, of course he

24   knew. This was a stash apartment.  There's going

25   to be cocaine. There's going to be stash.

SUMMATIONS - PEOPLE

1          Please, please, do not check your common

2     sense at the jury room door.

3          Now, the defense brought out the fact

4     that the defendant, Edward Green, was not the

5     initial target of the search warrant.  That's

6     correct. Steven Brown was the initial target.

7     Defense counsel wants you to believe that because

8     Steven Brown was the target, that somehow that

9     exonerates the defendant, but actually, it's the

10    opposite.

11         Detective Hernandez told you last week

12    that the police had information that there was a

13    stash apartment on the upper floors of --

14         MR. KEITH:  Objection.

15         THE COURT:  Overruled. There was evidence

16    that it was above the second floor somewhere. It

17    is the jury's recollection that controls. If you

18    need the record searched, you want to hear that or

19    anything else, you have the absolute right and

20    I'll explain that to you.

21         MR. BERLAND:  If you want to hear

22    anything, you can have it read back. That was said

23    on Thursday, so please take a look at it, that the

24    police had information that drugs were being --

25    sold in the second floor where Steven Brown was

1    and stored somewhere above the second floor, the

2    upper two floors of the building.

3         You know from Detective Hernandez'

4    testimony that there are sale apartments and there

5    are stash apartments. Second floor apartment was

6    the stash room.  The fourth floor room was the

7    stash sale room, and both rooms had surveillance

8    and this is common in the drug trade.

9         MR. KEITH:  Objection.

10        THE COURT:  Overruled.

11        MR. BERLAND:  Steven Brown was arrested

12   in the sale apartment. The boss or higher-up, I

13   submit to you, would never be in the sale room.

14   That's for the workers.  The boss would distance

15   himself. The defendant would distance himself from

16   the sale apartment so that he wouldn't be

17   compromised because if someone got access to the

18   operation and told the police, it's likely the

19   police would have information on the seller, the

20   sale apartment.  It makes sense.

21        So the defendant is not innocent because

22   the police had information about Steven Brown

23   selling on the second floor. It just shows how

24   both men were acting in concert together to store,

25   package and distribute cocaine.  How both men were

1  in possession of all of the drugs recovered in the

2  two apartments.

3        And listen carefully.  I am sure you will

4  listen carefully to the judge when he instructs

5  you on the on the law.  Possession, even if joint,

6  is still possession. Edward Green and Steven Brown

7  were possessing and selling cocaine together. I

8  submit it really is that simple.

9        Now the surveillance system.  On November

10  1st of last year, only the second floor apartment

11  and fourth floor room were wired for surveillance.

12  No other rooms were wired. You heard from

13  Detective Hernandez and Detective Romero, they

14  testified to that.

15        Now, defense counsel and in his closing

16  arguments stood about 25 minutes talking about the

17  picture introduced into evidence showing all these

18  wires. The defense told you in no way is that

19  evidence.  What is evidence is what came from the

20  witness stand from two credible, I submit credible

21  detectives with a combined 40 years on the job.

22        Now, these detectives had never met

23  Steven Brown before November 1, 2007. They had

24  never met Edward Green, the defendant, before

25  November 1, 2007.  They had no reason to set

=SUMMATIONS - PEOPLE=

1    anybody up or frame anybody. They told you about

2    the thousands of search warrants, hundreds of

3    arrests made during the illustrious careers. This

4    is all smoke and mirrors.

5         The defense spent a quarter of the

6    summation trying to cloud the issue by showing

7    pictures, which you do not know, which the

8    detectives don't even know when they were taken

9    because they did not take the pictures. So just

10   please stay focused.

11        I want to talk to you now about the

12   defendant's connection to Steven Brown. His

13   connection to the second floor apartment.  You

14   know the defendant had the keys to the second

15   floor, the sale apartment, as well as the fourth

16   floor stash room. Detective Romero told you this

17   on Friday and the keys are in evidence.

18        The fact that the second floor door lock

19   was not vouchered is irrelevant because

20   Detective Romero explained to you why the police

21   didn't take the lock to the second floor. The door

22   to the second floor was wide open when the police

23   arrived at 451 Lenox Avenue, when they were

24   executing the initial search warrants. They didn't

25   need to take the lock. They didn't need evidence

=YVETTE PACHECO  SENIOR COURT REPORTER=

=SUMMATIONS - PEOPLE=

1   to show how they opened that door, the second

2   door.  He testified it was already open.

3        Moreover, the bulk of the cocaine, half a

4   kilo, more than a pound, greater than 17 ounces

5   was found in the fourth floor room and the police

6   did have to open the room with the key.

7        They obviously, needed fourth floor lock

8   to show how they were able to open the door back

9   on November 1, 2007. They took the lock. It is in

10  evidence. Detective Romero explained it. Counsel

11  spent ten minutes arguing that police have not

12  dropped the bomb by not bringing in the second

13  floor lock.

14       What do you know?  You know that Steven

15  Brown opened the fourth floor door and that he had

16  a key to the second floor apartment.  I submit, it

17  makes no difference whether the keys were found in

18  Steven Brown's pants, hand or jacket or whether

19  the jacket was in the back of the chair. They were

20  his keys. It's not a contention. The keys opened

21  the door.  You know Steven Brown had keys to both

22  rooms and you know Edward Green had keys to both

23  rooms.

24       Ladies and gentlemen, the People's theory

25  of this case is that the defendant, together with

=YVETTE PACHECO  SENIOR COURT REPORTER=

SUMMATIONS - PEOPLE

1    Steven Brown, possessed all, all of the drugs in

2    both the rooms and that there is only one reason

3    that they possessed all the prepackaged and raw

4    cocaine and that was to sell it. This was a drug

5    operation in the business of selling drugs.

6           Edward Green and Steven Brown possessed

7    all of this cocaine together, all of this cocaine

8    together with intent to sell the cocaine. This is

9    the second charge that you will be asked to

10   consider in a few minutes, whether the defendant

11   possessed $20,000 worth of cocaine with the intent

12   to sell it.

13          MR. KEITH:  Objection.

14          THE COURT:  Overruled.  Some of all of

15   it.  Overruled.

16          MR. BERLAND:  You should know there's

17   nothing in the law stating that evidence needs to

18   be presented at the sale or the sale was imminent

19   or that a particular buyer be named. All that is

20   required is that it's proven beyond a reasonable

21   doubt that the defendant's objective was, at some

22   point, to sell that cocaine.

23          I submit to you the only, only possible

24   thing a drug deal here, convicted drug felony does

25   with $20,000 worth of cocaine, half kilogram of

1    cocaine is to sell the cocaine. It's a business

2    and the cocaine was a product. I submit that this

3    charge, count two is proven well beyond a

4    reasonable doubt.  It's not even a close call.

5           Now, ladies and gentlemen, I submit to

6    you that there is an easy way when you go back to

7    the jury room today to reach a verdict on all

8    counts. It should be clear as day now.

9           You know that Steven Brown was in the

10   sale room and Edward Green was in the stash room.

11   You know that both rooms were wired for

12   surveillance, both rooms had matching Philly cigar

13   boxes, and distinct plastic baggies labeled Red

14   Apple.

15          Yes, they are common bags, as defense

16   counsel told you.  They are common in the drug

17   trade. If you go back and look in the cabinets,

18   none of the baggies have Red Apple stamped on

19   them. All right, along with all the other matching

20   paraphernalia had cocaine packaged the same way,

21   half kilogram heat-sealed bags.  None of these

22   facts are in dispute.

