UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDWARD GREEN,

                        Petitioner,

          -against-                 **REPORT AND RECOMMENDATION**

THE STATE OF NEW YORK,              14-CV-2073 (RJS) (KNF)

                        Respondent.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Edward Green ("Green") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his jury conviction for first-degree criminal possession of a controlled substance, third-degree criminal possession of a controlled substance and two counts of second-degree criminally using drug paraphernalia, and his sentence, as a second felony drug offender, to an aggregate prison term of 15 years, followed by five years of post-release supervision. Green claims: (1) he received ineffective assistance from his counsel; and (2) the verdict was against the weight of the evidence. Green requests that the stipulation between his trial counsel and the prosecutor be vacated and the case be restored to the trial calendar. The respondent opposes the motion.

## BACKGROUND

On November 1, 2007, detectives Anthony Romero ("Romero") and Alfred Hernandez ("Hernandez") executed two search warrants for second and third-floor apartments, at 451 Lenox Avenue, in Manhattan. The police had information that drugs were sold from the second-floor

1

apartment of the building and a "stash apartment" existed on an upper floor. The participating officers were divided into two teams, one for each apartment. The team led by Hernandez entered the open door of the second-floor apartment and found Steven Brown ("Brown") inside. The team searched Brown and recovered approximately $900 and a set of keys from his person and seized certain items, including 18 half-gram plastic baggies of cocaine and plastic bags used typically to package cocaine for sale. A split-screen closed-circuit television monitor mounted on the wall showed views of the building's front entrance and the stairwell leading to the second-floor apartment.

While Hernandez and his team were executing the second-floor apartment search warrant, the other team led by Romero broke down the door on the third-floor and, instead of finding one apartment, found four separate locked rooms and one communal bathroom. The team reported hearing a door slam on the fourth floor, which led them to that floor. Romero used the keys found in the second-floor apartment to open the door of the fourth-floor apartment. The apartment was "pitch dark." Romero closed the door and went downstairs to obtain a flashlight and tools. He returned to the fourth floor, opened the door and his team entered, yelling police. Green was sitting on the couch, to the right of the entrance. The police turned on the lights. The room was the size of a jury box, to the left was the couch, to the right was a closet cracked open. The windows were covered by a garbage bag and shades. Green was arrested carrying a set of 25 keys, clipped to his belt. Among those keys were keys for the fourth-floor and second-floor apartments. In the fourth-floor apartment, the police found various items, including several boxes of clear plastic baggies, a bottle of peroxide, baking soda, 10 digital scales, 3 heat sealers and what appeared to be cocaine residue on the table. Inside the closet, the police found two locked fire retardant combination safes and drug paraphernalia. After securing a warrant, the

police opened the safes finding, inter alia, packages containing 375 to 400 grams of cocaine and about $1,000. Romero vouchered the cocaine seized from the second-floor and fourth-floor apartments and sent it to the police laboratory for testing.

By an indictment, Green was charged with first-degree and third-degree criminal possession of a controlled substance and two counts of second-degree criminally using drug paraphernalia. Green proceeded to trial before a jury. In his omnibus motion, Green described himself as the superintendent of the building, the manager of the first-floor laundromat and an invitee in the fourth-floor apartment, and challenged the search warrants, seeking to suppress the evidence recovered from the two apartments. The court granted a hearing with respect to the fourth-floor apartment but denied the motion concerning the second-floor apartment for lack of standing.

A hearing was conducted, pursuant to People v. Darden, 34 N.Y.2d 177, 356 N.Y.S.2d 582 (1974).[1] However, at the hearing, the court inquired into matters beyond the scope of the Darden hearing. At the end of the hearing, the prosecutor asked the court to limit its findings, in accordance with Darden, to the existence of the confidential informant and the information given by the informant to the officer who gave the information in support of the warrant. Despite the prosecutor's request, the court found that no probable cause existed to search the fourth-floor apartment. The day after the hearing, the court: (1) agreed with the prosecutor's request to litigate any issues presented by the police entry into the fourth-floor apartment; (2) released the redacted minutes of Romero's testimony and its conclusions; and (3) invited the parties to

---

[1] A Darden hearing is conducted in the absence of the defendant and defense counsel and in the presence of the prosecutor to verify the existence and credibility of a confidential informant. The hearing is required in a circumstance where no sufficient evidence exists to establish probable cause, apart from the testimony of the arresting officer about the existence of and communications received from an informer.

