UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD GREEN,

                Petitioner,

-v-

THE STATE OF NEW YORK,

                Respondent.

No. 14-cv-2073 (RJS) (KNF)
ORDER AND OPINION ADOPTING
REPORT AND RECOMMENDATION

RICHARD J. SULLIVAN, District Judge:

      Edward Green ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1 ("Petition").) Petitioner challenges his conviction on the grounds that he received ineffective assistance of trial and appellate counsel and that there was insufficient evidence for his conviction. Now before the Court is the Report and Recommendation of the Honorable Kevin Nathaniel Fox, Magistrate Judge, which recommends that the Petition be denied (Doc. No. 21 ("Report")). For the reasons set forth below, the Court adopts the Report and denies the Petition.

## I. BACKGROUND[1]

      The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set forth more fully in the Report, and provides only those facts necessary to resolve this motion.

---

[1] In ruling on the Petition, the Court has considered the Petition and attached exhibits, the government's memorandum of law in opposition to the Petition (Doc. No. 12), and the record of Petitioner's criminal action in state court (Doc. No. 13 ("SR")). Although the Court construes Petitioner's *pro se* submissions liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam), the Court draws all factual inferences in favor of Respondent in light of the jury's guilty verdict, *see Quartararo v. Hanslmaier*, 186 F.3d 91, 96 (2d Cir. 1999).

On November 1, 2007, New York City Police Detectives Anthony Romero and Alfred Hernandez, along with a team of approximately thirteen other officers, executed a search warrant on second- and third-floor apartments at 451 Lenox Avenue in Manhattan.  Upon arrival at the second-floor apartment, police found, among other things, 18 half-gram plastic bags of cocaine, a gun holster, and several empty plastic bags that bore the "Red Apple" stamp, a label that is commonly used in the cocaine trade in New York City.  (Doc. Nos. 13-7 at 125–50; 13-8 at 66, 114–15.)  Upon arrival at the third floor, the police heard a door slam on the fourth floor, which led them to that floor.  (Doc. No. 13-7 at 150–51.)

When Detectives Romero and Hernandez arrived at an apartment on the fourth floor, they banged on the door and loudly announced their presence and directed anyone present to leave the apartment.  (Doc. No. 13-8 at 1–2, 120–21.)  When no one answered, the detectives opened the door and found Petitioner alone in the dark.  (*Id.*)  The fourth-floor apartment was covered with cocaine residue and littered with drug paraphernalia, including digital scales, heat sealers, hundreds of small plastic bags, and cutting agents commonly used in connection with cocaine, and the apartment's windows were covered by garbage bags and shades.  The police also located in the apartment more than one pound of cocaine that was already packaged and prepared for sale, as well as $1,100 in two locked safes.  (Doc. No. 13-8 at 1–45, 121–27.)  Upon arresting Petitioner, Detectives Romero and Hernandez recovered $330 in cash from his person and a large set of keys, which opened both the fourth-floor apartment where he was found and the second-floor apartment in the same building where police had found the 18 bags of cocaine and other drug paraphernalia just minutes before.  (*Id.* at 13–14, 126; Doc. No. 13-9 at 35–37.)

On November 11, 2007, Petitioner was indicted in the New York State Supreme Court, New York County for Criminal Possession of a Controlled Substance in the First Degree under