23          Even though it is the People's position

24   that the defendant was a higher-up in the

25   organization, you can disagree with me and still

=SUMMATIONS - PEOPLE=

1    convict on everything. You do not need to

2    determine the defendant was the boss.  You do not

3    need to determine the defendant was the owner of

4    the apartment.  All you need to determine is that

5    he acted with Steven Brown to aid in the

6    possession of drugs. You can convict, even if you

7    find that the defendant was merely aiding in the

8    possession of the drugs.

9         Listen carefully.  I will not get into

10   the law.  Listen carefully when judge instructs

11   you on accomplice liability or acting in concert.

12   I submit to you that you can infer, at the very

13   least, that he wasn't a worker.  He wasn't a

14   buyer. You know he wasn't let in.  You know he

15   didn't fall through the sky.  You know he was in

16   the stash room for a reason. He let himself in and

17   the keys found clipped to the waist.

18        Let's assume that the defendant didn't

19   know about the drugs in the safe.  That's clearly

20   not the case.  Assuming he didn't know about the

21   drugs, he'd still be aiding in the possession of

22   drugs because an accomplice in the drug trade,

23   low-level worker doesn't need to possess the

24   drugs, doesn't need to have control over the

25   drugs, just needs to be aiding in the operation.

=YVETTE PACHECO  SENIOR COURT REPORTER=

SUMMATIONS - PEOPLE

1         Knows what that room looked like. You

2    know the defendant wasn't a stranger to the room.

3    He's guilty of everything, even if you think he

4    was just a low-level worker within the operation.

5    Ladies and gentlemen, I submit to you that we --

6    the evidence speaks for itself, and the evidence

7    really is overwhelming.

8         Back to "wrong place at the wrong time"

9    from a moment.  Assuming now that the defendant

10    was not a higher-up in the organization.  Assuming

11    that he wasn't even a low-level seller that he

12    didn't flee from the police. Assuming he was

13    really looking for a quiet place to take a rest

14    and wanted to chill out on the couch in the dark,

15    or assume for a minute that he really was

16    superintendent of the building.  There is no

17    evidence.

18         Assume he was the superintendent of this

19    building and set out to distribute mass quantity

20    of drugs. I submit to you that drug dealers would

21    never give up the keys to a stash room containing

22    $20,000 worth of drugs to a random superintendent.

23    They would never give up the keys to a complete

24    stranger.

25         Assume for a moment that's the case that

YVETTE PACHECO  SENIOR COURT REPORTER

1    the defendant was working in the room, although no

2    tools were recovered from him.  Let's assume he's

3    either sitting there, taking a rest, working in

4    the room and then all of a sudden a group of

5    police officers come battling through the door of

6    that room where the defendant was so peacefully

7    relaxing or working just randomly happen to be

8    half a kilogram of cocaine that the defendant

9    happen to know nothing about. Wow, he really would

10   be one of the unluckiest people in the world. He

11   really did choose the wrong room.

12        Remember the scene in Casablanca where

13   Humphrey Bogart is agonizing over the coincidence

14   of seeing his lost love.  Of all the joints in all

15   the town and in all the world, she walks into

16   mine. That's the scene from the room. Of all the

17   stash apartments with paraphernalia and half a

18   kilo of cocaine and all the apartment buildings in

19   all of New York State, the defendant walked into

20   this one.

21        Whoever saw Casablanca, it wasn't a

22   coincidence that Ilsa walked into Rick's Cafe.

23   Just as you know it wasn't a coincidence that the

24   defendant walked into the fourth floor apartment.

25   That would be more likely than getting held-up at

=SUMMATIONS - PEOPLE=

1    gunpoint in a bank. That would be like getting

2    struck by lightning on a dry, clear 80-degree day.

3         Don't let the defense counsel's lightning

4    and thunder and noise make this seem like a closed

5    case because it's not. The evidence before you

6    really is overwhelming.

7         Taking that one step further, if the

8    defendant just did randomly enter the fourth floor

9    apartment to look for a quiet time, I submit he

10   would have walked out the moment he saw

11   paraphernalia and residue on the processing table.

12        For that matter, if he happen to be in

13   the fourth floor apartment doing work as a super,

14   he would have walked out the second he saw the

15   paraphernalia and residue on the processing table.

16   We are not talking about a 15-year-old kid unwise

17   to the ways of the world.

18        Any reasonable, innocent person,

19   especially one who is familiar with the drug

20   trade, convicted drug felon, would have walked out

21   of that room immediately. Any reasonable innocent

22   superintendent would have walked out of the room

23   immediately.  Would be too risky to be in room at

24   any moment.  The real drug dealers could come in

25   the door. Drug dealing is a dangerous business. It

1    would make no sense to stay.

2          Also, someone who is a convicted drug

3    dealer wouldn't want to be in the room with drugs.

4    What if the police came in?  Too risky.  Only

5    someone in the organization, someone with access

6    to the room would be in there. Only someone

7    intimately involved in the organization would be

8    in there. Only a drug dealer would be in there.

9          You know, Detective Hernandez testified

10   that this is always the most guarded and secure

11   location, referring to the stash location.

12   Someone who is not involved in the organization

13   like a drug buyer or random superintendent would

14   never be allowed anywhere near the apartment, near

15   the product.

16          How do you think the police get

17   information that drugs are being sold at a secure

18   location?  From buyers who, for whatever reason,

19   cooperate or an honest superintendent who has

20   information that drugs are being stored and sold

21   out of a secure location.

22          Also, finally, associates of the drug

23   trade don't want people to know where the $20,000

24   worth of cocaine is kept.  As Detective Hernandez

25   told you, drug-related robberies are common.

=SUMMATIONS - PEOPLE=

1    That's a lot of product and a lot of money.

2            So the point to you is that only someone

3    with a purpose would be in the stash room. Only

4    someone with access would be in the stash room.

5    Only someone with knowledge of the process would

6    be in the stash room.  Only someone with a key

7    into the room would be in there. It really is that

8    simple.

9            The defense suggested that the defendant

10   is from the Bronx. There is a voucher in evidence

11   that states that the defendant is from the Bronx.

12   Detective Hernandez, the vouchering officer, told

13   you that he didn't recover any identification from

14   the defendant.  That the defendant told him that

15   he was from the Bronx.

16           I don't think any single one of you would

17   be surprised that the defendant didn't say that I

18   live at 451 Lenox Avenue in this fourth floor

19   apartment, he got me. Nobody is going to say they

20   live in an apartment where over a pound of cocaine

21   is recovered.

22           I submit to you it really doesn't matter.

23   The defendant can be from the Bronx or could be

24   from Bronxville, it makes no difference.

25   132nd Street and Lenox Avenue, it's one stop from

SUMMATIONS - PEOPLE

1    the South Bronx on the 2 or 3 train. Takes 10

2    or 15 minutes to get to Ogden Avenue in the Bronx

3    from Harlem. I'm sure that it takes almost every

4    one of you that long to get to your job, to get to

5    work.

6          No clothes were recovered in the room.

7    Nobody lived in the room.  This room wasn't being

8    used as a residence.  This was a business

9    operation.  This was work. The defendant was

10   clearly a part of the operation.  Anyone in the

11   room with the key to the room had to be involved.