3

resume the hearing from which Green and his counsel had been excluded, with a further appearance by Romero or to brief the issues. Defense counsel elected to brief the issue of the constitutionality of the search. Thereafter, the court found no probable cause existed to support the fourth-floor apartment search, but did not suppress the evidence from the fourth-floor apartment because Green lacked standing to challenge the search.

Green moved to reargue asking the court to find that: (1) he had standing to challenge the admissibility of the drugs recovered from the fourth-floor apartment; (2) the hearing should be reopened to allow him to establish standing; and (3) the keys recovered from his person should be suppressed, since the entry into the fourth-floor apartment was illegal. The court granted the motion in part, suppressing the keys recovered from Green, but denied his request to conduct a hearing on the standing issue because no evidence existed that Green was an invitee to the fourth-floor apartment.

At a hearing, pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974),[2] the prosecutor asked the court to allow evidence of Green's three prior felonies: (1) a 1996 conviction for attempted third-degree criminal sale of a controlled substance; (2) a 1996 conviction for possession of a firearm during drug trafficking; and (3) a 1982 conviction for attempted first-degree kidnapping. The court determined that, if Green testified, the prosecutor would be permitted to ask whether Green: (a) had two felony convictions; (b) possessed a shotgun; and (c) sold a controlled substance to an undercover officer.

At trial, the parties entered into stipulations concerning the results of the laboratory tests of the substances seized from the second-floor and the fourth-floor apartments. In his opening

---

[2] A Sandoval hearing is held to determine whether evidence of the defendant's prior bad acts may be used to impeach the defendant on cross-examination.

4

statement, the prosecutor told the jury that Green had been arrested in the fourth-floor apartment surrounded by drug paraphernalia and that the apartment was a drug den and Green knew it. Green's counsel stated in his opening statement that Green was "merely at the wrong place at the wrong time, he did not own or lease the fourth-floor apartment and others had access to the fourth-floor apartment. The prosecutor argued that, by referring to the wrong place at the wrong time, defense counsel misled the jury and opened the door to the introduction into evidence of the keys that had been suppressed. According to the prosecutor, since others had access to the fourth-floor apartment and Green had no access and no keys, then he must have been let in by somebody with real control of the apartment; thus, the jury needed to learn about the keys. The court found that the keys had to be introduced into evidence, despite the adverse effect on Green.

Green did not testify at his trial. At the conclusion of the trial testimony, defense counsel moved for dismissal, but the court denied the motion. In summation, defense counsel argued that no sufficient evidence established a connection between the activities in the second-floor and fourth-floor apartments or that Green knew what the objects were that were seized from the fourth-floor apartment. Defense counsel told the jury: "I submit to you that a person involved in drug trafficking may recognize that some of the items can possibly be used" and "[t]here was simply nothing to show that [Green] knew about the safes in the closet or the drugs in the safes." The prosecutor argued that, by suggesting that Green had never been involved in drug trafficking, counsel opened the door to the introduction of evidence respecting Green's two prior convictions. The court told the jury that Green had two felony convictions related to drug offenses, one for possessing a shotgun in connection with armed narcotics trafficking and one for attempting to commit a drug sale.

5

During deliberations, the jury sent notes to the court. The first note requested the exhibits. The second note stated: "We the jury request to try key in lock. Can we open the bag." The court included this note in its list of court exhibits, but provided no notice to defense counsel about the content of the second note and left it unanswered. Green was convicted for first-degree criminal possession of a controlled substance, third-degree criminal possession of a controlled substance and two counts of second-degree criminality using drug paraphernalia.

Green made a motion to set aside the verdict, pursuant to New York Criminal Procedure Law ("CPL") § 330.30, claiming that: (i) he received ineffective assistance from his trial counsel; (ii) the laboratory reports introduced in the grand jury proceeding were defective; and (iii) the evidence before the grand jury was insufficient to charge him with drug possession. The court denied the motion. Green was sentenced, as a second felony drug offender, to an aggregate term of 15 years imprisonment, followed by five years of post-release supervision.