N.Y. Penal Law § 220.21[1]; Criminal Possession of a Controlled Substance in the Third Degree under N.Y. Penal Law § 220.16[1]; and two counts of Criminally Using Drug Paraphernalia in the Second Degree under N.Y. Penal Law §§ 220.50[2], 220.50[3].  At a jury trial before the Honorable Edward McLaughlin that began on September 8, 2008, the parties jointly stipulated that certain substances obtained during the detectives' search at 451 Lenox Avenue contained cocaine.  (Doc. No. 13-9 at 13 (the "Stipulation").)  The prosecution introduced other exhibits containing items recovered from the second- and fourth-floor apartments and called Romero and Hernandez to testify about their search and the arrest of Petitioner.  Trial counsel extensively cross-examined the detectives, raised objections to the introduction of certain evidence, and made an unsuccessful motion for a directed verdict at the close of the prosecution's case (*see* Doc. No. 13-8 at 8, 32, 45–75, 84–89, 93–100, 128–31, 136–50; 13-9 at 1–9, 37–48; Doc. No. 13-10 at 24), but he did not present an affirmative case.  In his summation, trial counsel attempted to offer an innocent explanation for the presence of the paraphernalia found near Petitioner and argued that while "a person involved in drug trafficking may recognize that some of the items can possibly be used" to sell drugs, "how are we to assume" that Petitioner would know that?  (Doc. No. 13-9 at 72.)  Following these remarks, Justice McLaughlin granted the prosecution's motion to introduce Petitioner's past drug-related felony convictions as evidence of his knowledge and familiarity with drug trafficking and drug paraphernalia.  (Doc. No. 13-10 at 10–11.)  The jury subsequently convicted Petitioner on all counts.  (*Id.* at 81–82.)

On October 8, 2008, Justice McLaughlin sentenced Petitioner to an aggregate prison term of 15 years, followed by five years of post-release supervision.  (Doc. No. 1-2 at 11–19.)  In February 2010, Petitioner, now represented by Natalie Rea of the Legal Aid Society, appealed his conviction to the First Department, arguing, among other things, that trial counsel was ineffective

for opening the door to Petitioner's two prior drug felony convictions. (SR 22, 30.) In March 2010, Petitioner separately submitted a *pro se* brief to the First Department in which he also argued that the evidence at trial was legally insufficient to support his convictions and that he was deprived of effective assistance of counsel because of his trial counsel's failure to call witnesses, "total ignorance of applicable law," "failure to conduct any legal research," and failure to adequately investigate the allegations against Petitioner. (SR 77, 82, 88, 93, 96.) On March 24, 2011, the First Department affirmed Petitioner's conviction and rejected all of the arguments set forth in both his counseled brief and his *pro se* brief. *People v. Green*, 82 A.D.3d 593, 593–94 (1st Dep't 2011). On August 25, 2011, the New York Court of Appeals denied Petitioner's motion for leave to appeal. *People v. Green*, 17 N.Y.3d 816 (2011).

On September 20, 2011, Petitioner submitted a *pro se* petition for writ of error coram nobis to the First Department in which he made several arguments for the first time, including that: (1) his trial counsel rendered ineffective assistance by stipulating that the substance in the two sealed envelopes contained cocaine, and (2) his appellate counsel, Ms. Rea, was also constitutionally ineffective for failing to raise stronger ineffective assistance claims before the First Department, such as a Sixth Amendment claim premised on trial counsel's entry into the Stipulation. (*See* Doc. Nos. 1-1 at 1–23, 1-5 at 18–28, 1-6 at 1–12, 1-7 at 1–13, 1-8 at 1–21.) On January 8, 2013, the First Department rejected Petitioner's petition for writ of error coram nobis in a one-page order. (SR 379.)

On March 18, 2014, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2254 without ever having sought leave to appeal the denial of his petition for writ of error coram nobis to the New York Court of Appeals. (Doc. No. 1.) On August 15, 2014, the case was reassigned to my docket, and on August 27, 2014, the Court referred the case to the Honorable

Frank Maas, United States Magistrate Judge, for a Report and Recommendation. (Doc. No. 8.) Following Judge Maas's retirement, the referral was reassigned to Judge Fox on September 7, 2016. On November 10, 2016, Judge Fox filed the Report (Doc. No. 21), and informed the parties that, pursuant 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, they had fourteen (14) days from service of the Report to file written objections (*id.* at 19–20). Neither party has filed an objection, and the deadline to do so has since expired.