12   It's that simple.  I want to wrap this up.

13          Assume there is a wife who bursts in the

14   hotel room and inside the room is the husband,

15   standing next to the bed with the pants around the

16   ankle and in the bed is some strange woman.  The

17   woman is naked.  The husband looks at the wife and

18   says, don't believe your lying eyes.  Everybody

19   knows exactly what was taking place in the hotel

20   room. It 's obvious. Just like each and every one

21   of you knows exactly what was taking place in the

22   fourth floor apartment stash room.  It's obvious.

23          The defense wants you to close your eyes

24   to the overwhelming facts, but that is not why you

25   were selected as jurors. You now have heard all

YVETTE PACHECO  SENIOR COURT REPORTER

SUMMATIONS - PEOPLE

1   the evidence. The lawyers, we have done our job.

2   In a few minutes, the Judge will instruct you on

3   the law, then it is your turn to do your job.

4   I ask you to consider all the evidence in

5   its totality, to follow along and, again, use your

6   common sense. I'm confident that when you do this,

7   you will return the only logical and inescapable

8   conclusion in this case and that is that the

9   defendant is responsible for all the crimes of

10   which he is accused.

11   Please use your common sense and you will

12   see that deciding the case really is as simple as

13   crossing the street.

14   Thank you.

15   THE COURT:  This is the point where you

16   are put in a position to do what you agreed to do,

17   decide the case.  You are the judges of the facts

18   in the case.  In that capacity, you have to decide

19   the facts calmly, deliberately, without fear,

20   favor, compassion, sympathy for everyone.

21   As the sole and exclusive judges of the

22   facts, it is your sworn duty to decide whether or

23   not the defendant's guilt or non-guilt has been

24   established -- I phrased that wrongly.  Whether

25   the defendant is guilty or not guilty based on

YVETTE PACHECO  SENIOR COURT REPORTER

═══JURY CHARGE═══

1   your assessment of the evidence once you have
2   heard the law.
3       Do not go into the jury room and try to
4   play detective.  Do not try to guess what would
5   have or might have been done, what you would have
6   done if you had been involved in earlier stage of
7   this case.
8       It is your recollection and understanding
9   and evaluating of the evidence that controls here,
10  regardless of what either of the lawyers may have
11  said in the closing arguments.
12      Do not consider anything which I have
13  said or done during trial as having any indication
14  of my opinion or whether or not the defendant is
15  guilty or not.  My job is not to have an opinion.
16  I don't have one.  I don't care.  I get paid
17  irrespective of what you do.
18      I do not have the power to tell you what
19  facts are there.  No power to tell you what
20  witnesses were truthful or not truthful. Those are
21  the matters exclusively within your province as
22  has been the facts in various places for over
23  500 years.
24      You're not bound to accept any fact the
25  lawyers made known as the summations.  If you

═══YVETTE PACHECO  SENIOR COURT REPORTER═══

1    found an argument is reasonable, logical and

2    consistent with the evidence, then you may accept

3    the argument and use it as you deem appropriate in

4    the jury room.

5          The contrary is, of course, true.  If you

6    think that something suggested to you was not

7    reasonable, not logical, was inconsistent with the

8    evidence, then disregard it, you have no choice.

9    Though, you must follow whatever the law turns out

10   to be.

11         It is obvious that in the relying on the

12   law, you cannot rely on it or follow it unless you

13   understand it. If there is a doubt during

14   deliberations about the meaning of the law, you

15   ask me to clarify it or amplify it through a note

16   from your foreperson. Do not tell me whether or

17   not you've taken a vote.  Do not tell me your

18   vote.  Tell me what the question is with respect

19   to the law.

20         Additionally, as you heard referenced, if

21   there is a dispute about facts, you have another

22   option that's not available with respect to law.

23   You guys, you jurors, you citizens, clients of

24   mine, have the option of consulting among

25   yourselves within the jury room if there is an

1   absence of recollection or uncertainty about the

2   testimony or what the facts are. You do not have

3   the same choice about resolving the law. If there

4   is an uncertainty about the law, ask me.

5          With regard to facts, you have two

6   options.  You may consult among yourselves in an

7   effort to refresh your recollection or you have

8   the absolute right to ask me again through a note

9   from the foreperson to ask the court reporter to

10  read the testimony that you are interested in.

11         If you are going to ask for testimony,

12  however, be as specific as possible.  Not only

13  what witness, but specify the testimony, being it

14  direct only, cross-examination only, anything the

15  witness had to say, indeed anything that anyone

16  had to say.  Be as specific as possible.

17         This is not an instantaneous process.

18  There will be a pause.  Not long. Understand that

19  as soon as you give us the note, we're not going

20  to bring you out immediately to read the

21  testimony.  She has to find it and I have to

22  consult with the lawyers.

23         With regard to credibility, you analyze

24  credibility in the same way you analyze the

25  credibility of someone with whom you have no

1    history, stranger who speaks to you about

2    something important.

3         In analyzing testimony, you have the

4    right to decide whether or not the person is being

5    candid. The right to decide whether the person is

6    recounting something through which they lived or

7    trying to remember a version of events either they

8    agreed on or told to say or something like that.

9         With regard to whether somebody is

10   telling truth, try to figure out what is in it for

11   them, if anything.

12        Is there a motivation to tell the truth

13   or not tell the truth?

14        What is the way that they answered

15   questions depending on which side was asking the

16   questions?

17        Did you detect a difference in the manner

18   or content or fact of a response during the course

19   of questioning by either side?

20        Did the version of events seem to make

21   sense to you as life is in New York?

22        Did it appear to be reasonable, logical,

23   you're comfortable relying on it?

24        Was the witness unusual, friendly,

25   hostile?

1        Did the witness give a trustful and

2   reliable account?

3        Is the witness' testimony supported or

4   contradicted by something?

5        Did the witness seem to be biased,

6   prejudiced or have a reason to falsify?

7        There are many aids in deciding whether

8   or not someone is telling the truth and you can

9   use what you know of that which you use in your

10   everyday life.  There is no rule just because you

11   are jurors you must evaluate somebody's account of

12   what happened differently than if you heard the

13   account outside the courtroom.

14        Consider the personalities and

15   background, the demeanor, bearing on the witness

16   stand.  Whether the account given by the witness

17   was reasonable or unreasonable.  The means of

18   knowledge.  The opportunity to observe what

19   happened.

20        Ask yourselves, was the witness' account

21   supported or contradicted by another evidence.  Ask

22   whether or not the witness had an interest or lack

23   of interest in the outcome.  Consider whether

24   there is a motivation, as I said, to tell the

25   truth or not.  You can also consider whether any

═══════════ JURY CHARGE ═══════════

1    witness has received some advantage or benefit.

2           When you assess a witness, did the

3    witness testify truthfully regardless of whatever

4    else was going on?  Consider whether the witness'

5    account sounded probable or improbable, and any

6    testimony you find helpful, you can use it.

7           In your deliberations, if you find that

8    any witness has willfully testified falsely as to

9    a material fact, you may disregard the person's

10   entire testimony on the theory that you caught the

11   person in a lie under oath.  You have two options.

12   You can say we will not believe anything the

13   person has to say, the oath doesn't mean anything

14   because we're certain they lied about the matter.