On appeal, Green argued that: (1) the court committed a mode-of-proceedings error and violated his right to counsel, when it failed to notify him about the second jury note and failed to answer the second jury note asking to open an exhibit bag to test the key and lock contained therein; (2) the court deprived him of his right to counsel and to be present at all material stages of the proceedings, when it held a suppression hearing in his and his counsel's absence; (3) his counsel rendered ineffective assistance to him when, in summation, he told the jury that only someone in drug trafficking would recognize the drug paraphernalia, opening the door to the admission of evidence respecting Green's two prior felony drug convictions and to the prosecutor's statements in the closing that Green was a convicted drug dealer; and (4) the court erred in finding that counsel's opening statement opened the door to the introduction of the illegally recovered and previously suppressed keys. Green argued pro se that: (a) the evidence

was legally insufficient to support two of his convictions; and (b) his counsel rendered ineffective assistance to him when he failed, inter alia, to prepare a proper defense and call witnesses.

The New York State Supreme Court, Appellate Division, found that: (i) the verdict was based on legally sufficient evidence and was not against the weight of the evidence, and the evidence established overwhelmingly that Green was a participant in a drug-selling operation and the possessor of contraband found in the two apartments; (ii) Green failed to establish a violation by the court of the procedures pertinent to the jury note concerning opening the evidence bag, which, under the circumstances, "was not a request to perform an experiment or demonstration, but was essentially a request to apply 'everyday experiences, perceptions, and common sense' in handling the exhibit," and the request was ministerial rather than substantive, not requiring counsel's input; (iii) the court conducted properly an ex parte Darden hearing and offered Green an opportunity to litigate the suppression issue at a hearing, but his counsel declined and made a written submission, waiving any objection to the procedure by which the court resolved the suppression issues; (iv) Green received effective assistance of counsel and showed no "reasonable probability that counsel's isolated error in opening the door to the introduction of defendant's prior convictions affected the outcome of the trial, given the overwhelming evidence of guilt"; (v) Green's pro se arguments concerning ineffective assistance of counsel "are unreviewable on direct appeal because they involve matters outside the record"; and (vi) "[t]he court properly exercised its discretion in determining that defense counsel's opening statement opened the door to admission of an item of physical evidence that the court had suppressed," and "any error in admitting this evidence was harmless." People v. Green, 82 A.D.3d 593, 593-94, 919 N.Y.S.2d 152, 153-54 (App. Div. 1st Dep't 2011).

Thereafter, Green made a motion for a writ of error coram nobis, asserting that his appellate counsel failed "to advance the argument that an Attorney cannot help create evidence that will be used to convict his or her client at trial, without creating a conflict of interest between the client and the Attorney, thereby rendering Ineffective Assistance of Representation to his or her client." Green's motion for a writ of error coram nobis was denied, on January 8, 2013. This petition followed.

## PETITIONER'S CONTENTIONS

Green contended on appeal and in this proceeding that his trial counsel rendered ineffective assistance to him when, in summation, he told the jury that only someone in the business of "drug trafficking" would recognize the drug paraphernalia, opening the door to Green's prior two felony drug convictions and to the prosecutor's repeated statements, in closing, that Green was a convicted drug dealer. Green asserts that his counsel did not take time to research the law or the facts to find out that, in New York, defense counsel may open the door to new evidence by misleading comments in summation. According to Green, had counsel not opened the door, the jury may have reached a different conclusion.

On appeal, Green argued pro se that evidence was insufficient to support his convictions for first-degree and third-degree criminal possession of a controlled substance. Green maintains that "there was no proof that the substance that the chemist relied upon for comparative test was in fact tested by him," and "no competent proof to indicate the evidence taken from the scene of the crime was the same one the police chemist tested." Green also argued pro se that he was deprived of the effective assistance of trial counsel because "during the course of pre-trial proceeding's [sic] and trial, defense counsel . . . abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecution in its efforts to prosecute Mr. Green." More

8

specifically, trial counsel did not pursue a defense to the charge of first-degree criminal possession of a controlled substance and he did not challenge the strength of the prosecutor's case on the first-degree and third-degree criminal possession of a controlled substance charges. Moreover, trial counsel "effectively acknowledged that the paraphernalia of drug sales was found in the possession of Mr. Green even though there was no testimony regarding this point." Green asserts that his counsel was ignorant of the applicable law and failed to conduct any legal research and "to put before the jury evidence that someone else had committed the crime charged." Green contends that his counsel's failure to call any witnesses amounted to ineffective assistance. Green asserts that the cumulative weight of his counsel's errors deprived him of the effective assistance of counsel.