## II. LEGAL STANDARD

A federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly established Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (internal quotation marks omitted). A state court decision is "contrary to" such a holding only where the state court "either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 402 (2000)). An "'unreasonable application' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). A federal court should grant habeas relief only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). When a party makes specific objections to a magistrate judge's findings or legal conclusions, the court must undertake a *de novo* review of the objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, "to the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (quoting *Chen v. Bd. of Immigration Appeals*, 435 F.3d 141, 145–46 (2d Cir. 2006)).

### III. DISCUSSION

Petitioner argues that his conviction should be overturned because: (1) he received ineffective assistance of counsel and (2) there was insufficient evidence for the verdict against

him.  (Pet. 4.)[2]  Judge Fox concluded that Petitioner's ineffective assistance of counsel and insufficient evidence claims lack merit and that certain arguments are also procedurally barred. (Report 15–29.)  For the reasons set forth below, the Court concludes that Judge Fox did not commit clear error.

First, Judge Fox did not clearly err in rejecting Petitioner's argument, originally made on appeal in his counseled brief, that his trial counsel was ineffective for inadvertently opening the door to evidence of Petitioner's prior two convictions.  (Report 18–19.)  Like Judge Fox, the Court finds that the First Department did not misapply clearly established federal law in concluding that, notwithstanding trial counsel's "isolated error" in opening the door, the "overwhelming evidence" of Petitioner's guilt, including the testimony from Detectives Hernandez and Romero, the cocaine and drug paraphernalia found in the second- and fourth-floor apartments at 451 Lenox Avenue that was introduced in evidence, and the evidence that Petitioner had keys to those same apartments, negated any inference of prejudice from this error.  *Green*, 82 A.D.3d at 594; (*see also* Doc. No. 13-8 at 5–8, 23–27, 30, 37–38); *Strickland*, 466 U.S. at 687–88, 694 (to show ineffective assistance, petitioner must demonstrate that "deficient performance prejudiced" him in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

---

[2] Though Petitioner also asserts that "the verdict was against the weight of evidence" (Pet. 1), this argument "states a claim under state law, which is not cognizable on habeas corpus," *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011).  Thus, the Court construes the Petition to argue that the verdict against Petitioner was based on insufficient evidence, which may be a viable claim in § 2254 cases. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  Furthermore, while Petitioner also "request[s] that the stipulation entered into by [his trial counsel] and [the prosecutor] be vacated" (Pet. 4), his arguments for vacating the stipulation are generally grounded in state law. (*See* Doc. No. 1-1 at 11–15; 1-2 at 1–9 (arguing that the stipulation was "induced by fraud or as a product of mistake" and citing New York common law fraud and rescission cases and cases applying New York criminal and civil procedural rules).)  Because Petitioner's arguments under state law "are not cognizable in federal habeas proceedings," the Court does not consider them.  *Lewis v. Jeffers*, 497 U.S. 764, 783 (1990).  Instead, the Court construes the Petition to argue that trial counsel's decision to enter into the Stipulation constituted ineffective assistance of counsel in violation of the Sixth Amendment under *Strickland v. Washington*, 466 U.S. 668 (1984).

Nor did the First Department erroneously reject Petitioner's arguments in his *pro se* submission regarding trial counsel's alleged failure to properly investigate the facts of the case, alleged "ignorance" of the law, and decision not to call witnesses. As the First Department recognized on appeal, certain of Petitioner's arguments in this regard involved matters outside the trial record and were therefore not reviewable by the Appellate Division. *Green*, 82 A.D.3d at 594; *see also Longo v. Greiner*, 23 F. App'x 86, 87 (2d Cir. 2002) (noting that a "claim of ineffective assistance of trial counsel based on facts outside the record must be raised in a postjudgment motion pursuant to CPL § 440.10, rather than on direct appeal" (citing *People v. Hammock*, 255 A.D.2d 957, 958 (4th Dep't 1998))); *accord Pratt v. Greiner*, 306 F.3d 1190, 1197 n.2 (2d Cir. 2002).