15   If the matter is material and important, you can

16   say the hell with them or you have an absolute

17   right to say well, we will not accept this but

18   accept other parts.  That is a factfinding

19   function that you folks can do.

20          If you find the rule that I just said,

21   somebody lied materially about something, you can

22   disregard the entire testimony or you can say that

23   you will accept other portions of it.

24          It is the quality and not the quantity of

25   the testimony that must control. That rule,

═══════ YVETTE PACHECO  SENIOR COURT REPORTER ═══════

==== JURY CHARGE ====

1    quality, not quantity is the reason why the

2    Federal Courts and all of the 50 state courts

3    within the United States had the same rule, the

4    one I'm about to give you.

5         If the testimony of one person is

6    sufficiently persuasive that that one person's

7    testimony enables the People to meet their burden

8    of proof beyond a reasonable doubt, then the

9    circumstances of testimony of one person is

10   sufficient to be a conviction.

11        Police testimony was given to you here.

12   The rule is that you know from jury selection you

13   cannot believe or disbelieve somebody because of

14   their occupation as a police officer.  Somebody

15   who is a police officer is not presumed to be

16   either more or less credible than somebody with a

17   different occupation.

18        You heard testimony with respect to

19   statements made in earlier proceedings that was

20   given to you under that rule that I described to

21   you.  The reason that that is done is on your

22   assessment of credibility as it relates to those

23   decisions that you are supposed to make.

24        When I said and when the lawyers were

25   allowed or Mr. Keith was allowed to elicit

—JURY CHARGE—

1  testimony that was given in an earlier occasion,

2  that earlier occasion testimony is not evidence in

3  this case. If, in fact, according to the

4  instructions that I gave you, if you decide that

5  it is at variance with what the witness said in

6  court, you can use it in your assessment of the

7  credibility of that witness with respect to the

8  material decisions that you have to make.

9          With regard to that kind of analysis, as

10  I alerted you, some inconsistencies are

11  meaningless, some are stark. That's the sort of

12  fact decision that's within your province to make.

13          The fact that the defendant did not

14  testify is not a factor from which any inference

15  adverse to him may be drawn. That rule is without

16  exception. That is a different rule than the

17  reference to not answering the door or

18  acknowledging the knocking of the police.

19          It is up to you to decide whether you

20  want to draw inference adverse to Mr. Green if you

21  find that the police knocked, if you find that he

22  was in the room, if you find that he heard the

23  knock and if you find that he didn't do anything

24  in response to it. That is for you folks to

25  consider.

—YVETTE PACHECO  SENIOR COURT REPORTER—

1   You have the option of saying if you find

2   that it was factually in that position, that he

3   heard, was there, he didn't do anything, then you

4   can do whatever you want as far as drawing an

5   inference adverse to him. That is, as I said, in

6   complete and total contrast with respect to his

7   not testifying.  Two completely different rules.

8       With regard to Mr. Green, he's presumed

9   innocent. The presumption remains with him through

10  the trial. He's protected by the presumption of

11  innocence unless and until the assistant and the

12  evidence in this case has satisfied you that he

13  should be found guilty of one or more of the

14  charges with which he stands accused. The only way

15  that the presumption can be destroyed is if all of

16  you agree on the evidence in the case that he is

17  guilty.  Only then is the presumption of innocence

18  destroyed.

19      The burden of proof remains upon the

20  prosecution.  It never shifts to the defendant.

21  Each element of the crime comitted must be proven

22  beyond a reasonable doubt. That's the standard.

23  It is not beyond all possibility of doubt, not

24  beyond a shadow of a doubt. The standard is known

25  as "beyond a reasonable doubt."

1      Proof beyond a reasonable doubt is the

2  standard American burden of proof in any criminal

3  cases.  Those about which you hear testimony,

4  those about which you heard and never hear about,

5  those that result in guilty verdicts or findings

6  of not guilty.

7      Before you may convict the defendant,

8  each of you must be satisfied from the evidence

9  that the defendant is guilty beyond a reasonable

10  doubt of a charge as you consider the charges as

11  you go through them as they'll be listed on the

12  verdict sheet.

13      The evidence must satisfy you beyond a

14  reasonable doubt that he is, in fact, the person

15  who committed the crime in accordance with the

16  instructions that I will describe about the alone

17  or in concert and the evidence must established

18  beyond a reasonable doubt each of the elements of

19  the crime charged.

20      What does a doubt of guilt mean?  A doubt

21  of the defendant's guilt to be a reasonable doubt

22  must arise because of the nature and quality of

23  the evidence or because of the lack or

24  insufficient evidence.

25      A doubt of guilt is not reasonable if

1    instead of being based on the nature and quality

2    of the evidence or lack or insufficiency of the

3    evidence, it's a based on a guess, whim,

4    speculation not related to evidence in the case.

5         Also, a doubt of guilt is not reasonable

6    if it's based on sympathy for the accused or a

7    mere desire by a juror to avoid performing a

8    disagreeable duty. A doubt of a defendant's guilt

9    to be a reasonable doubt must arise because of the

10   nature and the quality of the evidence or lack or

11   insufficiency of the evidence.

12        Your first duty is to review all of

13   evidence in the case and decide what happened.

14   Next duty is to decide if you have a reasonable

15   doubt with regard to the elements and the proof of

16   the elements.

17        A reasonable doubt is an actual doubt,

18   one you are conscious of having in your mind after

19   having carefully considered all of the evidence

20   and after doing so you feel uncertain or not fully

21   convinced that the defendant is guilty, then

22   that's a reasonable doubt, and the accused is

23   entitled to the benefit of it.

24        Review the evidence and decide what

25   happened.  If after doing so you find that the

—————JURY CHARGE—————

1    People have not proven the defendant's guilt

2    beyond a reasonable doubt, then you must find the

3    defendant not guilty.  On the other hand, if you

4    are satisfied that the People proved the

5    defendant's guilt beyond a reasonable doubt, then

6    you should find the defendant guilty.

7          You have heard me say with respect to the

8    reasonable doubt charge and the charge with

9    respect to when and only when the presumption of

10   innocence is destroyed. It is that the

11   prosecution's burden in this case and every

12   criminal case in United States history is to prove

13   the elements of the crime beyond a reasonable

14   doubt, not other things, the elements.

15         My suggestion to you is, which of course

16   as a juror you can reject, focus on the factual

17   decisions you need to make to determine whether or

18   not the prosecution has proven the elements of the

19   charges, as you consider the four charges as we go

20   through them, beyond a reasonable doubt, and leave

21   for some other day any discussion about things

22   that are not necessary for you to decide whether

23   they've proven the elements of the crime beyond a

24   reasonable doubt.

25         Now, with respect to the four charges,

1    there is a verdict sheet. There are four charges.

2    I will now explain to you the theory of the

3    People's case, incontroverted idea what possession

4    is, both physical and constructive possession and

5    then tell you the elements of the four charges.

6          Possession.  New York's definition of

7    possession is that possession is either actual or

8    physical.  Things that you have around your neck,

9    in your pocket, in your hand, that's physical

10   possession.

11         You have a variety of other things that

12   are in your possession but that you didn't bring

13   with you this morning. They are what is known as

14   constructive possession.

15         If you are rich enough to have a safe

16   deposit box, that's an example of constructive

17   possession.  If you have a drawer in your

18   apartment, if you have anything that you don't

19   have with you, but meets the definition of what's

20   known as dominion and control, then you are in

21   constructive possession of that material.