In his motion for a writ of error coram nobis, Green asserted that his appellate counsel rendered ineffective assistance to him because she failed to: (a) argue that his trial attorney was ineffective when he stipulated that an "unknown substance was in fact cocaine without unquestionable documental proof to support the stipulation"; and (b) present significant issues on appeal, including that the trial testimony failed to establish that Green was in possession of a controlled substance, while presenting weak issues.

## RESPONDENT'S CONTENTIONS

The respondent contends that the petitioner "arguably exhausted his individual ineffective assistance of counsel claims" because he "collectively raised these claims in constitutional terms in his counseled and *pro se* briefs on direct appeal." However, the petitioner's "ineffective assistance of appellate counsel claims remain unexhausted, insofar as he has not sought leave to appeal to the New York State Court of Appeals from the January 8, 2013 order of the Appellate Division denying petitioner's motion for a writ of error coram nobis." The respondent contends

that the unexhausted ineffective assistance of appellate counsel claims should be deemed exhausted and found to be procedurally defaulted. The petitioner also failed to exhaust his weight of the evidence claim with respect to the third-degree criminal possession charge because he did not raise that claim in constitutional terms, and he did not attack the weight of the evidence with respect to the other charges. Furthermore, the petitioner failed to exhaust his claim relating to the stipulations because he failed to raise this record-based claim on appeal and that claim should be deemed exhausted and procedurally defaulted.

According to the respondent, the petitioner cannot establish cause for the default and actual prejudice from barring the claims or that the failure to consider them will result in a fundamental miscarriage of justice. With respect to his ineffective assistance of appellate counsel claim, the petitioner asserted that, by the time he received a copy of the Appellate Division's order denying his motion for a writ of error coram nobis, the time to seek leave to appeal had passed, without indicating when he received the notice or why he did not seek permission to file a late leave application. With respect to his weight of the evidence and stipulation claims, the petitioner did not offer any cause for his default. The respondent asserts that the petitioner's ineffective assistance of appellate counsel claim cannot serve as cause for a default because: (a) in his motion for a writ of error coram nobis, he did not assert that appellate counsel "was ineffective for failing to raise a weight of the evidence claim"; and (b) he asserted that "appellate counsel was ineffective for failing to raise a claim concerning the stipulations," but failed to appeal the Appellate Division's rejection of that claim or seek permission to file a late leave application.

The respondent asserts that the state court's rejection of the petitioner's ineffective assistance of trial counsel claims, asserted pro se and through his counsel, was not contrary to or

10

an unreasonable application of clearly established federal law. The state court rejected the petitioner's pro se claims as unreviewable because they involved matters outside the record. Concerning the petitioner's counseled ineffective assistance of trial counsel claim, the state court found that the petitioner received effective assistance of counsel and no reasonable probability exists that counsel's isolated error in opening the door to the introduction of two of petitioner's prior convictions affected the outcome of the trial, given the overwhelming evidence of guilt. The record demonstrates that counsel filed a comprehensive omnibus motion and succeeded in obtaining a hearing and an opportunity to challenge the police activity on the fourth-floor of the building. When the court denied the petitioner's motion to controvert the search warrant, counsel moved promptly to reargue and won suppression of the keys seized from the petitioner. The respondent asserts that these preliminary efforts indicate that counsel was engaged in measured decision-making and conducted diligently all preparation necessary to mount an effective defense. Counsel participated actively in jury selection, made proper objections and cross-examined witnesses, made four mistrial motions arguing his position vigorously and made a timely motion for dismissal at the close of the People's case. When that motion was denied, counsel presented a cogent summation, attacking the police investigation of the case. Counsel, in summation, downplayed the significance of the paraphernalia in open view in the fourth-floor apartment, which led to the trial court's informing the jury that the petitioner had two convictions related to felony drug charges. However, the state court determined that the petitioner was not prejudiced by that isolated error. Although counsel provided a connection between the paraphernalia and the recovered drugs, that connection had been well-established by the time counsel began his closing argument, leaving no doubt that petitioner and Brown were

11

participants in the same drug-selling business and had knowledge of and control over the drugs and paraphernalia.