Furthermore, as the trial transcript makes clear, counsel actively participated in all aspects of the trial. For example, trial counsel engaged in jury selection and successfully got certain jurors struck. Counsel also raised successful objections to the prosecution's questions at direct examination; extensively cross-examined the prosecution's witnesses; attempted to impeach Detective Romero with allegedly inconsistent prior statements; and advocated on Petitioner's behalf at sentencing by raising pertinent objections to the probation department's report and making other arguments related to Petitioner's advanced age in support of a lighter sentence. (Doc. No. 1-3 at 2–6.); (Doc. No. 13-6 at 103–06; Doc. No. 13-7 at 26–29, 136; Doc. No. 13-8 at 8, 32, 45–75, 84–89, 93–100, 128–31, 136–50; Doc. No. 13-9 at 1–9, 37–51; Doc. No. 13-10 at 24.) In light of the trial record, the Court agrees with Judge Fox that Petitioner has failed to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. And while it is true that trial counsel did not call any witnesses, it is well settled that "'[t]he decision whether to call any witnesses on behalf of the

defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial,' and if reasonably made, cannot support a claim of ineffective assistance of counsel." *Adamson v. Griffin*, No. 16-cv-0511 (JPO), 2016 WL 6780011, at *11 (S.D.N.Y. Nov. 16, 2016) (quoting *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992)). Here, Petitioner failed to offer non-conclusory arguments addressing why it was unreasonable for trial counsel not to call witnesses, and he has not even attempted to explain how the testimony of any other specific defense witness "would have created a reasonable probability of a different trial outcome, thus failing the second *Strickland* prong." *Id.*

Judge Fox also did not clearly err in rejecting Petitioner's claim that the verdict was "against the weight of evidence." (Report 16–18.) Indeed, it is well established that "[f]ederal courts are not forums in which to relitigate state trials." *Herrera v. Collins*, 506 U.S. 390, 401 (1993). Thus, a claim of insufficient evidence must be rejected so long as, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* In light of the "overwhelming evidence" of Petitioner's guilt, including the physical evidence recovered on and near Petitioner and the extensive testimony by Romero and Hernandez, Petitioner does not come close to meeting this very high bar.

The Court also finds that Petitioner failed to properly exhaust the arguments that were raised in his petition for writ of error coram nobis that had not been argued in his direct appeal, including his arguments that: (1) trial counsel's entry into the Stipulation constituted ineffective assistance and (2) appellate counsel rendered ineffective assistance by not raising certain Sixth Amendment arguments on Petitioner's behalf before the First Department in her February 2010 brief. Here, Petitioner failed to seek leave to appeal the Appellate Division's January 8, 2013 order

rejecting his coram nobis petition to the New York Court of Appeals.  (Report 15–16); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (noting that a habeas petitioner who fails to apply to the New York Court of Appeals for leave to review procedurally defaults on his habeas claim).  Furthermore, Petitioner has not shown "cause for the default and prejudice," and he has not pointed to any basis on which the Court could conclude that he is actually innocent.  *Sweet v. Bennett*, 353 F.3d 135, 141–42 (2d Cir. 2003) (in order to avoid default, habeas petitioner must "show[] cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent.").  Finally, the Court finds that the First Department's rejection of Petitioner's rambling and often incoherent arguments in his coram nobis petition regarding the performance of his trial and appellate counsel was certainly not an unreasonable application of clearly established federal law.  (Report 13; SR 22–73.)

Accordingly, the Court concludes that Judge Fox did not clearly err in rejecting the Petition.  In fact, even if the Court were to review Judge Fox's Report *de novo*, it would reach the same result.

## IV.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Petition is denied.  Furthermore, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.  *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (instructing that *in forma pauperis* status should be denied for the purpose of an appeal

where the appeal would "lack . . . an arguable basis in law or fact"). The Clerk is respectfully directed to send a copy of this Order to Petitioner and to close this case.

SO ORDERED.

Dated:      December 19, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/19/16