22         A person may have physical possession of

23   a thing by holding it in their hand or carrying

24   around on his or her body or person. A person may

25   exercise dominion and control over property not in

1    his or her physical possession.

2            A person who exercises dominion and

3    control over property not in their physical

4    possession is said to have the property in his or

5    her constructive possession.

6            A person has tangible property in his or

7    her constructive possession when that person

8    exercises a level of control over the area in

9    which the property is found or over the person

10   from whom the property is seized sufficient to

11   give him or her the ability to dispose of the

12   property.

13           The law recognizes the possibility that

14   two or more individuals can jointly have property

15   in their constructive possession. Two or more

16   persons have property in their joint constructive

17   possession when they each exercise dominion and

18   control over the property by a sufficient level of

19   control over the area in which the property is

20   found or over the person from whom the property is

21   seized to give each the ability to use or dispose

22   of the property.

23           You should understand with respect to

24   this constructive possession concept, the mere

25   presence even with knowledge is insufficient and

1   absent the exercise of what's known as dominion

2   and control, but you can constructively possess

3   that which you do not touch.

4       Accessorial liability, joint

5   responsibility, in concert, commission a crime by

6   more than one person, those are different ways of

7   pointing out that the law says that there are some

8   circumstances under which one person, even a

9   person on trial, can be liable for what another

10  person may have done or did do.

11      The law says that two or more individuals

12  can act jointly to commit a crime.  Then, under

13  certain circumstances, each can be held criminally

14  liable for the act of the other.  That's referred

15  to as the in-concert idea.

16      Formally, it's stated that when one

17  person engages in conduct which constitutes a

18  crime, another person is criminally liable for

19  such conduct when either acting with the state of

20  mind required for the commission of that offense,

21  he solicits, requests, commands, importunes a

22  person to commit a crime.

23      So that would be one of the two ways you

24  would be liable. That is if you give some

25  direction, some verbal command, request. The other

========JURY CHARGE ========

1   is if you do a physical act intending to aid the

2   other person in the commission of the conduct.

3   It's either one of those things is a possible way

4   that you could be in concert with somebody else.

5        I'll read it again.  When a person

6   engages in conduct which constitutes an offense

7   another is criminally liable for such conduct when

8   acts with the state of mind that is required for

9   the commission of that offense, he solicits,

10   requests, commands, importunes the other person to

11   do the offense or intentionally aids that other

12   person to engage in conduct which constitutes or

13   assists in that offense.

14        Under that definition, the mere presence

15   at the scene of the crime, even with knowledge

16   that the crime was taking place or mere

17   association with somebody, does not, by itself,

18   make a defendant criminally liable for the crime.

19        In order to be held criminally liable for

20   the conduct of another which constitutes a crime,

21   you must find beyond a reasonable doubt that the

22   defendant whose case you are considering, either

23   solicited, requested, commanded, importuned,

24   importuned means to urge, in this case Mr. Brown,

25   you'd have to find that Mr. Green solicited,

1   requested, commanded, importuned or urged

2   Mr. Brown to do acts that constitute the crime or

3   that Mr. Green intentionally aided the person,

4   Brown or others, to engage in that kind of

5   conduct, conduct which constitutes the crime with

6   which he is charged.

7            That's the first thing the People have to

8   prove beyond a reasonable doubt in order for him

9   to ask you to use the in-concert concept against

10  Mr. Green.

11           The second thing they have to prove

12  beyond a reasonable doubt is that Mr. Green was

13  acting with a mental state that the law says has

14  to be present on the part of somebody who is

15  liable for a drug offense, which is in one sense,

16  one instance, knowledge, and with another instance

17  that I will describe to you, intent.

18           That Mr. Green, depending on what crime

19  you are considering, had knowledge and then had

20  the intent that with the state of mind required

21  for the offense, he intentionally did something,

22  anything which assisted in the commission of the

23  offense.

24           If it's proven beyond a reasonable doubt,

25  of course, he has to, with regard to in the

1    supposed intentionally aiding and if you think he

2    did something that's established by voice, he has

3    to do it while he had the mental state, whether

4    knowledge or intent, that the statute requires.

5         If it's proven beyond a reasonable doubt

6    that the defendant is criminally liable for the

7    conduct of another, the extent or degree or amount

8    that the defendant participated in the crime does

9    not matter.

10        A defendant proven beyond a reasonable

11   doubt to be considerably liable for the conduct of

12   another in the commission of a crime is not as

13   guilty of that crime as if the defendant

14   personally, himself, had committed every act

15   constituting that crime.

16        The People have the burden of proving

17   beyond a reasonable doubt that the defendant acted

18   with the state of mind required for the commission

19   of the crime, and he either personally or by

20   acting in concert with another person, committed

21   each of the remaining elements of the crime.

22        Your verdict, whether guilty or not

23   guilty, must be unanimous.  In order to find the

24   defendant guilty, you need not be unanimous on

25   whether the defendant committed the crime

===JURY CHARGE===

1    personally or by acting in concert with another or

2    both.

3         The People contend that the defendant

4    acted in concert with Mr. Brown.  You must not

5    speculate on the present status of that person or

6    draw any inference from the absence.  Do not allow

7    the absence to influence the verdict.  You are

8    here to decide whether or not the People have

9    proven beyond a reasonable doubt one or more of

10   the crimes with which Mr. Green is charged.

11        With respect to the in concert idea, if

12   the prosecution is going to be successful in

13   asking you to attribute Mr. Green to any of the

14   acts that Mr. Brown did, they have to prove two

15   things beyond a reasonable doubt.

16        The first is that Mr. Green, independent

17   of whatever Mr. Brown may or may not have done,

18   independently, on his own, had the mental state

19   that the statute has described as having to be

20   present by somebody committing the drug offenses I

21   will describe.

22        Second, the People have to prove beyond a

23   reasonable doubt that he either gave a voice,

24   command or voice direction or something by voice

25   or that he intentionally aided, in any manner at

1    all, Mr. Brown in the commission of the offenses

2    contained in the charge.

3           The charges are four different references

4    to the concept of possession. There is nothing in

5    here about ownership. The charge is possession.

6           As you heard, since these are prohibited

7    substances, under all or some circumstances,

8    depending on whether we're talking about cocaine

9    or paraphernalia, you cannot own prohibited or

10   contraband substances.  So the law refers to that

11   as possession.

12          Possession can be individual or joint by

13   people in accordance with the constructive

14   possession charge that I just gave.

15          With regard to the drug charges, the

16   first one is going to say possessed in excess of

17   eight ounces. It's eight ounces irrespective of

18   whether it's mentioned with anything.

19          Let's say you went to the beach with a

20   small container of heroin and you picked up a

21   gargantuan amount of sand and dumped it into the

22   container you had.  You're responsible for

23   basically whatever the mixture's weight is. You do

24   not need to be concerned with respect to purity or

25   how much may be something else.

=JURY CHARGE=

1          Whether it be possession with intent to

2     sell, second count, or possession in the first

3     degree, which is the first count, the first count

4     in excess of eight ounces, the second count being

5     possessing any amount of cocaine intending to sell

6     some or all of it, the purity, the percentage of

7     cocaine, the weight doesn't matter.