The respondent asserts that the petitioner's remaining pro se ineffective assistance of counsel claims, namely, that counsel "pursued no defense at trial," "failed to prepare a proper defense" and "affirmatively aided the prosecution," lack merit. Moreover, the petitioner's claim that counsel did not recognize that the prosecutor purportedly failed to prove "intent to sell" under the third-degree criminal possession charge is unpersuasive because it overlooks the overwhelming evidence of intent to sell, including the possession of more cocaine than would be consistent with mere recreational use, the possession of cocaine packaged for sale, the presence throughout the apartment of material used to mix, portion and package drugs for sale and the large amount of cash recovered. Similarly, the claim that counsel failed to conduct sufficient legal research and to recognize that "control over an area will not in and of itself give [rise] to a conclusive presumption that a defendant also knew contraband was present" is without merit. Nothing in the record suggests that counsel believed erroneously that proof of the petitioner's control of the apartment established either knowledge or possession of the seized drugs. However, even if counsel was ignorant of the law, the trial court "instructed the jury that if they concluded that petitioner had dominion and control over the apartment, that did not lead to the inexorable conclusion that he exercised dominion and control over the apartment's contents," thus preventing any prejudice. The respondent contends that the claim that counsel failed to understand and present "other suspect" evidence, namely, that Brown was the guilty party, is meritless because counsel refrained prudently from pressing such a defense, since "there was plenty of evidence connecting petitioner with Brown in a shared drug-dealing enterprise, and establishing the two apartments as the locales of that enterprise." The respondent asserts that the

claim that counsel failed to conduct a thorough investigation is speculative and unsupported, and counsel's efforts reveal that he was familiar with the details of the police action in this case and formulated a plan to attack the evidence provided by the police witnesses.

The respondent contends that the ineffective assistance of appellate counsel claim lacks merit because counsel did not omit any significant and obvious issues while pursuing weaker issues on appeal. Counsel presented a 45-page brief containing carefully researched and presented arguments. Even assuming that counsel failed to present any additional claims, the petitioner failed to establish that a reasonable probability exists that any of these claims would have been successful. Counsel cannot be ineffective for failing to present evidence outside the record and the claim that counsel misled the petitioner by promising to seek leave to appeal the conviction to the Court of Appeals and failing to do so is belied by the record, which shows that counsel filed an initial leave application and a supplemental letter to the Court of Appeals. The respondent asserts that counsel made a wise choice not to challenge the legal sufficiency of the evidence supporting the conviction, given the quality and quantity of the evidence establishing the petitioner's guilt. Moreover, the claim that counsel was ineffective for failing to raise the trial counsel's stipulation concerning the laboratory evidence is meritless because nothing in the record suggests that trial counsel or the petitioner had a reason to suspect that the substance seized was not cocaine or that the laboratory reports were defective. The petitioner's claim that appellate counsel was ineffective for failing to assert that the stipulation was procedurally defective, since it was not reduced to writing, is belied by the record. Moreover, the trial court did not modify the core agreement of the stipulation. The respondent contends that the weight of the evidence claim is not cognizable on habeas corpus review, and even if it is construed as an insufficient evidence claim, it has no merit, since the evidence of guilt was overwhelming.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08, 120 S. Ct. at 1520. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). AEDPA requires a petitioner to exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). When a claim has not been presented to a state court for adjudication, a federal court reviewing a habeas corpus petition may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). A procedurally defaulted claim may be reviewed by a federal court only if the petitioner shows "cause for the default and prejudice, or

14

demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Id. To establish cause for a procedural default, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). Federal habeas corpus review is foreclosed where a state court relied on procedural default as an independent and adequate state ground even if the state court ruled on the merits of a federal claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

## APPLICATION OF LEGAL STANDARD

### *Exhaustion: Ineffective Assistance of Appellate Counsel*

Green failed to exhaust his ineffective assistance of appellate counsel claim, as he indicated in his petition that he did not seek leave to appeal to the New York Court of Appeals from the January 8, 2013 denial of his motion for a writ of error coram nobis. However, the time to request leave to appeal or an extension of time to do so expired, see CPL §§ 460.10 & 460.30; thus, the ineffective assistance of appellate counsel claim is deemed exhausted and procedurally barred unless Green can show cause for his default and the prejudice that would result if his claim is not reviewed.

Green contends that the Appellate Division did not mail the January 8, 2013 decision to him and he only learned about it when he received "it from the office of the District Attorney by way of Notice of Entry," when appeal to the Court of Appeals was time barred. Green failed to specify when he received the notice of entry and to explain why he did not seek an extension of

time for taking an appeal or otherwise act with due diligence after learning about the January 8, 2013 decision. Moreover, Green does not contend that he was prevented at any time from inquiring with the Appellate Division about its decision of his motion. The Court finds that Green did not establish cause for the default of his ineffective assistance of appellate counsel claim. Furthermore, Green does not contend that he is actually innocent. Accordingly, the review of Green's ineffective assistance of appellate counsel claim in this proceeding is barred.