8          A person is guilty of Criminal Possession

9     of a Controlled Substance in the First Degree when

10    that person, alone or in concert, but the mental

11    has to be individualized, when that person

12    knowingly, unlawfully possesses one or more

13    preparations, compounds or mixtures or substances

14    containing a narcotic drug and the aggregate

15    weight, overall total weight, is eight ounces or

16    more.  I said in excess of eight ounces.  It is

17    eight ounces or more.

18          Allegation is what you have heard.

19    Possess means either actual or constructive.  A

20    person knowingly possesses a controlled substance

21    when that person is aware that he is in

22    possession, alone or in concert of that substance.

23          Awareness has to be individualized.  The

24    physical or constructive possession would be

25    individual or joint. The mental always has to be

=YVETTE PACHECO  SENIOR COURT REPORTER=

═══ JURY CHARGE ═══

1  present on the part of each and every person

2  supposedly involved.

3         There are three elements with respect to

4  the first count in the indictment.

5         First, that on or about the date in

6  question, which is November 1, 2007, in New York

7  County, the defendant, Mr. Green, possessed one or

8  more preparations, compounds, mixtures containing

9  cocaine.

10        Second element, did so knowingly and

11 unlawfully.

12        Third, that the aggregate weight was

13 eight ounces or more.

14        If the People prove those three elements

15 beyond a reasonable doubt, you must convict, you

16 have no choice. If they fail to prove any one more

17 or all, you must acquit, you have no choice.

18        With regard to second count, possession

19 in the third degree, basically has two elements.

20 There's no weight concept. It's any amount of

21 cocaine. Defendant had to have known that he was

22 in possession of any amount of cocaine found

23 either on the second or fourth floors and that he

24 possessed, either alone or in concert, any of the

25 cocaine wherever in that building it was found,

—————————JURY CHARGE—————————

1    intending that he or another sell some of it.

2        The charge is possession, knowing

3    possession, knowing possession of cocaine

4    intending that he or someone else sell any of the

5    cocaine supposedly possessed.

6        Sell, the most basic definition,

7    transfer.  There is no requirement in New York law

8    with respect to the concept of sale, that you get

9    anything back of value. No requirement that you

10    get by way of money back.  Definition of sale is

11    simply a transfer.

12        So the second charge, the second degree

13    count of the indictment is that the defendant,

14    alone or in concert, possess cocaine found

15    anywhere in the building intending that he or

16    another person with whom supposedly was in

17    concert, intended to sell, that is to transfer,

18    whether for value or not, any of the cocaine.

19        Now, the third and fourth charges are

20    related to drug paraphernalia.  As I alerted you

21    probably during jury selection, there is a slew of

22    variety things which are valid things for which

23    you don't need a license.  You can hide it or do

24    anything with.  What's valid?  A kitchen knife,

25    handkerchief.  With respect to what supposedly is

1      the drug paraphernalia, that constitutes the third

2      and fourth counts.

3              Premise is that things are absolutely

4      validly possessed, they have lawful usefulness, as

5      well as under some circumstances the law says

6      their possession and use will become illegal.

7              The third charge relates to the supposed

8      packaging material and the fourth count relates to

9      the supposed weighing material. I'm going to read

10     the law once to you. I will not read it both with

11     respect to third count which is the materials

12     supposedly for packaging and the fourth count

13     supposedly scales.

14             The charge of the law is this. A person

15     is guilty of something known as criminally using

16     drug paraphernalia in the second degree when that

17     person knowingly possesses scales and balances

18     used for the purpose of weighing or measuring

19     controlled substance under circumstances - they

20     use the word evincing.  I don't know who they're

21     writing for.

22             Evincing means showing, demonstrating.

23             Under certain circumstances, showing or

24     demonstrating an intent to use the items or

25     circumstances showing that some person intended to

1    use the items for the purpose of unlawfully

2    manufacturing, packaging or dispensing of any

3    narcotic drug.

4          You know what the definition of possess

5    is.  It is referred to here. You know what the

6    definition of sale is.  It is referred to here

7    also.

8          I haven't spoken about intent, and I

9    haven't defined knowledge. Knowledge is what you

10    are consciously aware of. An intent is your

11    conscious objective or purpose. Both concepts are

12    mental. They go on within the sanity of our mind.

13          No legal system, no fair legal system is

14    personalized, person's hard thought only.  Any

15    fair system requires the prosecution to prove

16    action in conjunction with thought, and so with

17    regard to fair systems and ours certainly is going

18    back seven thousand years or so, fair systems have

19    sought to require a government authority to prove

20    what somebody was thinking.

21          And so how is it accomplished?  The law

22    give us two basic rules that you may or may not

23    use, depending on whether you think the

24    circumstances you are dealing and facts you are

25    dealing with make sense or not.

════════════════════════ JURY CHARGE ════════════════════════

1       What I am talking about is the following.

2   You can decide what a person does, says before,

3   during or after an event as an indicator of what

4   they knew or intended during the course of an

5   event and you can also conclude, if you choose to,

6   not obligated to, that a person intended or knows

7   the natural and logical consequences of what they

8   do.

9       Also, the law requires with regard to

10  intent and knowledge that the intent and knowledge

11  be present at the doing of the act, but no

12  requirement for how long before the doing of an

13  act the intent or knowledge has to be present.

14      You may have heard many times reference

15  to premeditation, which means you thought about it

16  for a long time and planned it out. New York law

17  here doesn't refer to premeditation. What it does

18  refer to is that the mental state to which I made

19  reference now several times, intent and knowledge,

20  be present at or before doing of the act, but no

21  specific period of time before the doing of an

22  act.

23      Additionally, with regard to intent and

24  knowledge, the law requires that the intent to

25  commit the crime and knowledge that a certain

════════════ YVETTE PACHECO  SENIOR COURT REPORTER ════════════

1    thing is going on and you are participating in it

2    in some fashion, the law requires that that be

3    present.

4         But the fact that the mind is marvelous

5    and gets us to the moon and knocked the Trade

6    Center towers down, that means more than one thing

7    can be present simultaneously or many things

8    sometimes seem within the mind of a person when

9    things are occurring.

10        The law doesn't say that the only thought

11   or only bit of intention that you have is the one

12   distributed towards the criminal offense at issue

13   here. The law says that irrespective of whatever

14   else you knew, intended, whatever else is going

15   on, the People have to prove beyond a reasonable

16   doubt the knowledge and intent factors I just

17   described.

18        With regard to the three elements of

19   possessing drug paraphernalia, first is that on or

20   about November 1, 2007, in New York County, the

21   defendant possessed, as New York defines

22   possession with regard to the third count, the

23   defendant possessed packaging material. Second is

24   that the defendant did so knowingly, and the third

25   that the defendant did so under circumstances

1   showing an intent for him to use or under

2   circumstances showing knowledge that some other

3   person would use those items for the packaging of

4   unlawful substances, manufacturing, packaging or

5   dispensing.

6       The three elements are identical with

7   regard to the fourth count, which says not

8   packaging but scales. When considering the third

9   and fourth counts, the People are required to

10  prove the three elements beyond a reasonable

11  doubt. If they prove all three, you must convict,

12  you have no choice. If they fail to prove any one

13  more or all, you must acquit.

14      The same thing applies with respect to

15  the fourth count.  The People must prove each

16  element beyond a reasonable doubt.  If they do,

17  you must convict.  If they fail in any one more or

18  all, you must acquit, you have no choice.

19      With regard to deliberations, you are to

20  deliberate, participate in the deliberations,

21  exchange your views, your reasons.

22      The election which is looming and which

23  we just had a primary, elections are decided close

24  or landslides. Criminal cases are decided

25  unanimously. The group that votes and resolves

1        elections never does it unanimously.  Yet, with

2        rare exceptions, charges in a criminal case are

3        unanimously resolved, either proven or not proven.

4                How is it people, essentially the same

5        pool, producing the eclectic jury pool, how do

6        they come to markedly different results by

7        different reasons, different methods?

8                Well, with regard to jury service and

9        deliberations, you are allowed to change your mind

10       from a position you may have taken. You are

11       allowed to change your mind if somebody based on

12       reason, logic, common sense and reliance out on

13       the record of this case which can cause you to

14       change your mind.

15               Do not change your mind for embarrassment

16       or that it became public. If you are found out to

17       have decided the case because you wanted to get

18       out of here, you didn't like what somebody said,

19       you were insulted, offended, well, that's not a

20       reason to change your mind.

21               The point is, before the foreperson

22       announces the collective verdict of the jury, it

23       has to be individually, consciously arrived at by

24       each of the 12 voting jurors.

25               I have to speak briefly with the lawyers

1      and then you will be on your way.

2                  (Whereupon, a sidebar conference was held

3      on the record out of the hearing of the jury.)

4                  THE COURT:  Any exceptions or requests?

5                  MR. KEITH:  Yes, Your Honor.  I see you

6      do not like the CJI charges.

7                  THE COURT:  I do.

8                  MR. KEITH:  Well, before I get into that,

9      let's first talk about the charge with regard to

10     the activity or lack of activity in the room.  I

11     don't believe you ever stated that he was not

12     obligated to open the door. You basically told the

13     jury that they would infer what they want.

14                  THE COURT:  You're right.

15                  MR. KEITH:  I'm very concerned about that

16     because in Headley, the Court of Appeals

17     specifically said that the failure to open the

18     door does not amount to an inference of criminal

19     intent. I know you don't necessarily agree with

20     that, that's the Court of Appeals.  That's the

21     specific language from the case.

22                  THE COURT:  Okay.  My point is this is a

23     different case.  I don't think that what they

24     would say there they would say here.  But we'll

25     have to wait to see if he's convicted. So far

1    you're right that I didn't specifically -- I was

2    so thrilled that I had the example and the

3    contrast of an accused not testifying at a trial

4    and no inference, that I was so thrilled that I

5    decided to forget. Apparently, I forgot about it.

6    They're not obligated but could draw the

7    inference.  I correct that.  I apologize.

8            What's next?

9            MR. KEITH:  You described a sale as a

10   transfer.  I think CJI --

11           THE COURT:  How does that apply here?

12   How do I have to say anything more about what a

13   sale is in this case?

14           MR. KEITH:  I gather you would be

15   accurate as opposed to just saying it's a simple

16   transfer.

17           THE COURT:  I'm not going to read the

18   charge on that. What else?

19           MR. KEITH:  You were talking about

20   ownership. You said to the jury that if he is not

21   an owner, they can still convict.

22           THE COURT:  I told them to disregard the

23   idea of ownership, because in life basically, you

24   can have one owner, but 55,000 possessors. There

25   is no, at least in New York State's prohibition,

══════ JURY CHARGE ══════

1    they do not refer to the concept of ownership.

2           The easiest example, a factory.  If the

3    People prove the elements, whether you're a

4    one-day half-hour worker in the factory or the

5    Columbian sitting offshore reaping the profits,

6    you can be convicted, you could be liable, and

7    nobody carries whose the, quote, owner, which is

8    an impossible legal concept.

9           You can't have title to drugs.  That's

10   what I was taking about. After 25 years, nobody

11   has taken me to task on that one yet.

12          What else?

13          MR. KEITH:  You didn't follow the CJI

14   charge on credibility or evaluating the testimony

15   of police witnesses, but I can't recall a specific

16   language you used.  I just throw that out there.

17   I'm not sure -- I think if you had just read the

18   charge, it would have been fine, but ...

19          I, again, move for a mistrial. I think

20   overall Mr. Green has been dealt an unfair trial.

21          MR. BERLAND:  There's nothing the People

22   would like to add regarding the charge.

23          (Whereupon, the sidebar conference

24   concluded and the proceedings continued in open court

25   as follows:)

===JURY CHARGE===

1    THE COURT:  Okay, there was one thing I
2    promised I would say.  I forgot.  With regard to
3    Mr. Green, he's not obligated to open the door,
4    but you can draw an inference in accordance with
5    the People's argument if you choose to. You cannot
6    possibly draw any inference from his not
7    testifying here ...
8        The two alternates, stay right there.  I
9    have instructions for you. With regard to the 12
10   first jurors, this is the point at which the
11   admonition about keeping an open mind is over.
12   Not talking about it is over. This is not the
13   point you discuss it, but you decide it.  Your
14   lunch should be here within a few minutes. We
15   await your verdict or communication. Please step
16   in and good luck. The verdict sheet will be in
17   with you in a few minutes.
18        (Jurors begin to deliberate.)
19        (Whereupon, a sidebar conference was held
20   on the record out of the hearing of the jury.)
21        THE COURT:  With respect to the
22   alternates, should we have a chat, and with
23   respect to the evidence.
24        MR. KEITH:  No objection to the jury
25   examining the evidence.  I would ask that we hold

===YVETTE PACHECO  SENIOR COURT REPORTER===

1    the alternates through the lunch break.

2                THE COURT:  Fair enough.

3                (Whereupon, the sidebar conference

4    concluded and the proceedings continued in open court

5    as follows:)

6                THE COURT:  We'll feed you.  With regard

7        to this case and I would suggest politics and

8        religion, those three topics you shouldn't chat

9        about.  Do not talk about the case and the rules.

10       If one has to go in, you should be going in with

11       your thoughts and not somebody's else. Do not talk

12       about the case. If you have reading material,

13       that's fine.  If you don't, we'll find you

14       something.  Just tell us.

15               MR. KEITH:  I apologize.  On second

16       thought, the alternates can be excused.

17               THE COURT:  Have a nice life. You are

18       excused.

19               (Whereupon, a lunch recess was taken,

20   after which the following proceedings took place:)

21               THE CLERK:  Recalling case number one,

22   Edward Green.

23               THE COURT:  There is a note that they

24       want the charges on the elements. They also asked

25       something to the effect, I will read the note when

1    the jury comes out, too, it says something to the

2    effect, Does dominion and control, does it happen

3    because you are in the apartment?  Are you

4    responsible for everything in and around the

5    apartment if you have dominion and control over

6    the apartment?  The answer of course is no. Does

7    anybody know where that note is?

8            (Handed.)

9            THE COURT:  Clarification of elements for

10   charge. Next, if you have dominion and control

11   over space, that is an apartment, do you

12   automatically have control over everything in the

13   room, locked and or unlocked.  I just said no.

14   They will have to make separate decisions about

15   that stuff.

16           Anything anyone wants to say?

17           MR. BERLAND:  No, Your Honor.

18           THE COURT:  Mr. Keith.

19           MR. KEITH:  No, Your Honor.

20           THE COURT:  Bring in the folks.

21           COURT OFFICER:  Jury entering.

22           THE COURT:  The note that you may not

23   have seen or may have forgotten about asked to

24   clarify the three elements per charge.  Then it

25   asks if you have dominion and control over a

YVETTE PACHECO  SENIOR COURT REPORTER

PROCEEDINGS

1    space, that is an apartment, do you automatically

2    have control over everything in the room locked

3    and unlocked.

4           First thing I will do is give you the

5    three elements or the element, rather, of the

6    charges.

7           First, with regard to count one, alone or

8    in concert; possession, physical or constructive,

9    over eight ounces of cocaine or more.

10          The possession has to be knowing, has to

11   be individual knowledge on the part of anybody

12   accused, that they are in possession, as New York

13   defines possession, of eight ounces or more of

14   cocaine. Possession that is to be knowing, aware

15   it's cocaine and the cocaine has to be eight

16   ounces or more.  That's the first count.

17          The second count, alone or in concert,

18   fourth floor, second floor, combination of the

19   floors, the defendant possessed any amount of

20   cocaine knowing that, alone or in concert, he

21   possessed cocaine irrespective of the weight, the

22   purity of the amount, and that he possessed it

23   alone or in concert, intended to sell some or all

24   of it.

25          Definition of sell is a transfer.  There

YVETTE PACHECO  SENIOR COURT REPORTER

1    are other definitions, but the basic definition is

2    a transfer.  The elements of those two charges, we

3    need a verdict on both.

4         The elements, each of them have to be

5    proven beyond a reasonable doubt by the

6    prosecution. If the prosecution fails in any one

7    or all of the element, your verdict has to be not

8    guilty.

9         The third and fourth count are possession

10   of drug paraphernalia.  Things under ordinary

11   circumstances are perfectly legal. The accusation

12   is that under the circumstances that the People

13   claim they have proven the possession is illegal

14   by virtue of the nature of and what the People

15   have shown to the person using drug paraphernalia

16   in the second degree.

17        If I said criminal possession of drug

18   paraphernalia, I was wrong.  It's criminally using

19   drug paraphernalia in the second degree, when that

20   person, knowingly possesses scales or balances

21   used for the purposes of weighing controlled

22   substances on circumstances showing or

23   demonstrating an intent to use or under

24   circumstances showing knowledge that some other

25   person intends to use those things for the purpose

═ PROCEEDINGS ═

1    of unlawfully manufacturing, packaging or

2    dispensing any narcotic drug and the packaging

3    relates to the wrappers and the Baggies they were

4    described as.

5              The other charge relates to scales and

6    it's the same elements, that the defendant

7    himself, having knowledge as to their use,

8    possessed them under circumstances showing that he

9    was going to package drugs for sale or some other

10   person intended to package drugs for sale. Those

11   are the elements with respect to that charge.

12             Third and fourth elements as the first

13   and second, the People have to prove them all

14   beyond a reasonable doubt. If they fail to prove

15   any one more or all the elements, your verdict has

16   to be not guilty.

17             With regard to the second part of your

18   note, the answer is no. Constructive possession

19   means that he may exercise dominion and control

20   over property not in his physical possession. A

21   person who exercises dominion and control over

22   property not in his physical possession is said to

23   have that property in his constructive possession.

24             A person has tangible property in his

25   constructive possession when that person exercises

═ YVETTE PACHECO   SENIOR COURT REPORTER ═

1    a level of control over the area in which the

2    property is found or over the person from whom the

3    property is seized sufficient to give him or her

4    the ability to use or dispose of the property.

5         The law recognizes the possibility that

6    two or more individuals can jointly have property

7    in their constructive possession. Two or more

8    persons have property in their constructive

9    possession when they each exercise dominion and

10   control over the property by a sufficient level of

11   control over the area in which the property is

12   found or over the person from whom the property is

13   seized to give each of them the ability to use or

14   dispose of the property.

15        If there's more that you need, if there

16   are further requests about that, you can ask.

17   You're not necessarily bound to hear the same

18   definitions each time you ask, but for now, that's

19   the answer to the question. Please resume your

20   deliberations.  We await your verdict.

21             (Jurors enter deliberating room.)

22        THE CLERK:  Case number one on the

23   Part 93 calendar, Edward Green.

24        THE COURT:  There's a verdict.  I don't

25   know what it is.  We'll find out together.  I

=VERDICT=

1  never have had an accused nor counsel stand during

2  the verdict.

3        Bring in the jury.

4        COURT OFFICER:  Jury entering.

5        THE CLERK:  All right, foreperson, please

6  rise. How stand you as to the first count on the

7  indictment charging the defendant, Edward Green

8  with the crime of Criminal Possession of a

9  Controlled Substance in the First Degree, do you

10  find the defendant guilty or not guilty?

11        FOREPERSON:  Guilty.

12        THE CLERK:  How say you to the second

13  count of the indictment charging the defendant

14  with the crime of Criminal Possession of a

15  Controlled Substance in the Third Degree, guilty

16  or not guilty?

17        FOREPERSON:  Guilty.

18        THE CLERK:  How say you to third count of

19  the indictment charging the defendant with the

20  crime of Criminally Using Drug Paraphernalia in

21  the Second Degree, guilty or not guilty?

22        FOREPERSON:  Guilty.

23        THE CLERK:  How say you to the fourth

24  count of the indictment charging the defendant

25  with the crime of Criminally Using Drug

=YVETTE PACHECO  SENIOR COURT REPORTER=

═══VERDICT═══

```
1    Paraphernalia in the Second Degree, guilty or not
2    guilty?
3              FOREPERSON:  Guilty.
4              THE COURT:  Poll the jury.
5              THE CLERK:  Members of the jury you say
6    through your foreperson that you find the
7    defendant, Edward Green, guilty of the crime of
8    Criminal Possession of a Controlled Substance in
9    the Fifth Degree under the first count of the
10   indictment, guilty of Criminal Possession of
11   Controlled Substance in the Third Degree under the
12   second count, guilty of Criminally Using Drug
13   Paraphernalia under the third count, and guilty of
14   Criminally Using Drug Paraphernalia in the Second
15   Degree on the fourth count?
16             (JURY POLLED.)
17             THE COURT:  Thank you. As you know, I
18   cannot do this myself. I appreciate your service.
19   You're excused.  You need not speak to anybody if
20   you choose not to.  See you around next time.
21   Please step in.  Step in.  We'll send your ballots
22   to you at the appropriate time.
23             (Jurors exit.)
24             THE COURT:  How about Tuesday the 30th?
25             MR. KEITH:  Of September.
```

═══YVETTE PACHECO  SENIOR COURT REPORTER═══

======VERDICT======

1        THE COURT:  I apologize. We need about

2    three weeks for a trial conviction.  How about

3    October the 7th?

4        MR. KEITH:  Actually, that day is a bad

5    day for me.

6        THE COURT:  I don't mind if it's the 6th

7    or the 8th.

8        MR. KEITH:  The 8th is good.

9        THE COURT:   I usually do the sentences

10   at 12:30 in the afternoon. This will be back in

11   Part 93.  Remand.

12

13   ********************************************************

14        I, Yvette Pacheco, certify that this is a true

15   and accurate copy of the transcribed proceedings taken

16   by me in this matter.

17        _____

18                Yvette Pacheco
                 Senior Court Reporter
19

20

21

22

23

24

25

======YVETTE PACHECO   SENIOR COURT REPORTER======