### *The Verdict Was Against the Weight of the Evidence*

"[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993). "In the Federal courts . . . it is well settled that upon habeas corpus the court will not weigh the evidence . . . ." Hyde v. Shine, 199 U.S. 62, 84, 25 S. Ct. 760, 764 (1905). Since federal habeas courts do not weigh the evidence, Green's claim that his verdict is against the weight of the evidence is not cognizable in this proceeding.

### *Insufficient Evidence*

"[A] federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt." Herrera, 506 U.S. at 401, 113 S. Ct. at 861. In determining whether a conviction is supported by sufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). "[P]*ro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted).

Interpreting Green's claim liberally, to the extent that he challenges the sufficiency of the evidence, he asserted on appeal that the evidence was insufficient to establish his guilt with respect to the first-degree and third-degree criminal possession of a controlled substance charges. To establish Green's guilt with respect to: (i) the first-degree criminal possession of a controlled substance charge, the prosecutor had to establish beyond a reasonable doubt that Green knowingly and unlawfully possessed eight ounces or more of a narcotic drug, see New York Penal Law § 220.21(1); and (ii) the third-degree possession of a controlled substance charge, the prosecutor had to establish beyond a reasonable doubt that Green knowingly and unlawfully possessed a narcotic drug with intent to sell it, see New York Penal Law § 220.16(1). In the state court, the parties stipulated that the chemist determined that the substance seized from both apartments was cocaine, a narcotic drug, weighing more than eight ounces. Moreover, the Appellate Division's determination that the overwhelming evidence established that Green was a participant in a drug-selling operation and a possessor of contraband found in two apartments used as drug factories is not contrary to or an unreasonable application of Jackson. The evidence demonstrated that Green was aware of the drugs and drug-packing supplies in the apartments, and the jury inferred, reasonably, that Green was participating in the drug enterprise conducted from the two apartments. The content of the fourth-floor apartment offered compelling evidence of Green's knowledge of actual residential occupation, including plastic garbage bags taped over the windows to conceal illegal activity, as well as drug paraphernalia displayed throughout the apartments. The evidence was sufficient to establish that Green possessed constructively the drugs and paraphernalia in the fourth-floor apartment, as well as Green's knowledge and control of the drugs and paraphernalia in the second-floor apartment. The Court finds that Green failed to establish that the state court's denial of his insufficient evidence claim was contrary to or an

17

unreasonable application of clearly established federal law and granting habeas corpus relief on this claim is not warranted.

### *Ineffective Assistance of Trial Counsel*

To obtain relief on an ineffective assistance of counsel claim, a habeas corpus petitioner must establish that his counsel's performance was: (1) deficient, such that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984); and (2) prejudicial so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. In assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, 104 S. Ct. at 2065 (citation omitted).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly differential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.
>
> Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011) (internal citations omitted).

Although the Appellate Division found that counsel's opening the door to the introduction of Green's two prior convictions was an "isolated error," it rejected Green's ineffective assistance of trial counsel claim, because Green failed to show that, in light of the

18

overwhelming evidence of guilt, a reasonable probability existed that counsel's isolated error affected the outcome of the trial. Green failed to show that the Appellate Division's decision is contrary to or an unreasonable application of Strickland, including that he suffered prejudice as a result of his trial counsel's error.

The Appellate Division rejected the ineffective assistance of counsel arguments, raised pro se, because they involved matters outside the record. However, the arguments Green made pro se are meritless. Green's trial counsel conducted extensive pre-trial litigation, making motions promptly and obtaining certain relief. At trial, counsel participated actively, making proper objections, cross-examining witnesses vigorously, eliciting answers favorable to Green, confronting one witness with allegedly inconsistent prior statements and making motions. Counsel made reasonable strategic choices, in light of the overwhelming evidence against Green. Contrary to Green's contentions, the record shows that counsel was prepared and familiar with the applicable law and the facts of the case. The Court finds that Green failed to establish that trial counsel rendered ineffective assistance to him or that he suffered any prejudice from counsel's performance. Accordingly, no habeas corpus relief is warranted based on that claim.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 40 Centre Street, Room 2104, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       November 10, 2016

Respectfully submitted,

Copy mailed to:

Edward Green

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE